**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| DRAKE UNIVERSITY, <br><br>    Plaintiff, <br><br> vs. <br><br> DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE, <br><br>    Defendants. | Case No. 4:24-CV-00227-SMR-SBJ <br><br><br> **DEFENDANTS' RESISTANCE TO PLAINTIFF'S MOTION TO SEAL DOCKET ENTRIES 20, 21, AND 23** <br><br><br> **EXPEDITED RELIEF REQUESTED** |
| DES MOINES AREA COMMUNITY COLLEGE, <br><br>    Counterclaim Plaintiff, <br><br> vs. <br><br> DRAKE UNIVERSITY, <br><br>    Counterclaim Defendant. | |

Pursuant to LR 7(e), Defendants Des Moines Area Community College Foundation and Des Moines Area Community College (referred to collectively herein as "DMACC") hereby resist Plaintiff Drake University's ("Drake") Motion to Seal Docket Entries 20, 21, and 23.

I.   <u>**INTRODUCTION**</u>

Drake's motion to seal is based solely on its desire to shield the weaknesses in its case from the public—not any legitimate concerns about the disclosure of any alleged "confidences." Indeed, noticeably missing from Drake's motion is any identification of what the so-called "confidences" are. That is because there are none. DMACC's submissions challenge the strength and validity of Drake's asserted "trademarks" based on publicly available information, namely third-party use

of similar trademarks and third-party federal trademark registrations and applications for similar trademarks, as well as Drake's failure to satisfy its burden of proof due to the lack of evidence supporting its positions. All of this is based on publicly available information Drake failed to submit. There are no "confidences" in DMACC's papers and absolutely no reason to shield DMACC's filings from the public.

Likewise, Drake is engaging in the charade with respect to DMACC's Iowa-based counsel, R. Scott Johnson, to distract from the merits (or more accurately, lack thereof) of its case against DMACC. Mr. Johnson has worked at Fredrikson & Byron since January 2020—years before this dispute arose between Drake and DMACC. Prior to that, Mr. Johnson worked at McKee, Voorhees, & Sease ("McKee"), but has no recollection of ever working on a single Drake matter— let alone anything relating to the Drake "trademarks" asserted here. Nevertheless, the bulk of the work done to challenge Drake's "trademarks" in DMACC's filings was done by DMACC's Minneapolis-based counsel, Laura Myers, who has never worked at McKee, never worked for Drake, and has no contacts with either one.

There is absolutely no basis to deny the public access to DMACC's filings, particularly after Drake flaunted its own filings against DMACC and thereby revealed its true motivation in filing this case—an attempt to wage a war against DMACC in the court of public opinion. The Court should put an end to Drake's gamesmanship and allow this case to proceed on the merits with the typical public access to the record.

## II.    BACKGROUND

### A.    There Are No "Confidences" or Confidential Information Disclosed in DMACC's Filings and Drake Fails to Identify Any.

The evidence submitted and cited in DMACC's filings consists of the following: (1) DMACC's public use of its own trademarks, including on Facebook; (2) publicly available

trademark registrations and pending trademark applications; (3) publicly available status information for trademark registrations and pending trademark applications; (4) Drake's publicly available brand guide, "blue" newsletter, and press release; (5) publicly available photographs; (6) publicly available screenshots from Drake's bulldog shop; (7) publicly available screenshots from third-party university shops; (8) the parties' 2023 and 2024 communications with each other regarding this dispute; (9) Drake's correspondence with its alumni; and (10) public media attention to this dispute. *See* ECF Nos. 20, 21, and 23. All of this is publicly accessible other than the parties' communications, which should not contain any Drake "confidences" that Drake would not disclose to an opposing party.

Drake's motion fails to identify any information in DMACC's filings that support sealing of any kind, let alone the entirety of multiple filings consisting of DMACC's responses to Drake's First Amended Complaint and opposition to Drake's request for the rare and extraordinary relief of a preliminary injunction. *See* ECF No. 24. Drake only references vague and undefined "confidences" with no discernable explanation of what those are, where they are located in DMACC's papers, or why they justify the sealing of DMACC's filings in their entirety. *See id*.

