

Do you have a question about legal ethics that affects your practice? ETHICSearch can help. For quick and confidential research assistance, click here to send your questions.

# Making threats

*By Peter H. Geraghty*
*Director, ETHICSearch*

*Your client is a small business tenant who is involved in a civil dispute with his landlord regarding whether the lease entitles him to use certain space in the basement of the building for the storage of inventory items. You have demanded that the landlord give the client access to the space but the landlord will not agree unless your client agrees to pay significantly more rent.*

*During the course of the representation you discover that the landlord has failed to maintain the property in accordance with local building codes that may subject him to criminal prosecution.*

*Can you threaten to report the landlord to the appropriate authorities if he fails to agree to your settlement terms?*

**I. The history of the prohibition against threats of criminal prosecution**

DR 7-105(a) of the ABA Model Code of Professional Responsibility
prohibited threats of criminal prosecution in order to gain an advantage in a civil matter, stating:

> (A) A lawyer shall not present, participate in presenting, or threaten to present criminal charges solely to obtain an advantage in a civil matter.

Ethical Consideration 7-21 of the Model Code stated as follows:

> The civil adjudicative process is primarily designed for the settlement of disputes between parties, while the criminal process is designed for the protection of society as a whole. Threatening to use, or using, the criminal process to coerce adjustment of private civil claims or controversies is a subversion of that process; further, the person against whom the criminal process is so misused may be deterred from asserting his legal rights and thus the usefulness of the civil process in settling private disputes is impaired. As in all cases of abuse of judicial process, the improper use of criminal process tends to diminish public confidence in our legal system.

The Model Code was withdrawn in 1983 and was replaced by the ABA Model Rules of Professional Conduct. The ABA Commission that formulated the Model Rules (Kutak Commission) did not carry forward the DR 7-105 prohibition into the Model Rules. Because of the removal of the Code's explicit prohibition, the ABA Standing Committee on Ethics and Professional Responsibility issued Formal Opinion 92-363 *Use of Threats of Prosecution in Connection with a Civil Matter* (1992) in order to address how such threats should be considered under the Model Rules. The Opinion began its analysis by noting that the Kutak Commission took the position that the then proposed Model Rules provided adequate safeguards against improper

**EXHIBIT 22**

threats, citing to the legal background note to Rule 8.4 *Misconduct* as it appeared in the *Proposed Final Draft Model Rules of Professional Conduct*, May 30, 1981 which states as follows:

> ..The Code of Professional Responsibility, in DR 7-1-5, prohibits threats of criminal prosecution "solely to gain advantage in a civil matter." That provision is not continued in the Model Rules. Where such a threat constitutes an attempt to obtain property that is not honestly claimed as restitution for harm resulting from conduct relating to the accusation, it is extortionate and clearly within paragraph (a)…Other cases in which discipline has been imposed for conduct in connection with enforcement of a civil claim generally involve fraudulent practices, abuse of public office, abuse of process, or abusive conduct toward third persons.

Based on this commentary, the Committee concluded that the Kutak Commission believed that DR 7-105(a) was redundant and/or overbroad and that Rules 8.4 *Misconduct*, 4.4 *Respect for Rights of Third Persons*, 4.1 *Truthfulness in Statements to Others* and 3.1 *Meritorious Claims and Contentions* provided adequate limits on the legitimate uses of threats of criminal prosecution.

The Committee also stated that the threatened criminal action must be related to the underlying civil claim since if it were not, the threat could be seen as extortionate or could constitute the crime of compounding.; The Committee stated:

> …Model Rule 8.4(b) provides that it is professional misconduct for a lawyer to "commit a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects." If a lawyer's conduct is extortionate or compounding a crime under the criminal law of a given jurisdiction, that conduct also violates Rule 8.4(b). It is beyond the scope of the Committee's jurisdiction to define extortionate conduct, but we note that the Model Penal Code does not criminalize threats of prosecution where the "property obtained by threat of accusation, exposure, lawsuit or other invocation of official action was honestly claimed as restitution for harm done in the circumstances to which such accusation, exposure, lawsuit or other official action relates, or as compensation for property or lawful services." Model Penal Code, sec. 223.4 (emphasis added); see also sec. 223.2(3) (threats are not criminally punishable if they are based on a claim of right, or if there is an honest belief that the charges are well founded.)

Based on its analysis of the above cited Rules, the Committee came to the following conclusions:

> …[T]he Model Rules do not prohibit a lawyer from using the possibility of presenting criminal charges against the opposing party in a civil matter to gain relief for her client, provided that the criminal matter is related to the civil claim, the lawyer has a well founded belief that both the civil claim and the possible criminal charges are warranted by the law and the facts, and the lawyer does not attempt to exert or suggest improper influence over the criminal process. It follows also that the Model Rules do not prohibit a lawyer from agreeing, or having the lawyer's client agree, in return for satisfaction of the client's civil claim for relief, to refrain from pursuing criminal charges against the opposing party as part of a settlement agreement, so long as such agreement is not itself in violation of law.

