IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA CENTRAL DIVISION

| | |
|---|---|
| DRAKE UNIVERSITY,<br>    Plaintiff,<br><br>vs.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE<br>    Defendants. | No. 4:24-cv-00227<br><br>**RESISTANCE TO MOTION TO DISMISS DEFENDANT DES MOINES AREA COMMUNITY COLLEGE FOUNDATION (Dkt. 20)** |
| DES MOINES AREA COMMUNITY COLLEGE,<br>    Counterclaim Plaintiff,<br><br>vs.<br><br>DRAKE UNIVERSITY,<br>    Counterclaim Defendant. | |

Plaintiff Drake University ("Drake") hereby resists Defendants' Motion to Dismiss Defendant Des Moines Area Community College Foundation (the "Foundation") (Dkt. 20).

**I.    ARGUMENT**

**A.    Drake's Allegations Are Sufficient to State a Claim for Relief**

"The essential function of a complaint under the Federal Rules of Civil Procedure is to give the opposing party fair notice of the nature and basis or grounds for a claim, and a general indication of the type of litigation involved." *Hopkins v. Saunders*, 199 F.3d 968, 973 (8th Cir. 1999) (citations omitted).  A plaintiff's complaint must permit the defendant to "understand or meaningfully respond to the allegations." *Doe v. Univ. of Iowa*, Case No. 3:22-cv-1, 2022 WL 4182196 at *1 (Sep. 2, 2022, S.D. Iowa).

Drake's complaint includes the following allegations against both Des Moines Area Community College (the "College") and the Foundation, parties which Drake's First Amended Complaint at page 4, paragraph 5 collectively refers to as "DMACC":

- DMACC operates six academic campuses and seven learning centers in central Iowa for the purpose of offering community college educational services. Dkt. 17 at 32, ¶¶ 122–24.

- During the 2022–2023 academic year, DMACC had more than 72,000 students across various levels of education. *Id*. at ¶ 131.

- Since 2015, DMACC has invested $100,000,000 in new and renovated facilities. *Id*. at ¶ 132.

- In late October of 2023, DMACC announced its first rebranding initiative in 35 years (the "**Rebrand**"). *Id*. at 36, ¶ 144.

- Among other changes to its brand identity, DMACC scrapped its Former Logo in favor of a prominent block-style "D" (the "**DMACC 'D'**"). *Id*. at ¶ 145.

- DMACC also changed its color scheme, lightening its traditional primary navy blue to a royal blue, and abandoning its red/orange secondary color in favor or a light blue (the "**New DMACC Colors**"). *Id*. at ¶ 148.

- Upon information and belief, DMACC has deployed its Rebrand across its campuses and learning centers, its digital and physical recruiting and marketing materials, and merchandise. *Id*. at 40, ¶ 166.

- DMACC has used the DMACC "D," the New DMACC Colors, and other elements of its new brand on . . . online videos [and] college merchandise." *Id*. at ¶ 168.

- Upon announcement of the Rebrand, DMACC began selling merchandise heavily featuring the DMACC "D" unaccompanied by "DMACC" and almost always presented in DMACC's New Colors. *Id*. at 41, ¶ 171.

- DMACC currently has no fewer than 25 such items for sale in its college store. *Id*. at ¶ 172 (with images of merchandise).

- The DMACC "D" and the New DMACC Colors and variations thereon are **Infringing Marks** of the Drake Brand. *Id*. at 50, ¶ 215.

- DMACC is presently offering post-secondary educational services, athletics, and ancillary goods and services (the "**Infringing Goods and Services**") under the Infringing Marks. *Id*. at ¶ 216.

- Upon information and belief, DMACC offers the Infringing Goods and Services through typical trade channels for goods and services of this nature. *Id*. at ¶ 217.

- Upon information and belief, DMACC has adopted the Infringing Marks to fraudulently seek, and take, from Drake the custom, goodwill, and business Drake has established and maintained through its consistent use of the Drake Brand and its constituent elements. *Id*. at ¶ 218.

Taken as true, the foregoing is more than sufficient to state actionable claims against both Defendants relating to the unauthorized use of the Drake Brand and its constituent elements. *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (Rule 12(b)(6) motion evaluated by accepting as true all factual allegations in the light most favorable to the nonmoving party).

Drake's allegations plainly provide the Foundation with fair notice that it is being sued for trademark infringement and related claims arising from its use of the DMACC "D" and the New DMACC Colors in connection with providing, at least, services ancillary to the provision of post-

secondary educational services. The Foundation further admits it uses the DMACC "D" and the New DMACC Colors, as accused. *See* Dkt. 20-1, at 3 (lower right-hand corner of table).

