IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA CENTRAL DIVISION

| | |
|---|---|
| DRAKE UNIVERSITY,<br>    Plaintiff,<br><br>vs.<br><br>DES MOINES AREA COMMUNITY<br>COLLEGE FOUNDATION and DES<br>MOINES AREA COMMUNITY COLLEGE<br>    Defendants. | No. 4:24-cv-00227<br><br>**BRIEF IN SUPPORT OF MOTION<br>TO DISMISS COUNTERCLAIM<br>PLAINTIFF'S THIRD AND FOURTH<br>CLAIMS** |
| DES MOINES AREA COMMUNITY<br>COLLEGE,<br>    Counterclaim Plaintiff,<br><br>vs.<br><br>DRAKE UNIVERSITY,<br>    Counterclaim Defendant. | |

Joshua J. Conley
John D. Gilbertson
ZARLEYCONLEY PLC
West Des Moines, Iowa
for DRAKE UNIVERSITY

Drake University ("Drake"), by and through counsel hereby moves pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss Counterclaim Plaintiff, Des Moines Area Community College ("DMACC")'s third claim for defamation and fourth claim for unfair competition.[1]

## I.   INTRODUCTION

DMACC's counterclaims for defamation and unfair competition fail to state a claim upon which relief can be granted.  Its defamation claim lacks the requisite specificity required to sustain such a claim.  DMACCs claim for unfair competition is based on the present suit, which is not an appropriate basis for such a claim nor is it plead with specificity.  As set forth herein, these deficiencies strongly suggest that the counterclaims are frivolous and were intended to do nothing more than provide sound bites to the press.  *See, e.g.,* Exhibit 1.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. Reasonable inferences that may be drawn are drawn in favor of the non-moving party. *Id*. Legal conclusions and mere "recitation[s] of the elements of a cause of action" may be disregarded. *Twombly*, 550 U.S. at 555. As part of the evaluation, the court may draw on its judicial experience and common sense based on the complaint in full.  *Iqbal*, 556 U.S. at 679.

---

[1] A Rule 12(b) motion that challenges less than all of the claims in the pleading "extends the time to answer as to all claims in the pleading." *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 434 F.Supp.2d 598, 639–40 (N.D. Iowa 2006).

III.     ARGUMENT

A.   Defamation

"[T]he gist of a defamation action is publication of written or oral statements which tend to injure a person's reputation and good name." *Thomas v. St. Luke's Health Sys., Inc.*, 869 F.Supp. 1413, 1441–42 (N.D. Iowa 1994).  The plaintiff must demonstrate the defendant (1) published a statement that was (2) defamatory (3) of and concerning the plaintiff.  *Taggert v. Drake Univ.*, 549 N.W.2d 796, 802 (Iowa 1996).  There are two types of defamation: defamation *per quod* and defamation *per se*.  *Johnson v. Nickerson*, 542 N.W.2d 506, 510 (Iowa 1996).  Defamation *per quod* requires references to facts or circumstances beyond the actual words used to establish the defamation and requires a proof of malice, falsity, and damages.  *Foote v. Doe 1*, 679 F.Supp.3d 775, 808 (S.D. Iowa 2023) (citations omitted).  Defamation *per se* presumes these elements "based on the very nature of the words used."  *Johnson*, 542 N.W.2d at 510 (citations omitted).

Defamation claims are not favored and "must always be specifically alleged."  *Cimijotti v. Paulsen*, 219 F. Supp. 621, 622 (N.D. Iowa 1963).  "[I]n an action for defamation, it is necessary to state in the petition the words that were spoken or written, upon which the action is based."  *Nelson v. Melvin*, 19 N.W.2d 685, 688–89 (Iowa 1945).  Requiring such specificity "should deter filings by those who have only a vague feeling that they have been wronged but cannot point to any specific factual error in the article."  Susan M. Gilles, *Taking First Amendment Procedure Seriously: An Analysis of Process in Libel Litigation*, 58 OHIO ST. L.J. 1753, 1799-1800 (1998).  Federal courts favor such *in haec verba* pleadings because knowing the exact language used is necessary to respond and to evaluate the possibility of a privilege.  *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692, 698–99 (8th Cir. 1979) (citations omitted).  Moreover, "if an allegedly defamatory statement is substantially true, it provides an absolute defense to an action for defamation." *Hovey v. Iowa St. Daily Pub. Bd., Inc.*, 372 N.W.2d 253, 256 (Iowa 1985).

Similar specificity is required with the identity of the persons to whom the alleged defamatory statement was published. *Freeman v. Bechtel Const. Co.*, 87 F.3d 1029, 1031 (8th Cir. 1996). Sufficient particularity is also required for the special damages suffered if the claim is for defamation *per quod*. *Lloyd v. Drake Univ.*, 2003 WL 25493343, at \*10 (Iowa Dist. Ct., June 11, 2003). "Special damages are such as the law will not infer from the nature of the words themselves, and all of the authorities agree that a plea of special damage must refer to some specific detailed loss." *Shaw Cleaners & Dyers, Inc. v. Des Moines Dress Club,* 245 N.W. 231, 235 (Iowa 1932) ("A general allegation of loss of patronage in a gross amount and consequent loss of profits is not sufficient as an averment for special damages.").

None of the foregoing pleading standards are met in DMACC's counterclaims. First, DMACC's fails to articulate whether the defamation is *per se* or *per quod*. Dkt. 21, at 58 ¶¶ 78– 83. At best, an inference may be gleaned that the intention is to claim defamation *per quod* based on the general allegation of "malice" and "intent to disparage and harm." Dkt. 21 at 58, ¶¶ 81, 82.

