## IN THE UNITED STATES DISTRICT COURT FOR
## THE SOUTHERN DISTRICT OF IOWA
## CENTRAL DIVISION

DRAKE UNIVERSITY,

      Plaintiff,

vs.

DES MOINES AREA COMMUNITY
COLLEGE FOUNDATION and DES
MOINES AREA COMMUNITY
COLLEGE,

      Defendants.

Case No. 4:24-CV-00227-SMR-SBJ

DES MOINES AREA COMMUNITY
COLLEGE,

      Counterclaim Plaintiff,

vs.

DRAKE UNIVERSITY,

      Counterclaim Defendant.

### DEFENDANTS'/COUNTERCLAIM PLAINTIFF'S RESISTANCE TO PLAINTIFF'S MOTION TO DISQUALIFY COUNSEL

## <u>TABLE OF CONTENTS</u>

I.     INTRODUCTION ................................................................................................. 1

II.    DISQUALIFICATION IS INAPPROPRIATE ...................................................... 2

    A.    Neither Mr. Johnson Nor Ms. Yin Sowatzke Have Confidential
        Knowledge Regarding Drake Or Its Asserted Trademarks. .................................. 3

    B.    Neither Mr. Johnson nor Ms. Yin Sowatzke Have a Concurrent Conflict of
        Interest under Rule 32:1.7, As Neither Is Working or Has Worked for
        Drake. ................................................................................................................. 8

    C.    Neither Mr. Johnson nor Ms. Yin Sowatzke Are Conflicted Based on
        Former Representation Under Rule 32:1.9(a). .................................................... 14

    D.    As the Court Held in Deere, Working at MVS Is Not Automatic Grounds
        for Disqualification under Rule 32:1.9(b). ........................................................ 19

III.    CONCLUSION ................................................................................................... 20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Autoscribe Corp. v. Wells Fargo Bank, N.A.*,
    No. 4:10-cv-00202-JEG-TJS, 2010 WL 11564962 (S.D. Iowa Nov. 3, 2010) .......................2

*Bottoms v. Stapleton*,
    706 N.W.2d 411 (Iowa 2005) ................................................................................2

*Deere & Co. v. Kinze Manufacturing, Inc.*,
    No. 4:20-cv-00389-RGE-SHL, 2021 WL 5334212 (S.D. Iowa Oct. 1, 2021) ............... *passim*

*Engineered Prods. Co. v. Donaldson Co.*,
    290 F. Supp. 2d 974 (N.D. Iowa 2003) .................................................................2

*Harker v. Comm'r of Internal Revenue*,
    82 F.3d 806 (8th Cir. 1996) ................................................................................2

*Hoffmann v. Internal Med., P.C. of Ottumwa*,
    533 N.W.2d 834 (Iowa Ct. App. 1995)...............................................................2, 15

*Iowa Sup. Ct. Atty. Disciplinary Bd. v. Stoller*,
    879 N.W.2d 199 (Iowa 2016) ................................................................................8

*Iowa Supreme Ct. Att'y Disciplinary Bd. v. Blessum*,
    861 N.W.2d 575 (Iowa 2015) ................................................................................9

*Macheca Transp. Co. v. Philadelphia Indem. Co.*,
    463 F.3d 827 (8th Cir. 2006) ................................................................................2

*Nachazel v. Mira Co., Mfg.*,
    466 N.W.2d 248 (Iowa 1991) ..............................................................................16

*NuStar Farms, LLC v. Zylstra*,
    880 N.W.2d 478 (Iowa 2016) ....................................................................9, 13, 15

**Other Authorities**

37 C.F.R. § 2.17(g)(1). Second ..............................................................................11

37 C.F.R. § 2.17(b)(2)........................................................................................10

Iowa R. Prof'l Conduct 32:1.6(b)(7)..........................................................................7

Iowa R. Prof'l Conduct 32:1.7(a) ....................................................................8, 9, 14

Iowa R. Prof'l Conduct 32:1.9(a) .................................................................10, 11, 14, 15, 19, 20

Iowa R. Prof'l Conduct 32:1.9(b) ...........................................................................................10, 19

Iowa R. Prof'l Conduct 32:1.9(c) ...........................................................................................10, 19

## I.      INTRODUCTION

Mr. Johnson, Ms. Yin Sowatzke, and Fredrikson & Byron should not be disqualified. Neither Mr. Johnson nor Ms. Yin Sowatzke ever worked on any Drake matter during their years at MVS. Drake is in possession of the single best piece of evidence to support its motion to disqualify: Scott Johnson's and Tina Yin Sowatzke's[1] billing records from when they worked at McKee, Voorhees & Sease, PLC ("MVS"). Yet Drake did not submit this evidence in support of its motion to disqualify Mr. Johnson, Ms. Yin Sowatzke, or Fredrikson & Byron ("F&B"). DMAAC sought billing reports from MVS to confirm their strong belief that Mr. Johnson and Ms. Yin Sowatzke never represented Drake. MVS declined to provide this information, citing their duty of loyalty to Drake. (Johnson Decl., Ex. E). Counsel for DMAAC next sought permission to obtain the billing records directly from Drake—Drake's counsel refused to even respond. Instead, Drake filed its motion to disqualify with *no evidence* either accused attorney ever actually worked on any Drake matter. Drake's counsel also failed to cite in-district caselaw contrary to Drake's position – caselaw Mr. Johnson sent to Drake before Drake filed its motion. (*Id.*, Ex. F). Drake even goes so far as to argue that Mr. Johnson *continues* to represent Drake with his former firm at the Trademark Office. These arguments are meritless.

