IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA CENTRAL DIVISION

| | |
|---|---|
| DRAKE UNIVERSITY,<br>    Plaintiff,<br><br>vs.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE<br>    Defendants. | No. 4:24-cv-00227<br><br>**REPLY TO MOTION TO DISQUALIFY COUNSEL** |
| DES MOINES AREA COMMUNITY COLLEGE,<br>    Counterclaim Plaintiff,<br><br>vs.<br><br>DRAKE UNIVERSITY,<br>    Counterclaim Defendant. | |

 

                John D. Gilbertson
                Joshua J. Conley
                ZARLEYCONLEY PLC
                West Des Moines, Iowa
                for DRAKE UNIVERSITY

DMACC's arguments can be distilled down to (1) neither Mr. Johnson nor Ms. Yin Sowatzke ever formed an attorney-client relationship with Drake; (2) signed documentation is required for an attorney-client relationship to form; (3) billing records are dispositive of an attorney-client relationship; (4) identification by the Trademark Office as an "other appointed attorney" negates the existence of an attorney-client relationship; (5) a firm's "standard practice" negates the existence of an attorney-client relationship; (6) any attorney-client relationship is terminated upon the Trademark Office ending its recognition; and (7) Drake failed to evidence actual knowledge. These rationales are insufficient to avoid disqualification as required by the Rules of Professional Conduct.

### A.  An Attorney-Client Relationship Existed

An attorney-client relationship arises when (1) a person sought advice or assistance from an attorney, (2) the advice or assistance sought pertained to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agreed to give or actually gave the desired advice or assistance. *NuStar Farms, LLC v. Zylstra*, 880 N.W.2d 478, 483 (Iowa 2016). Mr. Johnson states in his declaration that he "knew that Drake was a *firm* client." Dkt. 49-1 at 3, ¶ 9 (emphasis added). This acknowledgement addresses each factor.

DMACC's resistance does not dispute that Mr. Johnson and Ms. Yin Sowatzke were appointed attorneys on multiple Drake trademark registrations, including three involved in this dispute. Dkt. 49, at 10. President Martin of Drake has also declared, without contradiction, that Drake relies upon Mr. Johnson's former employer for all intellectual property matters and has done so for at least 40 years. Dkt. 41-22, at ¶¶ 10–18. These matters included disputes and licensing for which Mr. Johnson was part of a collaborative team that handled such matters. Dkt. 49-1, ¶ 6. Drake expressly appointed Mr. Johnson and Ms. Yin Sowatzke as representatives of Drake's matters. *See, e.g.,* Dkt. 41-12, at 13 (appointing Mr. Johnson to the Academic "D" in this suit).

### B. Signed Documentation is not a Prerequisite to an Attorney-Client Relationship

Citing 37 CFR § 2.17(b)(2), DMACC alleges that Mr. Johnson and Ms. Yin Sowatzke did not represent Drake before the Trademark Office because they did not sign anything. Dkt. 49, at 13–14. A signature is not dispositive; the section states, "When a practitioner . . . signs a document **or appears** pursuant to [this section], his or her signature **or appearance** shall constitute a representation to the Office that he or she is authorized to represent the person or entity on whose behalf he or she acts." 37 CFR § 2.17(b)(2). Section 2.17(c) provides that a practitioner may appear by being **appointed** by an applicant or through an associate power of attorney. 37 CFR § 2.17(c)(2). The Iowa Supreme Court found that while the attorney-client relationship rests on contract, it is "not necessary that the contract be express or that a retainer be requested or paid … [t]he contract may be implied from the conduct of the parties." *Kurtenbach v. TeKippe*, 260 N.W.2d 53, 56 (Iowa 1977). The existence of an attorney-client relationship does not reside in signature, nor the eyes of a third party, such as the Trademark Office.

### C. Billing Records are not Issue Dispositive

"The establishment of an attorney-client relationship is not dependent on the payment of fees or the issuance of a billing. A confidence can be revealed in a brief moment and without the client being charged a nickel." *Matter of Olson*, 21 B.R. 123, 127 (Bankr. D. Neb. 1982); *see also Kurtenbach*, 260 N.W.2d at 56 (same). The absence of billing statements cannot undermine the existence of Drake's attorney-client relationship as articulated in Section A, *supra*.[1]

---

[1] DMACC alleges that Drake "repeatedly blocked" access to billing records. This is untrue. As stated in its resistance, Mr. Johnson's former firm, McKee, Voorhees & Seas ("MVS") declined to provide billing records because of a duty of loyalty. MVS expressed a similar sentiment to Drake's counsel when asked about providing a declaration. *See* Exhibit 24. Regardless, Drake would not have provided such materials as they are irrelevant in the face of the existing evidence in the record that expressly shows Drake's appointment of Mr. Johnson and Ms. Yin Sowatzke as legal counsel for Drake.

### D. "Other Appointed Attorney" is not a Material Distinction

DMACC's resistance does not articulate why the designation "other appointed attorney" (i.e., associate attorney) is materially distinct from a primary attorney. 37 CFR § 2.17(b)(2), cited by DMACC, undermines the contention that being an "other appointed attorney" alters, limits, or changes in any way the legal representation Mr. Johnson and Ms. Yin Sowatzke were given by Drake. The equivalence between associate and primary attorneys is demonstrated by the actions associate attorneys have taken on applications that Mr. Johnson himself is identified as the primary attorney. *See* Exhibit 25 (trademark application listing Mr. Johnson as the primary attorney) and Exhibit 26 (office action response signed by other appointed attorney Nicholas J. Krob, who identifies himself as an "Attorney of record."). As such, no material distinction exists between an associate attorney and a primary attorney, and even if there was, there is no distinction in the eyes of Drake—the client. *See* Dkt. 41-22, ¶¶ 10–18.

