Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.
PTO Form 1957 (Rev 10/2011)
OMB No. 0651-0050 (Exp 09/20/2020)

# Response to Office Action

### The table below presents the data as entered.

| Input Field | Entered |
|---|---|
| **SERIAL NUMBER** | 87835749 |
| **LAW OFFICE ASSIGNED** | LAW OFFICE 120 |
| **MARK SECTION** | |
| MARK | https://tmng-al.uspto.gov/resting2/api/img/87835749/large |
| LITERAL ELEMENT | BLUEPRINT |
| STANDARD CHARACTERS | YES |
| USPTO-GENERATED IMAGE | YES |
| MARK STATEMENT | The mark consists of standard characters, without claim to any particular font style, size or color. |
| **EVIDENCE SECTION** | |
| EVIDENCE FILE NAME(S) | |
| ORIGINAL PDF FILE | evi_2168117552-20190102124419830795_._Homesteaders_Office_Action_Response_1-2-2019.pdf |
| CONVERTED PDF FILE(S) (3 pages) | \\TICRS\EXPORT17\IMAGEOUT17\878\357\87835749\xml4\ROA0002.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\878\357\87835749\xml4\ROA0003.JPG |
| | \\TICRS\EXPORT17\IMAGEOUT17\878\357\87835749\xml4\ROA0004.JPG |
| **SIGNATURE SECTION** | |
| RESPONSE SIGNATURE | /Nicholas J. Krob/ |
| SIGNATORY'S NAME | Nicholas J. Krob |
| SIGNATORY'S POSITION | Attorney of record, Iowa bar member |
| SIGNATORY'S PHONE NUMBER | 515-288-3667 |
| DATE SIGNED | 01/02/2019 |
| AUTHORIZED SIGNATORY | YES |
| **FILING INFORMATION SECTION** | |
| SUBMIT DATE | Wed Jan 02 14:14:33 EST 2019 |
| TEAS STAMP | USPTO/ROA-XXX.XX.XXX.XX-2 0190102141433749645-87835 749-620664bef305d1b311230 2f4ba8ea6c79f05e7b98403d9 a75b6675f9498cde2e8-N/A-N /A-20190102124419830795 |

Under the Paperwork Reduction Act of 1995 no persons are required to respond to a collection of information unless it displays a valid OMB control number.

EXHIBIT
26

PTO Form 1957 (Rev 10/2011)
OMB No. 0651-0050 (Exp 09/20/2020)

**Response to Office Action**

## To the Commissioner for Trademarks:

Application serial no. **87835749** BLUEPRINT(Standard Characters, see https://tmng-al.uspto.gov/resting2/api/img/87835749/large) has been amended as follows:

**EVIDENCE**

**Original PDF file:**
evi_2168117552-20190102124419830795_._Homesteaders_Office_Action_Response_1-2-2019.pdf
**Converted PDF file(s)** ( 3 pages)
Evidence-1
Evidence-2
Evidence-3

**SIGNATURE(S)**
**Response Signature**
Signature: /Nicholas J. Krob/     Date: 01/02/2019
Signatory's Name: Nicholas J. Krob
Signatory's Position: Attorney of record, Iowa bar member

Signatory's Phone Number: 515-288-3667

The signatory has confirmed that he/she is an attorney who is a member in good standing of the bar of the highest court of a U.S. state, which includes the District of Columbia, Puerto Rico, and other federal territories and possessions; and he/she is currently the owner's/holder's attorney or an associate thereof; and to the best of his/her knowledge, if prior to his/her appointment another U.S. attorney or a Canadian attorney/agent not currently associated with his/her company/firm previously represented the owner/holder in this matter: (1) the owner/holder has filed or is concurrently filing a signed revocation of or substitute power of attorney with the USPTO; (2) the USPTO has granted the request of the prior representative to withdraw; (3) the owner/holder has filed a power of attorney appointing him/her in this matter; or (4) the owner's/holder's appointed U.S. attorney or Canadian attorney/agent has filed a power of attorney appointing him/her as an associate attorney in this matter.

