# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA CENTRAL DIVISION

| | |
|---|---|
| DRAKE UNIVERSITY,<br><br>    Plaintiff,<br><br>vs.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE,<br><br>    Defendants.<br><br>DES MOINES AREA COMMUNITY COLLEGE,<br><br>    Counterclaim Plaintiff,<br><br>vs.<br><br>DRAKE UNIVERSITY,<br><br>    Counterclaim Defendant. | Case No. 4:24-CV-00227-SMR-SBJ<br><br>**DEFENDANTS'/COUNTERCLAIM PLAINTIFF'S RESISTANCE TO PLAINTIFF'S MOTION TO STRIKE** |

Defendant Des Moines Area Community College Foundation ("DMACCF") and Defendant and Counterclaim Plaintiff Des Moines Area Community College ("DMACC") (collectively referred to herein as "DMACC" and "Defendants") respectfully submits this response to Plaintiff and Counterclaim Defendant Drake University's ("Drake" and "Plaintiff") Motion to Strike paragraphs 66–67 and Exhibit S; Paragraph 69 and Exhibit T, in full or in part; and Paragraph 71 and Exhibit U of DMACC's original Answer and Counterclaims (ECF Dkt. 48).

**I.    INTRODUCTION**

Drake's motion has been mooted by DMACC's filing of a new Answer and Counterclaims.[1] (ECF Dkt. 52). Moreover, it is not the law that any content in the pleadings that is unfavorable to one party should be stricken. Rather, the law only supports striking the pleading statements that contain redundant, immaterial, impertinent, or scandalous material. The Amended Answer and Counterclaims does not contain any statements which could be considered redundant, immaterial, impertinent, or scandalous. Rather, Drake has moved to strike *public* statements from DMACC's Answer and Counterclaims that support DMACC's counterclaims and defenses. There is no basis for granting a motion to strike, and Drake's motion to strike should be denied as moot.

**II.    ARGUMENT**

Before filing its motion, Drake knew that DMACC intended to file an amended answer and counterclaims. (ECF Dkt. 48 ¶ 5) ("Opposing counsel stated that Defendants intended to file an amended Answer sometime before its deadline of September 10, 2024."). DMACC asked Drake to consider the timing of its motion to strike, so as not to have the parties engaged in pointless or duplicative briefing over pleadings that no longer stand as the operative pleadings in this case. Under Federal Rule of Civil Procedure 15(a)(1), a plaintiff can amend its complaint once as a matter of course within 21 days after the service of a motion under Rule 12(b), (e), or (f). F.R.C.P. 15(a)(1). Further, a motion to strike may be rendered as moot if the amended complaint does not contain any statements which could be considered redundant, immaterial, impertinent, or scandalous. *See Peak N.D., LLC v. Wilkinson*, No. 4:08–cv–087, 2010 WL 2163516 (D. N.D. May 25, 2010) ("The effect of the filing of the first amended counterclaim was to render the motions to

---

[1] While this is technically correct, DMACC anticipates Drake will simply refile its motion to strike to ensure the motion remains "live" and thus provides a substantive response.

dismiss moot. As the first amended counterclaim was timely and properly filed and does not contain any statements which could be considered 'redundant, immaterial, impertinent, or scandalous,' there is no basis for granting a motion to strike."). DMACC has made revisions to its Amended Answer and Counterclaims that clarify the relevance of particular pieces of information. Thus, it would have been prudent for Drake to wait, as DMACC requested, to avoid pointless briefing that (now) does not address the actual contents of the operative pleadings.

Drake chose to file its motion to strike regardless—and a day late. *See* Fed. R. Civ. P. 12(f) (noting 21-day deadline to file motion to strike). Setting aside both the timeliness of its motion and the inefficiency of briefing related to an inoperative pleading, Drake's motion also fails to take into account the clear relevance of each of DMACC's statements.

The Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f) "A district court has wide discretion in ruling on a motion to strike, particularly because Rule 12(f) is permissive in nature." *Kelly v. Ethicon, Inc.*, 511 F.Supp.3d 939, 945 (N.D. Iowa 2021) (*citing Holt v. Quality Egg, L.L.C.*, 777 F.Supp.2d 1160, 1168 (N.D. Iowa 2011)). Furthermore, "[m]otions to strike are considered an extreme measure and are thus disfavored and infrequently granted." *Id.*; *see also Stanbury Law Firm v. I.R.S.*, 221 F.3d 1059, 1063 (8th Cir. 2000) ("[S]triking a party's pleading is an extreme measure, and, as a result, we have previously held that '[m]otions to strike . . . are viewed with disfavor and are infrequently granted.'") (second alteration in original) (*quoting Lunsford v. United States*, 570 F.2d 221, 229 (8th Cir. 1977)). When moving to strike, "a [movant] must show that the allegations being challenged . . . are 'so unrelated to the [ ] claims as to be unworthy of any consideration as a defense and that their presence in the pleading throughout the

proceeding will be prejudicial to the moving party.'" *Sobba v. Elmen*, 462 F. Supp. 2d 944, 946 (E. D. Ark. 2006) (internal citation omitted).

