IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | | |
|---|---|---|
| DRAKE UNIVERSITY,<br><br>Plaintiff,<br><br>v.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE,<br><br>Defendants.<br><br>DES MOINES AREA COMMUNITY COLLEGE,<br><br>Counterclaimant,<br><br>v.<br><br>DRAKE UNIVERSITY,<br><br>Counterdefendant. | ) | Case No. 4:24-cv-00227-SMR-SBJ<br><br>ORDER ON MOTION TO DISQUALIFY |

On August 13, 2024, Plaintiff Drake University ("Drake") filed a Motion to Disqualify Counsel, asserting that counsel for Defendants Des Moines Area Community College and Des Moines Area Community College Foundation (collectively, "DMACC") has a conflict of interest. A disqualification hearing was held on September 3, 2024 to address that Motion. For the reasons stated below, counsel for DMACC is not disqualified and the case may proceed on its merits.

# I. BACKGROUND

## *A. Procedural Background*

On July 8, 2024, Drake filed this case against Des Moines Area Community College Foundation (the "Foundation") alleging trademark infringement. [ECF No. 1]. Drake filed a motion for preliminary injunction on the same day. [ECF No. 4]. Shortly thereafter, Drake filed an Amended Complaint and amended Motion for Preliminary Injunction, adding Des Moines Area Community College as a Defendant.[1] [ECF Nos. 17, 18]. DMACC has since filed a motion to dismiss the Foundation, as well as an answer and counterclaims. [ECF Nos. 20, 21].

On July 31, 2024, Drake responded with a motion to seal those DMACC filings, citing an "impending motion to disqualify." [ECF No. 24]. The docket entries were sealed temporarily and provisionally, until a determination could be made on the merits of the disqualification issue. [ECF No. 28]. Despite this, Drake had yet to file its Motion to Disqualify as of August 6, 2024. The Court issued an order directing them to do so by August 13, 2024 or the docket would be unsealed. [ECF No. 32]. Drake complied by filing the disqualification motion, as well as a partial motion to dismiss DMACC's counterclaims, and a motion to strike DMACC's answer to the amended complaint. [ECF Nos. 41, 46, 48]. Drake has requested expedited relief and a hearing on the motion for preliminary injunction. [ECF No. 18-1]; *see also* LR 7(c), (i) (setting forth the procedure for oral argument and expedited relief under the Local Rules). A hearing on Drake's Motion to Disqualify was held on September 3, 2024, where both parties were permitted to present evidence and argument on disqualification. Due to the resolution of the disqualification issue, an injunction hearing will be scheduled.

---

[1] On June 11, 2024, Drake filed an amended brief in support of its motion for preliminary injunction with leave of the Court. [ECF No. 12]. The amended brief included a television news report about this case after Drake had filed its initial complaint.

*B. Factual Background*

Drake is suing DMACC for trademark infringement, unfair competition, dilution, and unjust enrichment. The dispute pertains to the use of a blue and white block letter "D." Drake asserts three of its trademarks are being infringed: the Marching Spike, the Academic D, and the Athletic D. These trademarks were registered in 1989, 2008, and 2014 respectively. [ECF Nos. 1-32, 1-33, 1-34]. Drake has employed McKee, Voorhees & Sease ("MVS") as its intellectual property attorneys for 40 years. As such, MVS has been involved in the drafting, prosecution, and maintenance of Drake's trademarks as well as providing general advice about all of Drake's intellectual property.

Attorney R. Scott Johnson worked at MVS from approximately 2000 to 2020. Johnson was listed, along with all other attorneys at MVS, as an "other appointed attorney" on 19 out of 30 Drake trademarks registered at the United States Patent and Trademark Office ("USPTO"), including the three trademarks at issue in the present litigation. [ECF No. 41-12]. Specifically, Johnson's name appears on the trademark applications for the Academic D, the Athletic D, and a maintenance document for the Marching Spike trademark. [ECF No. 41-12].

