IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA CENTRAL DIVISION

| | |
|---|---|
| DRAKE UNIVERSITY,<br>    Plaintiff,<br><br>vs.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE<br>    Defendants. | No. 4:24-cv-00227<br><br>**REPLY TO MOTION TO DISMISS COUNTERCLAIM PLAINTIFFS' THIRD AND FOURTH CLAIMS** |
| DES MOINES AREA COMMUNITY COLLEGE,<br>    Counterclaim Plaintiff,<br><br>vs.<br><br>DRAKE UNIVERSITY,<br>    Counterclaim Defendant. | |

Joshua J. Conley
John D. Gilbertson
ZARLEYCONLEY PLC
West Des Moines, Iowa
for DRAKE UNIVERSITY

DMACC has removed its fourth claim for unfair competition, which renders this Motion moot with respect to that claim. While DMACC adds allegations to its third claim for defamation, they fail to cure the deficiencies raised in the present motion. The claim must be dismissed.

## I. THIS MOTION REMAINS RIPE

An amendment to a complaint does not automatically moot any pending motions to dismiss; the amendment needs to cure the deficiencies. *Shipp v. Oskaloosa Cmty. Sch. Dist.*, 2018 WL 8665815 at *5 (S.D. Iowa May 8, 2018).

> [D]efendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court simply may consider the motion as being addressed to the amended pleading. To hold otherwise would exalt form over substance.

*Batcher v. Wells Fargo Bank, N.A.*, No. 2019 WL 13299347, at *3 (S.D. Iowa Apr. 29, 2019) citing 6 Charles A. Wright et al., *Federal Practice and Procedure* § 1476 (3d ed. 2013). In *Batcher*, this Court held a motion to dismiss applied with equal force to an amended pleading when the moving party responded to the changes in the pleading and gave notice that the arguments apply equally. *Id*. The amendments to DMACC's claim for defamation do not obviate the basis for the present motion, which applies with equal force to DMACC's Amended Answer & Counterclaims.[1]

## II. DEFAMATION *PER SE* IS UNAVAILABLE

"[Defamation] *per se* is available only when a private figure plaintiff sues a nonmedia defendant for certain kinds of defamatory statements that do not concern a matter of public importance." *Galanakis v. City of Newton, Iowa*, 2024 WL 606235, at *18 (S.D. Iowa Feb. 8, 2024) (alteration in original) (citing *Bierman v. Weier*, 826 N.W.2d 436, 448 (Iowa 2013)). The

---

[1] A Rule 12(b) motion that challenges less than all of the claims in the pleading "extends the time to answer as to all claims in the pleading." *Ideal Instruments, Inc. v. Rivard Instruments, Inc.*, 434 F.Supp.2d 598, 639–40 (N.D. Iowa 2006).

"private plaintiff, private concern" requirement of defamation *per se* serves the constitutional goal of assuring "unfettered interchange of ideas for the bringing about of political and social changes desired by people." *Bierman*, 826 N.W.2d at 462 (citations omitted). "*[P]urely private* disputes such as a lawsuit in which the impact is *limited primarily to the parties*" are insufficient to be considered a public concern. *Id*. (emphasis added)

DMACC is a school corporation organized under Iowa Code Chapter 260C, which states Community Colleges "formed under the provisions of this chapter shall be a body politic as a school corporation for the purpose of exercising … such other powers as are incident to *public* corporation of like character…" Dkt. 20-1, at 2, n. 2 (citing Iowa Code § 260C.16 (2024)) (emphasis added).[2] As a public counter-plaintiff, defamation *per se* is unavailable.

The allegedly defamatory statements (as best understood) concern the present litigation, which is not a purely private dispute. The brands underlying this action impact hundreds of thousands of individuals who are (or were) students, who benefit from the goodwill and prestige associated with their respective institutions.

DMACC argues in resistance that the *per se* nature of its claim is alleged in paragraphs 83 and 90 of its amended pleading. Dkt. 53, at 3. Paragraph 83 is an allegation of trademark invalidity, which does not relate in any way to defamation. Dkt. 52, at 57–58 ¶ 83. Paragraph 90 is a nonspecific, conclusory allegation that a misrepresentation has occurred, which is insufficient. Dkt. 52, at 58 ¶ 90. *See Ashcroft v. Iqbal*, 556 U.S. 662, 663–64 (2009) ("the tenet that a court must accept a complainant's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements.").

As a public counter-plaintiff, DMACC's allegations of defamation *per se* on a matter of

---

[2] This Circuit allows taking of "judicial notice of proceedings in other courts if they relate directly to the matters at issue." *United States v. Evans*, 690 F.3d 940, 943 (8th Cir. 2012) (quoting *Conforti v. United States*, 74 F.3d 838, 840 (8th Cir. 1996)).

public concern cannot be sustained and the presumptions thereunder are not available.

### III.    THE *IN HAEC VERBA* PLEADING STANDARD HAS NOT BEEN MET

"[T]he burden to derive defamatory statements should certainly not be incurred upon the courts or defendants." *Lloyd v. Drake Univ.*, 2003 WL 25493343, at *8 (Iowa Dist. Ct., June 11, 2003)  DMACC must "plead the *exact* words of their libel, or face dismissal." *Id*.

DMACC alleges, "On July 11, 2024, Drake falsely wrote of and concerning DMACC, stating to Drake's alumni (Ex. J) and the press that DMACC's logo was a stand alone 'D' and that Drake owned trademark rights in a block style 'D' separate from any use on a bulldog."  Dkt. 52, at 58 ¶ 87.  This allegation—DMACC's only attempt at specificity—fails on multiple fronts.

The allegation incorporates by reference Exhibit J of DMACC's counterclaim (Dkt. 52-10), which is Drake's Brand Standards & Style Guide that makes no mention of DMACC.  *See Noble Sys. Corp. v. Alorica Cent., LLC*, 543 F.3d 978, 982 (8th Cir. 2008) (cleaned up) (citation omitted) (permitting consideration of materials necessarily embraced by the pleadings). Presuming the intended exhibit was Exhibit K (Dkt. 52-11), the email's contents do not comport with DMACC's allegations.  Drake sent the email to alumni, not press.  Dkt. 52-11.  The phrase "DMACC's logo was a standalone 'D'" is not present in the email.  *Id*.  Instead, the email reports the existence of, and Drake's basis for, this litigation, i.e., to remedy "what we believe to be clear violations of trademark law and unfair competition." *Id*.  Also absent is any statement that "Drake owned trademark rights in a block style 'D' separate from any use on a bulldog" as DMACC alleges. *Id*.  DMACC's failure to identify any actual string of words is fatal.  Accordingly, the veracity of DMACC's allegation at paragraph 87 is undermined by its own pleading exhibits.

DMACC asserts that paragraph 85 of the Amended Countercomplaint properly alleges the first and third elements of defamation, i.e., (1) publication of a statement (3) concerning DMACC. Dkt. 53, at 3.  The referenced paragraph states only "DMACC re-alleges and incorporates by

reference the allegations contained in the preceding paragraphs of its Answer and Counterclaims as if stated herein." Dkt. 52, at 58 ¶ 85. This plainly fails the *in haec verba* pleading standard and improperly places the burden on Drake and the Court to derive which statements among the 360 preceding paragraphs are defamatory. *Lloyd*, 2003 WL 25493343, at *8.

## IV. FALSITY AND MALICIOUS INTENT ARE NOT SUFFICIENTLY PLEAD

Without the presumptions of defamation *per se*, a claim for defamation *per quod* requires pleading falsity and actual malice. *Id*. at 9–10. The standard for proving malice "is a lofty one, which requires knowing the falsity of the publication or exhibiting reckless disregard for the truth." *Id*. at 9. Malice also requires "ill will, hatred, the desire to do another harm, or wrongful motive." *Id*. Reliance on "sources whose credibility has not been challenged" works against a statement being made with malice. *Id*. at 10. Truth is a complete defense against defamation. *Hovery v. Iowa State Daily Pub. Bd., Inc.*, 372 N.W.2d 253, 255 (Iowa 1985).[3]

DMACC's amended allegations are, at best, "threadbare recitals of a cause of action's elements, supported by mere conclusory statements;" this fails to pass muster under the plausibility standard. *Iqbal*, 556 U.S. at 663–64. The claim is further undermined by the truthful nature of the email in Exhibit K, which is presumably the communication DMACC complains of. As noted, Drake never states DMACC's logo was a standalone "D" as alleged. *Cf*. Dkt. 52, at 58 ¶ 87; Dkt. 52-11, at 3–4. The email is a report to alumni that conveys the reasons Drake *believes* litigation was necessary and the contents of the Complaint initiating this litigation. *Id*.

Should the image embedded in the email be given credence based on DMACC's original claim, malicious and falsity are absent there as well. The caption to the image states, "Image credit Iowa Capital Dispatch using elements from U.S. District Court exhibits." Dkt. 52-11, at 2; *see*

---

[3] The Court is allowed to draw reasonable inferences as well as rely upon the its experience and common sense. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

*also* Dkt. 46-3 (Iowa Capital Dispatch article). The image was arranged by a third-party whose credibility is not challenged. *See Lloyd*, 2003 WL 25493343, at *10.

The imagery related to DMACC within the picture of Exhibit K is accurate, especially at the time the email was sent to alumni. The DMACC Seal in the background is accurate, which DMACC acknowledges. *Cf.* Dkt. 17, at 39 ¶ 162; Dkt. 52, at 24 ¶ 162. The plush dog was an item made available through the DMACC Bookstore. *See* Dkt. 52 at 40, n. 3 (acknowledging goods were removed "[as] of the date of [the original] Answer and Counterclaim" dated July 31, 2024––after the email was sent). A standalone "D" uncoupled from "DMACC" was, at the time the email was sent, in use by DMACC. *See* Dkt. 30-1, at 3 ¶ 15 (DMACC's Director of Marketing and Public Relations, Todd Jones, declaring DMACC was using the "standalone 'D' from the DMACC Logo" including as the "logo on the basketball court."). In fact, the DMACC "D" continues to be used without coupling to "DMACC." *See* Dkt. 38-3. Both DMACC's resistance and Amended Answer fail to rebut these deficiencies.

DMACC argues that the second element of defamation, i.e., the statement is defamatory, is alleged in paragraphs 86–88. Dkt. 53, at 3. Paragraph 86 refers only to the fact that DMACC is an educational institution. Dkt. 52, at 58. Paragraph 87 blanketly alleges that the ambiguous statement(s) referred to in the allegation are false, and paragraph 88 alleges in a conclusory and yet ambiguous fashion that "Drake's communications included false and/or defamatory statements." Dkt. 52, at 58. These are threadbare recitals that do not meet the pleading standard.

DMACC has failed to go beyond mere recitation of the elements of falsity and malice required to allege a statement is defamatory. Common sense and the relevant case law compel a conclusion that Drake's statements are truthful and not defamatory, requiring grant of this Motion.

## V.  DMACC'S CLAIM RELIES UPON STATEMENTS NOT CONCERNING DMACC

Defamation relates to statements concerning the complaining party. *Taggert v. Drake*

*Univ.*, 549 N.W.2d 796, 802 (Iowa 1996).  In its counterclaim, DMACC refers to statements related to the scope of *Drake's* intellectual property rights.  Dkt. 52, at 58 ¶¶ 87–91.  Such statements cannot be relied upon to sustain a claim for defamation.

## VI.   SPECIAL DAMAGES ARE NOT PROPERLY PLED

When pleading defamation *per quod*, special damages must be alleged with particularity, certainty, and precision.  *Lloyd*, 2003 WL 25493343, at *10 (citing 50 Am. Jur. 2d *Libel & Slander* ¶ 451 (1993)); *Erick Bowman Remedy Co. v. Jensen Salsbery Labs.*, 17 F.2d 255, 259 (8th Cir. 1926).  "A general allegation of loss of patronage in a gross amount and consequent loss of profits is not sufficient as an averment for special damages." *Lloyd*, 2003 WL 25493343, at *10 (quoting *Shaw Cleaners & Dyers v. Des Moines Dress Club*, 245 N.W. 231, 235 (Iowa 1933).  Rather, the names of the customers must be set forth in the pleading or the lost profits must be stated by showing figures showing the loss suffered.  *Erick Bowman*, 17 F.2d at 259.

For damages, the amended counterclaim alleges (1) "DMACC was defamed and damaged in name, reputation, and business" and (2) "DMACC also incurred costs, expenses, counsel fees, loss of time and inconvenience in bringing this action." Dkt. 52, at 58 ¶¶ 92, 93.  Neither allegation is particular, certain, or precise.  With respect to the latter, damages at the pleading stage must arise from the defendants' alleged conduct, not plaintiff's efforts to redress it.  *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 107 (1998).

## VII.   CONCLUSION

For the foregoing reasons and those outlined in Drake's motion and principal brief, Drake requests DMACC's third claim for defamation be dismissed from its Amended Answer, Affirmative Defenses, and Counterclaims (Dkt. 52, at 58 ¶¶ 85–94).

Drake also requests the Court require opposing counsel to "satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred" in bringing the present motion. 28 U.S.C.

7

§ 1927. The Eighth Circuit has indicated Section 1927 requires a finding of objectively unreasonable behavior and a finding of bad faith. *NAACP Special Contribution Fund v. Atkins*, 908 F.2d 336, 340 (8th Cir. 1990). Sanctions may be imposed where the attorney's conduct "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *Boyd Jones Constr. Co. v. XTL, Inc.*, 2018 WL 6380777, at *2 (S.D. Iowa Nov. 9, 2018) (citing *Tenkku v. Normandy Bank*, 348 F.3d 737, 743 (8th Cir. 2003).

Here, DMACC's counterclaims for defamation and unfair competition are and were objectively meritless. Additionally, Dockets 52 and 53 are punctuated with errors which unnecessarily complicate the issues underlying this motion and suggest the survival of the defamation claim is of limited concern. DMACC also filed its Amended Answer on the public docket despite being ordered to file its original Answer under seal. When the issue was raised by Drake, DMACC's counsel stated the public filing was in error, yet refused to move the Court to seal, and objected to Drake moving to do so. Exhibit 4. DMACC further elected not to provide a redlined-version of its 61-page Amended Answer despite Local Rule 15 urging counsel to do so, even though Drake so provided when filing its Amended Complaint, Amended Motion for Preliminary Injunction, and Amended Brief in support thereof. Dkt 15 and subparts. Viewed objectively and in total, the foregoing suggests DMACC has acted intentionally to needlessly multiply these proceedings and maintain frivolous claims. Drake thus respectfully requests the Court to order corrective action consistent with 28 U.S.C. § 1927.

                                         Respectfully submitted,

Dated: September 10, 2024                **ZARLEYCONLEY PLC**

                              By:   /s/Joshua J. Conley
                                            Joshua J. Conley, AT0011828
                                            John D. Gilbertson, AT0014515
                                            580 Market Street, Suite 101
                                            West Des Moines, IA 50266
                                            Telephone:  (515) 558-0200
                                            Facsimile:   (515) 558-7790
                                            jconley@zarleyconley.com
                                            jgilbertson@zarleyconley.com
                                            **ATTORNEYS FOR PLAINTIFF & COUNTERCLAIM DEFENDANT**