IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA CENTRAL DIVISION

| | |
|---|---|
| DRAKE UNIVERSITY,<br>    Plaintiff,<br><br>vs.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE<br>    Defendants. | No. 4:24-cv-00227<br><br>**REPLY TO PLAINTIFF'S MOTION TO STRIKE (DKT. 48)** |
| DES MOINES AREA COMMUNITY COLLEGE,<br>    Counterclaim Plaintiff,<br><br>vs.<br><br>DRAKE UNIVERSITY,<br>    Counterclaim Defendant. | |

 

 

John D. Gilbertson
Joshua J. Conley
ZARLEYCONLEY PLC
West Des Moines, Iowa
for DRAKE UNIVERSITY

## I.   ARGUMENT

### A.   The Motion is Not Untimely

Fed. R. Civ. P. 12(f)(2) allows striking portions of a pleading before responding, or if a response is not allowed, within 21 days of service. When the motion is for an answer with counterclaims, the motion must be filed before a responsive pleading; not the 21-day deadline. *Belmont v. Medicredit, Inc.*, 2018 WL 11491459, at *1 (W.D. Mo. Oct. 26, 2018). A motion to dismiss is not a responsive pleading. *Winfrey v. Brewer*, 570 F.2d 761, 764 (8th Cir. 1978). Regardless, under Rule 12(f)(1), the Court may consider the motion, even if it is untimely. *Kettler v. Metro. St. Louis Sewer Dist.*, 2023 WL 3223843, at *2 (E.D. Mo. May 3, 2023).

Drake filed a Motion to Dismiss DMACC's third and fourth counterclaims. Dkt. 46. Drake has not filed a responsive pleading to DMACC's original Answer, Affirmative Defenses, and Counterclaims ("Answer") (Dkt. 21), or to DMACC's Amended Answer (Dkt. 52). Thus, the present motion is timely. Even if it were not, the Court may still act.

### B.   This Motion Remains Ripe

"As a general rule, a defendant need not file a new Rule 12 motion merely because the plaintiff amended his pleading while the defendant's motion was pending." *DeVary v. Countrywide Home Loans, Inc.*, 701 F. Supp. 2d 1096, 1100 (D. Minn. 2010). If the defects raised in the motion remain in the amended pleading, denying a motion as moot "would exalt form over substance." 6 Charles A. Wright et al., *Federal Practice and Procedure* § 1476 (3d ed. 2013) (discussing implications of amended pleading on motion to dismiss).

DMACC asserts its Amended Answer renders this motion moot. The Amended Answer retains all material objected to in the present motion. *See* Dkt. 56, at 4 n. 1 (noting new location of paragraphs 66–67 and associated exhibit); Dkt. 56, at 7 n. 3 (noting new location of paragraph 69 and associated exhibit); Dkt. 56, at 8 (noting new location of paragraph 71 and associated

exhibit). DMACC's Amended Answer does not correct the defects Drake seeks to strike. DMACC simply changed their locations, and rather than address them directly, instead explains the relevance of *other* portions of the exhibits from which those defects come, but which do not appear on the face of the pleading. In any event, the relief sought by Drake applies equally to the Amended Answer. Dkt. 48, at 3 ¶ 9.

### C. The Finney Article Excerpts (Paragraphs 76–77)

DMACC insincerely contends that the article by Daniel P. Finney is highly relevant to four of the six likelihood of confusion factors. Dkt. 56, at 5. If true, it stands to reason DMACC would have mentioned the article in its preliminary injunction resistance, which addressed those factors in depth and was filed the same day as its Answer. Yet despite ample space (43 pages), DMACC never mentions it. *See generally* Dkt. 30.

Moreover, the two portions of the article which DMACC cites in its resistance to *this* motion are not recited in the pleading itself beyond Exhibit T—i.e., differences in shades of blue (Dkt. 56, at 4) and a layman's perspective on what constitutes confusion (Dkt. 56, at 4–5). These same allegations are made by DMACC repeatedly in its Amended Answer. *See, e.g.,* Dkt. 52 at p. 15, ¶¶ 105, 107; p. 18 ¶¶ 136–40, p. 21 ¶¶ 178–79, n. 3; p. 32 ¶¶ 18, 25, p. 37 ¶ 35. Accordingly, Mr. Finney's statements found only in Exhibit T are, at best, redundant.

Only the article's inflammatory portions[1] are included in the Amended Answer, which indicates the article's inclusion is due to its capacity to provoke rather than provide meaningful factual allegations. Such redundant, irrelevant, immaterial, and scandalous material should be stricken.

---

[1] Dkt. 48-2, at 2 (Des Moines Register reporting on the Answer and referring to Mr. Finney's as "mocking Drake").

### D. The Dykes Article Excerpts (Paragraphs 40–41)

DMACC's feigned arguments regarding the Dykes article neatly illustrate its unprincipled approach to these proceedings. DMACC contends that the Dykes article is "material and probative" to the issues of (1) likelihood of confusion, and (2) abandonment. Dkt. 56, at 7. With respect to the former, like the Finney article, the Dykes article appears nowhere in DMACC's preliminary injunction resistance, a document which was drafted for the sole purpose of rebutting Drake's likelihood of confusion claims. Moreover, DMACC was not using its standalone D when the article published over a decade ago, so the article is immaterial to a *lack* of confusion as DMACC argues. This severely undermines the article's relevance to the issue of confusion, and even if it could be considered relevant, it would be redundant given the other allegations denying confusion in the Amended Answer.

Regarding abandonment, DMACC alleges that the non-use of a block-style "D" in Drake's 2010 ad campaign demonstrates non-use, and thus supports DMACC's fifth affirmative defense directed to abandonment. Dkt. 56, at 7–8. Looking back to Mr. Finney's article, however, he states unequivocally that "Drake also uses a block-letter "D" as part of its brand." *See* Dkt. 56, at 4; Dkt. 52-20, at 3. If Mr. Finney is the expert DMACC claims he is, and he believes Drake has not abandoned its block-style "D" as of 2024, one struggles to reconcile how a prior-written article from someone unaffiliated with Drake could be relevant to show abandonment of the mark. Dkt. 56, at 4. Regardless, the use of the Dykes article to allege abandonment would be redundant given DMACC's fifth affirmative defense that alleges the same. Dkt. 52, at 33.

As with the Finney article, even if the Dykes article could be deemed relevant and not redundant, DMACC's selective cropping of the screen capture to include the first three lines of copy, which do nothing more than ridicule Drake, strongly suggests an intent by DMACC to have that very effect. As Mr. Dykes' opinion on the effectiveness of a marketing campaign is

4

immaterial, Drake thus respectfully requests the Court strike it, or at least order DMACC to remove the three lines of text that appear at the bottom of the image. Dkt. 52, at 43–44 ¶ 41.

### E. The Facebook Comments (Paragraph 78)

DMACC disingenuously alleges the Facebook commentary "is relevant to defend against Drake's trademark infringement claims and to support DMACC's counterclaims for declaratory judgment by showing there is no likelihood of confusion between the two logos." Dkt. 56, at 8. As with the Finney and Dykes articles, if these comments are critical to rebutting Drake's likelihood of confusion allegations, one assumes they would appear in DMACC's preliminary injunction resistance. They do not. Where they do appear, however, is in the Des Moines Register. Dkt. 48-2, at 2–3 ("DMACC's lawyers also pointed out that some Des Moines residents have made fun of Drake's trademark infringement lawsuit. . . DMACC also attached screenshots of some Facebook comments under local news stories about Drake's lawsuit.").

Moreover, the specific comments DMACC calls out in its resistance to this motion—which it claims are "*highly* relevant to DMACC's claims and defenses"—appear neither in its preliminary injunction resistance nor on the face of the Amended Answer itself, but rather are found only in Exhibit U. *Cf.* Dkt. 52, at 54–57 ¶ 78; Dkt. 56, at 9 (emphasis in original). DMACC's exclusion of "highly relevant" comments in favor of those such as "Throw some d's on it!" is telling. As comments like the latter are not remotely relevant, they should be stricken.

## II. CONCLUSION

As Drake stressed in its original motion, the object hereof is not to suppress legitimate public criticism. Dkt. 48, ¶ 7. It is to address the misuse of these proceedings by DMACC to introduce content which has no tendency to prove or disprove any fact relevant to the merits of this case and is included simply to inflame, a fact readily apparent by DMACC's failure to reference them in the preliminary injunction record, where they matter most. Drake requests its

5

Motion to Strike be granted. *See* 5C C. Wright and A. Miller, Federal Practice and Procedure (Civil) 2d § 1382, at 466-67 (2004) (noting that "the disfavored character of Rule 12(f) is relaxed somewhat in the context of scandalous allegations and matter of this type often will be stricken from the pleadings in order to purge the court's files and protect the person who is the subject of the allegations.").

                                            Respectfully submitted,

Dated: September 12, 2024                **ZARLEYCONLEY PLC**

                              By:    /s/John D. Gilbertson
                                        John D. Gilbertson, AT0014515
                                        Joshua J. Conley, AT0011828
                                        580 Market Street, Suite 101
                                        West Des Moines, IA 50266
                                        Telephone:  (515) 558-0200
                                        Facsimile:  (515) 558-7790
                                        jgilbertson@zarleyconley.com
                                        jconley@zarleyconley.com
                                        **ATTORNEYS FOR PLAINTIFF &**
                                        **COUNTERCLAIM DEFENDANT**