# IN THE UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF IOWA CENTRAL DIVISION

| | |
|---|---|
| DRAKE UNIVERSITY,<br><br>    Plaintiff,<br><br>vs.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE,<br><br>    Defendants.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE,<br><br>    Counterclaim Plaintiffs,<br><br>vs.<br><br>DRAKE UNIVERSITY,<br><br>    Counterclaim Defendant. | Case No. 4:24-CV-00227-SMR-SBJ<br><br>**DEFENDANT/COUNTERCLAIM PLAINTIFF'S RESISTANCE TO MOTION TO DISMISS DES MOINES AREA COMMUNITY COLLEGE FOUNDATION'S THIRD CLAIM FOR DEFAMATION** |

## TABLE OF CONTENTS

Page

I. INTRODUCTION ........................................................................................................... 1

II. BACKGROUND ............................................................................................................. 1

III. ARGUMENT ................................................................................................................... 3

    A. Defamation *Per Se* ............................................................................................... 4

        1. The Defamatory Statement is of and Concerning DMACCF ..................... 4

        2. This Dispute Involves a Private Plaintiff and Private Concern .................. 5

    B. Defamation *Per Quod* ......................................................................................... 7

        1. DMACCF Sufficiently Plead the Elements of Falsity and Malice in its Amended Complaint. ........................................................................... 7

        2. DMACCF Sufficiently Alleged Reputational and Special Damages in its Amended Complaint. ........................................................................ 9

    C. Drake's Request for Attorney Fees Should be Denied ....................................... 10

IV. CONCLUSION ............................................................................................................. 12

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bierman v. Weier*,
  826 N.W.2d 436 (Iowa 2013) ................................................................................... *passim*

*Bresnahan v. City of St. Peters*,
  58 F.4th 381 (8th Cir. 2023) .............................................................................................3

*Clark v. United Parcel Serv., Inc.*,
  460 F.3d 1004 (8th Cir. 2006) ....................................................................................10, 11

*Delker v. MasterCard Int'l, Inc.*,
  21 F.4th 1019 (8th Cir. 2022) ..........................................................................................3

*Doe v. Univ. of Iowa*,
  Case No. 3:22-cv-1, 2022 WL 4182196 (Sep. 2, 2022, S.D. Iowa) ..........................................3

*Glick v. W. Power Sports, Inc.*,
  944 F.3d 714 (8th Cir. 2019) ............................................................................................8

*Hoffmann v. Clark*,
  975 N.W.2d 656 (Iowa 2022) ....................................................................................3, 4, 9

*Lara v. Thomas*,
  512 N.W.2d 777 (Iowa 1994) ........................................................................................3, 4

*Porous Media Corp. v. Pall Corp.*,
  173 F.3d 1109 (8th Cir. 1999) ..........................................................................................7

*Schlegel v. Ottumwa Courier*,
  585 N.W.2d 217 (Iowa 1998) ............................................................................................9

*Taggert v. Drake Univ.*,
  549 N.W.2d 796 (Iowa 1996) ......................................................................................3, 12

**Statutes**

28 U.S.C. § 1927 ...............................................................................................10, 11, 12

**Other Authorities**

Fed. R. Civ. P. 12(b)(6) ...........................................................................................................8

**I.     INTRODUCTION**

Des Moines Area Community College Foundation ("DMACCF") respectfully submits this response to Plaintiff and Counterclaim Defendant Drake University's ("Drake") Motion to Dismiss DMACCF's third counterclaim for defamation. (ECF Dkt. 82).

**II.    BACKGROUND**

In its original Complaint, Drake falsely claimed to Drake's alumni and the press that Drake owned trademark rights in a block style "D" separate from any use on a bulldog and after being told explicitly that the DMACC & "D" logo would always include DMACC. (Dkt. 1). At the time of its original Complaint, Drake had only sued and was clearly referring to DMACCF as DMACC. Drake's defamatory communication states, "The complaint centers on new branding that was unveiled by DMACC in October 2023, which incorporates several elements that closely resemble our established brand identity, including our standalone "D" in block-style collegiate font, which has been used by Drake for well over a century, and reflects the legacy, excellence, and identity of our institution." (Dkt. 74 ¶ 99, 74-12). To make its claim for trademark infringement and unfair competition appear valid, Drake stated they have used the standalone block style letter "D" "**for well over a century**" even though Drake knowingly abandoned the standalone block style "D" in its 2005 rebrand. (Dkt. 74 ¶ 102, 74-12) (emphasis added). Drake continues to falsely assert broad trademark rights in a mark it abandoned nearly 20 years ago.

Moreover, Drake was aware before filing this suit that both DMACC and DMACCF locked their logo with the words "DMACC," "DMACCF," or "Foundation" appearing under any stand-alone DMACC "D". (*See* Dkt. 17-97, 52 ¶ 31, 74 ¶ 38). Drake's decision to circulate the wrongful image coupled with its overly broad assertion of rights in an abandoned "D" leads to the only conclusion: that Drake has acted with ill will, hatred, the desire to do another harm, and/or wrongful motive. (Dkt. 74 ¶ 106).

1

Drake has also falsely represented actual harm in the marketplace. (Dkt. 74 ¶ 103, 74-12). Yet, as the preliminary injunction hearing made clear, Drake has no proof that any actual confusion in the marketplace has occurred. Drake made false representations of both DMACCF's logo *and* the scope of Drake's trademark rights for one reason—to harm DMACCF's reputation. (Dkt. 74 ¶ 105).

Drake made these false statements with malice with an intent to disparage and harm DMACCF. (Dkt. 74 ¶ 108). Drake sent the email to alumni either knowingly or with a reckless disregard of the fact that both institutions seek foundational money from several of the same donors and accordingly, DMACCF was defamed and damaged in name, reputation, and business. (Dkt. 74 ¶ 110).

DMACCF has lost donors and good will as a direct result of the defamatory statements. (Dkt. 74 ¶ 111). Specifically, one donor told the Executive Director of DMACCF he would not have donated to DMACCF had he received the alumni email earlier and believes the dispute is "embarrassing." (Dkt. 74 ¶ 112, 74-13). Another donor doubts DMACC's and DMACCF's due diligence and believes the public "gives more credence to Drake's position especially after nearly a Century of 'use' precedence." (Dkt. 74 ¶ 113, 74-13). This statement comes directly from Drake's alumni email, which is a false statement about Drake's use of the standalone block letter style "D" (Dkt. 74 ¶ 114, 74-12). DMACCF has suffered actual damages through loss of donations and reputational harm due to Drake's false and defamatory statements. (Dkt. 74 ¶ 116). The names and donations of these private donors have been redacted or not disclosed in the public filings to maintain their privacy.

DMACCF also alleges it is a private figure, and it has not thrust itself into the public eye. (Dkt. 74 ¶ 97). DMACCF is only involved in this dispute because of Drake's actions. (*Id.*) This is

2

a private dispute between Drake and DMACCF. (Dkt. 74 ¶ 115). Any publicity regarding this suit is a result of *Drake*'s conduct, and which does not deprive DMACCF of its ability to seek redress for the harm DMACCF has suffered. (*Id.*)

### III.    ARGUMENT

DMACCF's defamation claim more than meets the pleading standards. "A claim survives a motion to dismiss if the complaint's nonconclusory allegations, accepted as true, make it plausible that the defendant is liable." *Bresnahan v. City of St. Peters*, 58 F.4th 381, 384 (8th Cir. 2023) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 680–83 (2009)). "'[A] plaintiff need only allege sufficient facts to provide 'fair notice' of the claim and its basis." *Delker v. MasterCard Int'l, Inc.*, 21 F.4th 1019, 1024 (8th Cir. 2022) (quoting *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (*per curiam*)) (cleaned up). "This standard simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of the claim or element." *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (internal alterations and quotation marks omitted). A plaintiff's complaint must permit the defendant to "understand or meaningfully respond to the allegations." *Doe v. Univ. of Iowa*, Case No. 3:22-cv-1, 2022 WL 4182196 at *1 (Sep. 2, 2022, S.D. Iowa).

The gist of an action for libel or slander is the publication of written or oral statements which tend to injure a person's reputation and good name. *Lara v. Thomas*, 512 N.W.2d 777, 785 (Iowa 1994). Defamation claims come in two types: *per se* and *per quod*. *Hoffmann v. Clark*, 975 N.W.2d 656, 664 (Iowa 2022). To plead defamation *per se*, the plaintiff must demonstrate the defendant (1) published a statement that was (2) defamatory (3) of and concerning the plaintiff. *Taggert v. Drake Univ.*, 549 N.W.2d 796, 802 (Iowa 1996). Defamation *per se* refers to statements "of such a nature, whether true or not, that the court can presume as a matter of law that their publication will have libelous effect." *Hoffmann*, 975 N.W.2d at 644 (quoting *Vinson v. Linn-Mar*

*Cmty. Sch. Dist.*, 360 N.W.2d 108, 116 (Iowa 1984)). Defamation *per quod*, on the other hand, requires an audience to "refer to facts or circumstances beyond the words actually used to establish the defamation" and must show proof of malice, falsity, and "some sort of cognizable injury, such as injury to reputation." *Bierman v. Weier*, 826 N.W.2d 436, 444 (Iowa 2013) (quoting *Johnson v. Nickerson*, 542 N.W.2d 506, 510, 513 (Iowa 1996)).

### A. Defamation *Per Se*

DMACCF has more than met the pleading standard to allege defamation *per se*. "[Defamation] *per se* is available only when a private figure plaintiff sues a nonmedia defendant for certain kinds of defamatory statements that do not concern a matter of public importance." *Bierman v. Weier*, 826 N.W.2d 436, 448 (Iowa 2013). "Slanderous imputations affecting a person in his or her business, trade, profession, or office are also actionable without proof of actual harm" and thus satisfy the standard for defamation *per se*. *Lara*, 512 N.W.2d at 785. DMACCF is not required to prove damages for defamation *per se*. *Hoffmann*, 975 N.W.2d at 664 (citing *Rees v. O'Malley*, 461 N.W.2d 833, 839 (Iowa 1990)).

#### 1. The Defamatory Statement is of and Concerning DMACCF

DMACCF pleads in its Amended Complaint that the statement published by Drake was of and concerning DMACC and DMACCF. (Dkt. 74 ¶ 98). Drake argues the email Drake sent to its alumni was not of and concerning DMACCF. In the email to its alumni, Drake stated "Drake filed a complaint against Des Moines Area Community College (DMACC)." (*See* Dkt. 74-12). This is merely another false statement. The alumni email was sent on Thursday, July 11, 2024, at 2:36 pm. At that time, DMACCF was the *only* party named in Drake's Complaint, which was filed on July 8, 2024. (Dkt. 1). Drake had not filed a complaint against DMACC. Therefore, the statement was intended to be about and could only be understood to be about DMACCF.

4

Drake's conduct since making the defamatory statement reinforces Drake's intent to make the statement about DMACCF.  On July 12, 2024, attorneys for DMACCF pointed out to Drake the difference between DMACC and DMACCF and questioned whether Drake truly intended to sue DMACCF. (*See* Dkt. 20-3). In response, Drake doubled down on its intention that the lawsuit was proper and intended to be against DMACCF. On July 17, 2024, Drake filed its First Amended Complaint adding DMACC as a defendant. (Dkt. 17). In response to the Amended Complaint, DMACCF filed a motion to dismiss, where DMACCF argued it was mistakenly named in the original and Amended Complaint. (Dkt. 20). Drake again insisted its original intention was to sue DMACCF. In its reply brief to DMACCF's motion to dismiss, Drake argued DMACCF is a proper party to this suit and that DMACCF engages in the allegedly infringing activities identified in its Amended Complaint. (Dkt. 44). Notably, Drake makes no effort in its First Amended Complaint to distinguish between the two parties. Instead, Drake conflates the two entities throughout the First Amended Complaint and continues to do so in its brief (*See* Dkt. 17 ¶ 5 ("Defendant Des Moines Area Community College (together with the Foundation, "DMACC")). Drake's email to alumni used only a standalone "D" logo without the underlying DMACC or DMACCF used by Defendants to distinguish between themselves. (*See* Dkt. 20-01 at 3). Drake's argument that the email was only of and concerning DMACC and not DMACCF is meritless.

### 2.    This Dispute Involves a Private Plaintiff and Private Concern

DMACCF has plead that it is a private figure, and it has not thrust itself into the public eye. (Dkt. 74 ¶ 97). DMACCF is only involved in this dispute because of Drake's actions. (*Id.*) This is a private dispute between Drake and DMACCF. (Dkt. 74 ¶ 115). Any publicity regarding this suit is a result of *Drake*'s conduct, and which does not deprive DMACCF of its ability to seek redress for the harm DMACCF has suffered. (*Id.*) Thus, defamation *per se* is available to DMACCF, as

5

this dispute involves a private claimant (DMACCF), a nonmedia defendant (Drake), and a private concern. *Bierman*, 826 N.W.2d at 449. In its Motion to Dismiss, Drake does not argue that DMACCF is a public figure plaintiff nor that Drake is a media defendant. Instead, Drake argues that because the email is of and concerning DMACC—a public entity—and is directed at a public concern, defamation *per se* is inapplicable. As stated above, the email was of and concerning DMACCF, a private nonprofit corporation, and the only entity named in the lawsuit at the time the email was sent.

"Public concern protection serves the constitutional goal of 'assur[ing] unfettered interchange of ideas for the bringing about of political and social changes desired by the people.' On the other hand, 'purely private disputes such as a lawsuit in which the impact is limited primarily to the parties involved, even though perhaps of interest to the public, are insufficient to create a matter of public concern.'" *Id.* at 462 (quoting *Dun & Bradstreet, Inc. v. Greenmoss Builders, Inc.*, 472 U.S. 749, 759 (1985) and *Johnson v. Nickerson*, 542 N.W.2d 506, 511 (Iowa 1996)). A published statement that might inspire or affect others is not enough to make the statement a "matter of public concern." *Id.* In *Bierman,* the Court rejected broadening public concern such that "it covers virtually anything." *Id.* at 462. As the Court in *Bierman* stated, "No man is an island, and everyone's life is potentially of interest to everyone else." *Id.* Just because this lawsuit grabbed the public's interest does not make it a matter of public concern. This dispute is between a private plaintiff, a non-media defendant, and is a claim in which the impact is limited primarily to the parties involved.

Drake argues that the subject of the lawsuit alone—trademark infringement—makes this a matter of public concern. This argument is meritless. The 8th Circuit has long recognized that allegations of trademark infringement alone do not make a matter one of public concern:

6

> Whatever its importance to the parties before us, the DBF23's hydrophobicity is not a "public controversy." When Pall published its ALERT, Porous's glowing descriptions of the DBF23 had not meaningfully extended beyond the market for filters in "dry" medical applications—a market in which the filter's hydrophobicity was not relevant to Porous's customers or government regulators. When Pall warned Porous's customers of the DBF23's "serious hydrophobic deficiency," it created a controversy that did not otherwise exist. It is well-settled that those charged with defamation cannot, by their own conduct, create their own defense by making the claimant a public figure.

*Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109, (8th Cir. 1999) (quotations omitted). This did not become a public controversy by dint of Drake's publication of the statement to its alumni and the press. And while this controversy has attracted media attention, the impact of this controversy is limited primarily to the parties involved and not the public. *Bierman*, 826 N.W.2d at 462. Thus, this matter is not of public concern.

### B. Defamation *Per Quod*

Should the court determine this matter is of public concern (it is not), DMACCF has also alleged facts sufficient to allege defamation *per quod*. DMACCF has amply alleged Drake made untrue statements, that Drake has acted with ill will, hatred, the desire to do another harm, and/or wrongful motive, that Drake made such false statements with malice with an intent to disparage and harm DMACCF, and specifically identified two instances where DMACCF has suffered reputational harm and a loss of future donations, all required to show proof of malice, falsity, and injury (such as injury to reputation). *See Bierman*, 826 N.W.2d at 444 (quotation omitted) (noting pleading standards).

#### 1. DMACCF Sufficiently Plead the Elements of Falsity and Malice in its Amended Complaint.

DMACCF has alleged Drake sent the email to alumni either knowingly or with a reckless disregard for the truth that the email contained a false representation of Drake's trademark rights by relying on a "D" Drake had not been using since 2005 and that the two logos were causing

7

actual confusion in the marketplace. (Dkt. 74 ¶ 109). These actions lead to the conclusion that Drake has acted with ill will, hatred, the desire to do another harm, and/or wrongful motive. (Dkt. 74 ¶ 106). This is sufficient to allege falsity and malice. *Bierman*, 826 N.W.2d at 444.

Drake argues DMACCF did not sufficiently plead the elements of falsity and/or malice in its Amended Complaint. Statements made with malice are made with knowledge that the statement was false or with reckless disregard of whether it was false or not. *Id.* (quoting *New York Times v. Sullivan,* 376 U.S. 254, 279–80 (1964)). DMACCF's Amended Answer includes the following allegations with regard to falsity and malice: 1) Drake states they have used the standalone "D" in block-style collegiate font for well over a century, when in fact Drake abandoned the block style D in their 2005 rebrand; 2) Drake's communication wrongfully misrepresented the DMACC and DMACCF logo by circulating an image pulled from *their own* Complaint in which the words "DMACC" or "DMACC FOUNDATION" were removed from underneath the standalone DMACC "D" (Dkt 17-78); 3) Drake has alleged in its Amended Complaint that it broadly owns the letter "D" for collegiate educational services; and 4) Drake states the use of DMACCF's new logo can and *has already* caused confusion in the marketplace despite there being no actual evidence of actual confusion. DMACCF also alleges Drake made such false statements with malice with an intent to disparage and harm DMACCF. These statements, taken as true, are more than sufficient to plead the elements of falsity and malice and thus allege an actionable claim against Drake for defamation *per quod*. *See Glick v. W. Power Sports, Inc.*, 944 F.3d 714, 717 (8th Cir. 2019) (Rule 12(b)(6) motion evaluated by accepting as true all factual allegations in the light most favorable to the nonmoving party).

DMACCF's allegations plainly provide Drake with fair notice that it is being sued for defamation for the false statements published in its email to its alumni. DMACCF pled the exact

statements that were false, and that Drake made such false statements with malice with an intent to disparage and harm DMACCF by knowingly misrepresenting the scope of Drake's trademark rights and DMACCF's logo. Drake's arguments are directed at the veracity of the allegations rather than their plausibility. This is an inappropriate argument at the motion to dismiss stage. DMACCF has met its burden by adequately pleading the elements of falsity and malice in a defamation *per quod* claim.

### 2. DMACCF Sufficiently Alleged Reputational and Special Damages in its Amended Complaint.

DMACCF has also met the pleading standard to allege reputational harm resulting from Drake's defamatory statements. A plaintiff in a libel *per quod* action bears the burden to prove that they suffered some sort of reputational damage from the statement. *Hoffman*, 975 N.W.2d at 664 (citing *Bierman*, 826 N.W.2d at 444). *See also Schlegel v. Ottumwa Courier*, 585 N.W.2d 217, 223–24 (Iowa 1998) ("[A]n Iowa plaintiff must establish actual reputational harm when suing a media defendant, and not merely emotional distress or humiliation, before he or she may recover for any parasitic damages such as personal humiliation or mental anguish.") DMACCF's counterclaims alleges that it has suffered reputational harm as a result of Drake's defamatory statements. (Dkt. 74 ¶¶ 110-114). As proof, DMACCF submitted Exhibit M in DMACCF's Amended Complaint, which provides evidence of two donors who, after receiving Drake's email, wrote directly to the Executive Director of DMACCF indicating the email changed their opinion of DMACCF. One donor in Exhibit M tells the Executive Director that they wish they could take back the donation they had previously pledged. This also implies DMACCF has lost any future donations from this donor. Another donor in Exhibit M calls the dispute embarrassing and doubts DMACCF's due diligence. These emails clearly indicate the statement Drake sent to its alumni changed the opinion of these two donors.

9

In *Bierman*, the Iowa Supreme Court held similar evidence of a person, after receiving the defamatory statement, changing their opinion of the plaintiff, is enough to establish reputational damage for defamation *per quod*. *Bierman*, 826 N.W.2d at 463 ("While the summary judgment record contains evidence of the good reputations of [plaintiffs] before the publication of the book, it is devoid of evidence that anyone changed his or her opinion of the two after reading the book. The affidavits of friends revealed either that they had not read the book, or that if they had read portions of it, they did not accept the allegations it contained about [plaintiffs]. [Plaintiff]'s work supervisor averred that [plaintiff] has suffered mental anguish and was less outgoing at work than before the book was published . . . but he did not assert that anyone at work thought less of her because of the statements in the book.").

Iowa courts have made it clear that allegations of reputational harm are sufficient to show injury for defamation *per quod* and, here, where DMACCF submitted evidence of at least two people "who believed the allegations about [DMACCF] published in the [email] and consequently thought less of [DMACCF]," DMACCF has established special damages necessary to plead defamation *per quod*. *Id.* Because DMACCF has properly and sufficiently plead all necessary elements of defamation *per quod*, the court should deny Drake's motion to dismiss DMACCF's defamation claim.

C. **Drake's Request for Attorney Fees Should be Denied**

Drake's latest request for sanctions under 28 U.S.C. § 1927 is still meritless. Section 1927 allows the Court to require a party's counsel to personally satisfy costs if costs were unreasonably incurred. This type of sanction is awarded when an attorney's conduct "viewed objectively, manifests either intentional or reckless disregard of the attorney's duties to the court." *See Clark v. United Parcel Serv., Inc.*, 460 F.3d 1004, 1011 (8th Cir. 2006). Drake's Motion to Dismiss cites *Boyd Jones Constr. Co. v. XTL, Inc.*, a case where the court found that sanctioning the attorneys

10

was not warranted. 2018 WL 6380777, at *3 (S.D. Iowa Nov. 9, 2018). The court in *XTL, Inc.* stated

> Also, among the Court's inherent powers is the power to assess attorney's fees in narrowly defined circumstances, despite the traditional American rule that a prevailing party is usually not entitled to attorney's fees. One exception to the American rule allows a court to sanction an opposing party when it has 'acted in bad faith, vexatiously, wantonly, or for oppressive reasons. . . . Because inherent powers are shielded from direct democratic controls, they must be exercised with restraint and discretion.

*Id.* at *5 (citations omitted) (quotations omitted). While the court did grant Boyd Jones's request for attorneys' fees, this was only because XTL's counsel withdrew their motions after having made a factual misrepresentation to the court, and Boyd Jones's counsel had to needlessly defend against them. *Id.* Neither DMACC nor DMACCF have made any factual misrepresentations to the court. Drake has identified no caselaw invoking § 1927 in cases similar to this one. There can be no objective finding that any DMACCF attorney has either intentionally or recklessly disregarded their duties to the Court or acted in bad faith, vexatiously, wantonly, or for oppressive reasons.

DMACC is not withdrawing its motion due to any factual misrepresentation to the court, as was the case in *XTL, Inc. See* 2018 WL 6380777, at *5 Instead, DMACC is withdrawing its motion because DMACC chooses not to spend the time and resources it would need to invest to pursue its meritorious argument. Yet, Drake tries to smear DMACC's desire for simplification and cites two inapplicable and easily distinguished cases from outside jurisdictions. In *Stewart v. City of Chicago*, the plaintiff repeatedly filed the same deficient allegations in its multiple Complaints. Neither DMACC nor DMACCF have persisted in filing the same allegations, much less repeatedly filed deficient allegations in repeated complaints. 622 F. Supp. 35, 35–38 (N.D. Ill. 1985). In *Oliver v. In-N-Out Burgers*, the court declined to sanction plaintiff's attorneys altogether. 945 F. Supp.2d 1126, 1130 (S.D. Cal. 2013). In this case, the plaintiff offered to dismiss its action, but

11

defendant refused plaintiff's offer just so it could continue to litigate the case and pursue a motion for sanctions. *Id.* at 1131. Accordingly, the court denied defendant's motion for sanctions because the litigation only continued because defendant did not agree to allow plaintiff to voluntarily dismiss the case. Further, the court declined to award defendant any attorneys' fees because plaintiff's action was not frivolous, unreasonable, or without foundation. *Id.* at 1132-1133.

DMACC's and DMACCF's lawyers take their obligations to the Court and to the truth extremely seriously. DMACCF has attempted to minimize filings and costs by providing Drake numerous off-roads to decrease the number of filings and issues in this matter. For example, DMACC seeks to withdraw its defamation claims to limit motion practice and to properly focus on the harm Drake is causing to DMACCF. *Drake* is opposing this withdrawal, and now, the parties will have to engage in additional motion practice.

There is no *proper* basis to assert Section 1927. If it were the law that amending and refining counterclaims in response to issues raised meant an attorney's conduct was subject to sanctions, most cases would involve sanctions or attorneys would never agree to amend anything. Drake has not identified a single instance where Section 1927 was invoked in comparable circumstances. That's because even zealous advocates do not lightly invoke sanctions. DMACCF respectfully requests the Court decline Drake's invocation of § 1927.

## IV. CONCLUSION

For the foregoing reasons, DMACCF requests the Court deny Drake's motion to dismiss and request for attorney fees.

Respectfully submitted,

Date: November 1, 2024

*/s/ R. Scott Johnson*

R. Scott Johnson (#AT0004007)
Cara S. Donels (#AT0014198)
Erin M. Boggess (#AT0015950)
FREDRIKSON & BYRON, P.A.
111 East Grand Avenue, Suite 301
Des Moines, IA  50309-1977
Telephone:  (515) 242-8900
E-mail:  RSJohnson@fredlaw.com
　　　　　CDonels@fredlaw.com
　　　　　EBoggess@fredlaw.com

Laura L. Myers (Minn. #0387116)
(admitted *Pro Hac Vice*)
FREDRIKSON & BYRON, P.A.
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
Telephone:  (612) 492-7000
E-mail:  LMyers@fredlaw.com

***Attorneys for Defendants and Counterclaim Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on November 1, 2024, I electronically filed the *Defendant/Counterclaim Plaintiff's Resistance to Motion to Dismiss Des Moines Area Community College Foundation's Third Clam for Defamation* with the Clerk of Court using the CM/ECF system, who in turn sent notice to the following:

Joshua J. Conley, Esq.
  jconley@zarleyconley.com
John D. Gilbertson, Esq.
  jgilbertson@zarleyconley.com
ZARLEYCONLEY PLC
580 Market Street, Suite 101
West Des Moines, IA  50266

*Attorneys for Plaintiff and Counterclaim Defendant*

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Erica Palmer*
　　　　　　　　　　　　　　　　　　　　　　　Erica Palmer