IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA CENTRAL DIVISION

| | |
|---|---|
| DRAKE UNIVERSITY,<br>　　Plaintiff,<br><br>vs.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE<br>　　Defendants. | No. 4:24-cv-00227<br><br>**REPLY TO PLAINTIFF'S MOTION TO DISMISS DES MOINES AREA COMMUNITY COLLEGE FOUNDATION'S THIRD CLAIM FOR DEFAMATION (DKT. 82)** |
| DES MOINES AREA COMMUNITY COLLEGE and DES MOINES AREA COMMUNITY COLLEGE FOUNDATION,<br>　　Counterclaim Plaintiffs,<br><br>vs.<br><br>DRAKE UNIVERSITY,<br>　　Counterclaim Defendant. | |

Joshua J. Conley
John D. Gilbertson
ZARLEYCONLEY PLC
West Des Moines, Iowa
for DRAKE UNIVERSITY

**I.     INTRODUCTION**

Not all the Foundation's assertions are addressed herein as Drake's position is already presented in other briefing on this issue. Drake will also not revisit arguments that were not responded to by the Foundation in its resistance.

**II.    ARGUMENT**

    **A.  Of and Concerning**

The Foundation argues "the [Alumni Email] was intended to be about and *could only* be understood to be about [the Foundation]." Dkt. 86, at 4. The Foundation's own allegation states that "[o]n July 11, 2024, Drake falsely wrote of and concerning DMACC and, by extension, [the Foundation]." Dkt. 74, at 61 ¶ 98. The Foundation provides no explanation for this discrepancy. As the Alumni Email does not concern the Foundation, dismissal is appropriate.

    **B.  Private Concern**

Drake did not argue that the Foundation is a public entity because it is taken as true for purposes of this motion that the Foundation is a private entity, as alleged. The contention that the Alumni Email was directed at a private concern, however, is refutable.

The Foundation gives little substance as to why the Alumni Email is a private concern other than it discusses the present litigation. Both sides have recognized a lawsuit which is purely private and has an impact limited *primarily* to the parties involved is a private concern. *Bierman v. Weier*, 826 N.W.2d 436, 462 (Iowa 2013) (citations omitted). The impact of this case extends well beyond the parties involved and encompasses a significant number of prospective, current, and former students of both institutions. The Foundation's own pleading states "DMACC is Iowa's largest and most diverse community college, serving a district that include[s] 6,560 miles and home to 20 percent of Iowa's population." Dkt. 74, at 37, ¶ 20. Its resistance does not address this.

Instead, the Foundation argues "[t]he 8th Circuit has *long recognized* that allegations of trademark infringement alone do not make a matter one of public concern[.]" Dkt. 83, at 6–7 (citing *Porous Media Corp. v. Pall Corp.*, 173 F.3d 1109 (8th Cir. 1999)) (emphasis added). *Porous Media* does not remotely stand for this contention—the term "trademark" appears only once in the case, which is a footnote citing to a treatise with the word in its title. 173 F.3d at 1122, n. 11. Inherently, issues of trademark infringement, and particularly those impacting thousands of students, if not millions, is a public concern. As such, defamation *per se* does cannot apply.

### C. Special Damages

Special damages denote a "pecuniary loss—actual loss which has, in fact, occurred." *Erick Bowman Remedy Co. v. Jensen Salsbery Laboratories*, 17 F.2d 255, 259 (8th Cir. 1926) (finding corporate entities do not have a reputation like individuals). Such special damages must be plead with certainty and precision—e.g., figures showing lost profits or names of patrons lost. *Id*.

The Foundation argues its burden is met by alleging that it has lost donors and goodwill due to the Alumni Email. *See* Dkt. 83, at 5, 10. This harm is not actual but speculative, as the loss is of "future donations." Dkt. 83, at 10. The Foundation further argues donor emails (Dkt. 74-13) show donors have changed their opinion of it, which "implies [the Foundation] has lost any future donations…." Dkt. 83, at 12. Facially, this argument lacks certainty and precision.

The Foundation's position falters further upon reading the emails. One of the donors writes to the Foundation noting that "[a]attached is … a picture of the submission we made today with Fidelity to fund the donation." Dkt. 74-13, at 3. Hence, the donation was made and there is no discussion regarding a future donation being made, let alone withheld. *See id*.

The donor continues that they are "a passionate believer in DMACC[,]" which undermines the allegation that the donor has changed its opinion of the College. Dkt. 74-13, at 3. The email directs dismay at the rebrand, stating, "While I am happy to support this worthy cause I am deeply

troubled as a Drake graduate (and Iowa native) with the current trademark issues I find to be at best tone deaf on the part of DMACC." Dkt. 74-13, at 3. Nothing related to this donor identifies a specific loss in support—fiscally or otherwise— nor does it ever mention the Foundation.

The other "donor" writes to DMACC President Rob Denson—further establishing that readers of the Alumni Email understood that it concerned the *College*; not the Foundation. Dkt. 74-13, at 2. The individual questions the College's marketing leadership's failure to "do enough due diligence." Dkt. 74-13, at 2. The writer is not speaking about the Foundation.

Though the Foundation discusses this second individual as a donor, nothing in their email indicates that status, nor does it discuss withholding any donation as the Foundation insists. Dkt. 74-13, at 2. No patronage is lost either. Dkt. 74-13, at 2 ("Most folks love both institutions…").

The Foundation's counterclaim fails to allege a certain and precise pecuniary harm, i.e., an accounting of a lost donation or donor. In fact, both emailers are discussing the College's (not the Foundation's) conduct, and nonetheless remain supportive. *See* 74-13.

On the issue of lost patronage, the Foundation unilaterally omitted the names of the email authors. It is "indispensable" that the *names* of the donors who were lost be set forth; their absence from the complaint means the claim "must fail." *Shaw Cleaners & Dyers v. Des Moines Dress Club*, 245 N.W. 231, 235 (Iowa 1932) (citations omitted). "If it is impossible to state the names, then it is likewise impossible to prove the case, based on special damages." *Id*.

The Foundation asserts the "names and donations of these private donors have been redacted or not disclosed in the public filings to maintain their privacy." Dkt. 83, at 5. "The Federal Rules of Civil Procedure explicitly provide when redaction may be used." *Bartholomew v. Avalaon Capital Grp., Inc.*, 278 F.R.D. 441, 451–52 (D. Minn. 2011). Rule 5.2 addresses when unilateral redaction is permitted in filings. Fed. R. Civ. P. 5.2; *See also* S.D. L.R. 10(g). The Rule

does not provide for redacting the donor names—presuming neither is a minor—or the amounts *not* donated, which is not a legitimate privacy concern.

Before filing its counterclaim, the Foundation was on notice that it needed to identify its lost donors *by name*. *See* Dkt. 62, at 7. It did not. It also failed to seek leave of the Court to redact the names and amount. *See* Dkt. 74-13. This course of action is further called into question given opposing counsel's prior recitation of *Estate of Bisignano v. Exile Brewing Co., LLC*, that discussed the court's authority to determine whether to redact or seal a document. No. 4:22-CV-00121-RGE-SBJ, 2022 WL 22694930, at *2 (S.D. Iowa May 17, 2022); *see also* Dkt. 27, at 9 (discussing *Bisignano*). No attempt was made to file the counterclaim under seal.

The Foundation has failed to plead the requisite special damages to avoid dismissal.

### D. Fee Shifting

With regard to the Foundation's arguments against fee shifting based on Section 1927 and Court's inherent power, the record tells a different story. Opposing counsel argues its clients have not made any factual misrepresentation to the Court, but the clients are not the primary focus. Dkt. 83, at 1. Drake has identified occasions where blatantly false representations were made by opposing counsel. The most recent can be found in the Foundation's resistance:

> Drake was aware before filing this suit that both DMACC and DMACCF locked their logo with the words "DMACC," "DMACCF," or "Foundation" appearing under any stand-alone DMACC "D".

Dkt. 83, at 5. Drake has debunked these many times. Dkt. 40, at 5; Dkt. 40-2, 40-3. It is further at odds with the College's own Marketing Director, who declared:

> The vast majority of isolated use of the standalone "D" from the DMACC Logo originated with a third-party vendor…. Out of an abundance of caution, DMACC pulled these items *after* receiving Drake's Complaint…. The logo on the basketball court is scheduled to be replaced next month…."

Dkt. 30-1, at 3 (emphasis added). The Foundation's Amended Answer and Counterclaim states:

5

> As of the date of this Amended Answer and Counterclaims being filed, DMACCF is not aware of any goods or services being offered with just a "D" and without the "DMACC" nearby. DMACC understands there was an issue with a third-party "vendor who failed to include the "DMACC" on some items for a brief period of time. This is (and *has been since at least the filing of the Complaint*) resolved.

Dkt. 74, at 42, n. 4 (emphasis added). Opposing counsel continues to repeat this falsehood.

To distance itself from precedent, opposing counsel argues that "[n]either DMACC nor [the Foundation] have persisted in filing the same allegations, much less repeatedly filed deficient allegations in repeated complaints." Dkt. 83, at 14. Moreover, opposing counsel has presented defamation claims based on the Alumni Email *four different times* (as principal counterclaims and amended counterclaims for both Defendants)—the first filing was so objectively lacking it is unreasonable to not find opposing counsel's intention was vexatious, especially given their experience and expertise. The claim remains fundamentally deficient, which is inexcusable given the extensive briefing discussing when and how a defamation claim can be brought.

Opposing counsel obfuscates by arguing, "*Drake* is opposing [the College's defamation claim's] withdrawal, and now, the parties will have to engage in additional motion practice." Dkt. 83, at 15. This allegation does not hold water. After ostensibly reasonable inquiry, opposing counsel alleged a municipal corporation could be defamed based on nothing more than blanket recitals of the elements and a doctored image. Dkt. 21, at 58 ¶¶ 78–83. When dismissal was sought, opposing counsel resisted arguing the College's amended counterclaim met pleading requirements. Dkt. 53, at 3. Only after Drake replied did opposing counsel come to the opinion that the College's claim would require multiple appeals and indicated in a sur-reply that it would seek withdrawal. Dkt. 67.[1]

---

[1] Opposing counsel argued that changing established law would require multiple appeals. In its citations, counsel drafted a parenthetical for a treatise "noting criticism of findings that municipal corporations cannot bring defamation action." *See* Dkt. 67, at 3, n. 1. Importantly, the citation to *Cap. Dist. Regional Off-Track Betting Corp. Northeastern*

Omitted from the resistance the substance of a meet and confer regarding "withdrawal." During the conference, Drake inquired whether the College would dismiss its defamation claim with prejudice. Opposing counsel stated they did not intend to but would get back to the undersigned—they never did. Regardless, Drake indicated a willingness to a stipulated dismissal if it were with prejudice and Drake would be reimbursed its attorney fees.

The allegation that "the parties will have to engage in additional motion practice" is unfounded. The dismissal of the College's defamation claim has been fully briefed. Opposing counsel could seek leave (again) to file a sur-reply to withdraw its resistance except on to the issues of prejudice and fee shifting. This "off-road" was available when the College filed its resistance and sur-reply, which, at that time of the latter, the College knew it wanted to dismiss the claim. Opposing counsel chose not to. Nor did they choose to remove the College's defamation claim through amendment like it did to remove its meritless unfair competition claim.

## III.   CONCLUSION

Drake requests the Foundation's defamation claim be dismissed with prejudice. Also, Drake requests opposing counsel and/or Defendants be ordered to reimburse Drake's reasonable attorney fees incurred in resisting repeated attempts to leverage a claim of defamation based on the Alumni Email.

---

*Harness Horsemen's Ass'n*, 399 N.Y.S.2d 597 (NY 1977) provided a key insight into that treatise. Specifically, "[a]lthough the rule has received critical comment in treatises and certain law review articles …, no American court which has considered the question has reached a result contrary to [the rule]." *Id*. at 233–34. Hence, the College's defamation claim has no basis in law and has been repeatedly rejected.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: November 5, 2024 | **ZARLEYCONLEY PLC** |
| By: | /s/Joshua J. Conley<br>Joshua J. Conley, AT0011828<br>John D. Gilbertson, AT0014515<br>580 Market Street, Suite 101<br>West Des Moines, IA 50266<br>Telephone:  (515) 558-0200<br>Facsimile:   (515) 558-7790<br>jgilbertson@zarleyconley.com<br>jconley@zarleyconley.com<br>**ATTORNEYS FOR PLAINTIFF &<br>COUNTERCLAIM DEFENDANT** |