IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA CENTRAL DIVISION

| | |
|---|---|
| DRAKE UNIVERSITY,<br>    Plaintiff,<br><br>vs.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE<br>    Defendants.<br><br>DES MOINES AREA COMMUNITY COLLEGE and DES MOINES AREA COMMUNITY COLLEGE FOUNDATION,<br>    Counterclaim Plaintiffs,<br><br>vs.<br><br>DRAKE UNIVERSITY,<br>    Counterclaim Defendant. | No. 4:24-cv-00227<br><br>**RESISTANCE TO DEFEMDANTS' MOTION TO EXTEND DEADLINE TO COMPLY WITH PRELIMINARY INJUNCTION ORDER AND CLARIFY SCOPE OF PRELIMINARY INJUNCTION (DKT. 97)** |

## I. INTRODUCTION

"Drake faces irreparable harm to its century-old brand identity and institutional goodwill if DMACC continues use of its new mark." ECF No. 87, at 41. "Although DMACC argues it would incur costs to revise its branding, these self-inflicted harms from knowingly adopting potentially infringing marks do not outweigh the incalculable damage to Drake's distinctive identity and reputation." ECF No. 87, at 41. "Courts have consistently held that where a defendant's harm stems from its own decision to adopt an allegedly infringing mark, such harm carries little weight in the equitable balance against protecting established trademark rights." ECF No. 87, at 41 (citations omitted). As set forth herein, Defendants' (hereinafter collectively referred to as "DMACC") Motion should be denied.

## II. LEGAL STANDARD

Under Rule 60(b)(5), a party may obtain relief from a Court Order when it is "no longer equitable that the judgment should have prospective application." *Rufo v. Inmates of Suffolk Jail*, 502 U.S. 367, 380 (1992). The party seeking modification of an injunction carries the burden to show "a significant change in circumstances warrants revision." *Id*. at 383. This burden can be met by "showing either a significant change either in factual conditions or in the law." *Id*. at 384. Importantly, the reference to a change in circumstances refers to "events which occurred subsequent to entrance of the order and which make it unfair to continue the injunction" as is. *Huk-A-Poo Sportswear, Inc. v. Little Lisa, Ltd.*, 74 F.R.D. 621, 623 (S.D.N.Y. 1977).

The Second, Third, and Fourth Circuits have stressed that a party moving to change a preliminary injunction should not "be permitted to relitigate arguments 'that have already been considered by the district court in its initial decision.'" *Centennial Broad., LLC v. Burns*, 433 F. Supp. 2d 730, 733–34 (W.D. Va. 2006) (citations omitted). Likewise, the Court should not consider arguments that "could have been raised at the time the preliminary injunction was issued." *Id*. at 734 (citing *Huk-A-Poo*, 74 F.R.D. at 623–24). "The mere fact that the injunction creates hardships for the enjoined party is not in and of itself a changed circumstance." *Huk-A-Poo*, 74 F.R.D. at 623 (citing *SEC v. Thermodynamics, Inc.*, 319 F.Supp. 1380 (D. Colo. 1970) (cleaned up)).

Furthermore, district courts do not ordinarily modify preliminary injunctions while they are on appeal. *Am. Coll. Of Obstetricians & Gynecologists v. United States Food & Drug Admin.*, 506 F. Supp. 3d 328, 338 (D. Md. 2020). Instead, the Court may issue an indicative ruling that "either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." *Id*. citing Fed. R. Civ. P. 62.1(a). The moving party then

conveys that ruling to the court of appeal to determine whether remand for such a decision is warranted. *Id*. citing Fed. R. Civ. P. 62.1(b), (c); Fed. R. App. P. 12.1.

**III.    ARGUMENT**

This is not really a motion for additional time and clarification. It is a clandestine attempt by DMACC to have the Court render a declaratory judgment that its "D + Bear Paw" (hereinafter the "Paw Mark") logo is not infringing the Drake Brand. This is a frivolous request given that the Court's Order plainly extends to the Paw Mark, which is a "block-style "D" trademark [] paired with a DMACC house mark or other indicia of the college," i.e. a bear paw.   For all intents and purposes, DMACC is asking for sweeping and detrimental modifications to the Court's Order to permit time to deploy new infringing branding rather than seeking compliance with the Court's Order.  In this pursuit, DMACC relies on self-inflicted hardships, and evidence and argument it failed to raise previously.

**A.    DMACC's Request for an Extension of Time Should Be Denied**

DMACC adopted its new branding just over a year ago. ECF No. 87 at 4.  Shortly thereafter, Drake brought concerns about it to DMACC's attention. ECF No. 87 at 40.  When those requests fell on deaf ears, Drake filed suit and immediately sought expedited relief via a Motion for Preliminary Injunction. Dkts. 4, 18. The Court entered its judgment on that Motion enjoining DMACC from its infringing conduct and allowing 21 days to comply with the preliminary injunction Order. ECF No. 87 at 43.  The present motion seeks to more than triple this three-week window.

During the past year, DMACC has aggressively rolled out its rebrand across all available media, including after this suit was filed (e.g. printing student ID tags for the spring 2025 semester).  Despite this, DMACC presented only a single conclusory paragraph on the balancing of harms factor in its preliminary injunction resistance. ECF No. 30 at 42.  That was DMACC's

3

opportunity to argue and present evidence on the effect an injunction would have on it. It failed to do so. Nor did DMACC request that if an injunction were granted, that it should be permitted 70 days to comply. *Centennial Broad.*, 433 F. Supp. 2d at 733–34 (noting that consideration should not be given to arguments that could have been raised earlier but were not).

DMACC's brief reads as an attempt to shift the blame for its predicament to the Court.[1] In fact, the request for additional time focuses not on compliance by ceasing use, but time to replace the infringing branding with new materials that is, presumably, the Paw Mark that is enjoined by the plain language of the Court's Order. ECF No. 87, at 43.

DMACC alleges that compliance cannot be reached by the deadline with respect to certain materials, including, banners, vehicles, name tags, and basketball uniforms.[2] The Motion, however, does not seek relief tailored to these specific materials but rather a blanket extension of time. It is not unreasonable to expect DMACC to provide a detailed and specific request to the Court that identifies what materials it wishes to seek an extension of time to cease use with and the specific dates by which each can be attained. *See* ECF No. 97, at 2 ¶ 4 (noting that DMACC diligently took accounting of all items).

DMACC's purported inability to comply is highly suspect. Vague reference is made to "some" signage, billboards, and banners that cannot be changed by the deadline. ECF No. 97-1 at 4, 6; *see also* ECF No. 97-2, ¶ 8. However, other than a non-descript billboard in Perry, Iowa, nothing is stated or depicted for the Court to consider to ascertain the merits of additional time for compliance being legitimate. *See* ECF No. 97-2 ¶ 9. DMACC makes the same vague allegations

---

[1] *See* ECF No. 97-1 at 6 (unreasonably tight deadline); *see id.* n. 2 (unreasonably low bond); *see id.* at 7–8 (Order lacking in detail); *see* ECF No. 90 (notice of interlocutory appeal).

[2] DMACC also asks for additional time to replace a design on a basketball court and on a mural. These usages are discussed in Section B.

with respect to the vehicles wraps. ECF No. 97-1, at 6. Without an accounting of the number of vehicles and degree of alteration that is necessary to comply, it is impossible to ascertain whether the request is even in good faith, let alone appropriate under the correct standard set forth above.

Counsel for Drake investigated the claims regarding the DMACC basketball uniforms and identified only a single uniform showing the presence of a standalone block-style "D" on any men's basketball uniform. Exhibit A (excerpts below) contains images posted by DMACC's men's basketball team on social media reporting on this season's games and only include such indicia on the waistband of a pair of shorts that is easily covered as demonstrated by the below images.



Counsel also identified the below image of what appears to be players at a game with one student-athlete wearing sweatpants on the sideline with a standalone "D."



This student, however, is next to multiple other players in apparel not including the standalone "D." Moreover, these are not DMACC's basketball uniforms, but rather warm-up suits worn before the game and by players on the bench; these are not required for actual game play. If the team needs substitute warm-up pants that do not violate the Court's Order, at least one such option is present in the photo.

In short, DMACC fails to demonstrate why the expansive relief it seeks is needed. The reasons provided, if anything, demonstrate why the extension of time is not necessary and instead, a ploy to allow a new mark to be adopted to replace the infringing mark.

### B. DMACC's Request for "Clarification" Should Be Denied

DMACC's request for clarification is improper for multiple reasons, each on its own warrant denial.

#### 1. DMACC's Motion is Procedurally Improper

DMACC request for "clarification" is an obvious attempt to bait the Court into rendering a declaratory judgment of non-infringement as it pertains to the Paw Mark. This is an improper

bid to obtain relief on its counterclaims without briefing or a hearing. *See* ECF No. 52, at 57 ¶¶ 79–81 (DMACC's First Counterclaim for Declaratory Judgment of Non-Infringement of Drake's Trademarks); *see also* ECF No. 72, at 60 ¶¶ 89–91 (DMACC Foundation's First Counterclaim for Declaratory Judgment on Non-Infringement of Drake's Trademarks). This is procedurally improper.

### 2. The Scope of Order Is Clear

DMACC's request is frivolous, as the Court's Order plainly enjoins the use of a block-style "D" even when used in conjunction with other indicia of DMACC (e.g. the paw):

> Des Moines Area Community College, Des Moines Area Community College Foundation, their officers, agents, and employees ("Defendants") are **ENJOINED** from using a block-style "D" trademark in conjunction with any color combination of white and blue to denote their educational services, athletics, or ancillary goods and services. This includes the use of such a "D" even when it is paired with a DMACC house mark or other indicia of the college.

ECF No. 87, at 43. The plain language is not constrained by *when* the enjoined material was adopted, nor does it provide for any exceptions to its scope.

The plain and broad scope of the Order is further demonstrated by the Court's reasoning leading up to the Order. "Although DMACC has a right to compete, the public interest is best served by requiring it to do so under distinct branding that allows prospective students to make informed choices between institutions." ECF No. 87, at 42. "Having two institutions using nearly identical branding elements in the same geographic market could create unnecessary confusion…" ECF No. 87, at 42. "DMACC may choose to return to its prior successful branding that served it well for 35 years, requiring only the cessation of its recently-adopted D and blue/white color scheme." ECF No. 87 at 42. There is no ambiguity in the Order that DMACC is enjoined from using a standalone block-style "D" in conjunction with any color combination of

blue and white, even when paired with a DMACC house mark or other indicia of the college, e.g., a bear paw (which, from a distance, resembles a bulldog paw). The Court should find that here.

### 3. DMACC's Bases for Relief Are Spurious

Despite the clear language of the Order, DMACC asks that the Court "clarify that the use of the block-style 'D' with the bear paw in the middle is not subject to the preliminary injunction" and "clarify that the other block-style 'Ds' in use years prior to Defendants' October 2023 rebrand are not subject to the preliminary injunction." ECF No. 97 at 2, ¶¶ 8–9. Both of these "points of clarification" run afoul of the applicable legal standards on all fronts.

For the first request, DMACC's use of the "Paw Mark" is, as discussed, unquestionably prohibited under the Court's Order. DMACC's unrelenting persistence to implement an infringing brand that violates both the four corners and spirit of the Order should sound alarm bells as to their intent to trade on Drake's goodwill. The Court should look with skepticism on DMACC's allegations of non-infringement of the Paw Mark given its arguments at the preliminary injunction hearing (and its briefing) that the D Paw Mark was so similar to Drake's marks (i.e. was infringing them) that it should have triggered Drake's obligations to act. ECF No. 30, at 47 ("Even worse, however, Drake said nothing about DMACC's use of the blue and white [Paw Mark] below since at least 2014—Drake cannot suddenly cry foul and claim imminent, certain, and great irreparable harm after a decade of silence."); *see also* ECF No. 52, at 36–40 ¶¶ 23–30 (alleging the Rebrand incorporated the Paw Mark).

If this inquiry is entertained[3], the Court would be rendering a decision akin to a declaratory judgment or advisory opinion that could restart this entire litigation as Drake would need to amend

---

[3] Although the Order discusses the Paw Mark as having some distinction, the nature of that distinction is not discussed, for example whether the distinction arises from the visual appearance of the mark or the fact that it is used in connection with DMACC's intramural leagues. Based on the context presented, Drake understands it to be the latter.

its complaint and again seek a preliminary injunction as to the Paw Mark specifically, which is wholly unnecessary given the plain language of the Order already covers it. Such a ruling would also be at odds with the Court's finding that "the public is best served by requiring DMACC to" adopt "distinct branding." ECF No. 87, at 42.

Turning to the second line of inquiry regarding prior usage, the same rationale discussed *supra* applies. The language contains no exceptions, and thus clearly bars all usages past and present. Regarding the particular uses identified by DMACC, additional time should not be granted to DMACC to remove them. For one, DMACC already represented these did not exist. *See* Section 2(C) *infra*. Second, the use on the mural can be readily covered up. As shown below, the "D" in question is in one area and can be covered up with paint or some other medium.



The basketball Court can be dealt with in a similar manner or access can be restricted to that court until the Court can be put in compliance with this Court's Order.

---

This position is further demonstrated by the Court's findings articulated herein and the plain language of the Court's Order.

Accordingly, there is no need for the Court to clarify the implications of the injunction as it pertains to DMACC's Paw Mark or any other prior use that falls within the Court's Order.

### C. Candor

DMACC's unabashed admission that it continues to have standalone "Ds" that are not tied to "DMACC" is exceedingly troubling and warrants stern repercussions. *See* Iowa. R. Prof. Cond. 32:3.3, 32:3.4; 32:4.1; 32:8.4. DMACC and its counsel have ***repeatedly*** represented to this Court that all standalone "Ds" have been removed. For example:

- DMACC has locked its logo such that the "D" does not appear without the DMACC. ECF No. 52, at 36 ¶ 30

- As of [filing], DMACC[] is not aware of any goods or services being offered with just a "D" and without the "DMACC" nearby. ECF No. 52, at 36 n. 3.

- As of [filing], DMACC[] is not aware of any goods or services being offered with just a "D" and without the "DMACC" nearby. DMACC understands there was an issue with a third-party vendor who failed to include the 'DMACC' on some items for a brief period of time. This is (and has been since at least the filing of the Complaint) resolved. ECF No. 72, at 42 n. 3

Similar representations were made directly by opposing counsel to the Court during the hearing on the preliminary injunction. All the while, DMACC has in fact had standalone "Ds" unaccompanied by "DMACC" in use[4]—so many, in fact, that DMACC needs extra time to remove them all, including on *a second basketball* court whose existence DMACC has not only concealed, but now brazenly asserts as a basis to obtain *more* time to comply.

### II.   CONCLUSION

For the foregoing reasons Drake requests that DMACC's Motion be denied and should DMACC fail to comply with the Order then appropriate sanctions can be imposed. In the event

---

[4] *See* ECF No. 97, at 2 ¶ 4 ("After diligently taking an inventory of all Defendants' items which use the block-style "D" with or **without** the house mark, Defendants determined it will be impossible to comply with the Court's Order…") (emphasis added).

that the Court should be inclined to grant the Motion with respect to the extension of time, Drake requests that the Motion be granted only in part and be narrowly tailored to specific materials and for a duration far shorter than that requested by DMACC. ECF No. 87, at 41 ("Drake faces irreparable harm to its century-old brand identity and institutional goodwill if DMACC continues use of its new mark").

Respectfully submitted,

Dated: December 9, 2024

**ZARLEYCONLEY PLC**

By: /s/Joshua J. Conley
Joshua J. Conley, AT0011828
John D. Gilbertson, AT0014515
580 Market Street, Suite 101
West Des Moines, IA 50266
Telephone: (515) 558-0200
Facsimile: (515) 558-7790
jgilbertson@zarleyconley.com
jconley@zarleyconley.com
**ATTORNEYS FOR PLAINTIFF &
COUNTERCLAIM DEFENDANT**