IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA CENTRAL DIVISION

| | |
|---|---|
| DRAKE UNIVERSITY,<br>    Plaintiff,<br><br>vs.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE,<br>    Defendants.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE,<br>    Counterclaim Plaintiffs,<br><br>vs.<br><br>DRAKE UNIVERSITY,<br>    Counterclaim Defendant. | No. 4:24-cv-00227<br><br>**BRIEF IN SUPPORT OF MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR FAILURE TO COMPLY WITH COURT ORDERS**<br><br>**ORAL ARGUMENT REQUESTED** |

**I.    BACKGROUND**

**A.   Court Orders**

On November 22, 2024, this Court enjoined DMACC as follows:

> [Defendants] are **ENJOINED** from using a block-style "D" trademark in conjunction with any color combination of white and blue to denote their educational services, athletics, or ancillary goods and services. This includes the use of such a "D" even when it is paired with a DMACC house mark or other indicia of the college.
>
> Defendants must cease current use of all such trademarks within **21 days** of the date of this Order.

(the "PI Order").  ECF 87, at 4.  The Court found that "Drake faces irreparable harm to its century-old brand identity and institutional goodwill if DMACC continues use of its new mark."  ECF No.

87, at 41.  The Court further found that given the exceptionally close proximity of the parties, public interest is best served by requiring DMACC to utilize distinct branding.  *See id,* at 42.

On December 10, 2024, the Court issued a second order clarifying the scope of, and time for compliance with, the PI Order (the "Clarification Order"); stating in pertinent part:

> Defendants shall ensure **all internal** products and advertising is **fully compliant** with the Court's injunction by December 13, 2024.
>
> Defendants shall submit an affidavit from a school representative attesting to the remaining displays, products, or other materials which cannot comply with the injunction. . . which must describe (a) the reasons why compliance with the [PI Order] is **impossible** as it relates to the specific issue, [and] (b) what steps are being taken in ensuring compliance.

ECF No. 101, at 4 (cleaned up, emphasis added).  Conspicuously absent from either Order is any language indicating that DMACC could continue using the enjoined branding until a suitable *replacement* was found; both command *cessation* of it except in cases where cessation is "impossible."  *See* ECF 87, at 43; *see also* ECF No. 101, at 4, ¶ 2(a).

### B.  DMACC's Compliance Certification

DMACC submitted a declaration by Vice President of Student Affairs, Erica Spiller, which lists approximately 11 instances of enjoined branding that have not been removed as of the December 13 deadline because DMACC "cannot comply." ECF No. 102, at 1–5.  Almost none of these statements allege that *ceasing* use was impossible; alleging instead that (1) *replacement* of the enjoined use with new branding was impossible, (2) cessation of the enjoined use would be *inconvenient*, or (3) *no justification* of any kind was provided.  Particularly, Ms. Spiller's declared:

**(1) Impossibility of Replacement**

- "The **new** artwork for a billboard located in Perry, Iowa has been ordered, and the installation has been scheduled with third-party vendor Regan Outdoor.  Estimated date of completion is before 1/31/25." *Id*. at  ¶ 3(a) (emphasis added).

- "The **new** artwork for a billboard located in Boone, Iowa has been ordered, and the installation has been scheduled with third-party vendor Legacy Billboards. Estimated date of completion is 1/10/25." *Id*. at ¶ 3(b) (emphasis added).

- "The **new** artwork for a billboard located in Carroll, Iowa has been ordered, and the installation has been scheduled with third-party vendor Legacy Billboards. Estimated date of competition is before 1/31/25." *Id*. at ¶ 3(c) (emphasis added).

- "Defendants have ordered a **new** vinyl banner to cover the enjoined logo, but it has not yet arrived." *Id*. at ¶ 3(h) (emphasis added).

- "DMACC **has ordered** graphics to cover. . . [i]nternal displays in the pastry and baking area on the Newton campus, the health sciences sign in building 24 on the Ankeny campus, and the bistro wall graphic in the kitchen area of the Ankeny campus." "The estimated date for completion is before **12/31/2025**. *Id*. at ¶ 3(k) (emphasis added).

**(2) Inconvenience of Cessation**

- "Due to the age and type of [basketball] court, **the entire court must be redone** to remove the enjoined logo." "The basketball court cannot be redone until after the basketball season is completed and there are fewer students on campus." *Id*. at ¶ 3(g).

- "The [Jordan Creek] mall staff responded they cannot remove the banner until they have a replacement due to the **difficulty in reaching the high location** within the mall. The estimated date for competition is before 1/15/2025." *Id*. at ¶ 3(h) (emphasis added).

**(3) No Explanation Provided**

- "The panels next to the lecterns in the classrooms which operate the projectors have the enjoined logo. Only the instructor teaching the class can see the enjoined logo. DMACC IT department staff estimate they can remove the enjoined logo by 12/20/2024." *Id*. at ¶ 3(i)

- "There is an enjoined logo on one of the front doors leading into the [World Pork Expo] building. The estimated date for competition is before **12/31/2025**." *Id*. at ¶ 3(j) (emphasis added).

None of the foregoing alleges *cessation* was *impossible* by the deadline. Also absent is a recitation of the measures undertaken to ensure compliance as immediately as possible. For instance, there is no discussion of whether efforts were made to expedite remediation such as through express shipping or priority services. This is a plain violation of both Orders. *See* ECF

3

87, at 43 ("Defendants must cease use of **all** such trademarks within 21 days of the date of this Order.") (emphasis added); *see also* ECF No. 101, at 4 (DMACC must describe "the reason(s) why compliance with the Court's order is **impossible** as it relates to the specific issue.") (emphasis added).

## II.   LEGAL STANDARD

"To sustain a finding of civil contempt, [the movant] has the burden of demonstrating by clear and convincing evidence that an Order of the Court was in effect, that Defendants knew of the Order, and that Defendants failed to comply with the Order." *C. Line, Inc. v. City of Davenport*, 957 F.Supp.2d 1012, 1027 (S.D. Iowa 2013). Plaintiff is not required, however, to show that this failure was willful. *See McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949) ("The absence of willfulness does not relieve from civil contempt.")

Title 18 United States Code Section 401 authorizes courts to impose sanctions for "[d]isobedience or resistance to . . . [a] lawful . . . order . . . ." 18 U.S.C. § 401. The Eighth Circuit has recognized "a district court has inherent power to enforce compliance with its lawful orders and mandates by awarding civil contempt damages, including attorneys fees." *Fisher v. Marubeni Cotton Corp.*, 526 F.2d 1338, 1340 (8th Cir. 1975) (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)).

## III.   ARGUMENT

The Court's PI and Clarification Orders are valid and lawful.  Defendants knew about the PI Order because they have partially complied with it.  ECF No. 102, at ¶ 2 (Ms. Spiller certifying that "to the best of [her] knowledge, other than the items listed in paragraph three, Defendants are compliant with the Court's preliminary injunction order issued on November 22, 2024.").

Defendants have failed to comply with the PI Order because they have not ceased use of all enjoined branding.  *See* ECF No. 102, ¶ 3.  Defendants have also failed to comply with the

Clarification Order because the Court's leniency therein only extended to usage whose *cessation* (not replacement) was *impossible* (not inconvenient) by the deadline. Ms. Spiller's declaration is not a statement of compliance; it is the opposite.

Moreover, Drake urges the Court to look with suspicion on DMACC's allegation that removing the standalone "D" from its Boone basketball court requires over six months of lead time because it endangers the safety of its student athletes. For one, DMACC has other basketball courts that can be used, such as the one Drake identified at the preliminary injunction stage:



DMACC was able to remove the "D" from that court, voluntarily, in less than two months. *See* ECF No. 30-1, at 3 ¶ 15 (Declaration of Todd Jones).

Second, DMACC's sole authority for this allegation is a letter from a Dr. Marc Shulman, a Team Physician for Iowa State University who appears to have no connection to DMACC, has not been named in DMACC's initial disclosures, nor has been designated as an expert by DMACC. ECF 102-2, at 2. The letter is further not made under oath and is hearsay.[1] The Court should disregard this inadmissible evidence, particularly when DMACC is using it as a basis to obtain a *six-month* extension to comply with this Court's Order. *See* ECF No. 87, at 41 (finding DMACC's use of a standalone "D" is causing Drake irreparable harm). To justify such an exceptional

---

[1] Although an unvetted expert opinion and cost for the gym replacement was obtained and submitted with Ms. Spiller's affidavit, no supporting evidence of communications or receipts accompany the other allegations.

accommodation for this basketball court—which DMACC failed to disclose until after the PI Order was issued—the Court should require more.

To be clear, Drake is not attempting to split hairs or rely on self-serving interpretations of the Court's authority. The Court found in the PI Order that DMACC's use of its new branding is causing Drake irreparable harm, and that the public is best served by requiring DMACC to cease use. Maintaining a large billboard in the central atrium of Iowa's largest mall during the holiday shopping season for convenience's sake objectively does not comport with the spirit of the preliminary injunction, which is to preserve the status quo while the merits of the case can be decided. *See, e.g., Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also McCarthy on Trademarks & Unfair Competition*, § 30:50 (5th ed. 2024) ("A preliminary injunction should preserve the status quo which **preceded** the dispute, not the situation that arose **after** the defendant began the allegedly illegal conduct")  (emphasis added).

## IV. CONCLUSION & RELIEF SOUGHT

For the reasons set forth herein and in the accompanying Motion, Drake respectfully requests that the Court order Defendants to show cause why they have not complied with the Court's Preliminary Injunction and Clarification Orders, and to consider this failure to comply as yet another factor supporting a finding that this case should be deemed "exceptional" under the Lanham Act in Drake's favor. Moreover, Drake respectfully requests that the Court craft a sanction it deems suitable to ensure compliance with its directives.

//

//

//

//

//

                                        Respectfully submitted,

Dated: December 19, 2024                 **ZARLEYCONLEY PLC**

                               By:    <u>/s/John D. Gilbertson</u>
                                           John D. Gilbertson, AT0014515
                                           Joshua J. Conley, AT0011828
                                           580 Market Street, Suite 101
                                           West Des Moines, IA 50266
                                           Telephone:  (515) 558-0200
                                           Facsimile:   (515) 558-7790
                                           jgilbertson@zarleyconley.com
                                           jconley@zarleyconley.com
                                           **ATTORNEYS FOR PLAINTIFF & COUNTERCLAIM DEFENDANT**