**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| DRAKE UNIVERSITY,<br><br>     Plaintiff,<br><br>vs.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE,<br><br>     Defendants.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE,<br><br>     Counterclaim Plaintiffs,<br><br>vs.<br><br>DRAKE UNIVERSITY,<br><br>     Counterclaim Defendant. | Case No. 4:24-CV-00227-SMR-SBJ<br><br>**DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' BRIEF IN RESISTANCE TO PLAINTIFF AND COUNTERCLAIM DEFENDANT'S MOTION FOR ORDER TO SHOW CAUSE WHY DEFENDANTS SHOULD NOT BE HELD IN CIVIL CONTEMPT FOR FAILURE TO COMPLY WITH COURT ORDERS**<br><br>**ORAL ARGUMENT REQUESTED** |

**I.     INTRODUCTION**

The Court should deny Drake's Motion to Show Cause because DMACC is complying with the Court's Orders. Since the Court entered the preliminary injunction the Friday before Thanksgiving, DMACC has essentially completed a full-fledged rebrand over a very busy holiday season. DMACC's efforts have been complicated by the necessary use of third-party vendors to assist with removal of all enjoined Ds from DMACC's 13 locations and other public areas outside of DMACC's control. DMACC staff have put in overtime hours around the holidays to comply with the Court's Orders. DMACC has spent or will spend *well* over $250,000 to comply with the

Court's Orders as will be shown in DMACC's forthcoming the Motion to Increase the Preliminary Injunction Bond. Despite these logistical and financial obstacles, as of today, December 23, 2024, DMACC has permanently removed and/or ceased use of nearly all instances of the enjoined block-style Ds—many ahead of the estimated date of completion. DMACC intended to inform the Court and Drake of these positive developments in its weekly status update.

However, late on the Thursday afternoon before Christmas, DMACC's counsel received a single email from Drake's counsel threatening to file the present motion for alleged non-compliance with the Court's Orders. DMACC's counsel responded less than an hour later, addressing Drake's concerns. Drake's counsel never responded—no call, no voicemail, no in-person meeting. Instead of meeting and conferring, less than three hours after its initial email, Drake filed this motion. Had Drake taken any meaningful steps to meet and confer prior to filing, it would have known that the majority of "instances" identified in its motion were already resolved. Instead, Drake's counsel opted to waste the Court's time addressing issues that were already moot. It appears Drake rushed its filing not because of any imminent harm, but to make a press deadline.[1] DMACC respectfully requests that the Court deny Drake's motion both on the merits and for failing to meet and confer in good faith as required by Local Rule 7(k).

## II.     DMACC HAS COMPLIED WITH THE COURT'S ORDERS.

Drake "has the burden of demonstrating by clear and convincing evidence that an Order of the Court was in effect, that [DMACC] knew of the Order, and that [DMACC] failed to comply with the Order." *C. Line, Inc. v. City of Davenport*, 957 F. Supp. 2d 1012, 1027 (S.D. Iowa 2013);

---

[1] *See* https://www.desmoinesregister.com/story/news/crime-and-courts/2024/12/21/drake-university-wants-dmacc-to-explain-why-the-d-logo-is-still-up-some-places/77102093007/ - notably, Drake filed the present motion shortly after 5:00 p.m. Thursday, December 19 and the above-referenced article indicates it was published at 6:03 a.m. Saturday, December 21st.

*see also Chi. Truck Drivers v. Brotherhood Labor Leasing*, 207 F.3d 500, 504 (8th Cir. 2000). "[C]ontempt is an 'inherent power' of a court which 'must be exercised with restraint and discretion.'" *Miljas v. Greg Cohen Promotions, LLC*, 2021 WL 6618707, at *3 (S.D. Iowa 2021) (*citing Roadway Express, Inc. v. Piper*, 447 U.S. 752, 764 (1980)). In ruling on a motion for contempt, "a court is obliged to use the 'least possible power adequate to the end proposed.'" *Spallone v. United States*, 493 U.S. 265, 276 (1990) (citation omitted). "[I]f there is 'fair ground of doubt' about the wrongfulness of a defendant subject to an injunction, courts should avoid contempt findings." *Miljas*, 2021 WL 661707 at *3 (*citing Taggart v. Lorenzen*, 139 S. Ct. 1795, 1801 (2019)).

Here, Drake cannot show by clear and convincing evidence that DMACC failed to comply with the Court's Orders. DMACC followed the Court's directions: it stopped all uses of the enjoined block-style Ds to the extent possible by December 13, 2024, and filed a timely declaration detailing the small number of remaining uses, why they were not yet in compliance, and when compliance was expected. Put simply: no order to show cause is necessary, because no violation has occurred.

  A. **The Court Granted In Part DMACC's Motion to Extend the Deadline to Comply with the Injunction.**

On December 5, 2024, DMACC filed an expedited Motion to Extend the Deadline to Comply with the Preliminary Injunction Order and Clarify the Scope of the Preliminary Injunction. ECF 97. In that motion, DMACC submitted a declaration explaining how DMACC would be unable to fully comply with the injunction Order by December 13 due to circumstances outside of DMACC's control. *See* ECF 97-02, (12/5 Spiller Decl., ¶¶ 8, 9, 11, 1, 14). These circumstances included: fixed external and internal signage, billboards, banners, uniforms, vehicle wraps, and student IDs. *Id.* ¶¶ 8 10-12, 13, 14. DMACC further notified the Court that, if the pre-rebrand

block-style D's (excluding the bear paw D's) were included, several of those would require additional time to update. ECF 97-1 at 7-8. Against this background, the Court issued its December 10 Order, which provided in relevant part:

1. Defendants shall ensure all internal products and advertising is fully compliant with the Court's injunction by December 13, 2024;

2. Defendants shall submit an affidavit from a school representative attesting to the remaining displays, products, or other materials that cannot comply with the injunction by December 13, 2024. This affidavit must describe:

   a. The reason(s) why compliance with the Court's order is impossible as it relates to the specific issue;

   b. What steps are being taken in ensuring compliance; and

   c. The earlier date where full compliance is expected.

3. Defendants shall also affirm in writing that all uses of a standalone D have already been identified in the pleadings or preliminary injunction record. If there are outstanding standalone Ds used by Defendants, they shall be filed on the docket immediately;

4. This filing shall be submitted to the Court by December 16, 2024.

5. On December 23, 2024, Defendants shall file a status update with the Court to advise on its progress in complying with the preliminary injunction order.

6. Defendants shall file similar status updates regarding compliance every Monday until it certifies that it is fully compliant with the terms of the preliminary injunction.

ECF 101 at 4. The Court granted in part DMACC's request for an extension to comply with the Court's Preliminary Injunction Order, and required DMACC to submit affidavits each Monday to apprise the Court of those items that are not yet in compliance. *Id.* By its own terms, the Court's Order recognized that, despite its best efforts, DMACC would not be "fully complaint with the terms of the preliminary injunction" by December 13, 2024. *See id*.

> **B.    DMACC Submitted a Declaration Detailing Things That Could Not Comply with the Injunction and the Date Compliance Was Expected, As Ordered by the Court.**

In accordance with the Court's December 10 Order, on December 13, DMACC filed a declaration detailing which uses of enjoined block-style Ds were not yet in compliance with the Court's Preliminary Injunction Order.  *See* ECF 102. Eleven items remained. These items were: (1) the Perry Billboard; (2) the Boone Billboard; (3) the Carroll Billboard; (4) basketball uniforms; (5) student IDs; (6) security personnel uniforms and vehicles; (7) the Boone Basketball Court; (8) the Jordan Creek Elevators Banner; (9) lectern projector panels; (10) Power Equipment Technology program display at the World Pork Expo in Boone, Iowa; and (11) internal displays in the pastry and baking area on the Newton campus, health sciences building in Ankeny, and bistro wall graphics in Ankeny.  *See* ECF 102.

### III.   ALL BUT TWO ALLEGED VIOLATIONS IDENTIFIED IN THE MOTION WERE RESOLVED BY DECEMBER 20, 2024.

Simultaneously with this motion, DMACC is submitting the required affidavit regarding the status of DMACC's compliance with the Preliminary Injunction Order.  In that affidavit, also attached here, DMACC demonstrates that eight out of the eleven[2] items on DMACC's December 13 declaration have been resolved—most *much* sooner than anticipated based on the vendors' estimates (on which DMACC's December 13 declaration was based):

| Item | Date of Compliance |
|---|---|
| Perry Billboard | Monday, December 16, 2024 |
| Carroll Billboard | Tuesday, December 17, 2024 |

---

[2] Drake's Motion does not appear to move on all of the identified uses.  *See generally* ECF 107-01 (identifying paragraphs 3(a)-(c), (g)-(k); *see also* EF 107 (identifying paragraphs 3(a)-(c), (g)-(k).

| Jordan Creek Mall Banner | Thursday, December 19, 2024 |
|---|---|
| Lectern Projector Panels | Friday, December 20, 2024 |
| The Power Equipment Technology program display at the World Pork Expo building | Friday, December 20, 2024 |
| Internal displays in the pastry and baking area on the Newton campus | Friday, December 20, 2024 |
| Internal displays in the Health Sciences Building on the Ankeny campus | Friday, December 20, 2024 |
| Internal displays (i.e., the bistro wall graphic) in the kitchen area of the Ankeny campus | Friday, December 20, 2024 |

Thus, the only remaining uses of the enjoined block-style Ds identified in Drake's motion are the Boone Campus Gym basketball court and the Boone billboard. As explained below, despite its best efforts, DMACC is unable to cease those two remaining uses at this time.

1. *Boone Campus Gym*

DMACC cannot cease use of the enjoined block-style D on the basketball court in the Boone Campus Gym in the middle of the NJCAA basketball season—a standalone D that has been in use since 2019. *See* ECF 97-2, ¶ 15.

First, as previously discussed, the enjoined D cannot be removed from the Boone basketball court without completely refinishing the entire court due to its age and type of court. *See* ECF 102 at 3. Furthermore, completely refinishing a basketball court mid-season poses a safety risk to the student-athletes who use the court. *See* ECF 102-2 (letter from sports physician regarding risks of refinishing a basketball court).

Second, the Boone Campus Gym is the only DMACC athletic facility that can host official NJCAA basketball games. In its motion, Drake suggests that "DMACC has other basketball courts that can be used, such as the one Drake identified at the preliminary injunction stage." ECF 107-

6

1 at 5 (including a photo of the basketball court at the Student Recreation Center on DMACC's Ankeny campus). Contrary to Drake's speculation, it is impossible for DMACC to host NJCAA basketball games on that court or any other facility owned by DMACC for at least the following reasons:

- NJCAA standards require basketball courts to be at least 94 feet long. The basketball court at the Student Recreation Center on DMACC's Ankeny campus is only 74 feet long.

- The Boone Campus Gym is the only DMACC athletic facility with shot clocks, game scoreboards, and live stream capabilities that are compliant with NJCAA standards.

- The Boone Campus Gym is the only DMACC athletic facility with sufficient locker rooms and dressing rooms to hosts teams and officials during men's and women's double header events.

- The Boone Campus Gym is the only DMACC athletic facility with ADA-compliant seating for spectating NCJAA basketball games.

- The Boone Campus Gym is the only DMACC athletic facility with the adequate athletic training rooms and medical facilities available for use in the event of an injury to a student athlete.

- The Boone Campus Gym is the only DMACC athletic facility with medical equipment, such as ice machines, whirlpool tubs, and AEDs, on hand for use by student athletes.

Spiller Decl., ¶ 3(b); *see also id*. Exs. E-F. These reasons, among others, preclude DMACC from hosting NJCAA basketball games at any court other than the Boone Campus Gym. As previously indicated, DMACC has scheduled for the enjoined D to be removed from the Boone basketball court on May 12-16, 2025—after the completion of the NJCAA basketball season. ECF 102 at 3. It appears that Drake believes DMACC should cancel the entire basketball season rather than play on the same court it has used for the past nearly 5 years. Such a requirement would be detrimental to DMACC's student athletes and cannot be considered in the public interest.

Drake also argues that DMACC should be held to a higher standard regarding the basketball court, and in particular takes issue with the lack of identification of Dr. Shulman in DMACC's initial disclosures. But there is no requirement that DMACC's compliance affidavit not rely on hearsay (indeed, it is hard to imagine how it would not rely on hearsay, given that DMACC needs to rely on vendors statements regarding estimates for completion). Further, DMACC does not intend to rely upon Dr. Shulman in support of its claims or defenses in this litigation. Rather, DMACC relied upon his expertise in determining the timeline the Boone court could safely be brought to compliance with the preliminary injunction. Thus it is unclear why Drake believes he should be identified in DMACC's initial disclosures. That Dr. Shulman is *not* disclosed in initial disclosures has no impact on DMACC's ability to utilize his expertise in its compliance with the injunction.

2. *Boone Billboard*

There is a billboard in Boone, Iowa displaying the enjoined D. ECF 102 at 2. DMACC does not own the billboard. DMACC ordered new artwork for the Boone billboard from Legacy Outdoor Advertising, the third-party vendor that operates the billboard. *See* Spiller Decl., ¶ 3(a). Legacy Outdoor responded that it could "order for install the first week of January" and "mark the work order ASAP" but would not confirm an earlier date of completion because they "utilize a contractor." *Id.* at 1. DMACC acted immediately to cease use of the enjoined D on the Boone billboard and its now waiting on third party vendors (and their contractors) to complete the order. DMACC employees cannot themselves alter the billboard and require a third-party vendor to do so. Thus, not due to a lack of effort, DMACC cannot cease use of the enjoined D on the Boone billboard at this time. But, according to the third-party vendor, this use should be removed soon after the holidays.

IV. **DRAKE WOULD HAVE KNOWN ITS MOTION WAS UNNECESSARY HAD IT MET AND CONFERRED WITH DMACC.**

Local Rule 7(k) requires "All non-dispositive motions must contain a representation that counsel for the moving party personally has conferred in good faith with counsel for all other parties and any pro se parties concerning the motion, and a statement of whether or not the other parties consent to the motion."

On Thursday, December 19 at 2:04 PM, counsel for DMACC received an email advising that Drake would be filing a motion for a show cause order "by the end of the day today." Donels Decl., Ex. G. Drake's counsel did not offer to confer in-person or telephonically—it simply stated "Pursuant to LR 7(k), please advise if you consent." *Id.*

Within thirty minutes, counsel for DMACC replied, disputing the characterizations in Drake's email and explaining why the motion was improper and premature. *Id.* Rather than respond, or otherwise personally engage in a good faith meet and confer (which DMACC's counsel understands requires, at a minimum, picking up the phone[3]), Drake filed its motion at 5:04 PM. By that time, counsel for DMACC had gathered additional information regarding compliance with the Court's Orders, including that some of the items in the December 13 declaration had been completed early, despite initially receiving estimates that it would take longer.

Drake's perfunctory email does not follow the letter or the spirit of the Court's meet-and-confer requirement. The requirement to meet-and-confer in good faith requires more than simply

---

[3] For example, DMACC's attorney attempted to meet and confer with Drake on December 19 by calling Drake to discuss whether Drake would consent to a motion for an exception to the Preliminary Injunction Order because DMACC was unable to print official transcripts that did not contain the enjoined "D." These enjoined official transcripts were necessary for nursing staff to submit prior to taking their Boards, and without them, DMACC understood the nursing students would be unable to sit for their Boards or enter the workforce. The Nursing Board subsequently made an exception for DMACC, allowing it to submit electronic, non-enjoined transcripts, so that Drake never consented became immaterial.

9

pronouncing your position to the other side via email, and then plowing forward with the filing of the threatened motion. Had Drake made any good-faith attempt to confer with counsel for DMACC, it could have learned of the additional detail described above. Eight of the issues identified in Drake's brief are moot, and the remaining could have been resolved by a simple, conversation, a request for more detail, or merely waiting until the filing of DMACC's required weekly status update affidavit.

The Court should deny Drake's motion on the separate and independent ground that Drake's counsel failed to meet and confer in good faith as required by Local Rule 7(k). *See J.S.X. v. Foxhoven*, No. 417CV00417SMRHCA, 2019 WL 13167113, at *2 (S.D. Iowa May 21, 2019) ("Even if the Court did find Defendants have standing, it would deny the motion due to their failure to follow Local Rule 7(k).")

## V.    CONCLUSION

DMACC is making every effort to keep the Court informed of its progress. DMACC is doing everything in its power to put the rebrand "D" behind it, but not cannot do everything on its own—it necessarily relies on third-party vendors, and the estimates vendors provide. Thankfully, most of the necessary changes have been done ahead of the estimates, *in that the vendors have been able to move more quicky than anticipated.* But the reality is that DMACC does not itself have the ability to unilaterally remove billboards or magically refinish basketball courts mid-season. While DMACC waits for its vendors to replace the remaining items, DMACC will continue to update the Court every Monday. In the interim, DMACC respectfully asks the Court to deny Drake's motion, and decline to issue an Order to Show Cause.

Respectfully submitted,

Date: December 23, 2024

*/s/ R. Scott Johnson*

R. Scott Johnson (#AT0004007)
Cara S. Donels (#AT0014198)
Erin M. Boggess (#AT0015950)
FREDRIKSON & BYRON, P.A.
111 East Grand Avenue, Suite 301
Des Moines, IA  50309-1977
Telephone:  (515) 242-8900
E-mail:  RSJohnson@fredlaw.com
            CDonels@fredlaw.com
            EBoggess@fredlaw.com

Laura L. Myers (Minn. #0387116)
(admitted *Pro Hac Vice*)
Luke P. de Leon (Minn. #0401756)
(admitted *Pro Hac Vice*)
FREDRIKSON & BYRON, P.A.
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
Telephone:  (612) 492-7000
E-mail:  LMyers@fredlaw.com
            LdeLeon@fredlaw.com

***Attorneys for Defendants and Counterclaim Plaintiff***

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 23, 2024, I electronically filed the *Defendants and Counterclaim Plaintiffs' Brief in Resistance to Plaintiff and Counterclaim Defendant's Motion for Order to Show Cause Why Defendants Should not be Held in Contempt for Failure to Comply with Court Orders* with the Clerk of Court using the CM/ECF system, who in turn sent notice to the following:

Joshua J. Conley, Esq.
  jconley@zarleyconley.com
John D. Gilbertson, Esq.
  jgilbertson@zarleyconley.com
ZARLEYCONLEY PLC
580 Market Street, Suite 101
West Des Moines, IA  50266

*Attorneys for Plaintiff and
Counterclaim Defendant*


　　　　　　　　　　　　　　　　　　　　　　　　 */s/ Erica Palmer*　　　　　　　　　　
　　　　　　　　　　　　　　　　　　　　　　　　Erica Palmer