## IN THE UNITED STATES DISTRICT COURT FOR
### THE SOUTHERN DISTRICT OF IOWA
### CENTRAL DIVISION

| | |
|---|---|
| DRAKE UNIVERSITY,<br><br>　　　　Plaintiff,<br><br>vs.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE,<br><br>　　　　Defendants. | Case No. 4:24-CV-00227-SMR-SBJ<br><br><br>**DEFENDANT AND COUNTERCLAIM PLAINTIFFS DES MOINES AREA COMMUNITY COLLEGE AND DES MOINES AREA COMMUNITY COLLEGE FOUNDATION'S BRIEF IN SUPPORT OF MOTION TO INCREASE PRELIMINARY INJUNCTION BOND** |
| DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE,<br><br>　　　　Counterclaim Plaintiffs,<br><br>vs.<br><br>DRAKE UNIVERSITY,<br><br>　　　　Counterclaim Defendant. | |

In its Order granting the preliminary injunction, the Court set the bond at an amount—$25,000—that falls far below the amount DMACC has and will actually incur to comply with the Court's preliminary injunction. Defendants now have sufficient facts and evidence to show that, by the time judgment occurs, Defendants will have suffered more than $250,000 in damages proximately caused by the injunction. Drake should be required to post that bond now as security for those damages, which are ongoing. Accordingly, DMACC respectfully requests the Court increase the bond to reflect the true scale of the harm Defendants are suffering from the injunction.

I.      **Background**

Drake filed an Amended Motion for a Preliminary Injunction on July 17, 2024. (ECF Dkt. 18). DMACC filed its Resistance to the motion on July 31, 2024.[1] (ECF Dkts. 23 and 30). At the October 15, 2024, hearing on the Preliminary Injunction Motion, Drake did not indicate the amount of a bond to be posted in the event the Court issued the preliminary injunction. On November 22, 2024, the Court granted Drake's Motion, enjoining Defendants "from using a block-style 'D' trademark in conjunction with any color combination of white and blue to denote their educational services, athletics, or ancillary goods and services." (ECF Dkt. 87 at 43). The injunction "includes the use of such a 'D' even when paired with a DMACC house mark or other indicia of the college." (*Id.*).

In the Order, the Court set a bond in the amount of $25,000 without explaining its analysis for the amount. (*Id.*) In support of the bond amount, the Court referenced its obligation under the Federal Rules of Civil Procedure. (*Id.*) ("When a preliminary injunction is issued, the Federal Rules of Civil Procedure require the movant to give 'security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained.' Fed. R. Civ. P. 65(c)."). At this point, Defendants have already spent more than $25,000 to comply with the preliminary injunction and estimate they will spend no less than $250,000 to fully comply with the Order.

---

[1] DMACC filed its resistance while DMACCF's Motion to Dismiss was pending. (*See* Dkts. 23-2 and 30 at FN 1). The Court denied DMACCF's Motion to Dismiss. (ECF Dkt. 59). DMACC requested its Resistance apply to DMACCF if the Motion was denied. (*See* Dkts. 23-2 and 30 at FN 1).

## II.    ARGUMENT

### A.  Legal Standard

When a preliminary injunction is issued, the Federal Rules of Civil Procedure require the movant to give "security in an amount that the court considers proper to pay the costs and damages sustained by any party found to have been wrongfully enjoined or restrained." Fed. R. Civ. P. 65(c); *see also Glenwood Bridge, Inc. v. City of Minneapolis*, 940 F.2d 367, 373 (8th Cir. 1991) (noting that security should be imposed "in an amount that fairly protects the [defendants] should it be ultimately found that the [defendants] ha[ve] been wrongfully enjoined"). The bond amount ultimately "rests within the sound discretion of the trial court." *Stockslager v. Carroll Elec. Coop. Corp.*, 528 F.2d 949, 951 (8th Cir. 1976). The Court must, however, make findings in support of its determination of the adequate bond amount. *Hill v. Xyquad, Inc.*, 939 F.2d 627, 632 (8th Cir. 1991). "Moreover there are very sound policy reasons for the bond requirement in preliminary proceedings. The defendant who has been wrongfully enjoined has no recourse for damages in the absence of a bond. And because a preliminary injunction proceeding is both expedited, resulting in only provisional findings of fact, and interlocutory, there is a higher chance that the district court will err in granting the preliminary injunction." *Ohlensehlen v. University of Iowa*, 509 F. Supp. 3d 1085, 1105 (S.D. Iowa 2020) (quotations omitted) (*quoting Interbake Foods, L.L.C. v. Tomasiello*, 461 F. Supp. 2d 943, 979 (N.D. Iowa 2006)).

Courts have discretion in determining whether to increase an injunction bond, with a focus on the potential harm that may be caused if the injunction is found to have been wrongly issued. *In re President Casinos, Inc.*, 360 B.R. 262, 266 (B.A.P. 8th Cir. 2007). An increase is justified when the current bond does not adequately cover potential losses. *See id.* The party seeking an increase in the bond amount bears the burden of justifying the increase by demonstrating that the damages likely to be caused by the injunction exceed the current bond amount. *Id.* Courts have

found an increase in bond to be appropriate when the damages a party has or is expected to suffer from the injunction is larger than the bond amount set. *See id.* Although courts have broad discretion in setting the amount of an injunction bond, the bond set must meet a minimum threshold of protecting against losses that may result from the injunction if it is later determined to be erroneously issued. *See e.g.*, *Rathmann Grp. v. Tanenbaum*, 889 F.2d 787, 789 (8th Cir. 1989) (finding $10,000 bond was "inadequate to protect" defendant from losses because evidence "indicates [defendant] may lose gross income of $13,000 per month as a result of the injunction"); *N. States Power Co. v. Fed. Transit Admin.*, 270 F.3d 586, 588 (8th Cir. 2001) (increasing bond from $50,000 to $8,000,000, stating the $50,000 the district court had set for bond "is a token amount in the circumstances of this case. . . .").

## B.  $25,000 is Inadequate to Protect Defendants from an Erroneously Entered Bond.

Defendants have already accumulated $169,559.88 in invoices and estimates to comply with the Court's preliminary injunction, and further anticipate spending a total of over $300,148.88. (Ex. AK). Because $25,000 is woefully inadequate to protect Defendants against an erroneously entered preliminary injunction, the bond amount should be increased. Defendants' Exhibits _ include a breakdown of all expenses and costs associated with complying with the Court's Order for a Preliminary Injunction. The following is a list of invoices of costs Defendants have or will incur to comply with the preliminary injunction:

1.  Security: $1,433.65

    a.  PVC Logo (Ex. A)

    b.  Vehicle Decals (Ex. B)

    c.  Uniform Patches (Ex. C)

    d. Kiosk Logo (Ex. D)[2]

2. Athletics Department: $36,065.89

    a. Men's Basketball Travel Gear (Ex. E)

    b. Boone Basketball Floor (Ex. F)

    c. Basketball Stools (Ex. G)

    d. Basketballs (Ex. H)

    e. Softball Bags (Ex. I)

    f. Basketball Coach's gear (Ex. J)

    g. Men's Basketball Blue Home Gear (Ex. K)

    h. Men's Basketball White Home Gear (Ex. L)

3. External Marketing Materials: $24,104.71

    a. Des Moines Billboards (Exhibit M)

    b. Perry Billboard (Exhibit N)

    c. Carroll Billboard (Exhibit O)

    d. Flags (Exhibit P)

    e. Welcome and Map Banners (Exhibit Q)

    f. Graphics (Exhibit R)

    g. Semi Decals (Exhibit S)

    h. Truck Wraps (Exhibit T)

4. Internal Marketing Materials: $62,472.13

    a. First Sticker Order (Ex. U)

---

[2] This invoice is dated 7/17/24. The invoice for the new kiosk is still pending but is comparable in price.

    b.   Envelopes and Folders (Ex. V)

    c.   CE Postcard Reprint and Recycle Fee (Ex. W)

    d.   Table Throws (Ex. X)

    e.   Lapel Pins (Ex. Y)

    f.   Employee Business Card Reprint (Ex. Z) [3]

    g.   DMACC English Viewbooks (Exhibit AA)

    h.   DMACC Spanish Viewbooks (Ex. N)

    i.   Admissions Brochure (Exhibit AB)[4]

    j.   Foundation Magazine Reprint (Exhibit AC)

    k.   Lanyards (AD)

    l.   Plexi Glass Sign for Building 1 on Ankeny Campus – (Ex. AE)

    m. Safety Data Sheet Stickers – (Ex. AE)

    n.   Bear Stickers – (Ex. AE)

    o.   Power Equipment Window Graphic – (Ex. AE)

    p.   Second Sticker Order – (Ex. AE)

    q.   Other Business Cards – (Ex. AE)

5.   Merchandise with Enjoined Logo Which Can No Longer be Used:[5] $45,483.50

    a.   Nursing Student Clothing Order (Exhibit AF)

    b.   EMS Student Clothing Order (Exhibit AG)

---

[3] This is only the employees who have reordered their business cards with order dates from 11/25/24 through present.

[4] This invoice is dated 12/31/23. This date is incorrect and not reflective of the revised order.

[5] These items have not yet been reordered or recycled but will need to be reordered and/or will incur a recycle fee.

      c.   Power and Tech Student Clothing Order (Exhibit AH)

      d.   Unsold Bookstore Inventory (Exhibit AI)

      e.   Transportation Institute Signage (Exhibit AJ)[6]

      f.   Business Cards (Ex. Z)[7]

In invoices, costs, and estimates accumulated alone, Defendants have spent or will spend $169,559.88. (Ex. AK). Additionally, Defendants will need to reprint every student and staff student ID at $0.30/ID, which could amount to a $7,500 when all students and staff get a new ID. (Spiller Decl. ¶ 9). The Defendants have approximately $2,000 worth of giveaways that can no longer be distributed. (Spiller Decl. ¶ 10). DMACC staff members have personally paid for items with the enjoined logo to wear while at work and students have paid for uniforms to wear while doing rotations or externships with the enjoined logo. (Spiller Decl. ¶ 11). Defendants estimate these reimbursements will cost more than $50,000. (Spiller Decl. ¶ 12). DMACC has paid full and part-time marketing staff $71,089.00 to work on ensuring compliance with the injunction. (Spiller Decl. ¶ 7). The Defendants have employed their student ambassadors to walk around campus to search for Ds and to remove them at $12.50/hour. (Spiller Decl. ¶ 8). In total, the lowest amount Defendants will spend to comply with the preliminary injunction is $300,148.88. Additionally, there will be further, unexpected costs that will inevitably arise throughout the duration of the lawsuit which Defendants will incur to comply with the preliminary injunction. (Spiller Decl. ¶ 13).

---

[6] Line items 6, 9, and 10 are unable to go into use due to the preliminary injunction.

[7] Defendants estimate the amount of outstanding business cards based on those ordered from 12/1/23-10/28/24.

The more than $250,000 in actual expenses DMACC is forced to incur is 10 times more than the current bond of $25,000. The current bond of $25,000 "is a token amount in the circumstances of this case" and should therefore be increased as it fails to protect DMACC from the harm it may incur if the preliminary injunction is found to have been wrongly issued. *N. States Power*, 270 F.3d at 588.

DMACC will be entitled to recover all of these damages when the preliminary injunction is dissolved as a result of either (1) on appeal; (2) summary judgment; or (3) trial on the merits in favor of Defendants that Defendants' logo does not infringe on Drake's trademark or Drake does not own the broad common-law trademark rights on which the injunction in this case relies.

## III.    CONCLUSION

For the forgoing reasons, the Court should increase the bond for the preliminary injunction from $25,000 to $250,000 as security for the damages that Defendants will suffer in the event that Drake fails to prove Defendants infringed upon its trademarks at trial.

Respectfully submitted,

Date: December 27, 2024                    */s/ R. Scott Johnson*
                                          _____

R. Scott Johnson (#AT0004007)
Cara S. Donels (#AT0014198)
Erin M. Boggess (#AT0015950)
FREDRIKSON & BYRON, P.A.
111 East Grand Avenue, Suite 301
Des Moines, IA  50309-1977
Telephone:  (515) 242-8900
E-mail:  RSJohnson@fredlaw.com
         CDonels@fredlaw.com
         EBoggess@fredlaw.com

Laura L. Myers (Minn. #0387116)
(admitted *Pro Hac Vice*)
FREDRIKSON & BYRON, P.A.
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
Telephone:  (612) 492-7000
E-mail:  LMyers@fredlaw.com

***Attorneys for Defendants and
Counterclaim Plaintiff***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on December 27, 2024, I electronically filed the *Defendant and Counterclaim Plaintiff Des Moines Area Community College and Des Moines Area Community College Foundation's Brief in Support of Motion to Increase the Preliminary Injunction Bond* with the Clerk of Court using the CM/ECF system, who in turn sent notice to the following:

Joshua J. Conley, Esq.
  jconley@zarleyconley.com
John D. Gilbertson, Esq.
  jgilbertson@zarleyconley.com
ZARLEYCONLEY PLC
580 Market Street, Suite 101
West Des Moines, IA  50266

*Attorneys for Plaintiff and*
*Counterclaim Defendant*

*/s/ Michele A. Erickson*
Michele A. Erickson