1

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

```
- - - - - - - - - - - - - - - - X
DRAKE UNIVERSITY,                :
                                 :
     Plaintiff,                  :
                                 :
vs.                              :
                                 :
DES MOINES AREA COMMUNITY        :
COLLEGE FOUNDATION and           :
DES MOINES AREA COMMUNITY        :
COLLEGE,                         :
                                 :
     Defendants.                 :   Case No. 4:24-cv-00227
- - - - - - - - - - - - - - - - X
DES MOINES AREA COMMUNITY        :   HEARING TRANSCRIPT
COLLEGE and DES MOINES AREA      :
COMMUNITY COLLEGE FOUNDATION,    :
                                 :
     Counterclaimants,           :
                                 :
vs.                              :
                                 :
DRAKE UNIVERSITY,                :
                                 :
     Counterclaim Defendant.     :
- - - - - - - - - - - - - - - - X
```

                              Courtroom, First Floor
                              U.S. Courthouse
                              123 East Walnut Street
                              Des Moines, Iowa
                              Tuesday, October 15, 2024
                              8:59 a.m.


BEFORE:   THE HONORABLE STEPHANIE M. ROSE, Chief Judge.



              KELLI M. MULCAHY, CSR, RDR, CRR
                  United States Courthouse
              123 East Walnut Street, Room 115
                  Des Moines, Iowa 50309

**EXHIBIT 1**

1  Alumni for Des Moines Area Community College, Drake
2  complains about this, which shows the extent of Drake's
3  misunderstanding of the scope of their rights.  They think that
4  they have the right to stop DMACC from using a D where they're
5  clearly saying DMACC.
6  Same with -- I guess they submitted this hat, but they
7  failed to acknowledge or even point out where the hat was
8  purchased; on the DMACC athletic store in the Ankeny bookstore.
9  THE COURT:  And how would somebody who saw that out on
10 the street know that it came from the DMACC Ankeny bookstore?
11 MR. JOHNSON:  I don't know the answer to that question,
12 and Drake's lawyers never bothered to ask or present any
13 evidence of that.  It's their burden to show that a use like
14 that would cause Drake problems or that Drake even has the right
15 to stop, which they don't.  The only evidence shows Drake
16 abandoned its block-style D in 2005.
17 The balance of harms favors DMACC.  It doesn't favor Drake.
18 If this preliminary injunction were entered, DMACC would have to
19 abandon a pending federal trademark registration.  It would have
20 to abandon the federal trademark registration it has with the D
21 and "Campus Recreation" that it's had since 2014.  It would have
22 to go back and take down signs, posters, banners, rebrand cars,
23 rebrand entirely, hundreds of thousands of dollars of
24 expenditure.  That's the harm that DMACC would face with the
25 preliminary injunction based off of no evidence in a block-style

1  D.
2      And, finally, the public interest favors DMACC.  Public
3  interest here is that DMACC is a public institution that should
4  not suffer reputational harm through baseless litigation.  Drake
5  could have provided the Court with evidence that it owned a
6  block-style D, and it did not.  It had plenty of time.  It was
7  the only party that had access to the data, and it could have
8  conducted surveys.  Instead, it chose to rely on an improper
9  survey or questions being asked by a news reporter on its own
10 campus.  But DMACC is a public institution, and taxpayers should
11 not have to pay just because Drake wants to get rid of the
12 bulldog and turn the bulldog into a bully.
13     Thank you, Your Honor.
14         THE COURT:  Thank you.
15     Mr. Gilbertson, any final thoughts?
16         MR. GILBERTSON:  Yes.  I might stay at counsel table
17 just because I'm going to reference a few things here.
18         THE COURT:  Sure.
19         MR. JOHNSON:  Do you mind if I tear down while you're
20 answering?  Is that okay?
21         MR. GILBERTSON:  No.  Not at all.
22         MR. JOHNSON:  Thanks.
23         MR. GILBERTSON:  I've got to say Mr. Johnson has a
24 really nice tone, but his arguments are very strained.
25     I want to start by quick pointing out the location of the