**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| DRAKE UNIVERSITY,<br><br>     Plaintiff,<br><br>vs.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE,<br><br>     Defendants. | Case No. 4:24-CV-00227-SMR-SBJ<br><br><br>**DEFENDANTS AND COUNTERCLAIM PLAINTIFFS DES MOINES AREA COMMUNITY COLLEGE AND DES MOINES AREA COMMUNITY COLLEGE FOUNDATION'S REPLY BRIEF IN SUPPORT OF THEIR MOTION TO INCREASE THE PRELIMINARY INJUNCTION BOND** |
| DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE,<br><br>     Counterclaim Plaintiffs,<br><br>vs.<br><br>DRAKE UNIVERSITY,<br><br>     Counterclaim Defendant. | |

Drake raises a myriad of complaints with DMACC's compliance efforts and accuses DMACC's decisions—which include ensuring that DMACC's student athletes have access to the same quality of gear they did pre-preliminary injunction—of being wasteful.  DMACC replaced items that had the enjoined logo on it, and reasonably cut costs where possible (including by applying electrical tape over some of the enjoined logos).  DMACC properly moved to increase the bond based on actual expenses necessary to comply with the preliminary injunction.  The Court should ignore Drake's aspersions (which only specifically challenge just over $50,000 in DMACC's submissions), and grant DMACC's motion to increase the bond to $250,000.

## I.    DRAKE DOES NOT SPECIFICALLY DISPUTE $246,868.49 OF DMACC'S EXPENSES.

DMACC provided evidence of 48 different expenses (supported by 35 unique invoices and a sworn declaration) it either has or will incur to comply with the Court's preliminary injunction order totaling over $300,000. Drake only *specifically* challenged 11 of these 48 expenses (or $53,280.39 of the claimed costs).[1] Even if the Court excludes these 11 specific line items (which it should not), DMACC produced other, undisputed evidence to support it has or will spend at least $246,868.49 to comply with the preliminary injunction order. That is enough for the Court to grant DMACC's motion to increase Drake's preliminary injunction bond to $250,000.

## II.    DMACC IS NOT SEEKING A BOND ON UNNECESSARY REPLACEMENTS.

DMACC only seeks security for its necessary expenses to comply with the preliminary injunction. Every purchase DMACC submitted was strictly because of the preliminary injunction order. DMACC needs signs, business cards, stationary, flags, table drapes, student recruitment materials, nursing scrubs, internship uniforms, etc. to serve its students at the same level as prior

---

[1] Drake directly calls into question exhibits E, F, G, H, J, K, L, W (recycling fee), AB, AI, and $2,000 of giveaway merchandise. *See* ECF Dkt. 112-7-10, 12-14, 25, 30, and 37.

to the preliminary injunction. DMACC is not obligated to go without these items, which would provide its students with a sub-par educational experience.  Drake's argument that Drake is paying for DMACC to have multiple sets of merchandise with alternative branding is meritless. First, Drake misses the point that DMACC already had all of these materials and the need to replace is solely due to the injunction—DMACC would not have purchased *any* merchandise with alternative branding absent the preliminary injunction order. Second, DMACC cannot later use most of the merchandise it was forced to replace. For example, DMACC cannot use its old basketball court once it has been replaced—the old branding will be forever gone. Likewise, Jordan Creek Mall will not hang two banners side by side or rotate banners with alternative branding from time to time. Recruiting materials have dates or statistics that get updated yearly which cannot be used later. (Spiller Decl. ¶13). Drake failed to identify any examples of rebranded materials that DMACC will actually be able to use again if the injunction is lifted.

## III.    DMACC'S EVIDENCE IS CONSISTENT AND RELIABLE.

DMACC provided reliable and consistent evidence of expenses it either has or will incur to fully comply with the preliminary injunction. Drake's dismissal of DMACC's expenses amounts to nothing more than speculation that DMACC is lying. DMACC has submitted declarations that DMACC's expenses are supportable and are necessary in light of the preliminary injunction order, and DMACC's compliance therewith. The Court should disregard Drake's speculation that DMACC could (or should) provide DMACC's students with anything other than the quality of experience they had prior to the preliminary injunction.

Regarding the basketball uniforms,[2] travel gear,[3] and coaching gear,[4] (all of which had the enjoined logo) DMACC purchased the same quality of gear its student athletes and coaches had been using all season prior to the preliminary injunction. DMACC discussed alternative options—such as buying cheap, unbranded gear from a big-box store—but did not want to provide players with a lower quality student-athlete experience than they were originally promised. (McGinn Decl. ¶¶14-15; Spiller Decl. ¶5).  Such a result harms students, not DMACC—this cannot be in the public interest.

While it is true the basketball uniforms only had an enjoined "D" on the waistband of the shorts (McGinn Decl. Ex. A), neither Drake nor the Court stated or implied that DMACC would be in compliance with the preliminary injunction order if its players continued to wear the shorts with the waistband of their shorts rolled up for the remainder of the season. (Spiller Decl. ¶ 6). Drake never approved this as anything other than a short-term solution while DMACC waited on its new uniforms. (*Id.*). DMACC had no pre-rebrand uniforms for the men's basketball team to play in, as old athletic uniforms are donated once they are replaced. (McGinn Decl. ¶ 7). DMACC also could not order *just* the shorts, because new shorts would not match the already existing jersey tops. (*Id.* at ¶¶8-11). The new uniforms still have not arrived. (*Id.* at ¶13).[5] All new uniforms, travel gear, and coaching gear is from the same vendor and of the same quality as the original

---

[2] ECF Dkt. 112-13, 112-14. *See* McGinn Decl. Ex. A.

[3] ECF Dkt. 112-7. *See* McGinn Decl. Ex. B-F.

[4] ECF Dkt. 112-12.

[5] While the new uniform invoices indicate a delivery date of December 18, 2024, *see* ECF Dkt. 112-13, 112-14, an email between the vendor and DMACC staff confirms the uniforms will not arrive until mid-January. *See* Spiller Decl. Ex. L. DMACC staff does not work for BSN Sports and does not know how they process or label their invoices.

merchandise purchased with the enjoined logo.[6] As for the locker room stools[7] and basketballs,[8] DMACC discussed alternatives, but opted to maintain the same quality of equipment the student athletes had access to prior to the preliminary injunction.[9] (Spiller Decl. ¶¶2-3; McGinn Decl. ¶¶15-17). DMACC replaced the uniforms, travel gear, basketballs, and stools to allow every player to have *exactly* the quality of gear and equipment the players and coaches would have had if DMACC had not been preliminarily enjoined. DMACC did not just go on a "spending spree." DMACC reduced its costs where it could, and where it was clear taking a less expensive route would not impact the student experience.[10]

As for the basketball court (which has been in use since 2019 without complaint from Drake), DMACC confirmed, *again*, that the entire gym floor *must* be replaced if the college removes the center logo. (McGinn Decl. ¶¶18-20). If the just the middle of the court was sanded down to replace the center logo, that part of the court would be slicker than the rest of the court, posing an injury risk to athletes sprinting up and down the court. (*Id.*). Regardless, the floor would be unusable for much longer than just the 24-hours it would take to cure the floor. (*Id.* at ¶¶22-23). Again, DMACC would not be replacing the gym floor now if not for the preliminary injunction.

---

[6] *See* McGinn Decl. Ex. G, showing previous orders for basketball players and coaches gear with the enjoined logo totaling $12,498.11 The replacement materials, totaling $12,890.29, are from the same vendor and of a similar quality as the original gear.

[7] ECF Dkt. 112-9. *See* McGinn Decl. Ex. H.

[8] ECF Dkt. 112-10. *See* McGinn Decl. Ex. I.

[9] *See* McGinn Decl. Ex. J and Ex. K. Ex. J shows a previous order for basketballs totaling $1566.50 and Ex. K shows the previous order for stools totaling $1892.00. The replacement materials are from the same vendor and of a similar quality as the originals.

[10] *See* Spiller Decl. Ex. M (Ms. Spiller up on a ladder covering enjoined "Ds" with electrical tape).

Drake also complains about DMACC's continuing education postcard recycling fee. (Spiller Decl. Ex. S). The complained-about fee was actually paid by DMACC: it was for the duplicative costs DMACC's vendor, Mittera, incurred for preparing to print postcards with the enjoined logo and not for physically disposing the old postcards. (*Id.*). Mittera also prints DMACC's admissions brochures, which had the enjoined logo and had to be reprinted.[11] Ms. Spiller does not work for Mittera and does not know how their invoicing or job numbering is done; however, prior to submitting that invoice to the Court, Ms. Spiller confirmed the invoice for the admission brochures was reflective of the replacement order. (Spiller Decl. Ex. T). Admissions brochures are different than Viewbooks,[12] which were replaced separately.

Finally, DMACC contracts with Follett to operate its on-campus bookstore. The agreement between DMACC and Follett obligates DMACC to repay Follett for any merchandise pre-purchased and stocked in the bookstore if DMACC changes its logo without prior notice to Follett. (Spiller Decl. ¶10). Finally, DMACC budgeted and purchased giveaways which were intended to be used in the 2024 fiscal year. (*Id.* at ¶¶11-12). DMACC was unable to distribute the giveaways as planned due to the preliminary injunction. (*Id.*).

## IV.    CONCLUSION

For the reasons stated above, DMACC respectfully requests the court grant their motion to increase Drake's preliminary injunction bond to $250,000.

---

[11] *See* ECF Dkt. 112-30.

[12] ECF Dkt. 112-29 (English), 112-16 (Spanish). Viewbooks are a standard college recruiting tool. *See* Spiller Decl. Ex. U and V for examples of DMACCs viewbooks in English and Spanish with the enjoined logo that were replaced.

Respectfully submitted,

Date: January 17, 2025

*/s/ R. Scott Johnson*

R. Scott Johnson (#AT0004007)
Cara S. Donels (#AT0014198)
Erin M. Boggess (#AT0015950)
FREDRIKSON & BYRON, P.A.
111 East Grand Avenue, Suite 301
Des Moines, IA  50309-1977
Telephone:  (515) 242-8900
E-mail:  RSJohnson@fredlaw.com
          CDonels@fredlaw.com
          EBoggess@fredlaw.com

Laura L. Myers (Minn. #0387116)
(admitted *Pro Hac Vice*)
Luke P. de Leon (Minn. #0401756)
(admitted *Pro Hac Vice*)
FREDRIKSON & BYRON, P.A.
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
Telephone:  (612) 492-7000
E-mail:  LMyers@fredlaw.com
          LdeLeon@fredlaw.com

***Attorneys for Defendants and
Counterclaim Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on January 17, 2025, I electronically filed the *Defendants and Counterclaim Plaintiffs Des Moines Area Community College and Des Moines Area Community College Foundation's Reply Brief in Support of Their Motion to Increase the Preliminary Injunction Bond* with the Clerk of Court using the CM/ECF system, who in turn sent notice to the following:

> Joshua J. Conley, Esq.
>   jconley@zarleyconley.com
> John D. Gilbertson, Esq.
>   jgilbertson@zarleyconley.com
> ZARLEYCONLEY PLC
> 580 Market Street, Suite 101
> West Des Moines, IA  50266
>
> *Attorneys for Plaintiff and*
> *Counterclaim Defendant*

/s/ Erica Palmer
Erica Palmer