IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA CENTRAL DIVISION

| | |
|---|---|
| DRAKE UNIVERSITY,<br>    Plaintiff,<br><br>vs.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE<br>    Defendants. | Case No. 4:24-CV-00227-SMR-SBJ<br><br>**JOINT MOTION REGARDING ELECTRONICALLY STORED INFORMATION** |
| DES MOINES AREA COMMUNITY COLLEGE,<br>    Counterclaim Plaintiff,<br><br>vs.<br><br>DRAKE UNIVERSITY,<br>    Counterclaim Defendant. | |

As part of the Rule 26(f) conference, counsel for the parties conferred on the preservation, disclosure, and discovery of electronically stored information (ESI). The parties disagree on the preferred format of said ESI and submit the following positions to the Court for consideration and discussion, either via a court-sponsored conference or hearing.

Plaintiff, Drake University ("Drake"), prefers ESI be produced in PDF and/or native formats. Defendants, Des Moines Area Community College and Des Moines Area Community College Foundation (collectively "DMACC") prefer ESI be produced in Tagged Image File Format ("TIFF") with a load file and required metadata fields from the ESI protocol attached as Exhibit B. The parties' positions are set forth more fully below.

**I.    PLAINTIFF**

Drake prefers ESI to be produced primarily in searchable (if possible) PDF format, or, where necessary or preferred, in native file format. For example, .xlsx files (Excel spreadsheets) often lend themselves more readily to native format, as do movie files, such as .m4v, .mov, etc. In the event production made in PDF format is desired for supplemental discovery in native format to ensure fulsome meta data is produced, Drake believes the parties can accommodate one another. For example, should an email be produced as a PDF by one party and the opposing party reasonably desires a native format version, such as an .msg or .pst file, this request can be efficiently provided compared to the alternative—i.e., TIFF production or all native production.

TIFF is an antiquated format that rose to prominence as a means to convert from physical copies to digital—not native digital files to production documents. TIFF files are unsearchable, and thus TIFF files in a document production must be accompanied by load files, which contain select metadata, as well as searchable text identified through optical character recognition software. TIFF files are also usually single-page, which means that a 200-page document, for example, requires production of 200 separate files. When a litigation involves thousands of pages of documents, managing them can be difficult and burdensome. Preparing load files and viewing this type of single-page file in a useable way (i.e., as a single document) requires specialized software.

TIFFs also have to be created from the original files, like Word documents, Excel spreadsheets, digital photographs, or PDFs and converted to TIFF. This strips the files of all the data in the native files (e.g., comment bubbles, formulas, geolocation data, searchable text), and replaces it with a static image, which then must be replaced in a load file. TIFF format is also larger, especially when color is involved as it is in this litigation. The format is a raster file, which

can cause further issue when images include vector graphics as will likely be present in this case given its prominence in marketing materials made through Adobe InDesign.

Drake prefers (and its counsel is directed) to avoid the unnecessary machinations of creating TIFFs and the additional files that are required to make them usable. Iowa R. Prof. Conduct 32:1.1, cmt. [5] ("To maintain the requisite knowledge and skill, a lawyer should keep abreast of changes in … relevant technology"). PDFs have replaced TIFFs as the predominant format for e-discovery. PDFs are widely used and more functional. They are searchable and can be prepared and viewed using widely available and inexpensive software like Adobe Acrobat, which virtually every law firm utilizes. Moreover, PDF documents are multi-page, so using the above example of a 200-page document, that will take the form of a single file, rather than 201 (200 images + load file). PDFs can also contain hyperlinks, and emails produced in either PDF or native format contain all the data Defendants seek ("the parties to/from/cc'd on the e-mail, the e-mail subject, and the sent date").

Filing on the NextGen CM/ECF platform requires documents be submitted as PDF files. Those that cannot be submitted in PDF format, must be delivered to the Clerk on a USB drive of some sort. The Southern District's CM/ECF limits PDFs to 35.0MB; otherwise, the document must be split and renamed. A directly created PDF usually has a smaller file size compared to a PDF that combines multiple TIFF images of the same content. Simply put, TIFF is not well-suited for modern discovery that benefits from the compact exchange of documents over the Internet.

To the extent PDFs do not provide enough detail, native files fill in the gap. For example, converting a spreadsheet with hundreds or thousands of data points into PDF (or TIFF for that matter), usually results in lengthy documents that provide tiny, out-of-context snapshots of the larger spreadsheet that excludes formulas and cross-references internally and externally, the

review of which usually requires much more time and effort as compared to simply reviewing the native Excel file, which can be navigated much more easily on the recipient's computer screen. The same principle applies to email production. Defendants contend that producing emails in PDF format does not comply with Fed. R. Civ. P. 34 (documents must be produced "as they are kept in the usual course of business") but fails to acknowledge that emails are **also** not kept as TIFF files either, and must be converted unless produced in native format, which Drake's proposed order accounts for.

This is not a case that involves trade secrets or some other technology-driven set of circumstances. The vast majority of document production in this case will consist of (1) images of how the parties' trademarks are used in the marketplace, and (2) communications involving said uses.[1] PDFs are more easily maintained, viewed, and produced. To the extent they do not provide information a party requests, native files will. Drake sees no reason to utilize outdated technology which adds steps to an already time-consuming and expensive process. Drake thus requests the Court enter an Order substantially consistent with Drake's attached proposed Order for ESI Discovery, i.e. requiring ESI to be produced primarily in PDF format, or in native file format where reasonably requested or inherently preferable.

Attached to this joint motion is Plaintiff's proposed order for ESI Discovery. (Exhibit A)

## II. DEFENDANTS

The Court should reject Drake's preference to produce ESI in PDF format without a load file and without the requested metadata and that may or may not be text searchable. Instead, the Court should adopt Defendants' proposal that the parties produce ESI in TIFF format with a

---

[1] *Cf., e.g. BalanceCXI, Inc. v. Int'l Consulting & Research Grp., LLC*, 2020 WL 1234640, at *3 (W.D. Tex. March 13, 2020) (noting the significance of metadata given the "case involves the theft of trade secrets, and significant issues regarding Defendants' copying and deleting files immediately prior to returning their company laptops.")

corresponding load file and metadata fields referenced in the ESI protocol. Attached to this joint motion is Defendants' proposed order for ESI Discovery. (Exhibit B).

TIFF stands for Tagged Image File Format, which is "a widely used and supported graphic file format for storing bit-mapped images, with many different compression formats and resolutions." *Race Tires Am., Inv. v. Hoosier Racing Tire Corp.*, 674 F.3d 158, 161 n. 2 (3d Cir. 2012) (quoting The Sedona Conference, *The Sedona Conference Glossary: E–Discovery & Digital Information Management* 12 (S. Harris ed., 3d ed.2010.)  "Load File means the file necessary to load data into a reviewable database. A load file can, for example, specify what individual pages belong together as a document, what attachments are included with a document, where a document begins and ends, and what metadata is associated with a document." *F.D.I.C. v. Bowden*, 2014 WL 2548137, at *5 (S.D. Ga. June 6, 2014).  Metadata is data about data. For example, in a Word document, the metadata will provide information about the author or creator, creation date, and file name. In an e-mail, the metadata will provide the parties to/from/cc'd on the e-mail, the e-mail subject, and the sent date. The metadata also serves an additional function: it allows for efficient and organized review of a large document production in a database.  *See, e.g.*, *Hoehl Family Foundation v. Roberts*, 2023 WL 3271517 at *7 (D. Vt. Apr. 13, 2023) ("By failing to produce documents with complete and accurate metadata, Defendants fell short of their discovery obligations."); *BalanceCXI, Inc. v. Int'l Consulting and Research Group, LLC*, 2020 WL 1234640, at *3 (W.D. Tex. March 13, 2020) (rejecting assertion that production as PDF images would be sufficient and finding that "BalanceCXI's request that Defendants produce any ESI in .TIFF format with a corresponding load file, containing metadata fields, is reasonable.").

The Court should adopt DMACC's proposal because it is widely accepted by litigants and courts and is a reasonable format for document productions.  Furthermore, a requesting party has

the right to request that the responding party produce ESI in a particular form. Fed. R. Civ. P. 34(b)(1)(C). Under Federal Rule of Civil Procedure 34, a party is required to produce documents (1) "as they are kept in the usual course of business or must label them to correspond to the categories in the requests," Fed. R. Civ. P. 34(b)(2)(E)(i), and (2) if a request does not specify a form of producing ESI, "in a form or forms in which it is ordinarily maintained or in a reasonably usable form or forms," Fed. R. Civ. P. 34(b)(2)(E)(ii).

As to the first requirement, a production of emails in PDF format without any metadata (as Drake proposes here) violates this obligation because a PDF is not how an e-mail is used or kept in the ordinary course —but rather involves converting the e-mail into a non-ordinary course format. *See Johnson v. Italian Shoemakers, Inc.*, 2018 WL 5266853, at *2 (W.D.N.C. Oct. 23, 2018) (awarding sanctions where party continued to produce e-mails as PDFs, "which is not how emails are maintained in the regular course of business."). Already this is an issue, as Drake has produced files without their *original* metadata.

As to the second requirement, a party must produce documents that are searchable and/or sortable by metadata fields. *See Spilker v. Medtronic, Inc.*, 2015 WL 1643258, at *5 (E.D.N.C. April 13, 2015) (party satisfied the requirements by providing "fully searchable documents, sortable by metadata fields, in a folder structure organized by custodian"); *Lutzeier v. Citigroup Inc.*, 2015 WL 430196, at *8 (E.D. Mo. Feb. 2, 2015) (production complied with Rule 34 where it was "in a reasonably usable form or forms and/or the production is searchable, sortable and paired with relevant metadata"); *but see Indep. Mktg. Grp., Inc. v. Keen*, 2012 WL 207032, at *2 (M.D. Fla. Jan. 24, 2012) (producing party failed to produce documents as ordinarily kept where it printed documents and scanned them, rendering PDF files only). Again, a PDF production of ESI without proper metadata fails this obligation by limiting—if not completely eliminating—the ability to

search and sort documents, as a proper production format would allow. Another problem with attempting to manually convert a set of native ESI documents into PDFs is the risk of manipulating the metadata—and the actual contents of the documents. Each time a document is opened, the metadata for that document is changed.

Drake cites to no cases in support of its position that production of ESI in PDF format without a load file is somehow proper. And Drake's produced documents to date *do not properly contain their original metadata*. Drake cites no cases because the majority of cases find that a document production is reasonably useable if it is text searchable and/or sortable by metadata. *See, e.g.*, *United States Gypsum Co. v. Ectek Int'l, Inc.*, No. 1:19-CV-00596, 2022 WL 1206619, at *3 (N.D. Ill. Apr. 21, 2022) (requiring that "[f]or large electronic disclosures" ESI productions "must be 'searchable and/or sortable by metadata fields'" to comply with the reasonably usable requirement); *Johnson*, 2018 WL 5266853, at *2 (explaining that "a party satisfies it obligations under Rule 34 when the party provides documents that are searchable and/or sortable by metadata fields."). The Court should adopt DMACC's proposal that the production of ESI be done in TIFF format with a corresponding load file and the metadata fields referenced in the ESI protocol.

Respectfully submitted,

| | |
|---|---|
| **ZARLEYCONLEY PLC** | **FREDRIKSON & BYRON, P.A.** |
| /s/John D. Gilbertson | /s/R. Scott Johnson |
| John D. Gilbertson, AT0014515 | R. Scott Johnson, AT0004007 |
| 580 Market Street, Suite 101 | 111 East Grant Ave, Suite 301 |
| West Des Moines, IA 50266 | Des Moines, IA 50309 |
| Telephone: (515) 558-0200 | Telephone: (515) 242-8900 |
| jgilbertson@zarleyconley.com | rsjohnson@fredlaw.com |
| **Attorney for Plaintiff** | **Attorney for Defendant** |