IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION

| | |
|---|---|
| DRAKE UNIVERSITY, | Case No. 4:24-cv-00227-SMR-SBJ |
| Plaintiff, | |
| v. | |
| DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE, | ORDER ON MOTION FOR ORDER TO SHOW CAUSE AND MOTION FOR BOND INCREASE |
| Defendants. | |
| DES MOINES AREA COMMUNITY COLLEGE, | |
| Counterclaimant, | |
| v. | |
| DRAKE UNIVERSITY, | |
| Counterdefendant. | |

Before the Court are two motions filed by the parties in this case. Plaintiff Drake University ("Drake") brings a Motion for an Order to Show Cause regarding Defendants alleged non-compliance with the Court's Preliminary Injunction Orders. [ECF No. 107]. Defendants Des Moines Area Community College and Des Moines Area Community College Foundation (collectively, "DMACC") have filed a Motion to Increase Bond set by the Court in granting the preliminary injunction. [ECF No. 111]. The Court held a hearing on both motions on January 27, 2025. After subsequent briefing on the issue of jurisdiction by the parties, the motions are ripe for disposition.

1

I.   BACKGROUND

The Court has recited the factual background of this case in several prior orders.. As such, it will summarize only the information pertinent to resolution of these motions. On November 22, 2024, the Court enjoined DMACC from using "a block-style 'D' trademark in conjunction with any color combination of white and blue to denote their . . . services." [ECF No. 87]. In that Order, the Court required that Drake remit a bond in the amount of $25,000 as security for the injunction. *Id.*; *see also* Fed. R. Civ. P. 65(c). Five days later, DMACC filed a notice of interlocutory appeal as to the injunction. DMACC then filed a motion to extend the deadline for compliance and clarify the scope of the injunction, inquiring as to its applicability to block style "Ds" that pre-dated the rebrand as well as DMACC's bear paw "D."

The Court granted the motion in part, clarifying that all block style "Ds", even those in use before the 2023 rebrand, are covered by the preliminary injunction. [ECF No. 101]. However, as the Court explained in its original Order, the bear paw "D" is "visually distinct and fundamentally different" than Drake's protected mark, and as such is not included within the scope of the injunction. The parties then filed these motions. [ECF Nos. 107, 111]. Shortly thereafter, Drake filed its own notice of interlocutory appeal as to the Court's Order extending DMACC's deadline and clarifying the scope of the injunction.

The Court held a hearing on Drake's Motion for an Order to Show Cause and DMACC's Motion to Increase Bond on January 27, 2025. Drake submitted evidence and both parties presented argument supporting their positions. At the hearing, the Court asked the parties for their positions regarding its jurisdiction to modify the bond amount and issue an order to show cause given the two pending interlocutory appeals. The Court permitted both parties additional time to brief the issues and present their positions.

## II. ANALYSIS

### *A. Jurisdiction*

Generally, a notice of appeal divests a district court of authority over the "aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). In fact, Federal Rule of Civil Procedure 60 states that when an appeal has been docketed, even a clerical mistake or a mistake arising from an oversight or omission in an order can only be corrected with leave from the appellate court. Fed. R. Civ. P. 60. However, the United States Court of Appeals for the Eighth Circuit has clarified that although a notice of appeal divests a district court of jurisdiction "over matters on appeal," it does not divest its jurisdiction over collateral matters "independent of the disposition of the merits of the case." *FutureFuel Chem. Co. v. Lonza, Inc,* 756 F.3d 641, 648 (8th Cir. 2014) (cleaned up) (citation omitted).

In pertinent part, Federal Rule of Civil Procedure 62(d) states that

> [w]hile an appeal is pending from an interlocutory order or final judgment that grants, continues, modifies, refuses, dissolves, or refuses to dissolve or modify an injunction, the court may suspend, modify, restore, or grant an injunction on terms for bond or other terms that secure the opposing party's rights.

Fed. R. Civ. P. 62(d). Meanwhile, Federal Rule of Appellate Procedure 8(a) explains:

> (1) Initial Motion in the District Court. A party must ordinarily move first in the district court for the following relief:
>
> > (A) a stay of the judgment or order of a district court pending appeal
> >
> > (B) approval of a bond or other security provided to obtain a stay of judgment; or
> >
> > (C) an order suspending, modifying, restoring, or granting an injunction while an appeal is pending.

Fed. R. App. P. 8(a)(1).

Drawing on Rule 62(d) and Appellate Rule 8(a), courts have generally held that district courts retain authority to modify and enforce an injunction to "preserve the status quo." *See Newton v. Consol. Gas Co. of New York,* 258 U.S. 165, 177 (1922) (stating that "[u]ndoubtedly, after appeal the trial court may, if the purposes of [j]ustice require, preserve the status quo until decision by the appellate court"); *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.,* 242 F.3d 1163, 1166 (9th Cir. 2001) (holding that district courts retain "jurisdiction during the pendency of an appeal to act to preserve the status quo" as codified in Rule 62(d)); *Doe v. Trump*, 284 F. Supp. 3d 1172, 1176 (W.D. Wash. 2018) (citing Rule 62(d) and Appellate Rule 8(a) for the proposition that even when on appeal, a district court may issue further orders with respect to an injunction to "preserve the status quo or ensure compliance with its earlier orders"); Wright and Miller, 16 *Fed. Prac. & Proc. Juris.* § 3921.2 (3d ed.) (explaining that Rule 62 is supplemented by Appellate Rule 8(a) to "reflect the superior abilities of the district court to hear evidence, draw from prior experience with the case, and frame and enforce an injunction" for the purposes of preserving the status quo).

Drake seeks an order to enforce the injunction in the manner that it interprets. Meanwhile, DMACC seeks a modification of the security bond set pursuant to Federal Rule of Civil Procedure 65(c). The bond acts as security for the enjoined party in in the event that they were wrongfully enjoined. *Id*. Neither of these issues go to the merits of the underlying case or would materially alter its status on appeal. Both parties agree with this conclusion. As such, the Court finds that it retains jurisdiction on both issues to modify or enforce the injunction as necessary to preserve the status quo.

*B. Bond Increase*

DMACC seeks to increase the bond to $250,000 from the $25,000 initially required. In its Motion, it claims that "Defendants now have sufficient facts and evidence to show that, by the time judgment occurs, Defendants will have suffered more than $250,000 in damages proximately caused by the injunction." [ECF No. 111-1 at 1]. DMACC argues that the $25,000 bond was too low at the outset, while pointing out that Drake did not state its position on a proper bond amount when it sought a preliminary injunction.

However, it does not offer any explanation for its *own* complete failure to address the bond amount in the prior briefing or at the injunction hearing. *See In re President Casinos, Inc.,* 360 B.R. 262, 266 (B.A.P. 8th Cir. 2007) (noting that it is the party requesting the bond who has the burden to establish a rational basis for the amount of the bond). "A defendant's bond calculation should be supported by evidence as strong as the evidence supporting a damage calculation submitted at trial." *Luminara Worldwide, LLC v. Liown Elecs. Co.,* No. 14-cv-3103 (SRN/FLN), 2015 WL 3559273, at *6 (D. Minn. May 27, 2015) (cleaned up) (citation omitted).

Courts will even grant requests for bond waivers when the defendant does not object, address the bond issue, or attempt to quantify any dollar amount for the harm it would suffer from a wrongful injunction. *See Fantasysrus 2, L.L.C. v. City of E. Grand Forks, Minn.,* 881 F. Supp. 2d 1024, 1033 (D. Minn. 2012); *see also Richland/Wilkin Joint Powers Auth. v. United States Army Corps of Eng'rs*, 826 F.3d 1030, 1043 (8th Cir. 2016) (noting that exceptions to the traditional rule of requiring a bond can be made where "the defendant has not objected to the failure to require a bond or where the damages resulting from a wrongful issuance of an injunction have not been shown."). That being said, Drake did not request a bond waiver. In fact, both parties failed to present any evidence or address the bond issue before the injunction was granted.

At the bond hearing, when questioned by the Court, DMACC explained that it did not know what the cost of compliance would be at the beginning of the case. However, since undertaking substantial compliance efforts, it represents that it can accurately estimate that amount to be at least $250,000. DMACC, as the party seeking an increase in the bond amount, again bears the burden of justifying the increase. *In re President Casinos, Inc.,* 360 B.R. at 266. It must show a rational basis for the bond amount supported by evidence. *See id.*; *see also Luminara Worldwide,* 2015 WL 3559273, at *6. DMACC submitted over 30 exhibits, including invoices and price quotes for new materials and products needed to comply with the preliminary injunction. Drake challenges much of DMACC's evidence arguing that DMACC is: (1) seeking costs not just for removal but also replacement; (2) making unnecessary purchases both in scope and quality; and (3) speculating as to the actual amount of damages. The Court disagrees.

DMACC was not ordered to shut down and stop offering its educational, athletic, and ancillary goods and services. It was ordered to stop using the enjoined "D." Therefore, replacement costs for materials, products, and advertisements are a necessary cost to comply with the injunction and continue operations. While DMACC has a duty to mitigate and must demonstrate that its damages were proximately caused by complying with a wrongfully issued injunction, that is an issue for the parties to address should DMACC ever seek to collect on the bond. *See* Fed. R. Civ. P. 65.1 (explaining that a party seeking enforcement of the security provider's liability must file a motion in the proceeding where the injunction was issued); *Pro Edge L.P. v. Gue*, 451 F. Supp. 2d 1026, 1031 (N.D. Iowa 2006) (noting a recognized duty for the beneficiary of a security bond to mitigate damages); *Ronnoco Coffee LLC v. Castagna*, Case No. 4:21-CV-00071 JAR, 2022 WL 767079, at *4 (E.D. Mo. Mar. 14, 2022) (collecting cases) (holding that the executing party must show that the claimed damages were proximately caused by the

wrongful injunction). Moreover, contrary to Drake's contentions, DMACC does not speculate as to its damages. That makes Drake's reliance on *In re President Casinos, Inc.* inapposite.

In that case, the *In re President Casinos, Inc.* panel found the purported damages were speculative because the defendants—owners of a parking lot adjacent to a casino— estimated the loss of revenue by assuming no reduction in customers who would opt to park in their lot despite a significantly higher daily rate. 360 B.R. at 266. Not only did the defendant lack evidence to support this presumption, but the evidence that was provided actually supported the plaintiff's position that far fewer cars would park in the lot at the increased price. DMACC makes no analogous assumptions in the present proceedings.

Ultimately the determination of "the amount and sufficiency of a bond rest[s] within a court's discretion and will not be disturbed on appeal in the absence of an abuse of that discretion." *In re President Casinos, Inc.,* 360 B.R. at 264. Given the fact that much of the evidence for the cost of compliance was not obtained—nor could it have been—until after the injunction was imposed with a definite scope, the Court finds that a modification is "equitable in light of subsequent changes in the facts or the law, or for any other good reason." *Luminara Worldwide, LLC,* 2015 WL 3559273, at *4 (citation omitted). The Court is satisfied that DMACC has presented adequate evidence via invoices, quotes, and reliable affidavits to establish a rational basis for a bond in the amount of $250,000. [ECF Nos. 111-2–111-39].

*C. Show Cause*

Finally, Drake seeks an Order from the Court directing DMACC to show cause for its alleged non-compliance with the preliminary injunction. Drake argues that DMACC is not in full compliance with the injunction due to the continued use of several of the enjoined marks. Specifically, Drake takes issue with DMACC not removing enjoined "Ds" from billboards and

banners until new artwork or products arrived to replace them. The school argues this is a violation of the Court's orders because it was not *impossible* for DMACC to comply, but rather it was *inconvenient* for them to do so. [ECF No. 107-1 at 2]. Drake also points to DMACC's allegedly inadequate explanations as to why compliance was "impossible" for some materials, such as internal logos on doors or lecterns. DMACC represented that these would not be completed until after the date required by the Court. Drake also questions DMACC's inaction regarding the "D" on the basketball court at its Boone campus.

In response, DMACC contends that it was working diligently to meet the Court's deadlines and was substantially compliant with the Court's order by the time Drake filed its show cause motion. Moreover, it asserts that had Drake's counsel followed Local Rule 7, they would have been advised that the majority of items raised in its Motion were already compliant with the injunction by the time it filed the Motion.

The Court has the inherent power to enforce compliance with its order through civil contempt. *Shillitani v. United States*, 384 U.S. 364, 370 (1966). Drake argues that it need only establish "by clear and convincing evidence that an Order of the Court was in effect, that Defendants knew of the Order, and that Defendants failed to comply with the Order" to sustain a finding of civil contempt. *C. Line, Inc. v. City of Davenport*, 957 F. Supp. 2d 1012, 1027 (S.D. Iowa 2013). These may be the necessary elements to substantiate such a finding, but they do not require it. *Id.* at 1029 (noting the Court has discretion in the imposition of a civil contempt order).

Although it is clear that DMACC knew of the Court's Order, the nuances embedded in their alleged failure to comply do not support such a finding and certainly do not justify the imposition of sanctions. The Court recognizes the eradication of the uses of the enjoined "D" required in the preliminary injunction is no small task. DMACC could, and probably should, be

more precise with the language it uses to update the Court to ensure strict compliance as mandated[1], but the Court also recognizes the determination of what is truly "impossible" is open to some interpretation.[2]  The Court finds DMACC's interpretation of the Order to date has been reasonable, its actions based on good faith, and any actual violation to be *de minimis*. *See Chase Indus., Inc., Durus Div. v. Frommelt Indus., Inc.,* 806 F. Supp. 1381, 1386 (N.D. Iowa 1992).

Further, it appears that Drake did not strictly adhere to Local Rule 7's "meet and confer" requirements with regard to its present motion. *See* LR 7(k) (requiring parties to personally confer in good faith with opposing counsel and report whether they consent to the impending motion). The Local Rules are important to the administration of justice, especially in motions like this one, where at least three of DMACC's uses complained about by Drake had been brought into compliance before its motion was even filed. [ECF No. 109 at 5–6]. The Court notes that the litigation in this case has been heated and contentious. *See* [ECF Nos. 25, 41, 48, 107, 128]. The parties are both impressive educational institutions which offer essential services in our community.  They are expected to engage with one another cordially, in good faith, and in compliance with the Local Rules.

---

[1] Specifically, DMACC has been averring since December 13 that the new men's basketball uniforms were ordered, made overseas, and scheduled to arrive mid-January 2025. In at least three updates to the Court—on January 27, *February* 3, and *February* 10— DMACC has stated that the uniforms are still not in compliance (other than rolling down the waistband) and that the new uniforms are scheduled to arrive in mid-January 2025. Given that mid-January has come and gone, DMACC should be updating the Court as to the status of the delivery in its weekly affidavits.

[2] For example, the Court is satisfied that it is impossible to bring the Boone basketball court into compliance until after the basketball season is over. Even if not literally *impossible,* it is unrealistic and unreasonable to expect the school and its students to forfeit their basketball season, or their use of their gymnasium, to re-finish the floor. Nor is it in the public interest, particularly since it appears that this logo has been in place for at least five years.

### III.   CONCLUSION

For the reasons discussed above, Drake's Motion for an Order to Show Cause is DENIED. [ECF No. 107].  DMACC's Motion to Increase Bond is GRANTED.  [ECF No. 111].  Drake is ORDERED to remit an additional bond in the amount of $225,000 within **14 days** of the date of this Order.  A cash bond to be deposited into a non-interest-bearing treasury registry account, or a surety bond, is acceptable and shall be submitted to the Clerk of the United States District Court for the Southern District of Iowa, 123 E. Walnut Street, Des Moines, Iowa 50309.

IT IS SO ORDERED.

Dated this 18th day of February, 2025.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT