# EXHIBIT A

Case No. 24-3445

## UNITED STATES COURT OF APPEALS
## FOR THE EIGHTH CIRCUIT

Drake University

       Plaintiff - Appellee

v.

Des Moines Area Community College Foundation; Des Moines Area
Community College

       Defendants - Appellants

## APPEAL FROM THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF IOWA

Case No. 4:24-CV-00227
The Honorable Stephanie M. Rose

## DEFENDANTS – APPELLANTS' OPENING BRIEF

R. Scott Johnson (#AT0004007)
Cara S. Donels (#AT0014198)
Erin M. Boggess (#AT0015950)
FREDRIKSON & BYRON, P.A.
111 East Grand Avenue, Suite 301
Des Moines, IA  50309-1977
Telephone:  (515) 242-8900
RSJohnson@fredlaw.com
CDonels@fredlaw.com
EBoggess@fredlaw.com

Laura L. Myers (Minn. #0387116)
FREDRIKSON & BYRON, P.A.
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
Telephone:  (612) 492-7000
LMyers@fredlaw.com

Dated:  01/23/2025

*Attorneys for Defendants - Appellants*

## SUMMARY OF THE CASE AND REQUEST FOR ORAL ARGUMENT

This is an appeal from a preliminary injunction in a trademark infringement case.  The district court ordered Defendants - Appellants Des Moines Area Community College Foundation ("DMACCF") and Des Moines Area Community College ("DMACC") to stop all use of any "block-style 'D' trademark in conjunction with any color combination of white and blue."  The district court clarified that its order enjoins the block-style "D" even "when it is paired with a DMACC house mark."

The district court abused its discretion in entering the injunction, which encompasses "block-style" Ds that are not the subject of Plaintiff - Appellee Drake University's ("Drake") complaint, most of which had been on display for years prior to Drake filing suit or include DMACC's house mark.  The district court based the injunction not on any federally registered trademark owned by Drake, but on an incorrect determination that Drake has current common law rights in the "Vintage D" by itself. The preliminary injunction warrants reversal and/or vacatur for all these reasons.

Appellants believe the Court will benefit from oral argument and respectfully requests 20 minutes for oral argument.

i

## CORPORATE DISCLOSURE STATEMENTS

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eighth Circuit Local Rule 26.1A, Defendant - Appellant Des Moines Area Community College Foundation certifies that it is a public charity, it has no parent companies or corporations, no subsidiaries, and no publicly held company owns ten percent (10%) or more of its stock.

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eighth Circuit Local Rule 26.1A, Defendant - Appellant Des Moines Area Community College certifies that it is a school corporation organized under Iowa Code Chapter 260C[1], it has no parent companies or corporations, no subsidiaries, and no publicly held company owns ten percent (10%) or more of its stock.

---

[1] As a school corporation organized under Iowa Code Chapter 260C (i.e., a municipal corporation), Federal Rule of Appellate Procedure 26.1 may not apply to Des Moines Area Community College. Out of an abundance of caution, Des Moines Area Community College provides this corporate disclosure statement regardless.

Appellate Case: 24-3445    Page: 3    Date Filed: 01/30/2025 Entry ID: 5480326

# TABLE OF CONTENTS

Page

SUMMARY OF THE CASE AND REQUEST FOR ORAL
ARGUMENT ...................................................................................i

CORPORATE DISCLOSURE STATEMENTS............................ii

TABLE OF AUTHORITIES.........................................................vi

JURISDICTIONAL STATEMENT ...............................................1

STATEMENT OF THE ISSUES.....................................................2

STATEMENT OF THE CASE .......................................................4

    I.    Factual Background...........................................................4

        A.    DMACC And Its Historic Use Of A Standalone
              Block-Style D.............................................................4

        B.    DMACC's October 2023 Brand Refresh ........................7

        C.    Drake And Its Federally Registered Trademarks.........8

        D.    Drake's 2005 Rebrand....................................................9

        E.    Drake's Branding Guidelines And The Academic
              D ...............................................................................10

        F.    The Vintage D .............................................................11

    II.    Procedural History .........................................................15

        A.    Drake's Complaint And Motion For A
              Preliminary Injunction ..............................................15

        B.    The District Court's November 22, 2024, Order
              Granting Drake's Motion For A Preliminary
              Injunction ...................................................................19

Appellate Case: 24-3445    Page: 4    Date Filed: 01/30/2025 Entry ID: 5480326

C.  The District Court's December 10, 2024, Order Clarifying The Scope Of Its Previously Entered Preliminary Injunction ...............................23

SUMMARY OF THE ARGUMENT .......................................24

ARGUMENT ...............................................................27

I.  STANDARD OF REVIEW ...................................27

II.  PRELIMINARY INJUNCTION STANDARD .....................28

III.  THE PRELIMINARY INJUNCTION IS BASED ON THE VINTAGE D ALONE, BUT DRAKE DID NOT CARRY ITS BURDEN TO ESTABLISH CURRENT COMMON LAW TRADEMARK RIGHTS IN THE VINTAGE D ALONE WITHOUT A BULLDOG. .................29

A.  Drake Did Not Establish Current Common Law Trademark Rights In The Vintage D Alone. ...............29

1.  Historic Uses Do Not Establish Current Common Law Rights In The Vintage D Alone. ...................................................31

2.  Undated Uses Do Not Establish Current Common Law Rights In The Vintage D Alone. ...................................................32

3.  Uses That Are Not "In Commerce" Do Not Establish Current Common Law Rights In The Vintage D Alone. ...........................33

4.  Uses Of The Vintage D With A Bulldog Do Not Establish Current Common Law Rights In The Vintage D Alone. ...................36

B.  The District Court Should Not Have Assessed Likelihood Of Confusion Based On The Vintage D Alone. ...................................................38

iv

IV.   THE PRELIMINARY INJUNCTION IS OVERBROAD......40

    A.   The District Court Abused Its Discretion By
         Enjoining Conduct That Is Not Included In
         Drake's Complaint. ......................................................40

    B.   The District Court Abused Its Discretion By
         Enjoining DMACC From Using "Block-Style" Ds
         In Combination With Its House Mark.........................42

CONCLUSION....................................................................46

CERTIFICATE OF COMPLIANCE.......................................48

CERTIFICATE OF SERVICE................................................50

Appellate Case: 24-3445     Page: 6     Date Filed: 01/30/2025 Entry ID: 5480326

# TABLE OF AUTHORITIES

<u>Page(s)</u>

**Cases**

*A&L Indus., LLC v. Weaver Enter., Ltd.,*
  No. 20-cv-552-slc, 2021 WL 3856745 (W.D. Wis. Aug. 30,
  2021) ................................................................................................ 32

*Carson v. Simon,*
  978 F.3d 1051 (8th Cir. 2020) ............................................................ 28

*Dataphase Sys., Inc. v. C L Sys., Inc.,*
  640 F.2d 109 (8th Cir. 1981) ....................................................... 28, 40

*Davis v. Walt Disney Co.,*
  393 F. Supp. 2d 839 (D. Minn. 2005) ...................................... 2, 31, 35

*Devose v. Herrington,*
  42 F.3d 470 (8th Cir. 1994) (per curiam) ................................. 2, 40, 42

*Dixon v. City of St. Louis,*
  950 F.3d 1052 (8th Cir. 2020) ............................................................ 28

*First Bank v. First Bank Sys., Inc.,*
  84 F.3d 1040 (8th Cir. 1996) ...................................................... 2, 29, 30

*Flavor Corp. of Am. v. Kemin Indus., Inc.,*
  493 F.2d 275 (8th Cir. 1974) ...................................................... 2, 30, 35

*Gen. Mills, Inc. v. Kellogg Co.,*
  824 F.2d 622 (8th Cir. 1987) .............................................................. 38

*Guthrie Healthcare Sys. v. ContextMedia, Inc.,*
  826 F.3d 27 (2d Cir. 2016) ........................................................... 44, 45

*H&R Block, Inc. v. Block, Inc.,*
  58 F.4th 939 (8th Cir. 2023) ..................................................... *passim*

*Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.,*
  182 F.3d 598 (8th Cir. 1999) .............................................................. 42

vi

*Iowa Paint Mfg. Co. v. Hirshfield's Paint Mfg., Inc.*,
   296 F. Supp. 2nd 983 (S.D. Iowa 2003) ............................................. 45

*Kennedy Bldg. Assocs. v. CBS Corp.*,
   476 F.3d 530 (8th Cir. 2007) ............................................................. 27

*Luigino's, Inc. v. Stouffer Corp.*,
   170 F.3d 827 (8th Cir. 1999) ........................................................ 3, 43

*MPAY Inc. v. Erie Custom Comput. Applications, Inc.*,
   907 F.3d 1010 (8th Cir. 2020) ........................................................... 27

*Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*,
   164 F.3d 736 (2d Cir. 1998) .............................................................. 32

*Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo
S.A. DE C.V.*,
   188 F. Supp. 2d 22 (D.D.C. 2016) .................................................... 32

*PSK, LLC v. Hicklin*,
   757 F. Supp. 2nd 836 (N.D. Iowa 2010). ......................................... 45

*Sensient Techs. Corp. v. SensoryEffects Flavor Co.*,
   613 F.3d 754 (8th Cir. 2010) ............................................................. 39

*Tumey v. Mycroft AI, Inc.*,
   27 F.4th 657 (8th Cir. 2022) ............................................................. 28

*Vida Enter. Corp. v. Angelina Swan Collection, Inc.*,
   No. 2:22-cv-009150ODW, 2023 WL 2895702 (C.D. Cal.
   Apr. 11, 2023) .................................................................................. 32

*Winter v. Nat'l Res. Def. Council, Inc.*,
   555 U.S. 7 (2008) .............................................................................. 28

*Zhou v. Int'l Bus. Machs. Corp.*,
   167 F. Supp. 3d 1008 (N.D. Iowa 2016) ............................................ 41

*ZW USA, Inc. v. PWD Sys., LLC*,
   889 F.3d 441 (8th Cir. 2018) ........................................................ 3, 43

vii

## Statutes

15 U.S.C. § 1121 ........................................................................ 1

15 U.S.C. § 1127 ........................................................ 21, 30, 31, 34

15 U.S.C. § 1501 *et seq.* (Lanham Act) ........................................ 1, 16, 17

28 U.S.C. § 1292(a)(1) ................................................................. 1

28 U.S.C. § 1331 ....................................................................... 1

28 U.S.C. § 1338 ....................................................................... 1

28 U.S.C. § 1367(a) .................................................................... 1

Iowa Code ch. 260C .................................................................... ii

## Rules

8th Cir. R. 26.1A ...................................................................... ii

8th Cir. R. 28A(h)(2) ................................................................. 48

Fed. R. App. P. 26.1 .................................................................. ii

Fed. R. App. P. 32(a)(5)(A) .......................................................... 48

Fed. R. App. P. 32(a)(7) ............................................................. 48

Fed. R. App. P. 32(f) ................................................................ 48

Fed. R. App. P. 32(g)(1) ............................................................. 48

Appellate Case: 24-3445    Page: 9    Date Filed: 01/30/2025 Entry ID: 5480326

## JURISDICTIONAL STATEMENT

The district court has original jurisdiction over the Lanham Act claims pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338 and has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a). The district court issued a preliminary injunction order on November 22, 2024, and Defendants – Appellants timely filed a notice of appeal on November 27, 2024. On December 10, 2024, the district court issued a clarification regarding the scope of the previously entered preliminary injunction. This Court has jurisdiction to review the preliminary injunction order and the subsequent clarification thereof pursuant to 28 U.S.C. § 1292(a)(1).

Appellate Case: 24-3445    Page: 10    Date Filed: 01/30/2025 Entry ID: 5480326

## STATEMENT OF THE ISSUES

I.     Whether the district court abused its discretion when it found that Drake was likely to succeed on the merits based on the district court's legal error in ruling that Drake has common law rights in a standalone "Vintage D" when Drake did not show current, continuous, non-sporadic use of a standalone "Vintage D."

<u>Apposite Cases</u>:

- *First Bank v. First Bank Sys., Inc.*, 84 F.3d 1040 (8th Cir. 1996)
- *Flavor Corp. of Am. v. Kemin Indus., Inc.*, 493 F.2d 275 (8th Cir. 1974)
- *Davis v. Walt Disney Co.*, 393 F. Supp. 2d 839 (D. Minn. 2005)
- *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939 (8th Cir. 2023)

II.    Whether the district court abused its discretion when it enjoined Defendants - Appellants from using any and all "block-style" Ds in blue and/or white, including Ds that are not included in Drake's complaint and Ds accompanied by DMACC's house mark.

<u>Apposite Cases</u>:

- *Devose v. Herrington*, 42 F.3d 470 (8th Cir. 1994) (per curiam)
- *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939 (8th Cir. 2023)

2

- *ZW USA, Inc. v. PWD Sys., LLC*, 889 F.3d 441 (8th Cir. 2018)
- *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827 (8th Cir. 1999)

3

## <u>STATEMENT OF THE CASE</u>

### I.    FACTUAL BACKGROUND

#### A.    DMACC And Its Historic Use Of A Standalone Block-Style D

Defendant – Appellant Des Moines Area Community College ("DMACC") began offering college education services in Iowa in 1966. (App. 256, R. Doc. 23-3, ¶ 2.)  Since at least 1972, DMACC has referred to itself and offered its goods and services under the acronym "DMACC"—a trademark that has been federally registered since 2013. (App. 256, R. Doc. 23-3, ¶ 3; App. 262, R. Doc. 23-4.)   Given the prominence of the letter "D" in its colloquial name (pronounced "D"-"MACC"), DMACC has historically used a standalone "D" to refer to DMACC.  (App. 256, R. Doc. 23-3, ¶ 4.)  For example, since at least 2000, DMACC has used the trademark below, which has been federally registered since 2014.  (*Id.*; App. 264, R. Doc. 23-5.)



The "D" in the registered trademark above clearly refers to DMACC and, as shown in the examples on the next page, has typically been used by DMACC in various shades of blue and white.

4







(App. 269, 270, 331, R. Doc. 23-6, at 3, 10, 110.)

In addition to the registered trademark above, DMACC also used the "D" alone as a trademark—in blue and white—even marking it with the "™" trademark symbol to indicate its use as a source identifier (the "DMACC Bear Paw D"). (*See id.*)  Examples of this are shown below.



5



(App. 278, 283, R. Doc. 23-6, at 29, 50.)  Notably, despite years of use by DMACC, Drake never complained about the DMACC Bear Paw D shown above.  (App. 257, R. Doc. 23-3, ¶ 6.)

DMACC also used the same-shaped block-style standalone "D" without the bear paw, as shown in the examples below.  (App. 642, R. Doc. 97-2, ¶¶ 15-16; App. 646, R. Doc. 97-3, at 2; App. 648, R. Doc. 97-4, at 2 (circle annotation added).)




6

The pictured basketball court was installed in 2019. (App. 642, R. Doc. 97-2, ¶ 15.) The pictured wall mural was installed in 2021 with images dating back to 2013. (App. 642, R. Doc. 97-2, ¶ 16.)

DMACC's use of a standalone "D" to refer to itself is consistent with the practice of other colleges, universities, and schools that begin with the letter "D"—most, if not all, use a standalone "D" to identify their goods and services. (*See, e.g.*, App. 393–397, 400–402, 530, 532–541, 543, 545, 547–548; R. Docs., 23-11, 23-12, 23-18, 23-19, 23-22, 23-23, 23-24.)

### B.   DMACC's October 2023 Brand Refresh

In October 2023, DMACC began using the trademark on the next page, which incorporates the standalone, block-style "D" in DMACC's trademarks shown above along with the "DMACC" house mark (the "DMACC Rebrand Logo"). (App. 257, R. Doc. 23-3, ¶ 7.)



The DMACC Rebrand Logo was intended to formally update DMACC's brand to a sleeker, more modern style while maintaining the standalone,

Appellate Case: 24-3445   Page: 16   Date Filed: 01/30/2025 Entry ID: 5480326

block-style "D" and shorthand "DMACC" that DMACC had been using for years. (*Id.*)

### C.    Drake And Its Federally Registered Trademarks

Plaintiff - Appellee Drake University ("Drake") is a private university in Des Moines, Iowa, that was founded in 1881. (App. 052, R. Doc. 17, ¶ 8.) Drake owns three federally registered trademarks relevant to this dispute, which are shown below.

    

Reg. No. 3,498,202       Reg. No. 4,625,043       Reg. No. 1,567,283
"Academic D"             "Athletic 'D'"            "Marching Spike"

(App. 064–066, R. Doc. 17, ¶¶ 54-68; App. 203, R. Doc. 1-32; App. 204, R. Doc. 1-33; App. 205, R. Doc. 1-34.)    Drake applied to register the Academic D in 2007 and the Athletic D in 2014, but both claim first use dates in 2005—the year in which Drake completed a comprehensive rebrand. (*See id.*; App. 439, R. Doc. 23-13, at 21.)

8

### D.    Drake's 2005 Rebrand

Almost twenty years ago in July 2005, "Drake unveiled a new logo for both academic and athletic programs." (App. 439, R. Doc. 23-13, at 21.) As shown in the exemplary use below and described by Drake, "[t]he new look features an updated, more realistic Bulldog mascot and *a sharp new typeface*." (*Id.* (emphasis added).)



The "sharp new typeface" is reflected in Drake's registered trademarks for the Academic D and Athletic D. (*Id.*; App. 204, R. Doc. 1-33; App. 205; R. Doc. 1-34.) Drake explained that its "top priorities" in the rebrand were "*creating a new and distinctive 'D'* along with an exciting version of Spike on the move." (App. 449, R. Doc. 23-14, at 2 (emphasis added).)

In other words, in 2005, Drake made the decision to move away from its prior branding (depicted in the Marching Spike trademark registration shown above) and adopted the new font and bulldog in Drake's registered Academic D and Athletic D trademarks.

9

### E.    Drake's Branding Guidelines And The Academic D

Drake's detailed "Brand Standards & Style Guide" ("Drake's Brand Guide") governs use of Drake's current branding, including the Academic D and Athletic D adopted in Drake's 2005 rebrand.  (*See* App. 357–391, R. Doc. 23-7.)  Drake's Brand Guide instructs (in bold font):

> Only use Drake logos in the ways described and illustrated in this document.  Any other uses or alteration without prior approval from the Drake University Office of Communications and Marketing is prohibited.

(App. 369, R. Doc. 23-7, at 14.)  Drake's Brand Guide explains that the logo below "is the most recognizable element of our brand."  (*Id.*)



The "D" of the "primary logo" above is the Academic D.  (App. 370, R. Doc. 23-7, at 15; App. 204, R. Doc. 1-33.)  Drake's Brand Guide restricts use of the Academic D—the so-called "Drake 'D'"—as follows:

> ***The "D" of the primary logo is sometimes used alone*** in situations where space or size limitations make the full logo cumbersome.  Example: social media profile pictures.  When used this way, the "D" should be the primary mark and represent the university as a whole.  Best practice is to ***only use the singular "D" when "Drake University" is displayed nearby***."

10

(App. 370, R. Doc. 23-7, at 15 (emphasis added); *see also id.* (explaining that "[s]pecial circumstances sometimes allow for the use of the Drake 'D' on its own, but only when 'Drake University' is written nearby").) The Academic D is the only standalone D permitted under Drake's Brand Guide. (*See* App. 357–391, R. Doc. 23-7.) No other standalone D is identified or discussed in Drake's Brand Guide. (*See id.*)

### F.  The Vintage D

The standalone "D" below—dubbed the "Vintage D" by Drake—is not identified or discussed in Drake's Brand Guide. (*See id.*; *see also* App. 054–060, R. Doc. 17, ¶¶ 19-35.)



Its only appearance in Drake's Brand Guide is in ***one*** of the many undated photos of Griff—Drake's live bulldog mascot—displayed in solid white on Griff's letterman jacket (reproduced on the next page). (App. 385; R. Doc. 23-7, at 30.)

Appellate Case: 24-3445    Page: 20    Date Filed: 01/30/2025 Entry ID: 5480326



Drake's Brand Guide instructs to "[r]esist the urge" to "use Griff's image on everything everywhere" and "limit[ ] Griff's appearances." (*Id.*)

Drake does not have a registered trademark for the Vintage D (which is not mentioned in Drake's Brand Guide). Instead, Dartmouth College owns the federal registration for the standalone, block-style "D" below without any limitation as to color and claiming first use in 1900.



(App. 530; R. Doc. 23-18, at 2.) The registered Dartmouth "D" is identical to what Drake is trying to claim is its own Vintage D.

Even though it is Drake's burden to prove it has common law trademark rights, the record in this case contains only the following alleged uses of the Vintage D alone without a bulldog[2]:

- Historic dated uses (all 45 years old or older)

  - 1903 Drake yearbook cover with a solid white block-style D (App. 055, R. Doc. 17, ¶ 20; App. 184, R. Doc. 1-3.)

  - 1908 Drake yearbook cover with a solid white rounded D[3] (App. 055, R. Doc. 17, ¶ 20; App. 185, R. Doc. 1-4.)

  - 1910 Drake yearbook cover with a solid white block-style D (App. 055, R. Doc. 17, ¶ 20; App. 186, R. Doc. 1-5.)

  - "Circa 1960" photo of people wearing clothing with a solid white or black block-style D (App. 056, R. Doc. 17, ¶ 23; App. 192, R. Doc. 1-11.)

  - "Circa 1980" photo of a man wearing a hat with a gray block-style D (App. 056, R. Doc. 17, ¶ 23; App. 194, R. Doc. 1-13.)

---

[2] Drake submitted two undated photos of clothing with a solid blue block-style D accompanied by a bulldog with "Drake" on its sweater and one undated black and white historic photo of a person in a bulldog costume with a solid gray block-style D. (App. 056–057, R. Doc. 17, ¶¶ 23-24; App. 193, R. Doc. 1-12; App. 195, R. Doc. 1-14; App. 198, R. Doc. 1-17.) Drake also submitted 20 undated photos of its live bulldog mascot, Griff, or his likeness—18 of which show Griff wearing clothing with a solid white block-style D. (App. 067–071, R. Doc. 17, ¶¶ 69-84; App. 206-227; R. Docs. 1-35–1-56.) It is undisputed that Defendants – Appellants have never used a bulldog in their branding.

[3] This is not a block-style D, but Drake cites it as use of the Vintage D.

13

- <u>Undated uses</u>

  - Black and white historic photo of women wearing clothing with a solid white rounded D[4] (App. 055, R. Doc. 17, ¶ 21; App. 187, R. Doc. 1-6.)

  - Black and white historic photo of men wearing clothing with a solid white or gray block-style D (App. 055, R. Doc. 17, ¶ 21; App. 188, R. Doc. 1-7.)

  - Black and white historic photo of men wearing clothing with a solid white block-style D (App. 056, R. Doc. 17, ¶ 21; App. 189, R. Doc. 1-8.)

  - Black and white historic photo of men wearing clothing with a solid white block-style D (App. 056, R. Doc. 17, ¶ 21; App. 190, R. Doc. 1-9.)

  - Black and white historic photo of a man wearing a letter jacket with a solid white block-style D (App. 056, R. Doc. 17, ¶ 22; App. 191, R. Doc. 1-10.)

  - Undated photo of a gray sweatshirt with a solid white block-style D (App. 057, R. Doc. 17, ¶ 24; App. 196, R. Doc. 1-15.)

  - Undated photo of a blue t-shirt with a solid white block-style D (App. 057, R. Doc. 17, ¶ 24; App. 197, R. Doc. 1-16.)

- <u>Dated Uses</u>

  - Basketball shorts with a solid blue block-style D worn at a single game in January 2020 (App. 058, R. Doc. 17, ¶¶ 26-27; App. 199, R. Doc. 1-18.)

  - Current basketball court with a solid white block-style D that is covered up during basketball games (App. 058, R. Doc. 17, ¶ 28; App. 200, R. Doc. 1-19; Add. 058–059, Transcript, 46:7-11, 75:15-21.)

---

[4] This is not a block-style D, but Drake cites it as use of the Vintage D.

- <u>Third-Party Uses</u>
  - Undated image of alumni group logo with a solid blue block-style D[5] (App. 059–060, R. Doc. 17, ¶¶ 32-35; App. 201, R. Doc. 1-20.)

  - Rapper Aubrey Drake Graham wearing a letterman jacket with a solid white block-style D at a concert in 2016 (App. 072, R. Doc. 17, ¶¶ 85-86; App. 228, R. Doc. 1-57; App. 229, R. Doc. 1-58.)

  - Undated photo of a long-deceased alumnus wearing a letterman jacket with a solid white block-style D (App. 074; R. Doc. 17, ¶ 97; App. 230, R. Doc. 1-60.)

  - Undated photos of broadcaster wearing sweaters with a solid white or blue block-style D (App. 075, R. Doc. 17, ¶ 103; App. 231–235, R. Docs. 1-61–1-65.)

Notably, Drake's online bookstore does not offer for sale any items with the Vintage D alone without a bulldog. (*See* App. 451–528, R. Doc. 23-16.) On the other hand, Drake is offering for sale merchandise with the Academic D and Athletic D. (*See id.*)

## II.    PROCEDURAL HISTORY

### A.    Drake's Complaint And Motion For A Preliminary Injunction

On July 8, 2024, Drake filed a complaint against Defendants-Appellants Des Moines Area Community College Foundation

---

[5] Drake also submitted an undated photograph of the "Double D Award," displaying two solid silver block-style Ds. (App. 059, R. Doc. 17, ¶¶ 29-31; App. 202, R. Doc. 1-21.) It is undisputed that Defendants – Appellants have never used two Ds in their branding.

("DMACCF") only.  (App. 124, R. Doc. 1.)  Drake filed its initial motion for a preliminary injunction—against DMACCF only—the same day. (App. 244, R. Doc. 4.)  On July 16, 2024, Drake filed a motion to amend its complaint and preliminary injunction materials to include DMACC, which the district court granted.  (App. 247, R. Doc. 15; App. 252, R. Doc. 16.)  The following day, Drake filed its amended complaint and amended preliminary injunction motion papers.  (App. 048, R. Doc. 17; App. 253, R. Doc. 18.)

Drake's amended complaint asserts claims for trademark infringement, unfair competition, and false designation of origin under the Lanham Act and "related claims" for trademark infringement and unfair competition under Iowa law.  (App. 051, R. Doc. 17, ¶ 1.)  Drake explained that "***all***" of its asserted claims "aris[e] from Des Moines Area Community College's *recently-launched rebrand* that [allegedly] incorporates several elements of Drake's established brand identity, including, *inter alia*, a prominent ***standalone 'D'*** in block-style collegiate font presented in what is essentially Drake University's color scheme in connection with post-secondary educational services, athletics, and ancillary goods and services."  (*Id.* (emphasis added).)

16

Likewise, Drake's amended complaint defines its use of the term "DMACC 'D'" to refer to the "prominent block-style 'D'" shown below (in color and black-and-white), which is the "D" from the DMACC Rebrand Logo.

 

(App. 083, R. Doc. 17, ¶ 145; App. 236, R. Doc. 1-78; App. 237, R. Doc. 1-79.)  Drake includes the "DMACC 'D'" and the "New DMACC Colors" in its definition of "Infringing Marks," which are the subject of Drake's asserted claims.  (App. 097, 101–104, R. Doc. 17, ¶¶ 215, 239-273.)

Consistent with its amended complaint, Drake's preliminary injunction motion explains that "Drake brought this action for trademark infringement and unfair competition on July 8, 2024, seeking injunctive relief and damages ***arising from DMACC's recent rebrand*** ...." (App. 253, R. Doc. 18, ¶ 1 (emphasis added); *see also* App. 254, R. Doc. 18, ¶ 5 (Drake referencing "DMACC's rapid and widespread rollout of its ***new brand***") (emphasis added).)  Drake sought injunctive relief for its Lanham Act

17

claims based on its alleged ownership of an amorphous "Drake Brand," consisting of multiple elements including the Vintage D, Academic D, Athletic D, and Marching Spike. (*See* App. 253, R. Doc. 18.) Despite the limited scope of its amended complaint, Drake asked the district court to "enter a preliminary injunction requiring DMACC to immediately cease use of (1) a standalone 'D' and (2) a color scheme comprised only of blues and whites to denote the source of its educational services, athletics, and ancillary goods and services." (App. 255, R. Doc. 18, at 3.)

Nevertheless, consistent with its amended complaint, Drake's oral argument at the hearing on its motion only referenced DMACC's 2023 rebrand—not any of DMACC's prior uses of a standalone block-style D. (*See* Add. 051–057, Transcript at 4:16-17 ("On November 1st, 2023, DMACC embarked on an unfair and unnecessary invasion of Drake's 120-year-old brand."), 5:22-25 (referencing "last fall"), 6:1-2 (arguing that "DMACC is exposing so many people to its new brand in such a short period of time ...."), 17:8-10 (pointing to "the DMACC D that they adopted last fall"), 21:18-21 (referencing a time "before DMACC adopted its new D" and "DMACC's rebrand"), 26:12-13 (again referencing "DMACC's new

18

D"), 29:6-7 (arguing that DMACC's "new brand has been out for less than a year"), 29:16 (referencing DMACC's "new standalone D").)

### B. The District Court's November 22, 2024, Order Granting Drake's Motion For A Preliminary Injunction

In its Order, the district court pointed out that "Drake argues that DMACC's *new logo* infringes on its registered trademark rights as well as its common law trademark rights grounded in its Vintage D ...." (App. 005, R. Doc. 87, at 5 (emphasis added), Add. 005.) The district court found that "there is no likelihood of confusion between DMACC's new logo and [Drake's] registered marks [for the Academic D and Athletic D]" because "they simply are not similar enough to one another to cause confusion to the public." (App. 009, R. Doc. 87, at 9, Add. 009.) Thus, according to the district court, "the main issue in the case is whether Drake has a valid common law trademark for its Vintage D and whether DMACC's new logo infringes on that mark."[6] (App. 010, R. Doc. 87, at 10, Add. 010.)

---

[6] The district court addressed Drake's registered Marching Spike in only three sentences of its 43-page opinion. (App. 004, R. Doc. 87, at 4, Add. 004.) Those sentences merely identify the federal registration, when it was registered, and note that "[t]he Vintage D is depicted on Spike's sweatshirt." (*Id.*) Given the district court's above quoted statement regarding "the main issue in the case," it is clear that the district court correctly understood that Marching Spike is not a federal

19

The district court devoted two paragraphs of its 43-page opinion discussing Drake's alleged use of the Vintage D in commerce. (App. 014, R. Doc. 87, at 14, Add. 014.) The district court cursorily relied on the historic and undated uses of the Vintage D submitted by Drake to incorrectly determine that "[t]he demonstrated long-term use of the Vintage D supports Drake's argument that it is a valid trademark which denotes its services within the geographic region." (*Id.*) However, the district court recognized that Drake's "modern marketing" features "its live mascot and his letterman jacket"—not the Vintage D alone without a bulldog. (*Id.*)

Later, the district court acknowledged that "the modern uses of the Vintage D identified by Drake during this case" consist of "the basketball court, its use in an alumni group's award, and its display on the sweaters of a broadcaster for Drake's basketball games." (App. 018, R. Doc. 87, at 18, Add. 018.) The district court explicitly "recognize[d] the issue with Drake's reliance on the sale of merchandise through undated photographs," but incorrectly determined that "even if those uses are not

---

registration for the Vintage D alone and Drake must establish common law rights in the Vintage D alone to succeed on the merits.

20

considered, Drake has adequately established that it uses the mark in commerce." (*Id.* (citing 15 U.S.C. § 1127).)

In reaching that conclusion, the district court cited only two uses of a Vintage D alone without a bulldog—the alumni group and the broadcaster's sweaters. (App. 019, R. Doc. 87, at 19, Add. 019.) The district court then proceeded to rely heavily on the use of the Vintage D with a bulldog, stating "[p]erhaps most importantly, the Vintage D is used in conjunction with Drake's live mascot, an English bulldog named Griff." (*Id.*) In a footnote, the district court also cited the unaffiliated rapper "Drake" wearing a letterman jacket in 2016—eight years prior. (App. 020, R. Doc. 87, at 20, Add. 020.)

Based on this evidence, the district court incorrectly determined that "[t]he record reflects that Drake continues to actually and consistently use the Vintage D" and concluded that "Drake has established a valid protectable common law trademark in its blue and white Vintage D." (*Id.*) The district court then conducted the multi-factor likelihood of confusion analysis based on the Vintage D alone—not the Vintage D in combination with a bulldog—and determined confusion was likely with respect to the DMACC Rebrand Logo. (*See* App. 020–039, R.

21

Doc. 87, at 20-39, Add. 020–039.)   In doing so, the district court improperly relied on a Second Circuit case and two district court cases to disregard the prominent display of DMACC's house mark in the DMACC Rebrand Logo.  (*See* App. 027–029, R. Doc. 87, at 27-29, Add. 027–029.)

Based on its likelihood of confusion conclusion, the district court applied the statutory rebuttable presumption of irreparable harm.  (App. 039, R. Doc. 87, at 39, Add. 039.)  The district court was "disinclined to give any weight to DMACC's prior use argument" to rebut the presumption based on its determination that the DMACC Bear Paw D (shown below) "is fundamentally different than the current mark at issue in this litigation" and "is distinct."  (App. 040, R. Doc. 87, at 40, Add. 040.)



Ultimately, the district court entered a broad injunction preventing Defendants – Appellants "from using a block-style 'D' trademark in conjunction with any color combination of white and blue to denote their educational services, athletics, or ancillary goods and services," including

22

"the use of such a 'D' even when it is paired with a DMACC house mark or other indicia of the college." (App. 043, R. Doc. 87, at 43, Add. 043.)

### C. The District Court's December 10, 2024, Order Clarifying The Scope Of Its Previously Entered Preliminary Injunction

Based on the contradiction between the district court's broad injunction and disregard of the DMACC Bear Paw D in assessing Drake's delay in filing suit, DMACC sought clarification regarding the scope of the injunction. (*See* App. 635, R. Doc. 97.) In its Order, the district court pointed out that "[t]here is no mention of DMACC's bear paw D anywhere in Drake's complaint," "[i]t is clear that DMACC's bear paw D was not included in Drake's complaint," and "Drake also fail[ed] to mention DMACC's bear paw D in their motion for preliminary injunction." (App. 045–046, R. Doc. 101, at 2-3, Add. 045–046.) The district court "reiterate[d] its conclusion that DMACC's bear paw D is visually distinct and fundamentally different from Drake's mark" and clarified that "DMACC's bear paw 'D' is not included within the scope of the Court's injunction." (App. 046, R. Doc. 101, at 3, Add. 046.)

In reaching its conclusion above, the district court correctly recognized that Drake's complaint concerned only "the block-style blue and white D that DMACC began using in its 2023 rebrand." (App. 045–

23

046, R. Doc. 101, at 2-3, Add. 045–046.)  Despite that fact, the district court held that DMACC's other pre-2023 rebrand uses of a block-style D in blue and/or white "fall cleanly within the scope of the injunction issued in this case." (App. 046–047, R. Doc. 101, at 3-4, Add. 046–047.)  Thus, the district court's current injunction requires DMACC to stop all use of block-style Ds in blue and/or white (except the DMACC Bear Paw D), including those in use long before its rebrand and for years prior to Drake filing suit.  (*See id.*; *see also* App. 642, R. Doc. 97-2, ¶¶ 15-16; App. 646, R. Doc. 97-3, at 2; App. 648, R. Doc. 97-4, at 2.)

## SUMMARY OF THE ARGUMENT

The district court abused its discretion by broadly enjoining Defendants – Appellants "from using a block-style 'D' trademark in conjunction with any color combination of white and blue to denote their educational services, athletics, or ancillary goods and services," including "the use of such a 'D' even when it is paired with a DMACC house mark or other indicia of the college." (App. 043, R. Doc. 87, at 43, Add. 043.) The district court based the injunction on its determination that Drake was likely to succeed on the merits because: (1) Drake has current common law trademark rights in the Vintage D alone; and (2) consumer

24

confusion is likely based solely on the comparison of that standalone Vintage D to the DMACC Rebrand Logo. Both conclusions were abuses of discretion based on legal errors and erroneous fact findings.

With respect to the first—Drake's current common law trademark rights—the record is devoid of any evidence to support such a conclusion. To try to establish a common law trademark in the Vintage D alone, Drake relied solely on antiquated photos from over 45 years ago, undated photos, and alleged uses of a Vintage D that are not in commerce in connection with the sale of goods or rendering of services. None of this evidence is sufficient to establish current common law rights in the Vintage D alone. With the exception of a single Vintage D on a basketball court—which is admittedly hidden from public view during basketball games—the only current uses of a Vintage D identified by Drake were in connection with Drake's bulldog mascot. Despite that indisputable fact, the district court held that Drake established current common law rights in the Vintage D alone—without a bulldog. This was reversible legal error.

The second conclusion—that confusion is likely—was in error because it was based entirely on the flawed premise that Drake has

25

current common law rights in the Vintage D alone without a bulldog, which it does not. A proper likelihood of confusion analysis should have been based on any trademark rights Drake was found to establish in the Vintage D in combination with a bulldog. The district court's failure to conduct such an analysis is further grounds for reversal or at least vacatur and remand.

In addition, the current scope of the preliminary injunction is overbroad. The district court abused its discretion by including within the scope of the injunction: (1) DMACC's pre-2023 rebrand uses of a standalone block-style D in blue and/or white (except the DMACC Bear Paw D); and (2) the DMACC Rebrand Logo, which prominently displays the "DMACC" registered house mark. Neither were included in Drake's amended complaint or motion for preliminary injunction—both of which focus on the "standalone D" in the DMACC Rebrand Logo. The district court cannot enjoin conduct that is outside the scope of Drake's asserted claims. Moreover, the district court ignored controlling Eighth Circuit precedent when it disregarded the prominent use of the "DMACC" house mark in the DMACC Rebrand Logo, which is sufficient to eliminate any possible confusion. Thus, at the very least, the Court must reverse and/or

vacate the preliminary injunction to limit its scope to the standalone D in the DMACC Rebrand Logo that DMACC began using in the fall of 2023.

## ARGUMENT

## I.    STANDARD OF REVIEW

This Court reviews "a district court's ultimate ruling on a preliminary injunction for abuse of discretion," but reviews the "underlying legal conclusions de novo." *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 907 F.3d 1010, 1015 (8th Cir. 2020) (citation omitted). "A district court abuses its discretion when it bases its decision on a legal error or a clearly erroneous finding of fact." *Kennedy Bldg. Assocs. v. CBS Corp.*, 476 F.3d 530, 534 (8th Cir. 2007) (citation omitted); *see also H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 946 (8th Cir. 2023) ("An abuse of discretion occurs when a relevant factor that should have been given significant weight is not considered; when an irrelevant or improper factor is considered and given significant weight; and when all proper factors, and no improper ones, are considered, but the court, in weighing those factors, commits a legal error of judgment.") (citation omitted).

27

## II.  PRELIMINARY INJUNCTION STANDARD

The purpose of a preliminary injunction is "to preserve the status quo until the merits are determined." *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 & n.5 (8th Cir. 1981).  "A preliminary injunction is an extraordinary remedy never awarded as of right." *Tumey v. Mycroft AI, Inc.*, 27 F.4th 657, 664 (8th Cir. 2022) (quoting *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008)).

Courts consider the following factors in determining whether to issue a preliminary injunction: (1) the probability the moving party will succeed on the merits; (2) the threat of irreparable harm to the moving party; (3) the balance of hardships; and (4) the public interest. *Dixon v. City of St. Louis*, 950 F.3d 1052, 1055 (8th Cir. 2020) (citation omitted). "While no single factor is determinative, the probability of success factor is the most significant." *Carson v. Simon*, 978 F.3d 1051, 1059 (8th Cir. 2020) (citations omitted).

Importantly, "a movant carries a 'heavier' burden when granting a preliminary injunction has the effect of awarding the movant substantially the relief it could obtain after a trial on the merits." *H&R Block*, 58 F.4th at 946 (citation omitted).  The preliminary injunction

28

entered in this case does precisely that and awards Drake far more than preservation of the status quo.

## III. THE PRELIMINARY INJUNCTION IS BASED ON THE VINTAGE D ALONE, BUT DRAKE DID NOT CARRY ITS BURDEN TO ESTABLISH CURRENT COMMON LAW TRADEMARK RIGHTS IN THE VINTAGE D ALONE WITHOUT A BULLDOG.

After rejecting Drake's federal trademark registrations as a basis for a preliminary injunction, the district court explained that "the main issue in the case is whether Drake has a valid common law trademark for its Vintage D and whether DMACC's new logo infringes on that mark." (App. 010, R. Doc. 87, at 10, Add. 010.) The district court's affirmative answers to those questions were an abuse of discretion based on legal errors and erroneous fact findings.

### A. Drake Did Not Establish Current Common Law Trademark Rights In The Vintage D Alone.

As the district court recognized, because Drake does not have a registered trademark for the Vintage D, it must establish current common law rights prior to DMACC's adoption of the DMACC Rebrand Logo.[7]  *See First Bank v. First Bank Sys., Inc.*, 84 F.3d 1040, 1044 (8th

---

[7] Dartmouth—not Drake—owns the federal trademark registration for the standalone, block-style D that Drake is claiming as its own Vintage D. (*See* App. 530, R. Doc. 23-18, at 2.) Demonstrating the errors in its

29

Cir. 1996). "[A] common law trademark arises from the adoption and actual use of a word, phrase, logo, or other device to identify goods or services with a particular party." *Id.* (citation omitted); *see also Flavor Corp. of Am. v. Kemin Indus., Inc.*, 493 F.2d 275, 284 (8th Cir. 1974) (identifying "the common law concept that trademark rights are acquired only by actual use of a mark in commerce in connection the goods") (citation omitted). Use "in commerce" requires "bona fide use of a mark in the ordinary course of trade" for goods "when it is placed in any manner on the goods or their containers or the displays associated therewith or on the tags or labels affixed thereto ... and the goods are sold or transported in commerce." 15 U.S.C. § 1127. And for services, use "in commerce" occurs "when [a mark] is used or displayed in the sale or advertising of services and the services are rendered in commerce." *Id.*

A trademark is "abandoned" if "its use has been discontinued with intent not to resume such use"—"[n]onuse for 3 consecutive years shall be prima facie evidence of abandonment." *Id.* Thus, "the proponent of the trademark must demonstrate that the usage of the mark was

---

analysis, the district court somehow found the registered Dartmouth "D" "distinguishable" and "materially different" from the identical Vintage D. (*See* App. 022–023, R. Doc. 87, at 22-23, Add. 022–023.)

30

deliberate and continuous, not sporadic, casual or transitory." *Davis v. Walt Disney Co.*, 393 F. Supp. 2d 839, 844 (D. Minn. 2005) (internal quotations and citation omitted).

Drake did not establish current common law trademark rights in a standalone Vintage D without a bulldog. This is not surprising because Drake abandoned the Vintage D almost 20 years ago when it rebranded to the Academic D and Athletic D and the Vintage D appears nowhere in Drake's Brand Guide, which explicitly prevents use of any trademarks not discussed therein. (*See* App. 356, R. Doc. 23-07; App. 419, R.Doc. 23-13; App. 448, R. Doc. 23-14.)

1.     <u>Historic Uses Do Not Establish Current Common Law Rights In The Vintage D Alone.</u>

Much of the evidence submitted by Drake consists of yearbook covers from 1903, 1908, and 1910 as well as black and white photos represented to be from 1960, 1970, and 1980. (*See* App. 055–056 R. Doc. 17, ¶¶ 20, 23; App. 184–186, 192–194, R. Docs. 1-3, 1-4, 1-5, 1-11, 1-12, 1-13.) These historic uses are at least 45 years old and do not establish that Drake has current common law rights in the Vintage D alone. If this was the only evidence Drake had, there would be no question that Drake abandoned the Vintage D long ago. *See* 15 U.S.C. § 1127.

31

2.    <u>Undated Uses Do Not Establish Current Common Law Rights In The Vintage D Alone.</u>

Drake also relied heavily on undated evidence without any authentication to try to establish current common law rights in the Vintage D alone. (*See* App. 055–057, 074–075, R. Doc. 17, ¶¶ 21, 22, 24, 97, 103; App. 187–191, 195–198, 230–235, R. Docs. 1-6–1-10, 1-14–1-17, 1-60–1-65.) It cannot do so. *See, e.g., Vida Enter. Corp. v. Angelina Swan Collection, Inc.*, No. 2:22-cv-009150ODW (JCx), 2023 WL 2895702, at *9 (C.D. Cal. Apr. 11, 2023) (finding "undated" photographs and catalog pages "nearly worthless from an evidentiary perspective"); *A&L Indus., LLC v. Weaver Enter., Ltd.*, No. 20-cv-552-slc, 2021 WL 3856745, at *16 (W.D. Wis. Aug. 30, 2021) (explaining that "conclusory statements and a single image of the cover of an undated DVD do not constitute sufficient evidence from which a jury could reasonably conclude that [plaintiff] adopted the wolf head logo and Alpha marks, used them in a sufficiently public way to identify or distinguish their goods, and acquired superior rights to the marks"); *Paleteria La Michoacana, Inc. v. Productos Lacteos Tocumbo S.A. DE C.V.*, 188 F. Supp. 2d 22, 75 (D.D.C. 2016) (finding "limited evidence" consisting, in part, of "a variety of undated photographs of unknown origin" "unpersuasive and not credible"); *Nora*

32

*Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 745 (2d Cir. 1998) (finding that district court "improperly relied" on "undated photos" to establish timing of use).

Indeed, the district court specifically excluded from consideration Drake's undated photos of merchandise with a standalone Vintage D because it "recognize[d] the issue with Drake's reliance on the sale of merchandise through undated photographs." (App. 018, R. Doc. 87, at 18, Add. 018; *see also* App. 057, R. Doc. 17, ¶ 24; App. 195–196, R. Docs. 1-15, 1-16.) Further, much of the undated evidence is clearly very old— well beyond the three-year presumption of abandonment. (*See* App. 056– 057, R. Doc. 17, ¶¶ 21, 22; App. 187–191, R. Docs. 1-6–1-10.) The undated evidence does not establish that Drake has current common law rights in the Vintage D alone.

       3.   <u>Uses That Are Not "In Commerce" Do Not Establish Current Common Law Rights In The Vintage D Alone.</u>

The district court relied on the alumni group's use of the Vintage D as well as a broadcaster's sweaters displaying the Vintage D. (*See* App. 019, R. Doc. 87, at 19, Add. 019; *see also* App. 059–060, 074–075, R. Doc. 17, ¶¶ 29-35, 98-104; App. 201–202, 231–235, R. Docs. 1-20, 1-21, 1-61– 1-65.) The district court also cited "Drake," the rapper, wearing a

33

letterman jacket with the Vintage D during a concert in 2016. (*See* App. 020, R. Doc. 87, at 20, Add. 020; *see also* App. 072, R. Doc. 17, ¶¶ 85, 86; App. 228–229, R. Docs. 1-57, 1-58.) In addition, Drake pointed to a long-deceased alumnus wearing a letterman jacket with the Vintage D and a pair of shorts worn by basketball players in a single game in 2020. (App. 058, 074, R. Doc. 17, ¶¶ 26, 27, 94-97; App. 199, 230, R. Docs. 1-18, 1-60.)

None of these are examples of Drake using a trademark in commerce. *See* 15 U.S.C. § 1127. None are instances in which Drake placed the Vintage D on a good and sold or transported that good in commerce or instances in which the Vintage D was used or displayed by Drake in the sale or advertising of services rendered. *See id*. Moreover, with the possible exceptions of the alumni group and broadcaster's sweaters (although the latter is supported by undated images), the other non-trademark uses predate DMACC's adoption of the DMACC Rebrand Logo by more than three years and therefore, would not overcome the presumption of abandonment. *See id*.

Drake's only current use of the Vintage D alone, without a bulldog, is on a basketball court. (*See* App. 058, R. Doc. 17, ¶ 28; App. 200, R. Doc. 1-19.) However, it is undisputed that the Vintage D is covered up by the

34

bleachers during basketball games. (*See* Add. 058–059, Transcript, 46:7-11, 75:15-21.) Drake presented no evidence that the Vintage D on the basketball court, which is hidden from the public during basketball games, is used "in commerce" such that it can support current common law trademark rights. (*See, e.g.*, App. 048, R. Doc. 17.) Even if Drake had established that the basketball court is a use "in commerce"—which it did not—a single, isolated current use cannot establish enforceable common law rights. *See, e.g.*, *Flavor Corp.*, 493 F.2d at 284-85 (explaining that "this court adopted a de minimus rule in determining whether a common law trademark was entitled to injunctive protection" and "held that a significant penetration into a market must be shown before injunctive relief will be granted, and nominal or de minimus sales are not sufficient to justify that protection"); *Davis*, 393 F. Supp. 2d at 844.

Uses that are not "in commerce" and are, in most examples, outdated do not establish that Drake has current common law rights in the Vintage D alone.

35

#### 4.    <u>Uses Of The Vintage D With A Bulldog Do Not Establish Current Common Law Rights In The Vintage D Alone.</u>

The district court recognized that Drake's use of the Vintage D was "mostly importantly in connection with its live mascot and his letterman jacket." (App. 014, R. Doc. 87, at 14, Add. 014; *see also* App. 019, R. Doc. 87, at 19, Add. 019 ("Perhaps most importantly, the Vintage D is used in conjunction with Drake's live mascot, an English bulldog named Griff.").) Indeed, with the sole exception of the hidden basketball court, Drake's modern uses of the Vintage D in the record are limited to use with a bulldog. (*See* App. 019, R. Doc. 87, at 19, Add. 019; App. 056–057, 067–071, R. Doc. 17, ¶¶ 23, 24, 69-84; App. 193, 195, 198, 206–227, R. Docs. 1-12, 1-14, 1-17, 1-35–1-56.)    This is consistent with Drake's federal registration for Marching Spike—a bulldog wearing the Vintage D—and Drake's lack of a federal registration for the Vintage D alone. (*See* App. 203, R. Doc. 1-32.)    In fact, Dartmouth—not Drake—owns the federal registration for the Vintage D alone. (*See* App. 529, R. Doc. 23-18.)

While the district court half-heartedly cited to the alumni group and broadcaster's sweaters, it is clear that the district court relied heavily—if not exclusively—on Drake's use of the Vintage D with a bulldog to find current common law rights.  After discussing such uses,

36

the district court declared: "These are unquestionably uses of the Vintage D as part of advertising and marketing for the school." (App. 019, R. Doc. 87, at 19, Add. 019.)  It then proceeded to conclude: "Accordingly, Drake has shown use in commerce in a way sufficiently public to identify or distinguish the marked goods in an appropriate segment of the public mind." (*Id.* (internal citations and quotation omitted); *see also* App. 020, R. Doc. 87, at 20, Add. 020 ("This contemporaneous use of the Vintage D undermines DMACC's final [abandonment] argument against protectability of the Vintage D.").)

Based on its analysis, the district court potentially could have found that Drake has current common law rights in the Vintage D in combination with a bulldog—consistent with Drake's federal registration for Marching Spike.  But the district court did not do that—instead, the district court incorrectly determined that Drake has current common law rights in the Vintage D alone. (*See* App. 020, R. Doc. 87, at 20, Add. 020 ("For the reasons discussed above, Drake has established a valid protectable common law trademark in its blue and white Vintage D."). This was reversible legal error.

The Court should reverse the district court's ruling that Drake established current common law rights in the Vintage D alone, or at the very least vacate and remand with instructions as to how to properly analyze Drake's evidence to determine the scope of Drake's common law trademark rights, if any.

### B. The District Court Should Not Have Assessed Likelihood Of Confusion Based On The Vintage D Alone.

Based on its incorrect decision that Drake has current common law trademark rights in the Vintage D alone, the district court applied the likelihood of confusion analysis by comparing the Vintage D alone to the DMACC Rebrand Logo. (*See* App. 021–039, R. Doc. 87, at 21-39, Add. 021–039.) In doing so, the district court disregarded the fact that Drake had only shown current use of the Vintage D with a bulldog and failed to compare that combination to the DMACC Rebrand Logo to assess likelihood of confusion. (*See id.*) This was also reversible legal error. *See, e.g.*, *H&R Block*, 58 F.4th at 947-48 ("When analyzing the similarity of the marks at issue, courts are to examine the impression that each mark *in its entirety* is likely to have on a purchaser exercising the attention usually given by purchasers of such products.") (internal quotations and citation omitted) (emphasis added); *Gen. Mills, Inc. v.*

38

*Kellogg Co.*, 824 F.2d 622, 627 (8th Cir. 1987) ("[I]n analyzing the similarities of sight, sound, and meaning between two marks, a court **must look to the overall impression created by the marks and not merely compare individual features**.") (emphasis added); *see also Sensient Techs. Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 764 (8th Cir. 2010) ("The use of identical, even dominant, words in common does not automatically mean that two marks are similar.") (quotations and citation omitted).

At best, Drake has current common law trademark rights in a bulldog wearing a Vintage D—consistent with its federal registration for Marching Spike. (*See* App. 203, R. Doc. 1-32.) The district court erred by removing the bulldog from Drake's mark and assessing confusion based solely on the Vintage D alone. This is reason enough to reverse the district court's finding that confusion is likely[8] or at least vacate that finding and remand to assess the likelihood of confusion based on any established trademark rights of Drake—considered in their entireties as opposed to an individual feature.

---

[8] It is undisputed that Defendants - Appellants have never used a bulldog in their branding; DMACC's mascot is a bear. (App. 258, R. Doc. 23-3, ¶ 14.)

Because the bases for the district court's preliminary injunction cannot withstand scrutiny, the Court should reverse the district court's preliminary injunction order or at least vacate and remand for a proper analysis based on trademark rights Drake can actually establish.

## IV.    THE PRELIMINARY INJUNCTION IS OVERBROAD.

The Court should reverse or at least vacate the preliminary injunction in its entirety for the reasons set forth above. However, if the Court is not inclined to do so, it must at least modify the scope of the preliminary injunction to conform to Drake's asserted claims and account for DMACC's use of its prominent house mark.

### A.    The District Court Abused Its Discretion By Enjoining Conduct That Is Not Included In Drake's Complaint.

"[A] party moving for a preliminary injunction must necessarily establish a relationship between the injury claimed in the party's motion and the conduct asserted in the complaint...." *Devose v. Herrington*, 42 F.3d 470, 471 (8th Cir. 1994) (per curiam). As one district court aptly explained:

> The relationship requirement is necessary because the purpose of a preliminary injunction is to impose a provisional remedy that will remain in place until the issues can be decided on their merits at trial. This is precisely why one of the *Dataphase* factors explores the probability that the movant will ultimately succeed on the merits. A preliminary

40

> injunction that bears no relationship to the claims and events
> alleged in the complaint would be unworkable, as the issues
> giving rise to that injunction will not be addressed, let alone
> resolved, at trial. Thus, this court has held that the first step
> for a party seeking a preliminary injunction is the
> establishment of a relationship between the injury claimed in
> the party's motion and the conduct asserted in the complaint.

*Zhou v. Int'l Bus. Machs. Corp.*, 167 F. Supp. 3d 1008, 1011 (N.D. Iowa 2016) (internal quotations and citations omitted).

Drake's complaint is expressly limited to the DMACC Rebrand Logo—not any use by DMACC of a standalone "D" before its 2023 rebrand. (*See* App. 051, 083, R. Doc. 17, ¶¶ 1, 145.) The same is true of Drake's motion for a preliminary injunction. (*See* App. 253–254; R. Doc. 18, ¶¶ 1, 5; *see also* Add. 051–057, Transcript, at 4-6, 17, 21, 26, 29.) The district court recognized this when it clarified that its injunction does not encompass the DMACC Bear Paw D that was not included in Drake's complaint or motion. (*See* App. 045–046, R. Doc. 101, at 2-3, Add. 045–046.) However, the district court inexplicably included all other pre-2023 rebrand uses of a standalone block-style D in blue and/or white within the scope of its injunction despite its acknowledgement that Drake's complaint and motion do not contain any allegations or claims concerning such uses. (*See* App. 045–047, R. Doc. 101, at 2-4, Add. 045–047.) This

41

was an abuse of discretion—Drake cannot obtain injunctive relief to prevent conduct that is not identified in its complaint. *See Devose*, 42 F.3d at 471.

The Court should reverse the district court's inclusion of DMACC's pre-2023 rebrand uses of a standalone block-style D in blue and/or white within the scope of the preliminary injunction.[9]

### B.    The District Court Abused Its Discretion By Enjoining DMACC From Using "Block-Style" Ds In Combination With Its House Mark.

As shown below, the DMACC Rebrand Logo prominently displays the "DMACC" house mark—a DMACC registered trademark since 2013. (*See* App. 261, R. Doc. 23-4.)



---

[9] Moreover, the presumption of irreparable harm is rebutted for these pre-2023 rebrand standalone block-style Ds that DMACC had used years prior to its rebrand and Drake filing suit. (*See* App. 642, R. Doc. 97-2, ¶¶ 15, 16.) *See, e.g., Hubbard Feeds, Inc. v. Animal Feed Supplement, Inc.*, 182 F.3d 598, 603 (8th Cir. 1999) (affirming district court's determination that delay in objecting to the use of a mark "belies any claim of irreparable injury pending trial").

Drake's complaint concerns the "D" in the DMACC Rebrand Logo—not the logo in its entirety with the "DMACC" house mark. (*See* App. 083, 087–089, R. Doc. 17, ¶¶ 144-148, 168-173; App. 238–243, R. Docs. 1-82–1-87.) Likewise, Drake's motion for a preliminary injunction asked the district court to "enter a preliminary injunction requiring DMACC to immediately cease use of (1) ***a standalone "D"***—not the DMACC Rebrand Logo with the "DMACC" house mark. (App. 246, R. Doc. 4, at 3.) For the reasons set forth above, this is reason enough to find that the district court abused its discretion by including the DMACC Rebrand Logo (in its entirety) within the scope of the preliminary injunction.

In addition, this Court has explained that "[o]therwise similar marks are not likely to be confused when used in conjunction with the clearly displayed name of the manufacturer." *H&R Block,* 58 F.4th at 948 (quotations and citation omitted); *see also ZW USA, Inc. v. PWD Sys., LLC*, 889 F.3d 441, 446 (8th Cir. 2018) (same); *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 831 (8th Cir. 1999) (explaining that "the prominent display of the house marks conveys perceptible distinctions between the products"). Accordingly, the prominent use of the "DMACC" house mark in the DMACC Rebrand Logo prevents any potential confusion.

43

Here, however, the district court reached the opposite conclusion when it enjoined DMACC's use of the DMACC Rebrand Logo. (*See* App. 043, R. Doc. 87, at 43, Add. 043.) It relied on a Second Circuit case, *Guthrie Healthcare Sys. v. ContextMedia, Inc.*, 826 F.3d 27 (2d Cir. 2016), to do so—not any controlling Eighth Circuit precedent. (*See* App. 027–029, R. Doc. 87, at 27-29, Add. 027–029.) In addition to not being controlling, the facts in *Guthrie* are easily distinguished. The parties in *Guthrie* were using nearly identical versions of the unique, stylized logo shown below. *See* 826 F.3d at 34-35.

 

The Second Circuit found that use of the parties' house marks along with the nearly identical "distinctive logo" would not alleviate the potential for confusion. *See id.* at 39. In this case, both parties use the letter "D"— the first letter of their respective school names—just like essentially every other college, university, or school that begins with "D." (*See, e.g.*, App. 393–397, 400–402, 530, 532–541, 543, 545, 547–548; R. Docs. 23-11,

44

23-12, 23-18, 23-19, 23-22, 23-23, 23-24.)  The letter "D" is not a unique, stylized logo like the one at issue in *Guthrie*.

The district court also cited two district court cases, but neither support its conclusion.  (*See* App. 027–029, R. Doc. 87, at 27-29, Add. 027–029.)  In *Iowa Paint Mfg. Co. v. Hirshfield's Paint Mfg., Inc.*, the district court merely stated, "even if a consumer attaches importance to the defendant's house mark, the consumer may believe the plaintiff had licensed, approved, or otherwise authorized this use of the plaintiff's trademark"—relying only on two Second Circuit cases.  296 F. Supp. 2d 983, 994 (S.D. Iowa 2003).  Ultimately, however, the district court in *Iowa Paint* found "virtually identical" trademarks "not similar enough to be confusing," in part because "the manufacturer's name is prominently displayed."  *Id.* at 996.  Likewise, in *PSK, LLC v. Hicklin*, the district court discounted use of a house mark because it was "uniformly drowned out by the presence of and emphasis on the term 'overhead.'"  757 F. Supp. 2d 836, 866 (N.D. Iowa 2010).  That is not the case with the DMACC Rebrand Logo, which prominently displays the "DMACC" house mark.[10]

---

[10] Likewise, Drake's Brand Guide requires the "Drake University" trademark to be "displayed nearby" the Academic D—the only standalone D authorized to be used on its own.  (*See* App. 370, R. Doc. 23-7, at 15.)

45

The district court abused its discretion when it disregarded the "DMACC" in the DMACC Rebrand Logo and enjoined DMACC's use of the same. The Court should reverse the district court's inclusion of the DMACC Rebrand Logo (in its entirety) within the scope of the preliminary injunction.

Accordingly, if the Court is not inclined to reverse or vacate the preliminary injunction in its entirety, it must at least modify the scope of the preliminary injunction to limit it to only the "D" in the DMACC Rebrand Logo that DMACC began using in the fall of 2023.

## CONCLUSION

For the above-stated reasons, Defendants - Appellants respectfully request this Court reverse and/or vacate the district court's orders granting and clarifying the scope of the preliminary injunction.

Date:  January 23, 2025

s/*R. Scott Johnson*

R. Scott Johnson (#AT0004007)
Cara S. Donels (#AT0014198)
Erin M. Boggess (#AT0015950)
FREDRIKSON & BYRON, P.A.
111 East Grand Avenue, Suite 301
Des Moines, IA  50309-1977
Telephone:  (515) 242-8900
E-mail:  RSJohnson@fredlaw.com
          CDonels@fredlaw.com
          EBoggess@fredlaw.com

Laura L. Myers (Minn. #0387116)
FREDRIKSON & BYRON, P.A.
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
Telephone:  (612) 492-7000
E-mail:   LMyers@fredlaw.com

*Attorneys for Defendants - Appellants*

47

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g)(1), the undersigned counsel of record hereby certifies that the foregoing Defendants – Appellants' Opening Brief complies with the following requirements:

(i)  The font used in this brief is Century 14-point, which complies with the requirement of Federal Rule of Appellate Procedure 32(a)(5)(A) to use a proportional font with serifs and be at least 14-point or larger.

(ii)  The number of words in this brief is 8,976, which complies with Federal Rule of Appellate Procedure 32(a)(7) excluding those portions of the brief that may be excluded under Federal Rule of Appellate Procedure 32(f).  The word total is based on the word processing software used to prepare this brief, which is Microsoft® Word for Microsoft 365 MSO.

The undersigned counsel of record further certifies that the foregoing Defendants – Appellants' Opening Brief complies with Eighth Circuit Local Rule 28A(h)(2), as it has been scanned for viruses and it is virus-free.

48

Date:  January 23, 2025          s/*R. Scott Johnson*

R. Scott Johnson (#AT0004007)
Cara S. Donels (#AT0014198)
Erin M. Boggess (#AT0015950)
FREDRIKSON & BYRON, P.A.
111 East Grand Avenue, Suite 301
Des Moines, IA  50309-1977
Telephone:  (515) 242-8900
E-mail:  RSJohnson@fredlaw.com
          CDonels@fredlaw.com
          EBoggess@fredlaw.com

Laura L. Myers (Minn. #0387116)
FREDRIKSON & BYRON, P.A.
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
Telephone:  (612) 492-7000
E-mail:   LMyers@fredlaw.com

*Attorneys for Defendants - Appellants*

49

## CERTIFICATE OF SERVICE

I hereby certify that on January 23, 2025, I electronically the foregoing Defendants - Appellants' Opening Brief with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

*s/Cassie D. Buresh*
Cassie D. Buresh

50