IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA CENTRAL DIVISION

| | |
|---|---|
| DRAKE UNIVERSITY,<br>    Plaintiff,<br><br>vs.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE,<br>    Defendants. | No. 4:24-cv-00227<br><br>**MOTION TO EXTEND EXPERT WITNESS DEADLINES AND BRIEF IN SUPPORT THEREOF** |
| DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE,<br>    Counterclaim Plaintiffs,<br><br>vs.<br><br>DRAKE UNIVERSITY,<br>    Counterclaim Defendant. | |

Plaintiff and Counterclaim Defendant, Drake University ("Drake") hereby moves the Court for a 90-day extension to the expert witness deadlines which presently fall on June 9, August 8, and October 9, 2025. ECF No. 80. In support, Drake states as follows:

**I.   BACKGROUND**

    **A.  Settlement Efforts**

On February 24, 2025, the Court *sua sponte* ordered a conference to discuss the scheduling of a settlement conference in this case to resolve all controversies between the parties. ECF No. 141. This first conference took place on March 4, 2025. ECF No. 144. During the conference, both parties indicated that they were open to settlement. As a result, the Court ordered a second conference, for May 25, 2025. ECF No. 145.

The second conference took place on March 25, 2025. ECF No. 154. Again, counsel for both sides indicated that the parties were open to discussing settlement. As a result, on April 1, 2025, the Court scheduled a settlement conference for May 14, 2025. ECF No. 155. Between April 1 and April 25, the parties were ordered to exchange settlement proposals and submit confidential settlement statements to the Court in advance of the May 14 conference. ECF No. 156. The parties did so. The conference took place on May 14 as planned. It lasted six and a half hours, and settlement was not reached. At the time of the May 14 conference, the first deadline to designate expert witnesses and disclose their written reports was less than a month away. ECF No. 80. This first deadline (June 9, 2025) is not just Drake's deadline as the plaintiff, but rather it is for both parties to the extent they have the burden of proof, which includes DMACC's counterclaims. ECF No. 80.

    B.   **Trademark Experts**

In trademark infringement cases, expert testimony often comes in the form of surveys, which are conducted and analyzed by experts for the purpose of shedding light on how the relevant consumer base perceives the asserted trademark(s). Common surveys are those which evaluate secondary meaning (i.e., the ability of a mark to indicate a single source) and likelihood of confusion (a.k.a. actual confusion). *See* McCarthy on Trademarks and Unfair Competition §§ 15:52, 23:17 (5th ed. 2025).

Trademark surveys are expensive and cannot be performed quickly. The typical trademark survey is conducted over a 6–8 week period, and costs upwards of $50,000.00 each. To ensure reliability, surveys are limited to discrete issues; if a party wishes to gather survey evidence on likelihood of confusion and secondary meaning, for example, two surveys are required. If a party wishes to probe secondary meaning of additional marks (e.g., its colors), yet additional surveys are required.

## II. LEGAL STANDARD

A scheduling order may be modified for good cause and with the Court's consent. Fed. R. Civ. P. 16(b)(4). The primary measure of Rule 16's "good cause" standard is the moving party's diligence in attempting to meet the case management order's requirements. *Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001) (quoting *Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 609 (9th Cir. 1992). "[T]he existence or degree of prejudice to the party opposing the modification" and other factors may also affect the decision. *Id.* (quotations omitted).

## III. ARGUMENT

### A. Good Cause Exists to Extend the Expert Deadlines

Approximately three months elapsed between the Court's first order to schedule a settlement conference and the conference on May 14. During this time, both parties assured the Court at each conference that they were prepared to engage in good faith settlement discussions. In light of this, Drake was understandably hesitant to commit significant resources on surveys that may not be needed. Yet, by the time the conference ended—without any material progress toward settlement—the first expert witness deadline was less than four weeks away. Even if Drake had commissioned surveys *that day*, the results and attendant expert reports would not have been available by the deadline.

The state of discovery also justifies the requested extension. Drake served its first discovery requests on December 5, 2025. While DMACC provided initial responses on January 6, 2025 (which included production of 644 pages of documents) the bulk of its document production did not occur until March 21 and April 3, 2025, when it produced a combined 73,000 pages. These volumes have not only taken significant time to review, but have given rise to further issues which will need to be probed through supplemental written discovery and depositions. Information uncovered thereby will likely weigh on how or to what extent expert testimony and

surveys will need to be relied on. Moreover, nearly all of DMACC's production was marked confidential or attorney's eyes only, which have further hampered Drake's ability to make use of materials obtained through discovery.

Good cause exists to grant the present motion. Drake did not initiate the series of events which led to the unsuccessful settlement conference. Drake also did not fail to exercise diligence in complying with the scheduling order; reviewing 73,000 pages takes considerable time. Additionally, no reasonable party would order multiple five-figure surveys when all signs pointed to resolution in the near future. Drake has also not sought material extension of any other deadlines in this case. *See Bradford*, 249 F.3d, at 809 (moving party's diligence in attempting to meet scheduling order is "primary measure" of good cause under Rule 16(b)).

### B. DMACC Will Not Be Unfairly Prejudiced by the Requested Extension

As noted *supra*, DMACC has an equally compelling interest in obtaining expert testimony to support its counterclaims, and assuming it had a good-faith intent to resolve this dispute at the May 14 conference, it had the same incentives not to invest significant sums prior to it. DMACC is also presently seeking to stay the entire case pending resolution of the parties' interlocutory appeals relating to the preliminary injunction which was entered approximately seven months ago. If DMACC wishes to delay resolution of this matter indefinitely, there is no principled reason why a 90-day extension would be unfairly prejudicial to it.

### C. Drake Does Not Believe the Requested Extension Will Affect the Scheduled Trial Date

Trial in this matter is set for June 8, 2026. If granted, the requested extension would place the expert deadlines at September 9, 2025 (expert witness deadline for party with burden of proof), November 8, 2025 (expert witness deadline for party without burden of proof), and January 9,

2026 (rebuttal expert deadline for party with burden of proof).  Because five months would still remain before trial, Drake does not believe the requested extension will affect the trial date.

### D. Local Rule 7(k) Certification

Counsel for the parties corresponded via email regarding this motion on May 16, May 19, May 21, May 29, and May 30, 2025.  Counsel for the parties also met and conferred concerning the motion via telephone on June 3, 2025.  Defendants do not consent to the present motion.

### IV. CONCLUSION

For the reasons herein, Drake respectfully requests that a 90-extention to the expert witness deadlines be entered to account for the approximately three-month period during which settlement was explored in this case.  Any delay in meeting the expert witness deadlines (by either party) is reasonable in light of (1) the substance and duration of the Court-ordered settlement discussions, (2) assurances from Defendants that settlement was on the table, and (3) the substantial cost and time required to obtain relevant survey evidence and attendant expert reports.  DMACC will not be unfairly prejudiced because (1) it will also benefit from the extension of the June 9 deadline as the party with the burden of proof on its counterclaims, and (2) it is presently seeking to stay the entire case indefinitely.

Accordingly, good cause exists to grant the relief requested herein and Drake respectfully requests the Court grant the present motion in full.

Respectfully submitted,

Dated: June 6, 2025  **ZARLEYCONLEY PLC**

By: /s/John D. Gilbertson
John D. Gilbertson, AT0014515
Joshua J. Conley, AT0011828
580 Market Street, Suite 101
West Des Moines, IA 50266
Telephone:  (515) 558-0200
Facsimile:   (515) 558-7790
jgilbertson@zarleyconley.com
jconley@zarleyconley.com
**ATTORNEYS FOR PLAINTIFF & COUNTERCLAIM DEFENDANT**