IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA CENTRAL DIVISION

| | |
|---|---|
| DRAKE UNIVERSITY,<br>        Plaintiff,<br><br>vs.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE,<br>        Defendants. | No. 4:24-cv-00227<br><br>**MOTION FOR RELIEF FROM ORDER PURSUANT TO FED. R. CIV. P. 60(b)** |
| DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE,<br>        Counterclaim Plaintiffs,<br><br>vs.<br><br>DRAKE UNIVERSITY,<br>        Counterclaim Defendant. | |

**TABLE OF CONTENTS**

I.   Introduction ............................................................................................................. 2

II.  Legal Standard ........................................................................................................ 2

III. Argument ................................................................................................................ 3

   A.   The Pending Appeals Will Not Simplify Any Substantive Issue Before This Court ...... 3

      1.   DMACC's Appeal ............................................................................................ 3

      2.   Drake's Cross-Appeal ...................................................................................... 5

   B.   A Stay Will Unfairly Benefit DMACC and Unfairly Prejudice Drake .......................... 6

      1.   DMACC's Basis and Timing of Its Motion to Stay ................................................ 6

      2.   A Stay Materially Prejudices Drake and Allows DMACC a Tactical Advantage ... 7

      3.   "Exceptional Circumstances" Are Not Required, Yet May Arise ......................... 8

      4.   DMACC's Personnel Changes Will Likely Impact Drake's Ability to Conduct Discovery if the Case Remains Stayed ................................................................ 9

   C.   The Authorities Cited by the Court and DMACC Disfavor a Stay .............................. 10

   D.   Local Rule 7(k) Certification ..................................................................................... 12

IV.  Conclusion ............................................................................................................ 12

## I. INTRODUCTION

On June 11, 2025, the Court granted Defendants' Motion to Stay Proceedings Pending Appellate Decision (the "Order"). ECF No. 169. Although the Order acknowledges Drake opposes the motion to stay, the Order was granted without Drake being afforded the opportunity to resist. *Id*. at 1, 2.

The Order states, "From the Court's perspective, the resolution of matters appealed to the Eighth Circuit will have a significant impact on the claims and defenses at issue in this case." *Id*. at 2. The Order does not articulate how the appeal will have such an impact. Drake is unclear how the outcome of the appeal can affect the District Court proceedings in a meaningful way given the issues on appeal are directed at preliminary and nonbinding findings. Likewise, the conclusions that Drake will suffer minimal prejudice because it obtained a preliminary injunction and that the extension of expert deadlines would result in the trial date being reset warrants further delineation. *Id*. at 2–3.

Pursuant to Fed. R. Civ. P. 60(b) and for the reasons set forth herein, Drake respectfully requests that the Court withdraw the Order, or in the alternative, amend the Order to articulate (1) how the pending appeals will resolve or clarify any substantive issue before this Court, and (2) how a stay will not unfairly burden Drake under the circumstances.

## II. LEGAL STANDARD

This court has broad discretion to stay proceedings as an incident to its power to control its own docket. *Cottrell v. Duke*, 737 F.3d 1238, 1248 (8th Cir. 2013) (quotations omitted). The exercise of this authority is not without limit and "calls for the exercise of judgment, which must weigh competing interests and maintain an even balance." *See Sierra Club v. U.S. Army Corp. of Eng'rs¸* 446 F.3d 808, 816 (8th Cir. 2006); *Landis v. North Am. Co.*, 299 U.S. 248, 254–55 (1936).

On motion and just terms, the court may relieve a party from an order for any reason that justifies relief. Fed. R. Civ. P. 60(b)(6). Rule 60(b) is an appropriate vehicle to seek redress of a nonfinal order. *Broadway v. Norris*, 193 F.3d 987, 989 (8th Cir. 1999). While this District requires a movant to show "exceptional circumstances" for relief under Rule 60(b)(b), a necessary precondition for this high bar is that the litigant had a "full and fair opportunity" to litigate the issue. *Quality Office Furnishings, Inc. v. Allsteel, Inc.*, No. 3:17-CV-00041-JEG, 2018 WL 7077066, at *2 (S.D. Iowa Dec. 18, 2018) (quoting *CRST Expedited, Inc. v. Swift Transportation Co. of Arizona, LLC*, No. 17-CV-25-CJW, 2018 WL 3966961, at *8 (N.D. Iowa, Aug. 17, 2018); *see also Atkinson v. Prudential Property Co., Inc.*, 43 F.3d 367, 373 (8th Cir. 1994) (exceptional circumstances are those that "bar adequate redress").

Here, Drake did not have the opportunity to resist Defendant's Motion to Stay and lacks other adequate redress for the prejudice that may occur as a result of the stay, namely, the irreparable harm that could occur if the timeframe between (1) the possible lifting of a preliminary injunction, and (2) obtaining a permanent injunction is extended as a result of the stay.

## III.   ARGUMENT

### A.   The Pending Appeals Will Not Simplify Any Substantive Issue Before This Court

#### 1.   DMACC's Appeal

DMACC misleads the Court when it states that the appeal will simplify or eliminate the proceedings before this Court. ECF No. 167-1, at 2. DMACC's pending appeal challenges this Court's preliminary injunction on two ancillary and non-dispositive grounds:

1. Whether the Court abused its discretion in finding Drake had common law rights in the Vintage D when "Drake did not show current, continuous, and non-sporadic use…"

2. Whether the Court abused its discretion when it enjoined DMACC from using Ds not included in Drake's complaint and Ds accompanied by DMACC's house mark.

ECF No. 167-3, at 12. These are narrow issues, largely focused only on the sufficiency of the evidence in the preliminary injunction record.

The bulk of DMACC's argument against this Court's findings on the first issue is that the evidence Drake submitted showing use of its Vintage D is inadequate to establish common law rights therein, and thus the District Court could not have relied on them to find that Drake uses the mark during the relevant time period.[1] *Id.* at 29–38. This does not weigh on any substantive issue in the district court; if the Eighth Circuit reverses or vacates the injunction on this basis, the Court of Appeals will have simply provided its evaluation of the preliminary injunction record. The evidentiary record at the preliminary injunction stage is inherently underdeveloped and therefore the findings of fact and conclusions of law are not binding. *See Univ. of Texas v. Camenisch*, 451 U.S. 390, 395–96 (1981) ("[W]here a federal district court has granted a preliminary injunction, the parties generally will have had the benefit neither of a full opportunity to present their cases nor of a final judicial decision based on the actual merits of the controversy.").

The evidence Drake presented at that early stage of the case is not representative of the evidentiary record available to Drake now. Since DMACC was enjoined, the parties have exchanged thousands of documents. Furthermore, Drake has had the opportunity to review its own records that date back over a century and could not have been reviewed in full before seeking preliminary relief. Accordingly, an appellate decision on the sufficiency of Drake's evidence early on in this litigation will have no impact on a trial or dispositive motions before this Court.

If, as DMACC suggests, the appeal is dispositive of Drake's trademark rights, that means an appellate victory for Drake will mean its trademark rights have been established, thereby

---

[1] With respect to DMACC's contentions that some of Drake's photographs of use are undated, dates for these photographs exist; Drake offered to provide them at the preliminary injunction hearing. Exhibit 1 (Transcript of Preliminary Injunction Hearing, at 76:1–10).

precluding DMACC from challenging them at trial or in dispositive motions. Drake invites DMACC to confirm this is its position.

For DMACC's second issue on appeal, its outcome is not dispositive either. Should the Court of Appeals find a deficiency based on Drake's Complaint, Drake need only amend its Complaint to include any marks that are deemed omitted. In fact, Drake has already requested DMACC's consent to amend its Complaint, which Drake intends to do once the stay is lifted to expressly identify the Bear Paw D therein.[2] Furthermore, DMACC's position on the inclusion of its house mark is equally of no lasting consequence because, again, the conclusions of law at the preliminary injunction stage "are not binding at trial on the merits." *Univ. of Texas*, 451 U.S. at 395.

### 2. Drake's Cross-Appeal

Drake's cross-appeal is similarly limited in scope, namely, whether the Court should have included DMACC's Bear Paw D within the scope of the preliminary injunction. ECF No. 167-4, at 2. An outcome in either party's favor will have no impact on trial or dispositive motions as discussed *supra*. *Id.*

In view of the circumstances, the outcome of the pending appeals will not resolve any substantive issue in this case. Thus, staying these proceedings cannot "secure the just, speedy, and inexpensive determination," as the matters before the Eighth Circuit are exclusive to the preliminary injunction order and the preliminary record on which it relies. Fed. R. Civ. P. 1.

---

[2] Drake's willingness to amend its Complaint is not and should not be construed as an admission that DMACC's Bear Paw "D" is not encompassed within "Infringing Marks" as defined in the Complaint and from which Drake seeks relief.

### B.  A Stay Will Unfairly Benefit DMACC and Unfairly Prejudice Drake

#### 1.    DMACC's Basis and Timing of Its Motion to Stay

DMACC argues that it has become "increasingly clear that there is a fundamental disagreement over the existence and scope of Drake's alleged common law rights in the Vintage D." ECF No. 167-1, at 4.  Drake agrees that the parties are at odds over the existence and scope of Drake's trademark rights—but this has been the case since at least May 8, 2024, when DMACC provided a response to Drake's cease & desist letter challenging them.  Exhibit 2, at 1–3.  Hence, DMACC's primary argument is and has been that Drake lacks common law rights since this dispute arose.  ECF No. 23-2, at 13–26.

The parties' legal positions have not changed since this case was initiated, and certainly not in the six months between DMACC seeking appeal and requesting a stay of these proceedings. What has changed is the evidence Drake has discovered that demonstrate DMACC's intent and knowledge that DMACC's rebrand would infringe Drake's trademark rights.  The contention that DMACC's basis for a stay *now* is a genuine realization of the differences in the parties' legal positions is objectively without merit.

Between March 21 and April 3, 2025, DMACC produced around 73,000 pages of documents.  Reviewing this volume of documents took time.  In so doing, counsel for Drake identified a number of compelling documents on the issue of DMACC's intent to trade on Drake's goodwill.  To illustrate this, Drake is contemporaneously filing an unopposed motion to file representative documents under seal given their confidentiality designations and DMACC's refusal to remove them.[3]  *See, e.g.,* Exhibits 3–6 (sealed).

---

[3] DMACC has abused its ability to restrict disclosure of documents under the protective order entered in this case, labeling approximately 96% of its 73,000 pages as confidential or attorney's eyes only, primarily on the basis that they consist of "internal communications."  Drake has requested that DMACC remove its confidentiality designations on several occasions, but DMACC refuses to do so to any meaningful degree.

Based on letter correspondence, DMACC's counsel appeared to be unaware of these documents until May 21, 2025, when Drake's counsel wrote to DMACC's counsel seeking the removal of confidentiality restrictions. DMACC's motion to stay came just two weeks later. Given DMACC's election *not* to seek a stay for six months following entry of the Preliminary Injunction, the only plausible inference is that DMACC only moved to stay once it became aware of damaging evidence. A stay unfairly deprives Drake of its ability to secure a just and speedy determination of its rights as it is now foreclosed from investigating and utilizing this discovery for an indeterminate amount of time.

### 2. A Stay Materially Prejudices Drake and Allows DMACC a Tactical Advantage

DMACC touts the conservation of the parties' resources in its motion for a stay. ECF No. 167-1, at 6. If DMACC was truly concerned about party resources, however, it would have sought a stay of proceedings many months ago when it filed its Notice of Appeal. ECF No. 90. Instead, it (1) expended hundreds of thousands of dollars to comply with the preliminary injunction without attempting to stay its enforcement pending appeal,[4] and (2) forced Drake to incur significant costs to review DMACC's document trove, the vast majority of which were duplicative, irrelevant, and unnecessarily restricted.

Drake is also prejudiced on an evidentiary basis. The discovery referred to *supra* renders it highly likely Drake will be able to establish that the "intent" factor under the applicable legal test will favor Drake at the summary judgment stage or trial. *SquirtCo. v. Seven-Up Co.*, 628 F.2d 1086, 1091 (8th Cir. 1980) (setting forth the applicable likelihood of confusion factors). This is significant in its own right, because Courts routinely find that an intent to confuse or mislead supports a likelihood of confusion finding because it is assumed the defendant can carry out its

---

[4] ECF No. 111-1, at 4 (DMACC estimating its total compliance costs at roughly $470,000).

intentions successfully. *See, e.g., Playboy Enters., Inc. v. Netscape Commc'ns Corp.*, 354 F.3d 1020, 1028 (9th Cir. 2004); *Tisch Hotels, Inc. v. Americana Inn, Inc.*, 350 F.2d 609, 613 (7th Cir. 1965).

Discovery has also revealed the brazenness with which DMACC carried out its intention to appropriate Drake's likeness and strongly indicates that DMACC's conduct will be deemed "exceptional" pursuant to the Lanham Act, entitling Drake to recoupment of its attorney fees. 15 U.S.C. § 1117(a). Drake reasonably wishes to seek these remedies and resolve this dispute at the earliest possible opportunity. Given the outcome of the appeal will have no effect on the merits, a stay simply postpones the proceedings, and thus virtually ensures delay and wasted judicial resources.

Drake is further prejudiced with respect to the possible loss of its preliminary injunction bond. As set forth *supra*, a victory by DMACC on appeal will not resolve the question of the scope of Drake's trademark rights with any finality. If the preliminary injunction is reversed, however, the parties will spend considerable time and resources (both their own and the Court's) to wrangle over what portion of the preliminary injunction bond DMACC would be entitled to. Based on the parties' briefing and arguments on DMACC's motion to increase the preliminary injunction bond, this fight will be vigorous. ECF Nos. 111, 117, 126.

### 3. "Exceptional Circumstances" Are Not Required, Yet May Arise

While the "exceptional circumstances" test does not apply given that Drake was not afforded an opportunity to resist DMACC's motion to stay,[5] exceptional circumstances will arise if DMACC prevails on appeal. At present, Drake is in possession of compelling evidence that DMACC willfully infringed Drake's trademarks. *See* Exhibits 3–6 (sealed). Drake should be

---

[5] *Quality Office Furnishings, Inc.* 2018 WL 7077066, at *2 (high bar for relief under Rule 60(b) assumes litigant had "full and fair opportunity" to litigate the issue).

entitled to act on this evidence in furtherance of its case. *See* Fed. R. Civ. P. 1. It is well within the realm of possibility that the Eight Circuit does not render an opinion on the pending appeal for another year. This is more than sufficient time for Drake, absent a stay, to seek and obtain dispositive rulings which, if favorable, would entitle Drake to a permanent injunction and moot the appeal altogether.

If, on the other hand, DMACC prevails on appeal, the preliminary injunction will be lifted and DMACC will be permitted to resume its infringing conduct that, if Drake ultimately prevails at trial, will have caused irreparable harm. *See Moon Seed LLC v. Weidner*, No. 3:20-cv-00104-GE-SBJ, 2021 WL 2627455, at *7 (S.D. Iowa Apr. 22, 2021) (defendant's unauthorized use of plaintiff's trademark causes irreparable harm). Irreparable harm is an extraordinary circumstance which justifies extraordinary relief. *See, e.g., Ferry-Morse Seed Co. v. Food Corn, Inc.*, 729 F.2d 589, 593 (8th Cir. 1984). Thus, by sidelining Drake until after the appellate decision, the stay puts Drake at risk of irreparable harm (or at least prolonging the duration of such harm) should the appellate decision favor DMACC. If this occurs, any benefit of the preliminary injunction will be diminished or entirely lost, as the case will restart, with new deadlines, and without DMACC being subject to injunctive relief. Given the strength of Drake's case and the likelihood it could obtain permanent relief in the time it may take the Eighth Circuit to rule on the Court's preliminary relief, this risk is highly prejudicial and unjustifiable. Thus, even if exceptional circumstances were required to be shown, they are present.

### 4. DMACC's Personnel Changes Will Likely Impact Drake's Ability to Conduct Discovery if the Case Remains Stayed

DMACC has widely publicized that it is seeking a replacement for its president, Rob Denson, who is retiring at the end of this year.[6] Mr. Denson presided over the college during the

---

[6] https://www.dmacc.edu/news/2025/20250129.html

development and implementation of the infringing rebrand, and is thus a critical witness. Retiring from his present position and severing his official connection with DMACC may substantially hinder Drake's ability to depose him. The same is believed to be true for at least one other high-ranking individual at DMACC whom, through discovery, Drake has learned is contemplating retirement as well.

Drake also intends to request additional production and interrogatory responses. During the stay, there is an inherently high probability that documentation, such as emails, may be lost inadvertently, through retention policies or otherwise. This, of course, will lead to issues of spoliation, which will require additional resources from the parties and the Court to address. Likewise, there is the well-recognized issue of fading memories.

DMACC is correct that disposition of appeals takes many months. Oral argument in this case has not yet been scheduled, and may not take place until 2026 with a decision that may not be received for many months thereafter. Drake will almost certainly be prejudiced if it must wait to conduct depositions and additional discovery until next year.[7]

### C. The Authorities Cited by the Court and DMACC Disfavor a Stay

Drake does not dispute that the Court has broad authority to stay proceedings, where appropriate, to control its docket. However, no case cited by DMACC or in the Order to justify a stay contains factually or procedurally similar circumstances as exist here, and to the extent they apply, they weigh in favor of allowing this case to continue.

For example, *Landis v. North American Co.* involved the federal government's attempted enforcement of the Public Utility Holding Company Act of 1935 (the "Act") which required public utility systems to register with the Securities and Exchange Commission. *Landis*, 299 U.S. at 249–

---

[7] Although Drake has sought an extension of time to designate experts, the 90-day extension of time including a resetting of the trial date (if needed) will not halt discovery or the ability to seek dispositive motions.

250. The government sued a number of defendants in the Southern District of New York, and other public utility plaintiffs had filed suit in other districts to enjoin enforcement of the Act. *Id*. at 250, 252. Citing judicial economy concerns, the government sought and obtained a stay of all proceedings except for one test case. *Id*. at 251. The Supreme Court vacated the stay, in part on the basis that a fulsome analysis of competing interests must be undertaken and expressed that a party seeking a stay "must make out a clear case of hardship or inequality in being required to go forward, if there is even a fair possibility that the stay for which he prays will work damage to someone else."). *Id.* at 254–55.

Here, DMACC's basis for a stay is at odds with the facts and procedural posture of this case, namely, that the pending appeals will have no impact on any claim or defense going forward. Moreover, Drake was not afforded an opportunity to articulate the prejudice it would face were a stay implemented. In short, *Landis* describes a factually and procedurally distinct set of circumstances to those found here. To the extent it applies at all, it favors denial of a stay because (1) Drake has demonstrated the stay will work damage upon it, and (2) DMACC has failed to provide a clear case for the hardship or inequality it would suffer should the case continue.

The remaining two cases cited in the Order are similarly inapplicable. *Cottrell v. Duke* only involved whether the district court's decision to stay and administratively terminate a federal case in favor of a similar state-court proceeding was a final (and therefore appealable) judgment. 737 F.3d 1238, 1244 (8th Cir. 2013). And the question in *Sierra Club* involved a plaintiff's standing to appeal an agency decision. *Sierra Club*, 446 F.3d at 811.

DMACC's cited authorities shed no more light on the appropriateness of a stay in the present circumstances. The *Dordt College v. Burwell* decision involved the defendant's **unopposed** motion to stay which was filed shortly after the district court granted a preliminary injunction in favor of the plaintiff. *Dordt College v. Burwell*, No. C 13-4100-MWB, 2014 WL

5454649, at *1 (N.D. Iowa 2014). Drake opposes DMACC's motion for a stay, and DMACC waited over six months to file it.

The unpublished decisions cited at footnote 2 of DMACC's brief are no more beneficial to DMACC. ECF No. 167-1, at 5 n. 2. The first, *University of Notre Dame v. Sebelius*¸ involved a **joint** motion to stay following a **denial** of a preliminary injunction. Exhibit 7. The second, *Diocese of Cheyenne v. U.S. Dep't of HHS Sec'y*, involved an **unopposed** motion to stay following a **denial** of a motion for injunction pending appeal. Exhibit 8.

### D. Local Rule 7(k) Certification

Counsel for the parties met and conferred concerning the present motion via email and telephone on June 26, 2025. Defendants do not consent to the present motion. Counsel discussed the legal standard for a Rule 60(b) Motion and the relevant case law which is referenced herein. The parties were unable to reach agreement on the application of these authorities to the present set of circumstances. DMACC also raised concerns that Local Rule 7(e) and Fed. R. Civ. P. 72 govern the applicable timeframe within which Drake must raise the issues herein. While Drake acknowledges the existence of the time periods set forth in these rules, they do not foreclose the availability of Rule 60(b)(6), whose only time limitation is that it must be invoked "within a reasonable time" after the subject order is issued. Fed. R. 60(c)(1). The Court's Order granting DMACC's motion to stay was issued just over two weeks ago, and except for this motion, no activity in this case has taken place and no deadlines are currently in place. The present motion is thus filed within a reasonable time.

## IV. CONCLUSION

DMACC's Motion to Stay was granted upon an incomplete and mischaracterized record. The pending appeals cannot impact any substantive issue in this case, and Drake will be unfairly prejudiced by being precluded from taking steps to dispose of this case in light of exceptionally

compelling evidence it has obtained through discovery. The present stay will likely last six months if not substantially longer, during which time Drake is precluded from utilizing the significant evidence it has uncovered thus far to prosecute its case, either through additional discovery or dispositive motions. If Drake were allowed to proceed, the case could be over or much more well-developed by the time the Eighth Circuit rules on the pending appeals. This should be reason enough to grant Drake relief from the Order. In the alternative, Drake respectfully requests the Court amend the Order to articulate (1) how the pending appeals will resolve or clarify any substantive issue before this Court, and (2) how a stay will not unfairly burden Drake under the circumstances.

Respectfully submitted,

Dated: June 27, 2025   **ZARLEYCONLEY PLC**

By: /s/John D. Gilbertson
John D. Gilbertson, AT0014515
Joshua J. Conley, AT0011828
580 Market Street, Suite 101
West Des Moines, IA 50266
Telephone: (515) 558-0200
Facsimile: (515) 558-7790
jgilbertson@zarleyconley.com
jconley@zarleyconley.com
**ATTORNEYS FOR PLAINTIFF &
COUNTERCLAIM DEFENDANT**