# Exhibit 2



**Fredrikson & Byron, P.A.**
Attorneys and Advisors

60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-4400
Main: 612.492.7000
fredlaw.com

May 8, 2024

**VIA EMAIL ONLY**

Joshua J. Conley, Esq.
Zarley Conley
580 Market Street, Suite 101
West Des Moines, IA 50266
Email: jconley@zarleyconley.com

Re:   Drake University / Des Moines Area Community College ("DMACC")

Dear Mr. Conley:

I received your May 2, 2024, letter. As you know, I represent Des Moines Area Community College, widely known as DMACC (you can't say DMACC without the "D"). DMACC and Drake have enjoyed a mutually beneficial relationship for many years with DMACC often serving as a valuable pipeline for many past, current, and future Drake students. Instead of competing unfairly as your letter alleges, the parties have, to date, worked well together. Despite your letter and its many failings, DMACC hopes this cooperative relationship can continue and that both parties can put the focus where it should be – their students.

Should you choose to go down the litigation path, please understand that your actions will likely harm Drake's reputation and will subject your client to potential monetary exposure under the Lanham Act. We believe the facts will show even your client recognizes that Drake's actual "D" brand is a very stylized "D" that no one would ever confuse with DMACC's logo launched last October. As shown below, DMACC has been fairly competing and not infringing on any Drake trademark for the past seven months and Drake's purported claims to the contrary lack merit.

## There is No Trademark Infringement or Unfair Competition

Your letter makes broad accusations but fails to cite any supporting case law. We assume you are well aware that Drake's threatened claims are governed by a fact intensive, multi-factor test under controlling Eighth Circuit law. To succeed under either of the federal or state theories alleged in your letter, Drake must establish both that it owns valid, protectable trademarks, and that there is infringement because a likelihood of confusion exists with DMACC's logo (consisting of a distinct "D" design always accompanied by the "DMACC" name).

### A.  Drake's Ownership of Valid, Protectable Trademarks

Initially, your letter seems to be based on an improper assumption – that Drake somehow owns the letter "D" generally. Drake does not. Indeed, Drake does not use the letter "D" as a trademark

Joshua J. Conley, Esq.  
May 8, 2024  
Page 2



except in a very specific, stylized way.  The block looking "D" you seem to base many of your assertions upon relies on Drake's mascot, a bulldog, as the primary brand.  Notably, your letter fails to provide a single example of Drake using the block "D" alone without its bulldog.

Yet, your letter identifies only this one trademark registration owned by Drake—U.S. Registration No. 1,567,283 for the bulldog image shown below:



As anyone can see, this mark consists of far more than the "D" on the bulldog's chest.  It is well established that trademarks are considered in their entirety and are not dissected into their component parts, even if you are trying to manufacture infringement where none exists.  *See, e.g.*, *Duluth News-Tribune, a Div. of Nw. Publ'n, Inc. v. Mesabi Pub. Co.*, 84 F.3d 1093, 1097 (8th Cir. 1996) ("Rather than consider the similarities between the component parts of the marks, we must evaluate the impression that each mark in its entirety is likely to have on a purchaser exercising the attention usually given by purchasers of such products.").  We urge you not to rely on this mark in the future unless you intend to turn the bulldog into a bully.

Your letter also alleges that Drake "has used the 'D' for over a century," but fails to identify any trademark registrations for the same.  This is likely because Drake's only actual registration for the letter "D" alone is for a completely different stylized "D" than the "D" used in the DMACC logo.  *See* U.S. Registration No. 3,498,202 for the "D" shown below.



Surely, you do not contend DMACC infringes this heavily stylized "D" design.

With regard to any other "D" rights your client may claim, we note your letter makes no attempt to establish any common law rights in any other "D" design.  Therefore, our response will focus

Joshua J. Conley, Esq.
May 8, 2024
Page 3



only on the two registered Drake marks shown above. For purposes of this letter, we will assume that both trademarks are valid and enforceable, and we reserve any arguments to the contrary.

**B. There is No Likelihood of Confusion**

Both your unfair competition and trademark infringement theories require you show the new DMACC logo somehow creates a likelihood of confusion with one of the two Drake marks cited above. In determining whether confusion is likely, the Court examines six factors: (1) the strength of Drake's trademarks; (2) the similarity between Drake's trademarks and the DMACC logo; (3) the competitive proximity of the parties' goods and services; (4) DMACC's intent—or lack thereof—to pass off its goods and services as those of Drake; (5) evidence of actual confusion; and (6) the degree of care reasonably expected of potential customers in light of the type of goods and services, their cost, and conditions of purchase. *See, e.g., Sensient Technologies Corp. v. SensoryEffects Flavor Co.*, 613 F.3d 754, 763 (8th Cir. 2010). As set forth below, not one factor weighs in Drake's favor, which is perhaps why you did not address any of the factors in your letter.

1. Drake's Trademarks are Legally Weak

Under Eighth Circuit law, "a strong and distinctive trademark is entitled to greater protection than a weak and commonplace one." *Sensient*, 613 F.3d 754 at 763 (quotations and citation omitted). Both of Drake's registered trademarks are weak and commonplace among colleges and universities. Virtually every college or university with a name that starts with the letter "D" uses some style of "D" in their branding. *See, e.g.*, the following exemplary marks:

| U.S. Registration No. (Owner) | Logo |
|---|---|
| 5,972,248 (Dordt University) | |
| 6,383,883 (Davidson College), | |

Joshua J. Conley, Esq.
May 8, 2024
Page 4



| | |
|---|---|
| 4,274,183 (Duke University), | [Old English "D" logo] |
| 3,417,884 (Davenport University), | ["D" within shield logo] |
| 5,121,807 (Denison University). | [Block "D" with shadow logo] |

Likewise, Drake's use of a bulldog as its mascot and registration of the same as a trademark is hardly unique or unusual among colleges and universities. *See, e.g.*, U.S. Registration Nos. 2,319,332 (James Madison University), 6,629,859 (Truman State University), 5,347,509 (Samford University), 4,619,706 (California State University, Fresno). Accordingly, Drake's weak trademarks are entitled to limited protection, which weighs against Drake in any infringement analysis.

2. The Parties' Trademarks are Dissimilar

The DMACC logo—as used and as depicted in DMACC's pending trademark application—are easily distinguished from Drake's trademarks—as used and as registered. As shown below, the "D" designs are completely different and there is no bulldog in the DMACC logo. Moreover, the prominent use of the DMACC name in DMACC's logo itself further distinguishes the parties' respective trademarks from one another. *See, e.g.*, *Luigino's, Inc. v. Stouffer Corp.*, 170 F.3d 827, 831 (8th Cir. 1999) ("The use of different colors and typefaces, as well as the prominent display of the house marks convey perceptible distinctions between the products.").

Joshua J. Conley, Esq.
May 8, 2024
Page 5



**DMACC's Logo:**



**Drake's Logos:**



The dissimilarity of the parties' respective trademarks weighs heavily against infringement.

   3. <u>Competitive Proximity</u>

While both DMACC and Drake fall into the general category of colleges and universities, they are easily distinguished and highly unlikely to be confused with one another.  Drake is a private, mid-sized, four-year university with tuition and fees that exceed $50,000 annually.  DMACC is a two-year community college with the lowest tuition and fees in the state.  DMACC and Drake do not compete for students.  To the contrary, DMACC has consistently recommended Drake to its students that are interested in continuing their education beyond DMACC's offerings.  Accordingly, this factor weighs against Drake.

   4. <u>DMACC Acted in Good Faith</u>

DMACC has no interest in or intention to pass itself off as Drake.  Indeed, DMACC's prominent use of its name within its logo clearly demonstrates there is no bad faith.  *See, e.g.*, *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 871 (8th Cir. 1994) (holding that the accused infringer's "conspicuous placement of its identifying marks must be seen as an attempt to distinguish" its products from those of the trademark owner).  Thus, this is yet another factor that weighs against infringement.

Joshua J. Conley, Esq.  
May 8, 2024  
Page 6



    <u>5.</u>   There is No Evidence of Actual Confusion

Your letter alleges that DMACC's use of its logo "has caused…confusion." Yet, no evidence of actual confusion is cited in your letter. To be clear, a rotary club roast does not qualify as actual confusion. It was nothing more than a joke and a far cry from a relevant purchaser being misled. *See, e.g.*, *MasterCard Int'l Inc. v. Nader 2000 Primary Committee, Inc.*, 2004 WL 434404, at *3 (S.D.N.Y. Mar. 8, 2004) (finding that a senator's joke on CNN's *Late Edition* that he "thought the Nader Advertisement was a credit card ad" constituted "little or no evidence of actual confusion").

Even if it did qualify as actual confusion—which it does not—the rotary club roast would be far from sufficient to support Drake's position because it is an isolated incident at, as you stated, an "event shortly after the rebrand" that was not directed at potential college students. *See, e.g.*, *Sensient*, 613 F.3d at 768 (explaining that "it is clear even isolated incidents of actual confusion that occur initially upon the creation of a potentially confusing mark are insufficient to establish a genuine issue of material fact as to the likelihood of confusion" and "[i]nstead, we look to whether an appreciable number of ordinary purchasers are likely to be misled") (internal quotations and citations omitted). The absence of any actual confusion in the seven months since DMACC began using its logo is compelling evidence against any allegation of infringement. *See, e.g.*, *id*. (finding that the district court did not err in its determination that the trademark owner's failure to produce any evidence of actual confusion was "telling" since the accused infringer's name "had been in use at the time for approximately one year").

    <u>6.</u>   Purchasers of Post-Secondary Education Exercise a Very High Degree of Care

The Eighth Circuit has explained that "[i]n considering this factor, we must stand in the shoes of the ordinary purchaser, buying under normally prevalent conditions of the market and giving the attention such purchasers usually give in buying that class of goods." *Luigino's*, 170 F.3d at 831. This is because "the degree of care exercised by the purchaser can eliminate the likelihood of confusion which would otherwise exist." *ZW USA, Inc. v. PWD Sys., LLC*, 889 F.3d 441, 447 (8th Cir 2018) (quotations and citation omitted).

Post-secondary education is one of—if not the most—expensive investment a student will make in his or her lifetime. Total college expenses easily reach hundreds of thousands of dollars. Likewise, a student's choice of school is not a decision made on a whim. Rather, it is the result of careful research, school visits, interviews, and a detailed application process. Frankly, the idea that a student or potential student could somehow confuse the identity of the college or university he or she chooses to attend is absurd. This factor weighs strongly against infringement here.

With all of the relevant factors weighing strongly against Drake, we are struggling to understand its insistence on pursuing this matter. We are hopeful that Drake will reconsider its position in light of the undeniable facts and well-established legal standards and allow both parties to return to their mutually beneficial partnership for the betterment of higher education. If, however, Drake chooses to proceed with this meritless distraction, DMACC is prepared to vigorously defend itself and seek all available remedies.

Joshua J. Conley, Esq.
May 8, 2024
Page 7



Sincerely,

R. Scott Johnson
**Direct Dial:** 515.242.8930
**Email:** rsjohnson@fredlaw.com

cc: Laura L. Myers, Esq. (via email only)

#82400598