### B.      Drake's Allegations Against Mr. Johnson Put Form Over Substance.

As DMACC has repeatedly explained to Drake, Mr. Johnson had no personal involvement in any Drake matters while employed at McKee and was not privy to any "confidences" concerning Drake's trademarks. *See* Declaration of R. Scott Johnson, dated August 1, 2024 ("Johnson Decl.") at ¶¶ 2-3, Exs. 1, 2. Drake's entire argument is based solely on Mr. Johnson being listed as another "appointed attorney," along with every other lawyer at McKee, on certain filings Drake's actual McKee trademark attorney, Christine Lebron-Dykeman, submitted to the United States Patent and Trademark Office ("USPTO") on behalf of Drake many years ago. *See, e.g., id*., Ex. 1, Attachment A. Mr. Johnson—who has been at Fredrikson & Byron since January 2020—does not currently

represent Drake before the USPTO. *Id.*, ¶ 5. Likewise, before Drake raised it, Mr. Johnson never

knew he was listed on any trademark paper for Drake filed at the USPTO. *Id.*, ¶ 6. Mr. Johnson

subsequently determined that it appears to have been standard practice with McKee's trademark

lawyers to list all lawyers at the firm as "other appointed attorneys" in trademark filings at the

USPTO regardless of those lawyers' personal involvement on the trademark application or with

the client itself. *Id.*

Under Drake's draconian interpretation of Iowa's ethics rules[1], every single lawyer that

was employed at McKee during the time in which McKee worked on any Drake trademark

application—along with every lawyer at those lawyers' new law firms—would be conflicted out

from ever being adverse to Drake on any trademark matter until the end of time regardless of their

personal involvement on and personal knowledge of Drake's matters. DMACC has repeatedly

explained to Drake why its position is incorrect.[2] *See* Johnson Decl., Exs. 1, 2.

Notably, Drake refused to substantively respond to Mr. Johnson's request that Drake allow

Mr. Johnson to seek his billing history from McKee in order to demonstrate his lack of work on

Drake matters. *See* Johnson Decl., ¶ 7, Ex. 3. Clearly Drake has no interest in obtaining the proof

that would clearly demonstrate the truth of Mr. Johnson's representations and end this charade.

Drake's lawyers are using this outlandish accusation for an improper purpose – to keep the public

from knowing the weakness of Drake's positions.

---

[1]      Drake's lawyers rely on the Canons of the Code of Professional Responsibility and
outdated caselaw for their arguments that a lawyer who never worked on any matter for a former
firm's client is somehow disqualified from representing an adverse party to that client years later.
*See* Johnson Decl., ¶ 3, Ex. 2.

[2]      DMACC will fully address Drake's unfounded allegations if and when Drake files the
motion to disqualify that it has been threatening to file for the past month.

**C.** **The Publicly Available Evidence Cited in DMACC's Filings Was Primarily Found and Analyzed by DMACC's Minneapolis-Based Attorney With No Connection to McKee or Drake.**

With the exception of the publicly available examples of university and college seals, photographs of Drake's basketball court taken from a public website, the media and public responses to the litigation, and Drake's correspondence to alumni (including Mr. Jones, DMACC's Director of Marketing & Public Relations) about this litigation, the publicly available evidence discussed and cited in DMACC's filings was found, compiled, and analyzed by DMACC's Minneapolis-based attorney, Laura Myers, who has no connection whatsoever to McKee or Drake. *See* Declaration of Laura L. Myers, dated August 1, 2024 ("Myers Decl.") at ¶¶ 2-3. Ms. Myers also wrote DMACC's resistance to Drake's motion for a preliminary injunction, which contains the attacks on the strength and validity of Drake's alleged trademarks based on publicly available information. *Id.*, ¶ 3.

**III.** **ARGUMENT**

The public has a "general right to inspect and copy public records and documents, including judicial records and documents." *In re Neal*, 461 F.3d 1048, 1053 (8th Cir. 2006) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978)). The Eighth Circuit has cautioned that "only the most compelling reasons can justify non-disclosure of judicial records." *Id.* (quotation and citation omitted). Drake has provided no legitimate reason to shield DMACC's filings in their entirety from the public, let alone a compelling reason.

Drake identified six factors in its motion, which DMACC addresses below. All factors weigh against Drake's unreasonable and unfair request for the sealing of all DMACC submissions in their entirety.

**A.      The Public Deserves to See Both Sides of the Story.**

Drake has flaunted its filings against DMACC in the public and the media attention to this case shows that the public is listening.  The public is entitled to hear DMACC's side of the story; the public should not be limited to Drake's self-serving—and legally incorrect—positions on the strongly disputed issues.

Drake's argument based on a purported conflict of interest is a red herring.  Even if Drake could establish that Mr. Johnson has a legitimate conflict, which Drake cannot, that would not be a basis to shield all of DMACC's filings in their entirety from the public.  DMACC's filings cite only to publicly available information; there is not a shred of Drake's confidential information or "confidences" in DMACC's filings.  Indeed, this is precisely why Drake cannot identify any so-called "confidences" disclosed in DMACC's papers—because there are none.

The public should be allowed to evaluate this dispute based on its review of both parties' positions, not be forced through Drake's litigation tactics to accept Drake's flawed case theory.

**B.      DMACC's Challenges to the Strength and Validity of Drake's "Trademarks" are Based on Publicly Available Information that is Freely Accessible.**

The evidence submitted and cited in DMACC's filings consist of the following: (1) DMACC's public use of its own trademarks, including on Facebook; (2) publicly available trademark registrations and pending trademark applications; (3) publicly available status information for trademark registrations and pending trademark applications; (4) Drake's publicly available brand guide, "blue" newsletter, and press release; (5) publicly available photographs; (6) publicly available screenshots from Drake's bulldog shop; (7) publicly available screenshots from third-party university shops; (8) the parties' communications with each other; (9) Drake's correspondence with its alumni; and (10) public media attention to this dispute.  *See* ECF Nos. 20, 21, and 23.  With the exception of the parties' communications with each other, which necessarily

should not contain any so-called Drake "confidences," all of the evidence is already freely accessible to the public. This is reason enough to deny Drake's motion.

### C. **Drake's Self-Serving Objection Does Not Support Sealing Multiple, Substantive Pleadings in Their Entirety.**

Drake, a party to this case—indeed, the party who initiated this lawsuit—is the one seeking to seal multiple filings, consisting of publicly available information, in their entirety. Yet Drake has not and cannot identify a single piece of confidential information or "confidences relating to its trademark portfolio" that are disclosed in DMACC's papers. Again, that is because there are none. This is not a case where an unrelated third-party's clearly identified confidential or proprietary information will be publicly disclosed absent sealing. There is no basis to shield DMACC's filings from the public simply because Drake does not like them. *See, e.g., U.S. v. Revland*, No. CR02-4025-DEO, 2013 WL 2146902, at *2 (N.D. Iowa May 15, 2013) ("While the Renewed Motion may contain information that is not favorable to defendant, that information is (a) already public and, in any event, (b) not so sensitive or scandalous that compelling reasons exist to overcome the presumption of public access.").

### D. **Drake Has Not Identified Any Disclosed "Confidences" and Has Not and Cannot Show Any Actionable Harm to Its Property or Privacy Interests.**

To begin with, as explained above, Mr. Johnson was not involved in securing any Drake trademark registration, including the ones Drake is asserting here. The weakness and invalidity of Drake's "trademarks" based on publicly available information does not impact any legitimate property or privacy right. Once again, Drake utterly fails to identify any "confidences" exchanged under any attorney-client relationship that would justify sealing multiple filings in their entirety. Drake cannot prevent the public from seeing the weaknesses in its case through its litigation tactics.

**E.    DMACC Is Severely Prejudiced by Only Drake's Version of the "Facts" Being Disclosed to the Public.**

Again, Mr. Johnson was not involved in securing any Drake trademark registration, including the ones Drake is asserting here.  And any "future adversary" with even somewhat competent legal counsel will easily discover on its own the publicly available information DMACC is relying on to challenge Drake's purported trademark rights.  This is not the secret recipe of Coke that is at issue—the inherent weaknesses of Drake's positions and purported "trademarks" are obvious due to the sheer number of universities, colleges, and schools that publicly use the letter "D," the color blue, a seal, and a bulldog mascot.  This is common knowledge, not some state secret disclosed in some imaginary attorney-client discussion between Drake and Mr. Johnson that never occurred.  The public availability of DMACC's filings only prevents Drake from continuing to weave its lies to the public, which it is in the public interest to stop.

DMACC, on the other hand, will be severely prejudiced if Drake is rewarded for its gamesmanship.  Drake is spinning a story to the public that paints DMACC in a negative light.  Preventing DMACC from publicly disclosing its very valid defenses against Drake's allegations is severely prejudicial and will only cause further harm to DMACC's reputation by leaving Drake's actions unchecked.

**F.    DMACC's Filings are Necessary to Defend Its Interests.**

The filings Drake is attempting to seal consist of one defendant's motion to dismiss due to Drake's failure to state a claim against it, another defendant's answer and counterclaims, and DMACC's opposition to Drake's request for rare and extraordinary relief in the form of a preliminary injunction that, if granted, would force DMACC to interrupt its business operations and engage in a costly—and unjustified—rebrand.  These are major pleadings, not a single piece

of evidence alleged to be highly confidential or proprietary, and Drake is demanding that they be sealed in their entirety without any identification of any actual "confidences" disclosed therein. There is simply no basis for the Court to seal any of DMACC's filings. *See, e.g., Hildreth v. City of Des Moines*, No. 4:17-CV-00374-SMR-CFB, 2018 WL11276638, at *2 (S.D. Iowa Mar. 27, 2018) (denying motion to seal because the "filings do not reference or disclose confidential information with such particularity that sealing them is warranted").

The factors identified by Drake strongly favor DMACC and therefore, the Court should deny Drake's motion for that reason alone.

### G.     **Drake's Failure to Address The Alternative of Redactions Shows Its True Intention to Hide its Shortcomings from the Public, Not Prevent Disclosure of Any Unidentified Confidential Information.**

Drake also ignores the fact that "the court must assess whether redaction is a reasonable alternative to sealing an entire document." *Estate of Bisignano by and through Huntsman v. Exile Brewing Co.*, No. 4:22-cv-00121-RGE-SBJ, 2022 WL22694930, at *2 (S.D. Iowa May 17, 2022) (citation omitted). "Not only will redaction serve the interests of the public's right of access while maintaining confidentiality of the specific information at issue but will assist the Court in discerning what information the party seeks to protect from disclosure." *Id*.

Drake's failure to address the possibility of redaction is telling. Drake does not address it because Drake cannot identify any actual "confidences" in DMACC's filings that should be redacted. Drake may not like the reality set forth in DMACC's filings, but that is not a basis to shield those filings—in their entirety—from the public. *See, e.g., Revland*, 2013 WL 2146902, at *2 ("While the Renewed Motion may contain information that is not favorable to defendant, that information is (a) already public and, in any event, (b) not so sensitive or scandalous that compelling reasons exist to overcome the presumption of public access.").

9

## IV.    CONCLUSION

The Court should deny Drake's motion in its entirety and allow the public access to all of

DMACC's July 31, 2024, filings.

Respectfully submitted,

Date: August 1, 2024

*/s/ R. Scott Johnson*

R. Scott Johnson (#AT0004007)
FREDRIKSON & BYRON, P.A.
111 East Grand Avenue, Suite 301
Des Moines, IA  50309-1977
Telephone:  (515) 242-8900
E-mail:  RSJohnson@fredlaw.com

Laura L. Myers (Minn. #0387116)
(admitted *Pro Hac Vice*)
FREDRIKSON & BYRON, P.A.
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
Telephone:  (612) 492-7000
E-mail:  LMyers@fredlaw.com

***Attorneys for Defendants and
Counterclaim Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on August 1, 2024, I electronically filed the **DEFENDANTS'**

**RESISTANCE TO PLAINTIFF'S MOTION TO SEAL DOCKET ENTRIES 20, 21,**

**AND 23** with the Clerk of the Court using the ECF, who in turn sent notice to the following:

Joshua J. Conley, Esq.
  jconley@zarleyconley.com
John D. Gilbertson, Esq.
  jgilbertson@zarleyconley.com
ZARLEYCONLEY PLC
580 Market Street, Suite 101
West Des Moines, IA  50266

*Attorneys for Plaintiff and*
*Counterclaim Defendant*

 */s/ Erica Palmer*
Erica Palmer

#83296229