On a related topic, in 1994 the ABA Ethics Committee issued Formal Opinion 94-383 *Use of Threatened Disciplinary Complaint Against Opposing Counsel*, the headnote of which states:

> A lawyer's use of the threat of filing a disciplinary complaint or report against opposing counsel, to obtain an advantage in a civil case, is constrained by the Model Rules, despite the absence of an express prohibition on the subject. Such a threat may not be used as a bargaining point when the subject misconduct raises a substantial question as

to opposing counsel's honesty, trustworthiness or fitness as a lawyer, because in these circumstances, the lawyer is ethically required to report such misconduct. Such a threat would also be improper if the professional misconduct is unrelated to the civil claim, if the disciplinary charges are not well founded in fact and in law, or if the threat has no substantial purpose or effect other than embarrassing, delaying or burdening the opposing counsel or his client, or prejudicing the administration of justice.

**II. State bar ethics opinions and rules of professional conduct**

Several state bar ethics opinions have followed ABA Formal Opinion 92-363's analysis of this issue. **See**, e.g. District of Columbia Opinion 339 (2007), Maryland State Bar Opinion 03-16, Utah Opinion 03-04 (2003), North Carolina State Bar opinion 3 (index to North Carolina opinions located here) (2005) (Lawyer may not threaten to report opposing party or a witness to immigration officials in order to gain a advantage in civil settlement negotiations; immigration matter is unrelated to the underlying civil claim), Alaska Ethics Opinion 97-2 (1997), Delaware Ethics Opinion 1995-2 (1995), North Carolina Opinion 98-19 (revised), South Dakota Opinion 94-3 (1994) and Wisconsin Opinion E-01-01 (2001).

Several state bar rules of professional conduct have carried forward the DR 7-105 prohibition into their versions of the Model Rules. Examples of these include Alabama Rule 3.10, Connecticut Rule 3.4(7) (Connecticut Rules are located here), Georgia Rule 3.4(h), Hawaii Rule 3.4(i), Idaho Rule 4.4(a)(4) (Idaho Rules are located here), Louisiana Rule 8.4(g) (Louisiana Rules are located here), New Jersey Rule 3.4(g) (New Jersey Rules are located here), South Carolina Rule 4.5, Tennessee Rule 4.4(b) (Tennessee Rules are located here), Vermont Rule 4.5 (Vermont Rules are located here) and Wyoming Rule 4.4(c) Wyoming Rules are located here).

Other state bar rules prohibit a lawyer from making threats to take criminal, administrative or disciplinary action. See, California Rule 5-100, Maine Rule 3.6(c) and Colorado Rule 4.5.

Please note that the above is not an exhaustive list of the state rules of professional conduct that explicitly prohibit such threats. As always, check the rules as adopted in your jurisdiction.

**III. Is it a threat? If so, was it made solely to gain an advantage in a civil matter?**

In those jurisdictions that have retained a version of DR 7-105(a), courts and ethics committees have struggled with the reach and scope of the prohibition. What constitutes a threat? If it is a threat, was it made solely to gain an advantage in a civil matter? New York State Bar Association Opinion 772 (2003) addressed these issues under the New York Code of Professional Responsibility, which retains a version of DR 7-105(a). As part of its analysis, the opinion summarized state bar ethics opinions and caselaw on the subject of the circumstances under which a statement that might be considered to be ambiguous could be considered to be a threat of criminal prosecution:

> …Ethics opinions and courts in other jurisdictions are split on whether such ambiguous communications constitute a threat to present criminal charges. Some ethics opinions and court decisions interpret the mere allusion to a criminal prosecution or criminal penalties or even the use of criminal law labels to describe the opposing party's conduct in a letter as a veiled threat to present criminal charges to a prosecutor. *See, e.g., In re Vollintine*, 673 P.2d 755 (Alaska 1983); Virginia Opinion 1755 (2001). *Cf.* District of Columbia Opinion 220 (1991) (finding no relevant distinction "between threats and hints of threats" to file disciplinary charges encompassed within D.C. Rule 8.4[g]). *See generally* Charles W. Wolfram, *Modern Legal Ethics* § 13.5.5, at 717 (1986). Other authorities have held that the mere mention of criminal penalties or the violation of

> criminal laws does not necessarily show the specific intent to threaten. *See, e.g., In re McCurdy*, 681 P.2d 131, 132 (Or. 1984).
>
> In our view, there is no universal standard to determine whether a letter "threaten[s] to present criminal charges." Such a determination requires the examination of both the content and context of the letter. In our view, a letter containing an accusation of criminal wrongdoing likely constitutes a threat, especially when coupled with a demand that the accused wrongdoer remedy the civil wrong. Whether the accusation is general (simply stating that the Broker's conduct violates the criminal law) or specific (stating that the Broker's conduct violates particular provisions of the criminal law), such an accusation serves the undeniable purpose of coercing the accused wrongdoer. We point out, moreover, that a lawyer who sends a letter containing such a communication is exposed to professional discipline based upon the disciplinary authorities' interpretation of the lawyer's intent in sending the letter or statement.

With regard to whether the threat is made *solely* to gain an advantage in a civil matter, the New York Opinion stated:

> DR 7-105(A) does not prohibit all threats to present criminal charges; it prohibits only those that are made "solely to obtain an advantage in a civil matter." For that reason, ethics opinions and court decisions in other jurisdictions have found no violation of DR 7-105(A) or its counterparts when the threat of presenting criminal charges is intended for a purpose other than obtaining an advantage in a civil matter.

Consider, for example, the letter sent by the lawyer in *Decato's Case*, 379 A.2d 825 (N.H. 1977):

In New Hampshire, it is a crime to obtain services by means of deception in order to avoid the due payment therefore (sic). Without any proof on your part, you have chosen to stop payment on a check after it was made for the payment of services. Unless you communicate directly with me and give me some proof that the damages sustained to your son's International Harvester were the result of the failure of Decato Motor Sales, Inc., I shall consider filing a criminal complaint with the Lebanon District Court against your son for theft of services.

379 A.2d at 826. The New Hampshire Supreme Court imposed no discipline based on that letter, holding that the purpose of the lawyer's letter was not to gain leverage in a civil action by the threat of filing criminal charges, because Decato made no demand or request for payment from the letter's recipient - he only asked for information about the recipient's legal position.

Similarly, ethics committees in several other jurisdictions have opined that a letter referring to the criminal sanctions imposed for stopping payment on a check was not sent solely for the purpose of gaining an advantage in a civil matter. **See, e.g.,** Florida Opinion 85-3; Georgia Opinion 26 (1980); Utah Opinion 71 (1979). These opinions rested on the fact that state law imposes a requirement of such notification before bringing a civil action. **But see** New Mexico Opinion 1987-5 ("threats or references to criminal sanctions in demand letters for payment of supplies or recovery of worthless checks would have been improper under former Rule 7-105[A]").

**See Also**, the following analysis of this issue in the *ABA/BNA Lawyers' Manual on Professional Conduct*:

> The conceptual reach of the prohibition imposed by DR 7-105 was never completely clear, however, and courts struggled with definitional questions.
>
> One court relied on the word "solely" in the phrase "solely to gain an advantage in a civil matter" to conclude that a lawyer's letter mentioning the possibility of filing a claim for

theft of services after receipt of a bad check was a permissible way of informing the recipient of possible outcomes. In re Decato, 379 A.2d 825 (N.H. 1977); accord, Connecticut Informal Ethics Ops. 99-50 (1999) and 98-19 (1998).

Another court declined to discipline an attorney who sent a letter to a hit-and-run driver in which he contrasted his client's amicable offer to settle with the driver's own criminal behavior. The court credited the attorney's statement, "I am not telling you this to threaten you." In re McCurdy, 681 P.2d 131 (Or. 1984).

71 ABA/BNA Law. Man. Prof. Conduct 603

For a summary of materials including an analysis of state bar rules of professional conduct concerning threats of criminal prosecution, **see** the chapter entitled "Threatening Prosecution" that appears at page 71:601 of the *ABA/BNA Lawyers' Manual on Professional Conduct*. Further information about the Lawyers' Manual (which includes a 30 day free trial) is available [here](#).

**See Also**, note, *Recent Developments In The Ethical Treatment Of Threats Of Criminal Referral In Civil Debt Collection Matters*, 21 Geo. J. Legal Ethics 935 (2008); Craver, *Negotiation Ethics: How to Be Deceptive Without Being Dishonest/How to Be Assertive Without Being Offensive*, 38 S. Tex. L. Rev. 713 (1997); Daigneault & Marshall, *Games Legal Negotiators Play: The Use of Threats*, 44 Fed. Law. 46 (September 1997); Gray, *May a Lawyer Threaten Criminal Prosecution in Order to Obtain Advantage in a Civil Matter?,* 21 J. Legal Prof. 207 (1996); Zacharias, *Reconciling Professionalism and Client Interests*, 36 Wm. & Mary L. Rev. 1303 (1995) (discussing employment of "marginal tactics" including threatening or blackmailing witnesses or adversaries into cooperating and filing false claims to gain negotiating advantage).

© 2008 American Bar Association