The Foundation's arguments are directed at the veracity of the allegations rather than their plausibility. The Foundation argues that it is not a proper party because it does not own or exercise control over the infringing marks or provide the accused services or goods under the infringing marks. Dkt. 20, ¶ 12. Whether the Foundation does or does not use the accused marks or provide the accused goods and services is irrelevant, as Drake's allegations must be taken as true for purposes of the present Motion. If the Foundation disputes Drake's factual allegations, it can provide a "meaningful response" by simply denying them—like the College did. *See, e.g.,* Dkt. 21 at 28, ¶¶ 215–219.

The Foundation's cited precedent supports Drake's position, not its own. In *Engel v. Buchan* the Seventh Circuit affirmed the district court's denial of a motion to dismiss, noting that the allegations must be read "sensibly and as a whole." 710 F.3d 698, 710 (7th Cir. 2013). In *Grieveson v. Anderson* a prisoner asserted civil rights claims against seven different officers arising from seven different attacks without tying any particular officer to any particular injury. 538 F.3d 763, 777–78 (7th Cir. 2008).

Here, Drake has made concise allegations against both defendants relating to a collective unauthorized use of the DMACC "D" and the New DMACC Colors to provide post-secondary educational services and goods and services ancillary thereto. To suggest that Drake's allegations require the Foundation to "guess why it is being sued" is borderline preposterous. Dkt. 20-1, at 7; *cf.* Dkt. 20-1, at 3 (identifying a specific mark used by the Foundation that falls within the contours of Drake's allegations). Drake respectfully requests the Court deny the present Motion on this basis alone.

### B. The Foundation is a Required Party Under Fed. R. Civ. P. 19(a)

The Foundation is a required party under the Federal Rules. A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if in that person's absence, the court cannot accord complete relief among existing parties. Fed. R. Civ. P. 19(a)(1)(A).

#### 1. The Foundation is Subject to Service of Process, and its Presence Will Not Deprive the Court of Subject Matter Jurisdiction

The Foundation is subject to service of process, as it is registered with the Iowa Secretary of State and lists a registered agent. Ex. 1. It has already been served with process in this action. Dkt. 13. The jurisdictional basis for this action is federal question, not diversity, thus the presence of the Foundation will not deprive the Court of jurisdiction. *See* Dkt. 17 at 5, ¶ 6.

#### 2. The Court Cannot Accord Complete Relief in the Foundation's Absence

The allegations in Drake's first amended complaint are plainly directed at the unauthorized use of various articulated elements of the Drake Brand by the Foundation and the College in connection with the provision of post-secondary educational services, athletics, and ancillary goods and services. *See generally,* Dkt. 17. A cursory review of publicly available information shows that the Foundation is inextricably tied to the College, providing, at very least, services ancillary to the provision of post-secondary educational services.

##### a) The Foundation is Essential to the College's Operation and Promotes its Activities with the Rebrand

According to DMACC's Organizational Chart, the Foundation serves on the College's Board of Directors. Ex. 2, at 3.[1] According to the DMACC Phone Directory, the Foundation's

---

[1] Downloaded from DMACC's website (https://www.dmacc.edu/about/leadership.html) using the hyperlink titled "DMACC Organizational Chart."

Executive Director, Tara Connolly, works in the District Administration Building on DMACC's Ankeny Campus only three doors down from President Rob Denson.[2]  Ex. 3.

The Foundation funds student scholarships to attend the College.  Ex. 4.  The Foundation throws fundraising events to benefit the College.  Ex. 5.  The Foundation's official website is an extension of the College's web domain (www.dmacc.edu/foundation).  Ex. 6.  The Foundation's homepage contains an embedded video (the "Video"[3]) featuring information about the Foundation which prominently features the DMACC "D" in the New DMACC Colors.  *Id; see also* Dkt. 17 at 40, ¶ 168 (alleging use in online videos).

The Video opens with the caption, "Serving DMACC students for over 50 years."  Captions in the Video state "Improving the Student Experience … Across All DMACC Campuses and Centers" and "Awards $2+ Million for Scholarships Annually" over imagery in hues of blue.  Additional imagery shows athletic complexes, including DMACC's baseball field, a tennis court, and weight room.  The content of the Video stands in stark contrast to the Foundation's assertion that it does not "provide any of the educational or athletic services at issue in the Amended Complaint."  Dkt. 20-1, at 2–3.

The intertwining of the College and Foundation and the ubiquitous usage of the DMACC's rebranding is also seen through DMACC Magazine.  Ex. 7.  The magazine features a banner across the bottom of the cover identifying it as "A Publication of Des Moines Area Community College Foundation."  Ex. 8, at 1.  The banner across the top of the cover calls the magazine "Your Link to Your College."  *Id*.  The inside cover story for the Spring/Summer 2024 issue is a "Director's Message" from the Foundation's Executive Director Tara Connolly, who states "I am thrilled to

---

[2] https://internal.dmacc.edu/phone/Pages/welcome.aspx
[3] https://www.youtube.com/watch?v=-HOwR9ZJ3ko&t=3s

share updates on the Foundation's efforts to support DMACC's strategic plan." *Id.* at 2. Ms. Connolly continues, "At the heart of **our** strategic plan is a commitment to expanding access to scholarships and supporting capital projects that enhance the student experience." *Id*. (emphasis added).

Later in the issue, a testimonial from a DMACC student is featured discussing how a scholarship from the Foundation helped her attend the College. Ex. 8, at 13. Across the top of the testimonial is a banner featuring the DMACC "D" in the New DMACC Colors. *Id.*

The following page advertises a fund-raising event in support of scholarships for the DMACC Water Environmental Technology Program. *Id.*, at 14. Across the bottom are two instances of the DMACC "D" in the New DMACC Colors with a third iteration centered in a QR code used to register for the event. *Id.* The back cover of the issue includes a return address for the Foundation prominently featuring the DMACC "D" in the New DMACC Colors. *Id.*, at 16.

The deep ties between the College and the Foundation are further prevalent in the headers on the DMACC websites (www.dmacc.edu) captured in Exhibits 4–7. Each screenshot is captured with the cursor hovering over the "Giving" tab at the top of the screen, which displays the target URL on the bottom left that if clicked will bring the user to the Foundation's website. Ex. 4–7.

### b)   *The Foundation's Alumni Association is an Active Participant in the Alleged Unlawful Activities*

An "integral part" of the Foundation is the DMACC Alumni Association. Ex. 9. The Alumni Association's website prominently features the New DMACC Seal in the New DMACC Colors. *Id*. According to the Foundation, the Alumni Association "is a valuable tool in connecting alumni, students, and friends to DMACC for the purpose of increasing the overall achievement efforts of the DMACC Foundation." *Id*. Among other things, the Alumni Association offers

alumni opportunities to "Promote the College" and "Raise funds for scholarships and other projects." *Id.*

On the Alumni Association's webpage is an exhortation to "SHOP DMACC," either online or in-store at the College's Ankeny Campus Bookstore. Ex. 10. The section explains that "[t]he College receives annual financial allowances from its relationship with the Ankeny Bookstore that are in turn used to help support the academic mission of DMACC." *Id.* It would be unusual to describe the College as having a "relationship" to receive "allowances" from the Ankeny Bookstore if the College operated it. This advertisement's location and content, at a minimum, permits a reasonable inference that the Foundation, its Alumni Association, or entity other than the College operates the DMACC bookstore. The bookstore has sold and is presently selling infringing items. *See, e.g.*, Dkts. 1-82–87, 38-3.

Among the relief Drake is requesting in the present action is preliminary and permanent injunctions prohibiting all Defendants from providing, selling, marketing, advertising, or promoting educational services, athletics, **or ancillary goods and services** using marks which infringe the Drake Brand. Dkt. 17 at 57–58, ¶ 1(a). If the Court grants Drake its requested relief against the College only, the Foundation could continue using Drake's brand elements to fund scholarships to attend the College, throw fundraising events to benefit the College, publish DMACC Magazine, elicit donations through its "Giving" tab at the top of the College's website, and sell infringing merchandise at the DMACC bookstore. Such a result would not accord complete relief among the parties. The Foundation is thus a required party and cannot be dismissed. Fed. R. Civ. P. 19(a)(1)(A).

## II. CONCLUSION

For the reasons herein, Drake requests the Court deny the present motion in its entirety.

//

          Respectfully submitted,

Dated: August 14, 2024        **ZARLEYCONLEY PLC**

By:   <u>/s/John D. Gilbertson</u>
John D. Gilbertson, AT0014515
Joshua J. Conley, AT0011828
580 Market Street, Suite 101
West Des Moines, IA 50266
Telephone:  (515) 558-0200
Facsimile:   (515) 558-7790
jgilbertson@zarleyconley.com
jconley@zarleyconley.com
**ATTORNEYS FOR PLAINTIFF & COUNTERCLAIM DEFENDANT**

9