DMACC's claim also lacks specificity. DMACC generally alleges "Drake has directly or indirectly misrepresented the Drake brand, the DMACC brand and/or DMACC's activities to alumni, consumers, and the press." *Id*. ¶ 79. The language fails to pinpoint with certainty Drake's involvement (i.e., direct or indirect), the subject of the alleged misrepresentation (i.e., the Drake brand, the DMACC brand and/or DMACC's activities), and what statement is being referred to (i.e., "one or more communications or publications."). It is also unclear how Drake's statements regarding the Drake Brand could somehow, in and of themselves, be defamatory.

DMACC incorporation of preceding paragraphs does not remediate the problem. DMACC refers to only two statements—one made in a meeting between the parties' personnel, and the other in emails exchanged between their presidents. *Id*. at 44–45, ¶¶ 40–41. These statements

necessarily cannot be incorporated into the basis for DMACC's defamation claim, as the claim refers only to representations made "to alumni, consumers, and the press." *Id*. at 21, ¶ 79.

The only other representation alleged by DMACC is that "Drake sent the following comparison to alumni. (*See* Ex. J):"



*Id.* at 41, ¶ 43. The image, without more, does not meet the pleading requirements as it is unclear what is defamatory. DMACC's complaint conveniently omits the image's caption, which credits the image to "Iowa Capital Dispatch using elements from U.S. District Court exhibits." Dkt. 21-10, at 3; *see also* Exhibit 2 (Iowa Capital Dispatch article). As such, there is nothing false about the image itself, which demonstrates that the claim cannot be sustained as truth is a complete defense to defamation. *Hovery*, 372 N.W.2d at 255.

DMACC also fails to plead, with specificity, its special damages. Instead, the counterclaim states only that "Drake's efforts have harmed DMACC's reputation." *Id*. at 58 ¶ 83; *see also id.* at 59, ¶ 5 (requesting damages for reputational harm).

DMACC's frivolous claim for defamation fails to state a claim for which relief can be granted and should be dismissed along with its prayer for an award for reputational damages.

**B.  Unfair Competition**

In Iowa, "[t]he doctrine of unfair competition is based on the principle of common business integrity" and speaks "to the question of a defendant's methods and representations in marketing his products." *Basic Chems., Inc. v. Benson*, 251 N.W.2d 220, 231 (Iowa 1977). The Iowa

Supreme Court explained further that unfair competition:

> … is applied in cases where one has established a business under a particular name, or by the use of certain marks or symbols, so that it has become known, in the trade, generally as designating the goods of that person. Courts of equity will enjoin one who fraudulently assumes the same name, device, or symbol for the purpose of stealing away from the other the business so established, and thereby depriving him of the profit which flows from the business. The object of the law is to protect the property rights of a person from invasion by one who fraudulently, by the use of the same devices, symbols, or name, seeks to and does take from him the custom, good will, and the business by him established and maintained.

*Motor Accessories Mfg. Co. v. Marshalltown Motor Material Mfg. Co.*, 167 Iowa 202, 149 N.W. 184, 186 (1914).

Attempts to broaden the scope of unfair competition under Iowa law have failed. *See Aventure Commc'n. Tech., LLC v. Sprint Commc'n. Co. L.P.*, 224 F.Supp.3d 706, 773–74 (S.D. Iowa 2015) (dismissing unfair competition claim that required a broader interpretation from Restatement (Third) of Unfair Competition); *see also Qwest Commc'n. Co., LLC v. Superior Tel. Coop.*, No. 4:07-cv-78, 2016 WL 7494482, at *3–4 (S.D. Iowa Sept. 6, 2016) (noting the erroneous reliance on the Restatement). Even an expansive interpretation of unfair competition cannot encompass claims of infringement as it would put the "cart before the horse." *Marley Co. v. FE Petro, Inc.*, 38 F.Supp.2d 1070, 1081–82 (S.D. Iowa 1998). "[T]here is nothing 'unfair' about asserting infringement, even if the [trademark] is later found to be invalid." *Id.*

DMACC's claim for unfair competition alleges in principal part, "Drake has attempted to restrain DMACC form any use of the letter 'D' as a brand." Dkt. 21, at 58–59, ¶¶ 84–89. In support of this "restraint," DMACC cites "ECF 17," i.e., Drake's Amended Complaint. Infringement allegations cannot be a basis for unfair competition under Iowa law. Moreover, an Iowa unfair competition claim "contain[s] a fraud element. . . which must be pled with particularity under [Fed. R. Civ. P.] 9(b)." *Aventure*, 225 F.Supp.3d, at 774 n. 35. DMACC fails to do so.

## IV.     CONCLUSION

For the reasons herein, Drake requests that the Court dismiss DMACC's Third Claim for defamation (Dkt. 21 ¶¶ 78–83) and Fourth Claim for unfair competition (Dkt. 21 ¶¶ 84–89) with prejudice and without the opportunity for DMACC to amend.


                                                    Respectfully submitted,

Dated: August 20, 2024                   **ZARLEYCONLEY PLC**

                            By:     /s/Joshua J. Conley
                                    /s/John D. Gilbertson
                                    Joshua J. Conley, AT0011828
                                    John D. Gilbertson, AT0014515
                                    580 Market Street, Suite 101
                                    West Des Moines, IA 50266
                                    Telephone:  (515) 558-0200
                                    Facsimile:   (515) 558-7790
                                    jconley@zarleyconley.com
                                    jgilbertson@zarleyconley.com
                                    **ATTORNEYS FOR PLAINTIFF &
                                    COUNTERCLAIM DEFENDANT**