There is no concurrent conflict of interest—Mr. Johnson does not represent Drake. There is no conflict based on prior representation—neither Mr. Johnson nor Ms. Yin Sowatzke ever represented Drake or had actual knowledge of any Drake matters. To Mr. Johnson's and Ms. Yin Sowatzke's knowledge, neither has done *any* work for Drake. Perhaps recognizing the dearth of evidence supporting any direct conflict, Drake has tried to imply one. But it is not the law that

---

[1] This is not an admission that Ms. Yin Sowatzke is relevant to the analysis. Ms. Yin Sowatzke has not worked for Fredrikson & Byron, P.A. since June of 2024, and she did not bill any time to any DMAAC or Drake matters while at Fredrikson & Byron, including this matter.

1

lawyers are always conflicted out of cases opposing their former firm's clients. Rather, the law evaluates whether there was any actual knowledge of confidential information—and reviews the *materiality* of that information. Drake has failed to identify any confidential information at issue or conduct an analysis of materiality. The Court should reject Drake's motion to disqualify, which is in direct conflict with both recent precedent of this Court and the Rules of Professional Conduct.

## II.    DISQUALIFICATION IS INAPPROPRIATE

DMACC's opposition is largely supported by this basic, underlying premise: one should have the right to choose their own attorney. "A party's right to select its own counsel is an important public right and a vital freedom that should be preserved; the extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." *Macheca Transp. Co. v. Philadelphia Indem. Co*., 463 F.3d 827, 833 (8th Cir. 2006) (cleaned up). "Because of the potential for abuse by opposing counsel, disqualification motions should be subjected to particularly strict judicial scrutiny." *Harker v. Comm'r of Internal Revenue*, 82 F.3d 806, 808 (8th Cir. 1996) (internal quotation marks and citations omitted); *accord Macheca Transp. Co. v. Phila. Indem. Co*., 463 F.3d 827, 833 (8th Cir. 2006).

A court must be "vigilant to thwart any misuse of a motion to disqualify for strategic reasons." *Bottoms v. Stapleton*, 706 N.W.2d 411, 415 (Iowa 2005); *Hoffmann v. Internal Med., P.C. of Ottumwa*, 533 N.W.2d 834, 836 (Iowa Ct. App. 1995). "[T]he mere assertion that there is a conflict is insufficient to support a claim for disqualification." *Autoscribe Corp. v. Wells Fargo Bank, N.A*., No. 4:10-cv-00202-JEG-TJS, 2010 WL 11564962, at *3 (S.D. Iowa Nov. 3, 2010).

"The party moving to disqualify 'bears the burden of proving the facts necessary to establish the disqualification is proper.'" *Deere & Co. v. Kinze Manufacturing, Inc.*, No. 4:20-cv-00389-RGE-SHL, 2021 WL 5334212, at *5 (S.D. Iowa Oct. 1, 2021) (hereinafter "*Deere*") (citing *NuStar Farms, LLC v. Zylstra*, 880 N.W.2d 478, 482 (Iowa 2016). *See also Engineered Prods. Co.*

2

*v. Donaldson Co.*, 290 F. Supp. 2d 974, 980 (N.D. Iowa 2003) ("[I]t is the burden of the party arguing for disqualification to demonstrate clearly that continuing representation would be impermissible." (internal quotation marks and citation omitted)). Here, Drake has failed to meet its burden to prove facts necessitating disqualification.

### A.   Neither Mr. Johnson Nor Ms. Yin Sowatzke Have Confidential Knowledge Regarding Drake Or Its Asserted Trademarks.

#### 1.   Neither Mr. Johnson nor Ms. Yin Sowatzke Ever Worked on Drake Matters.

***Mr. Johnson:*** Mr. Johnson worked for MVS for over twenty years. (Johnson Decl., ¶ 2). Mr. Johnson's primary practice was intellectual property litigation, though he occasionally did licensing work, and more rarely, patent prosecution or trademark prosecution. (*Id.* ¶¶3-5). Over the years, the proportion of his work that was transactional, as opposed to litigation-focused, decreased, as he specialized more and more in litigation. (*Id.*). As Mr. Johnson became more senior at MVS, he was elected to the Management Committee, where he primarily addressed human resources and information technology issues. (*Id.*, ¶ 8).

Mr. Johnson left MVS on January 1, 2020. (*Id.* ¶¶ 2, 43). At that point and taking into consideration the applicable guidance from the Iowa Office of Professional Responsibility, Mr. Johnson worked to identify an active client list, a conflict of interest list, and a closed file list. (*Id.* at ¶ 45). MVS and Mr. Johnson prepared and sent a joint letter to those clients on the active client list. As Mr. Johnson understands, clients that were not his, and that he did not work for, were not contacted, and these clients did not need to be contacted under the rules. (*Id.* at ¶ 46). This is because Mr. Johnson did not work for every MVS firm client, and not every firm client was considered his client. (*Id.*). Thus, just those firm clients that needed to be notified under the rules were actually contacted. (*Id.*). Drake did not appear on any of Mr. Johnson's lists. (*Id.* at ¶ 47).

Mr. Johnson has no recollection of ever conducting any work for Drake in his twenty-odd years with MVS. (*Id.* at ¶ 13). Nor, for that matter, does Mr. Johnson have any knowledge of Drake that is non-public. (*Id.* at ¶¶ 24-25). Mr. Johnson has no recollection of ever reviewing Drake's client file while at MVS. (*Id.* at ¶ 14). Prior to this dispute, Mr. Johnson was unaware his name was ever listed on any Drake trademark prosecution as an "other appointed attorney." (*Id.* at ¶ 12). Mr. Johnson has never signed anything to indicate he was a representative of Drake at the Trademark Office. (*Id.* ¶ 15). He has never spoken to anyone at Drake in his capacity as a legal representative. (*Id.* at ¶ 17). For all these reasons (and more), when it came time to notify active clients of Mr. Johnson's move, Drake was not contacted—Drake simply was not a client of Mr. Johnson's.  Mr. Johnson has not had access to any MVS files since January of 2020. (*Id.* at ¶ 20).

Mr. Johnson has worked for F&B ever since. (*Id.* at ¶ 43). While at F&B, he has never billed to any Drake matter (including because the one Drake matter F&B had in that timeframe was an employment matter, and Mr. Johnson is—as Drake has so thoroughly pointed out—an intellectual property specialist). (*Id.* at ¶¶ 48-52).

 To the best of Mr. Johnson's knowledge, he has never learned or possessed any confidential or privileged information from any representation of Drake because, to the best of his knowledge, he never represented Drake nor was he privy to any such information. (*Id.* at ¶ 23).

***Ms. Yin Sowatzke:*** Ms. Yin Sowatzke worked at MVS until September of 2021.  While at MVS, Ms. Yin Sowatzke primarily prosecuted patents. (Yin Sowatzke Decl. ¶5). She left her employment at MVS in September of 2021, when she began working at F&B. (*Id.* at ¶ 3-4).

While employed at F&B, Ms. Yin Sowatzke again focused on patent law. (*Id.* at ¶ 5). She worked on certain trademark matters while employed at both F&B and at MVS, but she does not recall ever working on Drake or DMACC trademark matters at either firm. (*Id.* at ¶ 6–8). Ms. Yin

4

Sowatzke has no recollection of ever learning or possessing confidential or privileged information about either Drake or DMACC because, to the best of her knowledge, she has never personally represented either entity or been privy to such information. (*Id.* at ¶ 9). When Ms. Yin Sowatzke left MVS, she did not consider Drake her client, and Drake likely was not contacted. Currently, Ms. Yin Sowatzke has no recollection of being aware that Drake was a trademark client of MVS while she was employed at either MVS or F&B. (*Id.* at ¶ 12). While Ms. Yin Sowatzke now understands that her name appears on some Drake trademark filings, she did not, to the best of her knowledge, ever work on those trademark filings. (*Id.* at ¶ 10). It is Ms. Yin Sowatzke's understanding that it is MVS's standard practice to include every attorney's name on their trademark filings. (*Id.* at ¶ 11). In June of 2023, Ms. Yin Sowatzke moved to the F&B Minneapolis office. (*Id.*) She then left F&B in June of 2024 to work in house. (*Id.* at ¶ 2).

    2.   The Asserted Trademarks List Mr. Johnson and Ms. Yin Sowatzke (Among **Many** Others) Only as "Other Appointed Attorneys"

There are three trademarks at issue in this suit, referred to as the "Marching Spike," the "Academic D," and the "Athletic D." Each filing for these three trademarks identifies Christine Lebron-Dykeman—trademark prosecution attorney at MVS—as the attorney for the matter in the "attorney section" of the filing submitted to the United States Patent and Trademark Office. *See* ECF 41-11. Ms. Lebron-Dykeman is still employed at MVS and has an impressive career prosecuting and enforcing trademarks. (Johnson Decl. at ¶ 4). The trademark filings also list *every* MVS attorney as an "other appointed attorney." At MVS, both Mr. Johnson and Ms. Yin Sowatzke were included in this long list of "other appointed attorneys." It is now their understanding that it was MVS's practice to list every MVS attorney in this "other appointed attorneys" section, regardless of their connection to the trademark matter. Neither Mr. Johnson nor Ms. Yin Sowatzke

ever signed any documents on behalf of Drake for any of the three registered trademarks at issue. (Johnson Decl., ¶¶ 15, 33, 37, 41; Yin Sowatzke Decl., ¶ 10).

The "Marching Spike" trademark—U.S. Registration No. 1,567,283—registered in 1989. Mr. Johnson and Ms. Yin Sowatzke are listed as "other appointed attorneys" on a 2019 Combined Declaration of Use and/or Excusable Nonuse/Application for Renewal of Registration of a Mark. ECF 41-12 at 2. Neither Mr. Johnson nor Ms. Yin Sowatzke appear anywhere else in the Marching Spike trademark prosecution.

The "Academic D" trademark—U.S. Registration No. 3,498,202—registered in 2008. Mr. Johnson is listed as an "other appointed attorney" on a 2007 Trademark/Service Mark Application. ECF 41-12 at 11. Mr. Johnson is also listed as an "other appointed attorney" on a 2014 Combined Declaration of Use and Incontestability. ECF 41-13 at 1. Mr. Johnson is further listed as an "other appointed attorney" on a 2018 Combined Declaration of Use and/or Excusable Nonuse/Application for Renewal of Registration of a Mark. ECF 41-14 at 2. Neither Mr. Johnson nor Ms. Yin Sowatzke appear anywhere else in the Academic D trademark prosecution.

The "Athletic D" trademark—U.S. Registration No. 4,625,043—registered in 2014. Mr. Johnson is listed as an "other appointed attorney" on a 2014 Trademark/Service Mark Application, Principal Register. ECF 41-12 at 23. Ms. Yin Sowatzke is listed as an "other appointed attorney" on a 2020 Combined Declaration of Use and Incontestability under Sections 8 & 15. ECF 41-12 at 28. Mr. Johnson had left MVS by this date; thus, MVS did not list him on this filing with all the other MVS attorneys. Neither Mr. Johnson nor Ms. Yin Sowatzke appear anywhere else throughout the Athletic D trademark prosecution.

      3.   <u>Mr. Johnson and Fredrikson & Byron Only Have Publicly Available Information and Knowledge of Drake's Trademark Filings with the USPTO</u>

Mr. Johnson has no pre-litigation confidential knowledge regarding Drake. (Johnson Decl., ¶¶ 9-24). Ms. Yin Sowatzke has no confidential information related to Drake at all and is not employed at F&B anymore. (Yin Sowatzke Decl., ¶¶ 2, 6-12). And F&B's confidential information related to Drake is limited to information regarding its representation of Drake in an unrelated employment matter, or information that Drake disclosed in this litigation. (Donels Decl., ¶ 2).

     4.   <u>Drake Repeatedly Blocked Mr. Johnson's Efforts to Obtain His Hours on Drake's Trademark Matters from MVS Pursuant to Iowa R. Prof. Proc. 32:1.6(b)(7)</u>

When Drake accused Mr. Johnson of a conflict of interest, Mr. Johnson asked MVS to run a billing report confirming that he never billed hours to any Drake matter. (Johnson Decl., Ex. F). MVS refused to produce the billing report. (*Id.*) Mr. Johnson next asked counsel for Drake to allow MVS to produce his billable hours for any of Drake's trademark matters. (*Id.*, Ex. G). Counsel for Drake never responded to this request. (*Id.*, ¶ 56). On August 15, 2024, Mr. Johnson reached out to MVS again, asking MVS to produce the reports pursuant to Rule 32:1.6(b)(7). (*Id.*, Ex. H). Under this rule,

> A lawyer may reveal information relating to the representation of a client to the extent the lawyer reasonably believes necessary: […]
>
> (7) to detect and resolve conflicts of interest arising from the lawyer's change of employment or from changes in the composition or ownership of a firm, but only if the revealed information would not compromise the attorney-client privilege or otherwise prejudice the client.

Iowa R. Prof'l Conduct 32:1.6(b)(7).

MVS responded to the request, stating that "MVS cannot take an action that advantages or disadvantages either party in this dispute given its ethical duties to both Drake and DMACC. As such, MVS cannot provide the requested information to you absent a Court order." (Johnson Decl., Ex. H). DMACC's position is that MVS should provide these hours pursuant to Rule 32:1.6(b)(7). Even so, DMACC understands the tenuous position that MVS is in, and is prepared seek a Court

order should the Court deem this information necessary, as the billing report is the one piece of information that will definitively confirm that neither Mr. Johnson nor Ms. Yin Sowatzke ever personally worked on any Drake trademark matters while employed at MVS.

The reports DMACC has requested would not be subject to attorney-client privilege—they would simply be reports detailing the number of hours Mr. Johnson and Ms. Yin Sowatzke spent working for Drake. We anticipate this number to be zero. These reports are unbiased, black and white data. That Drake is obstinately refusing to allow Mr. Johnson to view his and Ms. Yin Sowatzke's billable hour reports suggests to DMACC that the reports will say exactly what Mr. Johnson and Ms. Sowatzke believe they say: that neither Mr. Johnson nor Ms. Yin Sowatzke ever billed any time to any Drake trademark matter while they were employed at MVS.

**B.      Neither Mr. Johnson nor Ms. Yin Sowatzke Have a Concurrent Conflict of Interest under Rule 32:1.7, As Neither Is Working or Has Worked for Drake.**

DMACC has established that neither Mr. Johnson nor Ms. Yin Sowatzke ever represented Drake. However, Drake alleges that DMACC's attorneys are violating Rule 32:1.7 because Mr. Johnson and/or Ms. Yin Sowatzke simultaneously represented both Drake and DMACC. This argument is meritless. Neither Mr. Johnson nor Ms. Yin Sowatzke ever represented Drake, let alone simultaneously represented Drake and DMACC.

Rule 32:1.7 prohibits a lawyer from "represent[ing] a client if the representation involves a concurrent conflict of interest." Iowa R. Prof'l Conduct 32:1.7(a). "A concurrent conflict of interest exists where: (1) the representation of one client will be directly adverse to another client; or (2) there is a significant risk that the representation of one or more clients will be materially limited by the lawyer's responsibilities to another client, a former client, or a third person or by a personal interest of the lawyer." Iowa R. Prof'l Conduct 32:1.7(a)(1–2); *see Iowa Sup. Ct. Atty. Disciplinary Bd. v. Stoller*, 879 N.W.2d 199, 207 (Iowa 2016).

8

In evaluating whether a violation of Rule 32:1.7 has occurred, the court considers two questions: 1) whether Mr. Johnson and/or Ms. Yin Sowatzke represented the plaintiff Drake at a time when they also represented the defendant DMACC; and 2) whether the attorneys' representation of the defendant DMACC involves a concurrent conflict of interest that violated the Rules. *NuStar Farms, LLC*, 880 N.W.2d. at 482–84.

1. Neither Mr. Johnson nor Ms. Sowatzke Represented Drake.

As an initial matter the Court must first determine whether Mr. Johnson and/or Ms. Yin Sowatzke previously represented Drake. They did not.

The attorney-client relationship is governed by general contract principles. *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Blessum*, 861 N.W.2d 575, 588 (Iowa 2015). "There are three elements that must be met to find that an attorney-client relationship has been established:

(1) a person sought advice or assistance from an attorney,

(2) the advice or assistance sought pertained to matters within the attorney's professional competence, and

(3) the attorney expressly or impliedly agreed to give or actually gave the desired advice or assistance."

*NuStar Farms, LLC v. Zylstra*, 880 N.W.2d 478, 483 (Iowa 2016).

First, Drake is notably lacking (including from Mr. Martin's declaration) any allegation that Drake sought advice or assistance from either Mr. Johnson or Ms. Yin Sowatzke personally when they were attorneys at MVS. Neither Mr. Johnson nor Ms. Yin Sowatzke recall any contact with Drake for legal purposes during their tenure at MVS. (Johnson Decl. at ¶¶ 9-25; Yin Sowatzke Decl. at ¶¶ 10-11). Neither Mr. Johnson nor Ms. Yin Sowatzke agreed to give or gave advice to Drake with respect to its trademark matters—or *any* matter. (Johnson Decl. at ¶ 10; Yin Sowatzke Decl. at ¶ 7). Drake argues that being listed as "other appointed attorney" by Ms. Lebron-Dykeman satisfies this element. But that ignores that Mr. Johnson and Ms. Yin Sowatzke never signed

9

anything on behalf of Drake, and never represented to the Trademark Office that they were authorized to represent Drake. *See* 37 C.F.R. § 2.17(b)(2) (noting significance of signature). Someone else listed Mr. Johnson and Ms. Sowatzke, each as an "other appointed attorney"—and Mr. Johnson and Ms. Yin Sowatzke did not know about it.

While this alone would seem dispositive on the issue, Mr. Johnson sought further reassurances that there was no conflict: he sought his billing records. Drake blocked all efforts to obtain Mr. Johnson's and Ms. Yin Sowatzke's billable hours report from MVS for any of Drake's trademark matters. (*See* Johnson Decl., ¶ 57). This evidence would put to rest any argument that either Mr. Johnson or Ms. Yin Sowatzke ever personally represented Drake on any of its trademark matters. Drake's refusal to allow DMACC's counsel access to this data implies that the Court should conclude these reports would support Mr. Johnson and Ms. Yin Sowatzke's assertions that they never personally worked on any trademark matter for Drake. Thus, neither Mr. Johnson nor Ms. Yin Sowatzke ever personally represented Drake while at MVS.

Under limited circumstances, representation may be imputed to a lawyer where the lawyer's previous firm's representation of a client causes a conflict of interest with the lawyer's undertaking of a new client.[2] *See* Iowa R. Prof'l Conduct 32:1.9(b). The comments further explain Rule 32:1.9(b) "operates to disqualify the lawyer **only** when the lawyer involved has **actual knowledge** of information protected by rules 32:1.6 and 32:1.9(c)." Iowa R. Prof'l Conduct 32:1.9 cmt 5 (emphasis added). For there to be imputed representation, the individual lawyer must have *actual knowledge* of protected information material to the matter in the present litigation. *See* Iowa R. Prof'l Conduct 32:1.9(b); Iowa R. Prof'l Conduct 32:1.9 cmt 5. As discussed in Section II.B.1, neither Mr. Johnson nor Ms. Yin Sowatzke acquired actual knowledge of confidential

---

[2] *See infra* Part II.D for a detailed argument regarding Rule 32.1.9(b).

information about Drake that would materially assist DMACC in the present dispute while they were employed at MVS. *See Deere*, 2021 WL 5334212, at *9. Other MVS attorneys' relevant knowledge on matters related to Drake's trademarks cannot be imputed to Mr. Johnson or Ms. Yin Sowatzke to disqualify them. *See id. See also* Iowa R. Prof'l Conduct 32:1.9 cmt. 5. Mr. Johnson and/or Ms. Yin Sowatzke must *personally* have actual knowledge. *Id.*

Neither Mr. Johnson nor Ms. Yin Sowatzke ever worked on any Drake matters while at MVS. The alleged availability of confidential and privileged information to Mr. Johnson or Ms. Yin Sowatzke while they were employed at MVS is insufficient to show either attorney possessed actual relevant knowledge about Drake. *See Deere*, 2021 WL 5334212, at *9. Drake's refusal to provide the exculpatory billing records that are in its custody, possession, and control is telling. A billing report would be issue-dispositive. Drake has failed to establish either Mr. Johnson or Ms. Yin Sowatzke had actual knowledge which would materially assist DMACC in the present dispute and is knowingly holding hostage exculpating, relevant evidence.

2.  <u>The Alleged Representation, if Credited, Ended Years Before the Start of This Matter.</u>

As discussed above, neither attorney has ever represented Drake. However, even assuming MVS's practice of listing every attorney in its firm as appointed counsel on trademark filings— even if they have not ever worked with that client or on that matter—were sufficient to establish an attorney representation (it is not), that representation would have ended a long time ago. Trademark representation is not forever. First, if a filing before the Trademark Office is a pending trademark application, the "Office considers recognition as to a pending application to end when the mark registers, when ownership changes, or when the application is abandoned." 37 C.F.R. 2.17(g)(1). Second, if a practitioner is recognized after the registration of a mark, the recognition ends "when the mark is cancelled or expired, or when ownership changes." *Id.* 2.17(g)(2). Third, "[i]f a practitioner was recognized as the representative in connection with an affidavit under

section 8, 12(c), 15, or 71 of the Act, [or] renewal application under section 9 of the Act, […]

recognition is deemed to end upon acceptance or final rejection of the filing." *Id.* Under the rules,

any alleged representation ended far before the start of this dispute.

Drake argues concurrent representation occurred on the Marching Spike, Academic D, and

Athletic D marks. *See* ECF 41-12 at 2, 11, 23, 28; 41-14 at 2 (identifying the renewal application

for the "Marching Spike" trademark, the application to register the "Academic D" trademark, the

combined declaration of use of the "Academic D" trademark, the renewal application for the

"Academic D" trademark, the application to register the "Athletic D" trademark, and the combined

declaration of use of the "Athletic D" trademark.) This fails because the alleged representation by

Mr. Johnson or Ms. Sowatzke regarding the marks would have ended in December 2019 as to Mr.

Johnson, and in February 2021 as to Ms. Yin Sowatzke[3] —well before Mr. Johnson and F&B

began representing DMACC in this matter in early 2024. ECF 41 at 12.

---

[3] **Marching Spike mark**: Representation would have concluded upon the acceptance of the last document their names appeared upon, in December 2019. § 2.17(g)(2) (noting representation ends upon acceptance of application); ECF 41-12 at 2 (November 2019 application for renewal); Johson Decl., Ex. B (acceptance of application for renewal on December 21, 2019).

**Athletic D mark**: Mr. Johnson's alleged representation would have concluded in October 2014. § 2.17(g)(1) (recognition as attorney concludes upon registration of mark); ECF 41-12 at 23 (Johnson listed as other appointed attorney on trademark application); Johnson Decl., Ex. D (registration of Athletic D mark on October 21, 2014). Ms. Yin Sowatzke's alleged representation would have concluded in early 2021. *See* § 2.17(g)(2) (recognition of the representation ends upon the Office's acceptance of the application); ECF 41-12 at 2 (Ms. Yin Sowatzke listed on declaration of use and incontestability under Sections 8 & 15 of the Lanham Act); Johnson Decl., Ex. D (acceptance of declaration of use and incontestability on February 3, 2021).

**Academic D mark**: Mr. Johnson's alleged representation as to the Academic D mark would have ended is September 2018. ECF 41-14 at 2 (Johnson noted as other practitioner on 2018 renewal application); Johnson Decl., Ex. C (September 7, 2018 acceptance of renewal application).

Even crediting Drake's allegation that MVS's practice of listing all attorneys in its office as "other appointed attorney" on trademark filings constitutes representation, all possible recognition of representation by the Trademark Office between Mr. Johnson and/or Ms. Yin Sowatzke and Drake ended prior to the beginning of Mr. Johnson's attorney-client relationship with DMACC in March of 2024—and even before DMACC began the accused conduct. *See* ECF 17, ¶142. Drake cannot establish that either attorney represented Drake and DMACC simultaneously, including because the evidence Drake itself relies upon shows that the alleged representation concluded years before this dispute began.

3. <u>There Has Been No Concurrent Conflict of Interest</u>.

Because Drake cannot establish simultaneous, concurrent representation, whether the alleged concurrent representation violates the Rules need not be evaluated. *NuStar Farms*, 880 N.W.2d. at 479, 482–84 (noting second element of test). However, Drake also cannot show that either Mr. Johnson's or Ms. Yin Sowatzke's representation involves a concurrent conflict of interest that violates the Rules of Professional Conduct. The rule prohibiting concurrent representation on directly adverse matters exists because a lawyer cannot simultaneously uphold the duty of loyalty to both clients. *See* Iowa R. Prof'l Conduct 32:1.7 cmt. 6 (noting the duty of loyalty prohibits a lawyer from "act[ing] as an advocate in one matter against a person the lawyer represents in some other matter, even when the matters are wholly unrelated"). This rule is inapplicable because neither Mr. Johnson nor Ms. Yin Sowatzke owe a duty of loyalty to Drake, who never was their client.

Despite this, Drake alleges, without support, that Mr. Johnson "was aware he was an appointed representative on one or more trademark applications or registrations owned by Drake before the present dispute arose." ECF 41, at 9. Drake has been explicitly told the opposite by Mr.

Johnson. (Johnson Decl., Ex. F). There is no evidence Mr. Johnson nor Ms. Yin Sowatzke ever worked on Drake matters. Mr. Johnson has attempted to confirm that there is no conflict by asking Drake to allow MVS to produce his (nonexistent) billable hours spent on Drake matters. Drake has blocked DMACC's efforts to obtain such documentation. Mr. Johnson is confident these reports would support that neither he nor Ms. Yin Sowatzke billed time to these matters.

The facts here stand in stark contrast to those in *Deere.* 2021 WL 5334212, at \*14 ("[T]he Court finds the record demonstrates Nyemaster knew adverse action would take place and intended to pursue such a future, adverse action against Ag Leader on behalf of Deere. …Harty and Nyemaster violated the duty of loyalty to Ag Leader."). Unlike in *Deere*, Drake cannot produce any evidence Mr. Johnson or Ms. Yin Sowatzke owe a duty of loyalty to Drake.

Neither Mr. Johnson nor Ms. Yin Sowatzke ever represented Drake. However, even if the Cout determines the filings before the Trademark Office establish (unknowing) representation, no concurrent representation of Drake and DMACC exists because (1) any recognition by the Trademark Office of Mr. Johnson's or Ms. Yin Sowatzke's alleged representation of Drake ended well before this litigation began, and (2) neither Mr. Johnson nor Ms. Yin Sowatzke owed a duty of loyalty to Drake when this matter arose. Therefore, neither Mr. Johnson nor Ms. Yin Sowatzke violated Iowa Rule of Professional Conduct 32.1.7 for concurrent conflict of interest.

### C.     Neither Mr. Johnson nor Ms. Yin Sowatzke Are Conflicted Based on Former Representation Under Rule 32:1.9(a).

As discussed in Section II.B.1, neither Mr. Johnson nor Ms. Yin Sowatzke ever represented Drake, so Drake's disqualification motion as to Rule 32:1.9(a) fails. *See* Rule 32:1.9(a) ("A lawyer who has **formerly represented a client** in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client.") (emphasis added).

Drake's disqualification motion also fails because Drake has not identified any specific facts that might have been disclosed to Mr. Johnson or Ms. Yin Sowatzke related to the alleged prior "representation" that would be material here. The purpose of Rule 32:1.9(a) "is to ensure that a client's confidential communications to his or her lawyer will not be used against that client when the attorney-client relationship has ended and the lawyer later represents a party adverse to the former client." *Hoffmann*, 533 N.W.2d at 836. The Iowa Supreme Court considers three factors in determining whether two matters bear a "substantial relationship" for purposes of assessing former client conflicts of interest: "(1) the nature and scope of the prior representation; (2) the nature of the present lawsuit; and (3) whether the client might have disclosed a confidence to [its] attorney in the prior representation which could be relevant to the present action." *Nustar Farms LLC*, 880 N.W.2d at 485 (quoting *Doe ex rel. Doe v. Perry Cmty. Sch. Dist.*, 650 N.W.2d 594, 598 (Iowa 2002)). The factors weigh against finding a conflict of interest.

1. The Nature of the Alleged Prior Representation Weighs Against Disqualification.

Drake's allegations regarding the "nature and scope" of the prior alleged representation do not support a finding of disqualification. Iowa courts have "found that an attorney was highly involved in a client's prior representation when he had met with the clients, had telephone conversations with the clients, appeared as their attorney, and signed pleadings on their behalf." *See NuStar Farms, LLC*, 880 N.W.2d at 486 (c*iting Doe ex rel. Doe v. Perry Cmty. Sch. Dis*t., 650 N.W.2d 594, 599 (Iowa 2002)).  Drake fails to allege either Mr. Johnson or Ms. Yin Sowatzke ever met with anyone from Drake, had any telephone conversations with anyone at Drake, or ever signed any pleadings or Trademark Office filings on behalf of Drake. *See generally* ECF 41-01, 41-22. Instead, Drake only alleges that Ms. Yin Sowatzke or Mr. Johnson were listed (by another attorney at MVS) as an "other appointed attorney" on 19 of Drake's 30 trademarks—only three of which relate to this matter in any way. Regardless, there are no allegations Mr. Johnson or Ms.

15

Yin Sowatzke ever did any *work* on Drake trademarks or filings (or for Drake *at all*). Nor could there be, as neither Mr. Johnson nor Ms. Yin Sowatzke even realized their names were on these filings. It appears it was simply MVS's practice to list every single attorney in their firm as an "other appointed attorney" for every trademark filing an MVS attorney filed.

The remainder of Drake's allegations relate to Mr. Johnson's leadership position at MVS. This, of course, is not an allegation regarding the nature or scope of Mr. Johnson's prior "representation" of Drake, but rather, an ask that the Court infer that Mr. Johnson's leadership role at MVS means that he is disqualified from appearing opposite any MVS client based on an assumption that he had time to gain confidential, privileged information regarding every MVS client. Because of his leadership role at MVS, his active legal career, and active roles as a father, school board member, mock trial coach, etc., he simply did not have the time to actively learn about every MVS client. (Johson Decl., ¶ 8).

The nature of scope of Mr. Johnson's and Ms. Yin Sowatzke's alleged prior representation is limited to someone else listing their names as "other appointed attorney" on Drake's trademark filings. Even accepting that this could constitute representation (it does not), there simply was no scope or substance to the alleged representation. *See Nachazel v. Mira Co., Mfg.*, 466 N.W.2d 248 (Iowa 1991) (noting there was "no evidence" that attorney ever discussed subject of suit; finding against disqualification). If Drake truly believed either Mr. Johnson or Ms. Yin Sowatzke actually substantively represented Drake, it would have supported its arguments with billing records. Instead, Drake refused to respond to Mr. Johnson's request for access to a billing report, leading to the obvious conclusion: Drake has no evidence, just conjecture.

In the *Deere* case, attorney Jeff Harty was a member of MVS for seven years (and on the Management Committee) before joining Nyemaster Goode. *Deere*, 2021 WL 5334212, at *2. Mr.

Harty was counsel to Deere before being disqualified based on his concurrent representation of Ag Leader. *Id.* However, relevant to the present case, defendant Kinze also attempted to disqualify Mr. Harty based on Mr. Harty's *former* representation of Kinze. *Id.* This district found that, under closer facts than those alleged here, Kinze did not meet its burden, and Mr. Harty was not disqualified based on his former representation of Kinze.

This case lacks even the actual representation that was insufficient to support disqualification in *Deere*. First, unlike Mr. Harty, neither Mr. Johnson nor Ms. Yin Sowatzke ever knowingly appeared on behalf of Drake. Mr. Harty represented Kinze as local counsel in a matter involving patents from the same general field of patents as those asserted in the *Deere* case. Simply put: Mr. Harty represented Kinze. As to Drake, on the other hand, neither Mr. Johnson nor Ms. Yin Sowatzke had knowledge that they "represented" Drake. Second, also unlike with Mr. Harty, there is no evidence Mr. Johnson or Ms. Yin Sowatzke ever worked for Drake. Third, also unlike with Mr. Harty, the alleged prior representation was not litigation-related; rather, it involved trademark filings submitted by Christine Lebron-Dykeman. Finally, in *Deere*, Mr. Harty was attorney of record and filed documents on behalf of Kinze. Drake has not alleged or provided any evidence Mr. Johnson or Ms. Yin Sowatzke prepared or filed any documents on Drake's behalf. The lack of actual representation associated necessitates against a finding of disqualification.

2.   The Nature of the Present Lawsuit is Distinct from Transactional Trademark Filings.

The nature of the present lawsuit is also distinct from the alleged prior representation. Sixteen of the marks Drake states support a finding of disqualification are not even asserted in this litigation. The remaining three marks admittedly are. However, Drake has not identified "specific information suggesting [Mr. Johnson's or Ms. Yin Sowatzke's alleged] past representation contemplated an overlap" between the trademark filings Ms. Lebron-Dykeman filed and the present litigation between DMACC and Drake. Instead, Drake asks the Court to infer that

17

trademark prosecution (which is conducted entirely in the public domain at the USPTO and which Drake still has not shown Mr. Johnson or Ms. Yin Sowatzke were actually involved in) is the same thing as trademark litigation.[4] It bears repeating: Mr. Johnson and Ms. Yin Sowatzke did not even know their names were listed (alongside every other member of their former firm) on these trademarks. This element weighs against disqualification.

3. Drake Did Not Share Confidential Information with Mr. Johnson or Ms. Yin Sowatzke at All, Let Alone Related to This Lawsuit.

Neither Mr. Johnson nor Ms. Yin Sowatzke ever represented Drake. Nor did they ever learn of any Drake confidential information that would be relevant to this action (because they never learned of any Drake confidential information). Here, Drake does not actually allege that any confidential information was disclosed to Mr. Johnson or Ms. Yin Sowatzke—and states it "is not required to show . . . that any such information was disclosed to Mr. Johnson." ECF 41-01 at 16. Not so. Drake needed to meet its burden. "General knowledge of an organizational client's policies and practices ordinarily does not preclude later representation." *Deere*, 2021 WL 5334212, at *6 (citing Iowa R. Prof'l Conduct 32:1.9 cmt. 3). "But 'knowledge of specific facts gained in a prior representation' relevant to the substantially related matter will ordinarily preclude representation." *Id*. Drake's failure to identify any specific facts gained in a prior representation is fatal to its motion.

---

[4] Regardless, DMACC is not alleging any fraud on the Trademark Office occurred. Any arguments related to the registered trademarks are focused on their scope and Drake's attempt to use the specific design marks for the Athletic and Academic swoosh style "D" to cover every version of the letter "D" or Drake's efforts to separate out a collegiate style "D" from the registered bulldog design. Such arguments are not based on any confidential information, but rather the public record and the obvious visual differences between the registered marks and the DMACC & D mark. Drake cannot meet its burden to show any issues in the trademark prosecution are at play in the trademark litigation or that either Mr. Johnson or Ms. Sowatzke participated in the trademark prosecutions in any manner.

Further, here, as in *Deere*, the Court should find that the length of time between the alleged prior representation and this matter (over 5 years for Mr. Johnson; over 3 years for Ms. Yin Sowatzke) alongside Drake's lack of showing that either attorney "gained knowledge of relevant 'specific facts' from the prior representation that is material to the present dispute" weighs against a finding that the past alleged representation and the present litigation are substantially related. *See Deere*, 2021 WL 5334212, at *6. Drake's disqualification motion as to Rule 32:1.9(a) fails.

### D.    As the Court Held in Deere, Working at MVS Is Not Automatic Grounds for Disqualification under Rule 32:1.9(b).

This District has previously held that working at MVS, in of itself, is not sufficient grounds to disqualify a lawyer from a case adverse to an MVS client. *Deere*, 2021 WL 5334212, at *8-*9. Despite Mr. Johnson repeatedly referred Mr. Conley and Mr. Gilbertson to this Court's recent *Deere* decision disqualifying Mr. Harty before filing this brief, they failed to even *cite* it. (Johnson Decl., Ex. F).  Rule 32:1.9(b) states:

> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
>
> (1) whose interests are materially adverse to that person, and
>
> (2) about whom the lawyer had acquired information protected by rules 32:1.6 [governing confidential information relating to client representation] and 32:1.9(c) [prohibiting a lawyer from using information gained from a former representation of a client to that client's disadvantage] that is material to the matter, unless the former client gives informed consent, confirmed in writing.

Iowa R. Prof'l Conduct 32:1.9(b). "The comments [] explain the rule operates to disqualify the lawyer only when the lawyer involved has *actual knowledge* of information protected by rules 32:1.6 and 32:1.9(c)." *Deere*, 2021 WL 5334212, at *8 (quoting Iowa R. Prof'l Conduct 32:1.9 cmt 5). Disqualification is improper unless (1) "the matters at issue [are] the same or substantially related; and (2) the individuals [has] 'actual knowledge' of protected information 'material to the

19

matter' in the present litigation. *Deere* at *8, citing Iowa R.Prof'l Conduct 32:1.9(b); Iowa R. Prof'l Conduct 32:1.9 cmt 5.

While it is true the client is given the presumption that confidences were disclosed, this does not vitiate the need for Drake to show Mr. Johnson "acquired actual knowledge of confidential information about [Drake] that would materially assist [DMACC] in the present dispute." *Deere,* citations removed. "Other MVS members' relevant knowledge on matters related to [Drakes marks] cannot be imputed to [Mr. Johnson] to disqualify him. [] [Mr. Johnson] must have actual knowledge." *Deere*, 2021 WL 5334212, at *9. Fatally, Drake has failed to identify either actual knowledge or materiality of said knowledge—likely because Drake understands that neither Mr. Johnson nor Ms. Yin Sowatzke have billed time to any Drake matter.

Had Drake reviewed the *Deere* order that Mr. Johnson shared with its counsel prior to filing the disqualification motion, they would have understood that Mr. Johnson has previously made (and lost) the argument that they attempt here. It is unclear why they proceeded in the face of the *Deere* decision, and troubling that they failed even to cite it given its clear relevance to the issues presented and the lawyers involved (specifically mentioning MVS and its former attorneys).

The Court should deny Drake's motion to disqualify based on Mr. Johnson's and Ms. Yin Sowatzke's prior association with MVS, and award DMACC its fees and costs associated with this resistance.

## III.    CONCLUSION

For the foregoing reasons, DMACC respectfully request that the Court deny Plaintiff's Motion to Disqualify Counsel in its entirety.

Respectfully submitted,

Date: August 27, 2024

*/s/ Cara S. Donels*

R. Scott Johnson (#AT0004007)
Cara S. Donels (#AT0014198)
Erin M. Boggess (#AT0015950)
FREDRIKSON & BYRON, P.A.
111 East Grand Avenue, Suite 301
Des Moines, IA  50309-1977
Telephone:  (515) 242-8900
E-mail:  RSJohnson@fredlaw.com
             CDonels@fredlaw.com
             EBoggess@fredlaw.com

Laura L. Myers (Minn. #0387116)
(admitted *Pro Hac Vice*)
FREDRIKSON & BYRON, P.A.
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
Telephone:  (612) 492-7000
E-mail:  LMyers@fredlaw.com

**Attorneys for Defendants and
Counterclaim Plaintiff**

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 27, 2024, I electronically filed the

*Defendants'/Counterclaim Plaintiff's Resistance to Plaintiff's Motion to Disqualify Counsel* with

the Clerk of the Court using the CM/ECF system, who in turn sent notice to the following:

Joshua J. Conley, Esq.
  jconley@zarleyconley.com
John D. Gilbertson, Esq.
  jgilbertson@zarleyconley.com
ZARLEYCONLEY PLC
580 Market Street, Suite 101
West Des Moines, IA  50266

*Attorneys for Plaintiff and
Counterclaim Defendant*


 */s/ Erica Palmer*
Erica Palmer