### E. A Firm's "Standard Practice" Cannot Prevent an Attorney-Client Relationship

DMACC does not explain why MVS's practice of listing its attorneys on trademark filings should foreclose finding of an attorney-client relationship. DMACC only asserts Mr. Johnson was unaware of it. Exhibit 16 plainly shows Mr. Johnson's signature on a trademark filing revoking a power of attorney from a prior firm, listing himself as the new attorney, and naming all other attorneys at MVS as "New Other Appointed Attorneys." Dkt. 41-17, at 1–2.[2] Additional evidence of Mr. Johnson's knowledge of this practice is set forth in the principal brief that will not be restated here. *See* Dkt. 41-1, at 9. Mr. Johnson alleging he only learned about this practice after he left his former firm (Dkt. 49-1 at 5, ¶¶ 28–29) runs counter to his own, documented actions. At

---

[2] "By submission of this request, the undersigned [Mr. Johnson] REVOKES the power of attorney currently of record, as listed above, and hereby APPOINTS the following new attorney. In addition, any additional previously-appointed attorneys that are currently listed in the application are replaced with the new 'Other Appointed Attorneys' listed below." Dkt. 41-17, at 3

the end of the day, whether he truly knew about this practice does not change the fact that Drake appointed Mr. Johnson and Ms. Yin Sowatzke as counsel in filings submitted by their former employer, and Drake understood it engaged MVS as a whole to represent the full spectrum of Drake's intellectual property interests. Dkt. 41-22 at 3, ¶ 15.

### F.  The Trademark Office Cannot Terminate Representation

DMACC cites code sections pertaining to the time and duration that the Trademark Office **recognizes** an attorney's representation of an applicant or registrant. Dkt. 49, at 15–16; *see also* 37 C.F.R. 2.17(g). It is true that the duration of "recognition" of an attorney during a pending application ends upon registration, and for a maintenance filing, upon its acceptance or rejection. 37 C.F.R. § 2.17(g). A distinction exists, however, between *recognition* and *representation*. The term "recognition" is used to reflect "the fact that the USPTO does not control representation agreements between practitioners and clients but merely recognizes an attorney for purposes of representation before the USPTO." 86 FR 26862-01, 2021 WL 1964456 (May 18, 2021) (Changes to Implement Provisions of the Trademark Modernization Act of 2020). Accordingly, the end of the Trademark Office's recognition under 2.17(g) has no impact on the attorney-client relationship.

### G.  Mr. Johnson's Knowledge Has Been Established

DMACC alleges that "Drake's failure to identify any specific facts gained in a prior representation is fatal to its motion." Dkt. 49, at 22. Neither Rule 1.7 nor 1.9(a) require identification of actual *knowledge* to disqualify—only that *representation* occurred. DMACC does not dispute that Mr. Johnson was expressly appointed on Drake's trademark filings. *See, e.g.,* Dkt. 41-12, at 13, 20.

The record shows that Mr. Johnson and Ms. Yin Sowatzke had general access to all client files, including Drake's, and Mr. Johnson served on a management committee. *See* IA R. 32:1.9, cmt. [6] (discussing general access to files and the way in which lawyers work together).

5

DMACC's resistance also fails to address the unique stature Mr. Johnson had as a Certified Licensing Professional and the requisite expertise he must have to obtain a *Best Lawyer in America* designation in trademark law the year he left MVS. Dkt. 41-3, at 3. These circumstances, among others, demonstrate that it is likely that Mr. Johnson received confidences material to this dispute. These would have been obtained during Drake's use of his former firm to handle licensing issues, resolve disputes, and handle trademark related services. *See* Dkt. 41-22, ¶ 14; *see also* IA R. 32:1.9, cmt. [6] ("Application of paragraph (b) depends on a situation's particular facts, aided by inferences, deductions, or working presumptions that reasonably may be made about the way in which lawyers work together" and "[i]n such an inquiry, the burden of proof should rest upon the firm whose disqualification is sought.").

Mr. Johnson and Ms. Yin Sowatzke seek to refute these strong inferences by declaring that each is unable to recall whether they obtained any knowledge about Drake during their respective time at McKee, Voorhees & Sease. *See generally,* Dkt. 49-1, 49-11. Such speculation cannot rebut the inference that some knowledge or information was obtained. *See* IA R. 32:1.9, cmt [5] (avoidance of disqualification requires **no** knowledge or information). The dubious nature of these declarations require disqualification. *Dr. John's, Inc. v. Sioux City, Iowa*, No. C03-4121-MWB, 2007 WL 5788, at *6 (N.D. Iowa Jan. 2, 2007) (citations omitted) (holding that doubts should be resolved in favor of disqualification).

                                                Respectfully submitted,

Dated: September 3, 2024                   **ZARLEYCONLEY PLC**

                                By:    <u>/s/John D. Gilbertson</u>
                                              John D. Gilbertson, AT0014515
                                              Joshua J. Conley, AT0011828
                                              580 Market Street, Suite 101
                                            West Des Moines, IA 50266
                                            Telephone:  (515) 558-0200
                                            Facsimile:   (515) 558-7790
                                            jconley@zarleyconley.com
                                            jgilbertson@zarleyconley.com
                                            **ATTORNEYS FOR PLAINTIFF & COUNTERCLAIM DEFENDANT**