Serial Number: 87835749
Internet Transmission Date: Wed Jan 02 14:14:33 EST 2019
TEAS Stamp: USPTO/ROA-XXX.XX.XXX.XX-2019010214143374
9645-87835749-620664bef305d1b3112302f4ba
8ea6c79f05e7b98403d9a75b6675f9498cde2e8-
N/A-N/A-20190102124419830795

**Goods and Services Identification Amendment**

Amend goods and services as follows:

"Downloadable electronic newsletters provided via email in the field of funeral and funeral preparation services" in International Class 9.

"Providing online newsletters via email in the field of funeral and funeral preparation services" in International Class 41.

**Argument Against Likelihood of Confusion**

The Examining Attorney has refused registration of Applicant's mark on the Principal Register on the basis of alleged likelihood of confusion under Section 2(d) of the Lanham Act, 15 U.S.C. § 1052(d).  Applicant respectfully contests this refusal of registration, requests that the Examining Attorney reconsider the refusal to register, and offers the following remarks in support of registration of Applicant's mark on the Principal Register.

The Examining Attorney has alleged that Applicant's mark BLUEPRINT, when used on or in connection with "downloadable electronic newsletters provided via email in the field of funeral and related end-of-life services and marketing related thereto" in International Class 9 and "providing online newsletters via email in the field of funeral and related end-of-life services and marketing related thereto" in International Class 41, is likely to be confused with U.S. Registration No. 1,925,446 for the mark BLUE PRINT as used on or in connection with "educational newsletter[s], in the field of health and insurance" in International Class 16. Applicant submits that the Examining Attorney's rejection based on Section 2(d) of the Lanham Act is in error because the goods and services offered under the respective marks are distinct.

As recognized by the Court of Customs and Patent Appeals in the well-known *duPont* case, a significant factor in evaluating the likelihood of confusion between marks is "[t]he similarity or dissimilarity and nature of the goods or services as described in an application or registration or in connection with which a prior mark is in use."  *In re E.I. duPont de Nemours & Co.*, 117 U.S.P.Q. 563, 567 (C.C.P.A. 1973).  Assessing the similarity of goods and services requires an analysis of "whether 'the consuming public may perceive [the respective goods and services of the parties] as related enough to cause confusion about the source or origin of the goods and services.'"  *In re St. Helena Hosp.*, 774 F.3d 747, 752 (Fed. Cir. 2014) (quoting *Hewlett-Packard Co. v. Packard Press, Inc.*, 281 F.3d 1261, 1267 (Fed. Cir. 2002)).  To refuse an application on such grounds, the examining attorney must provide evidence showing that the goods and services are related.  *See, e.g., In re White Rock Distilleries Inc.*, 92 U.S.P.Q. 2d 1282, 1285 (T.T.A.B. 2009); TMEP 1207.01(a)(vi).

Here, the Examining Attorney alleges "information relating to the subject matters featured [in Applicant's and Registrant's newsletters] commonly emanate from the same commercial entity" and provides Internet evidence in furtherance thereof.  However, this evidence does not suggest that the referenced subject matter commonly emanates from the same commercial entity and does not support the conclusion that the goods and services at issue are related so as to cause a likelihood of consumer confusion.

1

The subject matter of Applicant's newsletters is identified, as amended, as "funeral and funeral preparation services."  The subject matter of Registrant's newsletters is identified as "health and insurance."  These are distinct industries with little to no relation, and the Examining Attorney's Internet evidence does little to indicate otherwise.

For instance, the Examining Attorney includes images of a hospice organization's webpage, which offers "End-of-Life Support and Resources."  Notably, this webpage does not make any direct reference to funeral or funeral preparation services.  Similarly, the included Pro-life Healthcare Alliance webpage lists various health-related newsletters, but none pertaining to funeral or funeral preparation services.  These webpages merely show that health organizations provide information and resources for matters pertaining to health—a fact already established by Registrant's trademark registration.

The only reference the remaining Internet evidence makes to funeral or funeral preparation services is in the context of life insurance.  For instance, the webpages for Carpenter Insurance Inc., New Life Agency, and Cloverleaf Insurance each make reference to and provide information regarding life insurance policies they offer.  However, it is unclear how a consumer may perceive life insurance and funeral or funeral preparation services as related.

There can be little argument that life insurance and funeral services are related industries.  Furthermore, while funeral *preparation* services may more closely align with life insurance, they are nevertheless distinct services.  Whereas the latter is an insurance policy a consumer obtains to pay out a sum of money, usually upon death, the former are services catering to funeral planning.  That each may be defined broadly such that there is some overlap between the two is immaterial.  *See, e.g.*, *Electronic Data Systems Corp. v. EDSA Micro Corp.*, 23 U.S.P.Q. 2d 1460 (T.T.A.B. 1992) (noting that "the issue of whether or not two products are related does not revolve around the question of whether a term can be used that describes them both, or whether both can be classified under the same general category.").  *See also Mejia and Assoc., Inc. v. International Business Mach. Corp.*, 920 F. Supp. 540, 548 (S.D.N.Y. 1996) (stating that "[b]y increasing the level of generality, any products can be made to appear in the same class.  Aspirin and easy chairs can be characterized as 'comfort products.'  Jet planes and rollerblades could be characterized as 'transportation products.'").

Life insurance policies may be used for many different things, only one of which is the payment of funeral expenses.  As the cited New Life Agency webpage states, life insurance may be purchased to "[r]eplace income for dependents," "[p]ay final expenses," "[c]reate an inheritance for your heirs," "[p]ay Federal death taxes & state death taxes," "[m]ake significant charitable contributions, and "[c]reate a source of savings."  With this in mind, life insurance is no more similar to funeral preparation than playing the lottery is to retirement planning.

Equating life insurance with funeral preparation based merely on the fact that both may involve the payment of funeral expenses is improper.  Life insurance policies merely pay out a sum of money as designated by the terms of the policy.  There is no connection to funeral services or funeral preparation services beyond it providing a possible means by which to fund

2

such services.  Simply put, a consumer would not confuse the source of funeral or funeral preparation services with a life insurance company.

Beyond references to life insurance, the only identifiable bases for the Examining Attorney's inclusion of the remaining webpages in the Internet evidence is that the Carpenter Insurance Inc. webpage offers a funeral home-specific insurance policy and Folks Insurance Group webpage lists "Funeral" under the heading "Newsletter Categories."  However, neither is material here.  The Carpenter Insurance Inc. webpage merely shows that an insurance company may offer business insurance to funeral homes—distinct from funeral-related services themselves.  Furthermore, there does not appear to be any funeral-related content included under the "Funeral" heading of the Folks Insurance Group webpage.  Based on the evidence provided, there is no way to ascertain if, and in what context, Folks Insurance Group provides services relating to funerals or funeral preparation.

The webpages provided by the Examining Attorney fail to provide any evidence showing funeral or funeral preparation services being offered by a company providing health and insurance services, or vice versa.  This is likely because the two industries, despite some nominal overlap, are distinct.  Insurance and health care companies are not in the business of providing, or planning, funerals.  They do not assist in the selection of funeral directors, planning of memorial services, or any of the many other aspects of funeral preparation.  While the financing of a funeral provided by a life insurance policy offered by an insurance company may be considered one aspect of "funeral preparation," it is but a mere portion of the broad category of funeral preparation services.

Given the distinction between the goods and services associated with the two marks, Applicant submits that no likelihood of confusion exists between Applicant's and Registrant's marks.  Favorable consideration and approval for publication is respectfully requested.

3