    A.    **Paragraphs 76, 77, and Ex. T**

DMACC's Amended Answer and Counterclaims quotes an article published in *Iowa Capital Dispatch* written by Daniel P. Finney at paragraphs 76 and 77 in its Amended Complaint and Counterclaims.[2] Mr. Finney was Drake's own Public Relations Specialist during the time Drake rebranded and adopted its modern swoosh style "D" logos that are the subject of at least two of Drake's federal trademark registrations (the Athletic D and the Academic D). *See* https://www.linkedin.com/in/danielfinney/details/experience/. Mr. Finney reported on Drake's adoption of its new brand at the time. He was a professional journalist for 27 years before starting a career as an English teacher in the Des Moines Public schools—thus his article for the *Iowa Capital Dispatch* can hardly classified as a "lay person's musings," as Drake insinuates. (ECF 48-1 at 3). While DMACC quoted only part of the article in its pleading, DMACC included the full article in Exhibit T to provide any additional context that may be missing from the Amended Answer. The article is included in DMACC's countercomplaint to defend against Drake's trademark infringement claims and to support DMACC's counterclaims for declaratory judgment by showing there is no likelihood of confusion between the two logos. As Mr. Finney discusses, he can tell the difference between the marks, stating DMACC uses a block-letter "D" "in royal blue, outlined in white with a sky-blue shadow" and Drake uses a block-letter "D" as part of their brand using a darker blue on a white background. Mr. Finney further writes, "I'm not sure what the confusion is. If you're at an event on DMACC's campus, the 'D' you see is probably for

---

[2] Drake's motion challenges paragraphs 66 and 67 and Exhibit S, which are now paragraphs 76 and 77 and Exhibit T in the Amended Complaint and Counterclaims.

DMACC. If you find yourself at the Knapp Center watching a volleyball match or basketball game, the "D" is probably for Drake." (Ex. T).

The article is neither immaterial nor irrelevant to DMACC's defenses or counterclaims. To make out a claim of trademark infringement, Drake must demonstrate that DMACC's use of a similar logo is "likely to cause confusion as to the source of the product among an appreciable number of purchasers." *U.S. Jaycees v. Commodities Magazine*, 661 F. Supp. 1360, 1163 (N.D. Iowa 1987) (*citing Vitek Systems, Inc. v. Abbott Laboratories*, 675 F.2d 190, 192 (8th Cir. 1982); *Squirtco v. Seven-Up Co.*, 628 F.2d 1086, 1090-91 (8th Cir. 1980)). A "mere possibility of confusion is not enough." *U.S. Jaycees*, 661 F. Supp. at 1163. "[T]here must be a substantial likelihood that the public will be confused." *Vitek Systems, Inc.*, 675 F.2d at 192 (quotations omitted). Public commentary, especially commentary from Drake's own former Public Relations Specialist, regarding the likelihood of confusion is pertinent to defending trademark infringement claims and supporting claims for trademark invalidity and non-infringement.

Six factors bear on the "likelihood of confusion" argument: (1) the strength of the trademark; (2) similarity between the trademark and the defendant's mark; (3) competitive proximity of the products on which the respective marks are placed; (4) intent of the alleged infringer to pass off its goods as those of the trademark holder; (5) incidents of actual confusion; and (6) degree of care likely to be exercised by potential customers of the trademark holder. *Cmty. State Bank, Nat'l Ass'n v. Cmty. State Bank*, 758 N.W.2d 520, 527 (Iowa 2008). Mr. Finney's article directly addresses the similarities (or lack thereof) of the marks, the proximity of products with the marks, incidents of actual confusion, and the likely degree of care customers will exercise when consuming the products.

In its brief in support of its Motion to Strike, Drake argues paragraphs 66, 67, and Exhibit S are immaterial to DMACC's claims or defenses and are scandalous. (ECF 48-1 at 3). Public perception of the likelihood of confusion of two marks is obviously not immaterial to DMACC's claims and defenses. *Cmty. State Bank*, 758 N.W.2d at 527 (noting likelihood of confusion as an element of trademark infringement). Nor could Mr. Finney's article fairly be characterized as "scandalous." The Black's Law Dictionary definition provided by Drake states an assertion is scandalous when it is both disgraceful (or defamatory) *and* irrelevant to an action or defense. (ECF 48-1 at 3 n. 1) (emphasis added). *See Neilson v. Union Bank of Cal., N.A.*, 290 F. Supp. 2d 1101, 1152–53 (C.D. Cal. 2003) ("Matter will not be stricken from a pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation; if there is any doubt as to whether under any contingency the matter may raise an issue, the motion may be denied . . . ."). In the *Neilson* case, the court struck paragraphs of the complaint that (1) did not relate to the defendant, or (2) rhetorical questions regarding the defendant's motive ("Why then did the Banks lend Mr. Slatkin the hand he needed? **The Banks' motive: GREED**.") (emphasis in original). Unlike the *Neilson* case cited in Drake's brief in support of its Motion to Strike, the statements made by Mr. Finney are, first, public statements made by individuals *other than DMACC* about Drake, and second, associated with legal and factual issues in this case that are material to the claims and defenses. *Id.*

Paragraphs 76, 77, and Exhibit T are not redundant, immaterial, impertinent, or scandalous and should not be stuck from the Amended Answer and Counterclaims.

B.     **Paragraph 70 and Exhibit I**

DMACC quotes an article by Brett Michael Dykes, a national affairs reporter for *Yahoo! News* at paragraph 40 in its Amended Complaint and Counterclaims.³ DMACC included the full *Yahoo! News* article in Exhibit I and paragraphs 41 and 42 to provide additional context to the cropped screenshot which appears in paragraph 41 of the pleading. The Dykes article contains commentary regarding public perception of Drake's "D+" marketing campaign. The article is included in DMACC's countercomplaint for two important reasons: 1) to show Drake did not use a block letter style D to promote its 2010 campaign and 2) to show there is no likelihood of confusion such that the public attributed the "D+" campaign to DMACC rather than Drake. DMACC's fifth affirmative defense is abandonment of an asserted mark. Non-use of a trademark is an element in the test for trademark abandonment. *Alliant Energy Corp. v. Alltel Corp.*, 344 F. Supp. 2d 1176, 1186 (S.D. Iowa 2004). ("[T]o make a ruling on abandonment, two things must be found: (1) non-use; and (2) intent not to resume use."). "Abandonment generally results in an involuntary forfeiture of rights in a mark." *Id.*

Drake argues paragraph 40 and Exhibit I are not relevant to DMACC's claims and defenses, and are similarly included to mock Drake. (ECF 48-1 at 4). Yet this ignores the actual content of DMACC's claims and defenses. The non-use of the block style letter D and the lack of confusion regarding which institution the campaign was attributed to is material and probative to DMACC's defenses against Drake's allegation of trademark infringement and DMACC's claim for declaratory judgment of non-infringement and invalidity of Drake's trademarks. *See Alliant Energy Corp. v. Alltel Corp.*, 344 F. Supp. 2d at 1186–88 (noting non-use is an element of

---

³ Drake's motion challenges paragraph 69 and Exhibit T, which is now paragraph 40 and Exhibit I in the Amended Complaint and Counterclaims.

trademark abandonment, resulting in forfeiture of rights to a mark); *see Cmty. State Bank*, 758 N.W.2d at 527 (noting relevance of likelihood of confusion to trademark infringement). That Drake does not like the Dyke article is not reason to strike it, given its clear relevance. To DMACC's counterclaims and affirmative defenses. Paragraph 40 and Exhibit I are not redundant, immaterial, impertinent, or scandalous and should not be stuck from the Amended Answer and Counterclaims.

### C. Paragraph 78 and Exhibit U

DMACC includes screenshots of public Facebook comments in paragraph 78 of its Amended Complaint and Counterclaims and in Exhibit U.[4] The Facebook commentary is relevant to defend against Drake's trademark infringement claims and to support DMACC's counterclaims for declaratory judgment by showing there is no likelihood of confusion between the two logos. *Cmty. State Bank*, 758 N.W.2d at 527 ("A trademark has been infringed when the defendant's use of a similar designation will cause a likelihood of confusion among customers.").

It is rare that the public decides to weigh in on whether it views two logos as confusing. This public commentary is indisputable evidence of the likelihood of confusion between the Drake and DMACC logos and is probative and material when determining whether the public is likely to confuse the two brands, making the comments relevant to DMACC's defense against Drake's allegations of trademark infringement and support of DMACC's claims of non-infringement and invalidity. *U.S. Jaycees*, 661 F. Supp. at 1163 ("In order to make out a claim of trademark infringement, plaintiff must demonstrate that defendant's use of a similar [logo] is likely to cause confusion as to the source of the product among an appreciable number of purchasers."). *Vitek*

---

[4] Drake's motion challenges paragraph 71 and Exhibit U, which is now paragraph 78, but still Exhibit U in the Amended Complaint and Counterclaims.

*Systems, Inc.*, 675 F.2d at 192 ("[T]here must be a substantial likelihood that the public will be confused.") Indeed, Drake itself understands the relevance of Facebook comments and other public commentary to the likelihood of confusion analysis—Drake itself acknowledges it cited Facebook comments "pertaining to the announcement of DMACC's Rebrand… because it is probative of the degree and swiftness to which the public associates the Drake Brand and its constituent elements (i.e., a standalone "D" and the Drake Colors) with Drake." ECF 48-01 at 4. Apparently, what's good for Drake is not good for DMACC. Although Drake may not *like* what the Facebook comments say, the public commentary is both probative and material to DMACC's defenses and claims. The Facebook comments directly weigh in on whether the public sees any confusion between the DMACC mark and Drake's marks—with a resounding *no*. The Facebook comments discuss the differences in market. Ex. U, ("[Drake] is not gonna go bankrupt if they miss the sale of 5 tshirts over the course of 10 years because people don't notice the difference."); ("You have way more funding than the junior college! Let them alone!"). They discuss the lack of similarity between the marks. *Id.* ("Everyone knows the difference and if someone doesn't it really doesn't matter."). And they comment on the pervasive nature of "D" marks in post-secondary education. *Id.* ("Dartmouth called…they want their D back."); ("I feel like any college university could use this lettering – it's pretty universal."). In sum—these public comments are *highly* relevant to DMACC's claims and defenses.

The Facebook comments are also not scandalous (nor has Drake attempted to identify how they might be scandalous). But even if they were, the Court should not strike material "from [the] pleading unless it is clear that it can have no possible bearing upon the subject matter of the litigation." *See Neilson*, 290 F. Supp. 2d at 1152–53. Paragraph 78 and Exhibit U are not

9

redundant, immaterial, impertinent, or scandalous and should not be stuck from the Amended Answer and Counterclaims.

## III. CONCLUSION

Drake cannot simply ask for material to be stricken from DMACC's Counterclaims and Answer because Drake does not like what it says. DMACC includes relevant, *public* evidence in its Amended Answer and Counterclaims that support DMACC's allegations that Drake previously stopped using one of the asserted marks, and that there is no likelihood of confusion between DMACC's new logo and any of the Drake marks. DMACC requests the Court deny Drake's Motion to Strike because no paragraphs or exhibits cited by Drake in their Motion to Strike are redundant, immaterial, impertinent, or scandalous.

Respectfully submitted,

Date: September 5, 2024

*/s/ R. Scott Johnson*

R. Scott Johnson (#AT0004007)
Cara S. Donels (#AT0014198)
Erin M. Boggess (#AT0015950)
**FREDRIKSON & BYRON, P.A.**
111 East Grand Avenue, Suite 301
Des Moines, IA 50309-1977
Telephone: (515) 242-8900
E-mail: RSJohnson@fredlaw.com
          CDonels@fredlaw.com
          EBoggess@fredlaw.com

Laura L. Myers (Minn. #0387116)
(admitted *Pro Hac Vice*)
**FREDRIKSON & BYRON, P.A.**
60 South 6th Street, Suite 1500
Minneapolis, MN 55402-4400
Telephone: (612) 492-7000
E-mail: LMyers@fredlaw.com

***Attorneys for Defendants and Counterclaim Plaintiff***

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2024, I electronically filed the ***Defendants'/Counterclaim Plaintiff's Resistance to Plaintiff's Motion to Strike*** with the Clerk of the Court using the CM/ECF system, who in turn sent notice to the following:

Joshua J. Conley, Esq.
  jconley@zarleyconley.com
John D. Gilbertson, Esq.
  jgilbertson@zarleyconley.com
ZARLEYCONLEY PLC
580 Market Street, Suite 101
West Des Moines, IA  50266

*Attorneys for Plaintiff and
Counterclaim Defendant*

                                         */s/ Erica Palmer*
                                         Erica Palmer