Johnson is one of several counsel of record for DMACC in the pending litigation and has been a main point of contact for Drake. While at MVS, Johnson was involved in trademark litigation, licensing, and prosecution. [ECF 49-1 ¶¶ 3–5]. He was the chair of the litigation practice group, was a Certified Licensing Professional[2], and served on the MVS Management Committee. [ECF No. 41-2 at 1; 49-1 ¶ 8]. Sowatzke also did some trademark work at MVS, but

[2] The designation of Certified Licensing Professional is a recognized credential for individuals specializing in intellectual property and licensing. [ECF No. 41-6 at 1].

primarily worked in patent law. [ECF No. 49-11 ¶¶ 5–6]. Both attorneys left MVS to work at Fredrikson and Byron ("Fredrikson")—Johnson in 2020 and Sowatzke in 2021.[3] [ECF No. 49-1].

Before filing its initial complaint, Drake contacted Johnson and requested that he and Fredrikson withdraw from representation of DMACC. [ECF No. 3-1]. Johnson disagreed with Drake's request and engaged in pre-lawsuit communication back and forth on the disqualification issue. Each party contacted MVS regarding billing records and other information to help determine whether Johnson provided services on any Drake-related trademark matter during his time at the firm. MVS told the schools that because it represents both Drake and DMACC in unrelated matters, it could not take any action that would advantage or disadvantage either client. [ECF Nos. 49-6 at 2; 50-1 at 1].

## II. DISCUSSION

### *A. Legal Standards*

Whether an attorney should be disqualified from a case is within the Court's sound discretion. *Petrovic v. Amoco Oil Co*., 200 F.3d 1140, 1154 (8th Cir. 1999); *see also Engineered Prod. Co. v. Donaldson Co.,* 290 F. Supp. 2d 974, 980 (N.D. Iowa 2003). "While local rules and state standards are relevant, motions to disqualify are substantive motions affecting the rights of the parties, and are to be determined applying standards developed under federal law." *Engineered Prod. Co.*, 290 F. Supp. 2d at 980. Under the Local Rules, the Iowa Rules of Professional Conduct apply to proceedings before the Court. LR 83(f)(1). "The Rules provide the starting point for evaluating whether disqualification is warranted." *Deere & Co. and John Deere Shared Servs.,*

---

[3] Attorney Tina Yin Sowatzke worked at MVS from 2018 to 2021 and was listed as an "other appointed attorney" on two of the contested trademark filings with the USPTO. [ECF Nos. 49 at 8, 49-11 ¶ 4]. She was listed on the filings for maintenance of the Marching Spike trademark as well as the Athletic D application. [ECF No. 41-12]. Sowatzke left Fredrikson in June 2024 and never worked on the present litigation. [ECF 49-11 ¶ 2, ¶ 6].

*Inc., v. Kinze Mfg., Inc. & Ag Leader Tech. Inc.,* No. 420CV00389RGESHL, 2021 WL 5334212, at *5 (S.D. Iowa Oct. 1, 2021).

Courts should be vigilant when reviewing a motion to disqualify to ensure that the specter of disqualification is not being wielded by opposing counsel for strategic reasons. *Id*. at 4. A party's right to choose their own counsel is "an important public right and a vital freedom that should be preserved," but a court must balance that right against the fundamental requirement of high ethical standards in the interest of public trust and integrity of the court. *Id*. (quoting *Macheca Transp. Co. v. Phila. Indem. Co.,* 463 F.3d 827, 833 (8th Cir. 2006)). The "extreme measure of disqualifying a party's counsel of choice should be imposed only when absolutely necessary." *Macheca Transp. Co.,* 463 F.3d at 833. "Doubts should be resolved in favor of disqualification, but it is the burden of the party arguing for disqualification to demonstrate clearly that continuing representation would be impermissible." *Gen. Motors LLC v. Leep Chevrolet*, *LLC*, No. 3:13-cv-00006-JEG-CFB, 2013 WL 12143977, at *2 (S.D. Iowa Mar. 27, 2013) (quoting *Engineered Prod. Co.*, 290 F. Supp. 2d at 980).

*B. Concurrent Conflict*

Drake argues that Johnson has a conflict of interest necessitating his disqualification from the case for multiple reasons. It first asserts that he has a concurrent conflict of interest because he is currently representing Drake. Drake makes this claim on the grounds that it has never received notice that he has withdrawn from his representation as Drake's counsel, which was evidenced by his name appearing on several of Drake's trademark documents. As such, they assert he is currently representing both Drake and DMACC. [ECF No. 41-12].

The capaciousness of Drake's claims is highlighted by the fact that the names of approximately fifteen other attorneys also appear on various documents. *Id*. DMACC responds

that Johnson never sent notice of withdrawal because he never represented Drake in the first place. This is because it was MVS's standard practice to list every attorney at the firm as other attorneys in trademark filings before the USPTO. [ECF No. 49-1 ¶ 29]. For the reasons discussed below, Drake's position is untenable. There is no concurrent conflict of interest because neither Johnson nor Sowatzke currently represent Drake.

The authority to represent a party before the USPTO is governed by the Code of Federal Regulations, which designates the procedure for recognition of representation before the office. An attorney receives authority to act on behalf of a trademark applicant when they are designated via a power of attorney executed by the applicant. 37 C.F.R. § 2.17(b). A designated practitioner, through the power of attorney, then has authority to sign an associate power of attorney to appoint other qualified practitioners. *Id*. § 2.17(c). The USPTO ceases to recognize the power of attorney for a pending application once the mark registers, ownership changes, or the application is abandoned. *Id*. § 2.17(g)(1). For an already-registered mark, the recognition ends "upon acceptance or final rejection of the filing." *Id*. § 2.17(g)(2). Drake's reliance on the USPTO designation is not sufficient to show a concurrent conflict of interest for several reasons.

First, the authority to represent a party before the USPTO does not by itself trigger an attorney-client relationship. An attorney-client relationship is created when "(1) a person sought advice or assistance from an attorney, (2) the advice or assistance sought pertained to matters within the attorney's professional competence, and (3) the attorney expressly or impliedly agreed to give or actually gave the desired advice or assistance." *NuStar Farms, LLC v. Zylstra*, 880 N.W.2d 478, 483 (Iowa 2016) (citation omitted). Drake could not identify anything besides the designations in the USPTO filings which indicates that it understood itself to have an attorney-

client relationship with Johnson.[4] As Drake conceded, the USPTO's recognition does not itself create an attorney-client relationship. Drake has not established that it had an attorney-client relationship with Johnson underlying the trademark filings. The school contends that it "relied upon MVS as a whole for legal services," but such a reliance is not sufficient to create an attorney-client relationship as to every attorney at the firm. Representation arises from an attorney-client relationship specifically and the rules contemplate that dynamic within a firm with certain provisions such as duties to former clients and the imputation of a conflict. *See* I.R.P.C. 32:1.9(b); I.R.P.C. 32:1.10(a). Drake may have had an attorney-client relationship with various attorneys at MVS from whom it sought advice or assistance pertaining to its trademark applications, but nothing in the record demonstrates that Johnson and Sowatzke were among them.

Second, even if it were representation for Johnson's name to simply appear on the filings, that representation would have terminated when recognition terminated with the USPTO. Those filings are the only evidence identified by Drake that indicated it was represented by Johnson or Sowatzke in the first place. The trademark filings with their names on them were all accepted by the USPTO by February 2021—at that point the recognition of their representation terminated. [ECF No. 49-5 at 2]; 37 C.F.R. § 2.17(g).

---

[4] When asked about evidence to demonstrate such an understanding at the hearing, Drake stated that Victoria Payseur, on behalf of Drake, specifically appointed Johnson to represent the school in those trademark proceedings, pointing to the trademark application for the Academic D. [ECF No. 41-12 at 13]. However, that is a filing for the USPTO process in which 17 attorneys from MVS were appointed "to submit this application on behalf of the applicant." To the extent that these filings alone could create an attorney-client relationship, they would do so as to all attorneys listed, not Johnson specifically. Additionally, these filings would have clearly limited the scope of that representation to the submission of the applicable trademark filings. I.R.P.C. 32:1.2. Any such representation would have terminated with the recognition of the representation by the USPTO. 37 C.F.R. § 2.17(g)(1).

"The point at which the attorney-client relationship . . . ends is further defined by the rule that a lawyer bears responsibility for only those legal matters he or she is engaged to discharge." *Iowa Supreme Ct. Att'y Disciplinary Bd. v. Netti*, 797 N.W.2d 591, 599 (Iowa 2011) (quoting C*omm. on Pro. Ethics & Conduct of the Iowa State Bar Ass'n v. Wunschel*, 461 N.W.2d 840, 845 (Iowa 1990)). To the extent that Johnson or Sowatzke were engaged at all by Drake, that engagement ended when the USPTO fillings were accepted. The rules of professional responsibility indicate that when terminating representation, an attorney "shall take steps to the extent reasonably practicable to protect a client's interest, such as giving reasonable notice to the client." I.R.P.C. 32:1.16(d). It does not follow that a failure to provide such notice creates an attorney-client relationship in perpetuity. This is especially illogical when any potential representation is severely limited in scope, terminates naturally, and there has been no communication or exchange to indicate a continued understanding of representation in years. There is no concurrent conflict of interest in the present litigation which would require disqualification because neither Johnson nor Sowatzke ever represented Drake and certainly do not do so now.[5]

*C. Duties to Former Clients*

Drake contends that Johnson may not represent DMACC in the present litigation because MVS represented Drake in the registration and maintenance of the disputed trademarks. Iowa Rule of Professional Responsibility 32:1.9(b) instructs:

[5] Drake also asserts that Johnson and Sowatzke have duties to Drake as a former client from their representation of the school such that they cannot now represent DMACC as materially adverse in a substantially related matter. I.R.P.C. 32:1.9(a). For the reasons already discussed, neither Johnson nor Sowatzke formerly represented Drake and as such are not prohibited from representing DMACC under this rule.

> (b) A lawyer shall not knowingly represent a person in the same or a substantially related matter in which a firm with which the lawyer formerly was associated had previously represented a client
>
> (1) whose interests are materially adverse to that person, and
>
> (2) about whom the lawyer had acquired information protected by rules 32:1.6 and 32:1.9(c) that is material to the matter, unless the former client gives informed consent, confirmed in writing.[6]

To determine whether a conflict exists the Court must determine if the prior representation (1) was in a substantially related matter, (2) applied to materially adverse interests, and (3) resulted in the lawyer obtaining actual knowledge of confidential information. *See* I.R.P.C. 32:1.9(b) cmt. 5. Such a determination would establish a conflict of interest requiring disqualification of counsel.

The Iowa Supreme Court considers three factors to determine if there is a substantial relationship between two legal matters for the purposes of a conflict of interest with a former client. "The factors are: '(1) the nature and scope of the prior representation; (2) the nature of the present lawsuit; and (3) whether the client might have disclosed a confidence to [its] attorney in the prior representation which could be relevant to the present action.'" *Deere & Co..,* 2021 WL 5334212, at *6 (quoting *NuStar Farms, LLC*, 880 N.W.2d at 485).

MVS has represented Drake in all of its intellectual property matters for the past 40 years. [ECF No. 41-22 ¶ 10]. Drake contends that MVS participated in the "drafting, prosecution, and maintenance of all Drake's trademarks," including the exact marks at issue in the present litigation. *Id.* ¶ 11. Drake avers that MVS provides them "legal opinions and guidance regarding various intellectual property matters, including due diligence, procurement, maintenance,

[6] Rule 32:1.6 dictates that information relating to the representation of a client remain confidential and 32:1.9(c) requires an attorney not to use such information to the disadvantage of a former client. I.R.P.C. 32:1.6; 32:1.9(c).

commercialization (e.g., licensing), litigation assessments, and coordinating prospective litigations, among a variety of other legal tasks." *Id*. ¶ 14.

The record clearly demonstrates that MVS's representation of Drake has been both comprehensive in nature and expansive in scope. Additionally, while MVS assisted in registering and protecting the three trademarks contested here, Johnson now represents DMACC, who takes the position that those trademarks are invalid. [ECF Nos. 21 at 33; 57]. The nature of the present lawsuit is directly related to MVS's prior representation of Drake. Because of this, it is likely that Drake would have revealed some confidential information to MVS during the course of their relationship which could be relevant to DMACC in the current litigation. Specifically, Drake contends that it has provided MVS confidential business information including information about how Drake's trademarks were being used. At the hearing, Drake clarified the type of relevant information disclosed could include information about the strength of certain elements of potential trademarks as well as use and non-use, reflecting on the registrability of such trademarks.

These factors favor a finding that MVS's prior representation and the current litigation are substantially related. *See Deere & Co.*,2021 WL 5334212, at *8. The similarities between the prior and present representation demonstrate that this is the type of "switching sides" the rules contemplate. *See id*. For these same reasons, it is also clear that the prior and present interests are materially adverse. DMACC makes no assertion to the contrary. Rather, it focuses on the actual knowledge requirement.

DMACC argues that disqualification is not warranted because Johnson never acquired actual knowledge of confidential information which would materially assist in the present dispute. The comments to rule 32:1.9(b) clarify that a conflict exists only "when the lawyer involved has actual knowledge of information protected." I.R.P.C. 32:1.9(b) cmt. 5. Therefore, even if other

members of MVS acquired relevant knowledge about Drake's trademarks, that cannot be imputed to Johnson to disqualify him— *he* must have had actual knowledge. *See Deere & Co.*,2021 WL 5334212, at *9. The comments further explain that in certain situations, there is a presumption that an attorney would have actual knowledge of disclosed confidences. *See* I.R.P.C. 32:1.9(b) cmt. 6.

Whether a party has actual knowledge warranting disqualification "depends on a situation's particular facts, aided by inferences, deductions, or working presumptions that reasonably may be made about the way in which lawyers work together." *Id*. If lawyers in a firm have general access to client files and collaborate or participate in discussions of their cases with each other, it is presumed that any such lawyer is "privy to all information about all the firm's clients." *Id*. However, if an attorney would not have had general access to files or broadly participated in client discussions, there is an inference that the attorney only has information about their own clients. *Id*. Drake alleged, and Johnson admitted, at the disqualification hearing that had he opted to seek such information out, Johnson would have had general access to all client files and confidential information at MVS. Therefore, there is a presumption that Johnson would have had actual knowledge of material information in the present suit.

Drake relies heavily on this presumption, presenting no evidence other than the USPTO filings that indicate Johnson had any involvement with Drake's trademarks while at MVS. Meanwhile, Johnson has sworn in his affidavits that he does not recall ever having worked on Drake's trademark matters.[7] [ECF No. 49-1 ¶ 11]. At the hearing, Johnson more directly stated that as far as he was aware, he never obtained actual knowledge of such protected information. As

[7] Sowatzke has provided similar sworn statements which the Court finds credible for the same reasons. [ECF No. 49-11 ¶ 9].

demonstrated in *Deere & Co*., the presumption that confidences were disclosed can be overcome by sufficient evidence to the contrary. 2021 WL 5334212, at *9 (holding that "the alleged availability of confidential and privileged information" to the attorney while at his prior firm was insufficient to show he possessed actual knowledge given the scope of his work and the record which indicated otherwise).[8] When viewed in conjunction with a complete lack of evidence that Johnson would have obtained such knowledge, the Court finds Johnson's assertions convincing. He has effectively rebutted the presumption that he had actual knowledge through his testimony and professional representations to the contrary. Johnson does not have a conflict that requires his disqualification. I.R.P.C. 32:1.9(b).[9]

## III. CONCLUSION

Both Drake and DMACC ask the Court to award fees they incurred addressing disqualification. The Court finds that an award of fees is not warranted. Each party shall bear their own costs in bringing and defending the Motion to Disqualify. For the reasons stated above, there is no conflict of interest and disqualification is not necessary. Drake's Motion to Disqualify Counsel is DENIED. [ECF No. 41]. The Clerk of Court is directed to unseal docket entries 20,

---

[8] The Court notes that while it was very much aware of *Deere & Co.* due to its similar facts, recency, and relevant application to the current matter, it found counsel's argument—that Drake did not cite the case because it was attempting to remain within page limitations—to be unconvincing.

[9] Drake argues that the entire Fredrikson firm should be disqualified because Johnson and Sowatzke's conflicts have imputed to each attorney at the firm. "While lawyers are associated in a firm, none of them shall knowingly represent a client when any one of them practicing alone would be prohibited from doing so by rule 32:1.7 or 32:1.9." I.R.P.C. 32:1.10(a). However, there is no conflict of interest for either Johnson or Sowatzke and as such, no imputation which requires disqualification of Fredrikson as a whole. *See Deere & Co*., 2021 WL 5334212, at *9.

21, 23, and 52. An injunction hearing shall be held in person at the Des Moines Courthouse, Room 145, 123 East Walnut Street at **9:00 am on Tuesday, September 24, 2024.**

IT IS SO ORDERED.

Dated this 9th day of September, 2024.

STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT