**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| DRAKE UNIVERSITY,<br><br>      Plaintiff,<br><br>vs.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE,<br><br>      Defendants.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE,<br><br>      Counterclaim Plaintiffs,<br><br>vs.<br><br>DRAKE UNIVERSITY,<br><br>      Counterclaim Defendant. | Case No. 4:24-CV-00227-SMR-SBJ<br><br><br><u>**REDACTED**</u><br><br>**DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' BRIEF IN RESISTANCE TO PLAINTIFF AND COUNTERCLAIM DEFENDANT'S MOTION FOR RELIEF FROM ORDER PURSUANT TO FED. R. CIV. P. 60(b)** |

## TABLE OF CONTENTS

Page

I.    INTRODUCTION................................................................................. 1

II.   DRAKE'S MOTION FOR RELIEF IS UNTIMELY AND
      IMPROPER...................................................................................... 1

      A.    Drake's Motion for Relief is More Accurately a Motion for
            Reconsideration, Which is Untimely Under the Local Rules. .................... 1

      B.    Drake's Motion for Relief from a Non-Final Order is Improper
            Under Rule 60(b). ................................................................................. 2

      C.    Drake's Motion for Relief Does Not Satisfy the Exceptional
            Circumstances Required Under Federal Rule of Civil Procedure
            60(b). .................................................................................................. 3

            1.    Drake had a "Full and Fair" Opportunity to Litigate the
                  Stay and Chose Not To. ............................................................ 4

            2.    Drake Has Not Identified Any "Exceptional
                  Circumstances" Warranting Reconsideration. ............................. 5

            3.    Drake's "Prejudice" that it Cannot Act on Recently
                  Reviewed Documents Irrelevant, Flawed, and Not an
                  Exceptional Circumstance. ........................................................ 6

III.  DRAKE'S ALTERNATIVE REQUEST FOR RELIEF IS
      SATISFIED BY THE COURT'S ORDER GRANTING THE STAY
      PENDING AN APPELLATE DECISION........................................... 8

      A.    The Appellate Decision Will Simplify and Clarify the Pending
            Litigation in the District Court................................................................ 8

      B.    The Appellate Decision Will be Instructive on Whether Drake's
            Current Evidence is Sufficient to Support the Preliminary
            Injunction. .......................................................................................... 10

            1.    Document Production in This Case Has Been Largely One-
                  Sided. ..................................................................................... 11

      C.    Drake Will Not Be Unfairly Prejudiced by a Stay................................... 12

IV.   DRAKE'S MOTION FOR RELIEF IS AN ATTEMPT TO GARNER
      PUBLIC SUPPORT....................................................................... 14

      A.    Drake Knowingly Misrepresented DMACC's Basis for its Motion
            to Stay. ............................................................................................... 14

# TABLE OF CONTENTS

Page

    B.    The Documents Drake Submitted as Exhibits in its Motion for Relief are Properly Filed Under Seal Pursuant to the Stipulated Protective Order in this Case. ................................................................... 15

**V.    CONCLUSION. .................................................................................................. 16**

## <u>TABLE OF AUTHORITIES</u>

Page

**Cases**

*Ackermann v. United States*,
    340 U.S. 193 (1950)...............................................................................................................4

*In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*,
    9 F.4th 768 (8th Cir. 2021) ................................................................................................14

*Klapprott v. United States*,
    335 U.S. 601 (1949)...............................................................................................................4

*G2 Database Mktg., Inc. v. Stein*,
    No. 418CV00331JAJCFB, 2020 WL 6484788 (S.D. Iowa Oct. 15, 2020)............................1

*Honary Enters., LLC v. Harry Davis, LLC*,
    No. C24-107-LTS-KEM, 2025 WL 1616368 (N.D. Iowa June 6, 2025) .................................4

*Johnson v. S.C. Johnson & Son, Inc.*,
    No. 414CV00203SMRCFB, 2015 WL 11112559 (S.D. Iowa Jan. 28, 2015).....................2, 3

*Nuhn Indus., LTD. v. Bazooka-Farmstar, LLC*,
    No. 3:22-cv-00015-SMR-HCA (S.D. Iowa May 25, 2025) .....................................................3

*Quality Off. Furnishings, Inc. v. Allsteel, Inc.*,
    No. 3:17-CV-00041-JEG, 2018 WL 7077066 (S.D. Iowa Dec. 18, 2018)...........................3, 6

*Williams v. York*,
    891 F.3d 701 (8th Cir. 2018) ................................................................................................3

**Other Authorities**

Federal Rule of Civil Procedure 60(b)..................................................................................*passim*

Local Rule 7(e) .............................................................................................................1, 2, 4, 5

Local Rule 72A .......................................................................................................................2

## I.    INTRODUCTION.

DMACC respectfully requests that the Court deny Drake's Motion for Relief from Order Pursuant to Federal Rule of Civil Procedure 60(b) ("Motion for Relief").  Drake's Motion for Relief is more accurately an untimely motion for reconsideration of this Court's June 11, 2025 Order staying these proceedings pending the forthcoming decision of the Eighth Circuit (the "Order," ECF 169). Drake could have filed a motion for reconsideration of the Order under Local Rule 7(e) within seven days.  Drake did not.  Drake could have filed an objection to the Order within fourteen days.  Drake did not.  These deadlines have passed.

Drake instead filed a motion for relief under Federal Rule of Civil Procedure 60(b).  Rule 60(b) is generally reserved for motions on *final* orders and requires the movant to show "exceptional circumstances" warranting reconsideration.  By its own admission, Drake's Motion for Relief seeks relief from a non-final order and fails to show any "exceptional circumstances" as required under Rule 60(b)(6).  As the Court noted in its Order, "[f]rom the Court's perspective, the resolution of the matters appealed to the Eighth Circuit will have a significant impact on the claims and defenses at issue in this case."  (Order, ECF 169 at p 2).  A stay remains the proper course.  For these reasons, Drake's motion should be denied.

## II.    DRAKE'S MOTION FOR RELIEF IS UNTIMELY AND IMPROPER.

### A.    Drake's Motion for Relief is More Accurately a Motion for Reconsideration, Which is Untimely Under the Local Rules.

Drake's Motion for Relief should be treated as a motion for reconsideration.  When a party brings a motion for reconsideration under a different title—such as a Motion for Relief—this Court has historically considered the motion as a motion for reconsideration. *See G2 Database Mktg., Inc. v. Stein*, No. 418CV00331JAJCFB, 2020 WL 6484788, at *2 (S.D. Iowa Oct. 15, 2020) ("Stein's Motion For Clarification is, to a substantial degree, a motion for reconsideration and

alteration, not just clarification, of the court's Order On MSJs, because Stein's Motion seeks additional and different results."); *Johnson v. S.C. Johnson & Son, Inc.*, No. 414CV00203SMRCFB, 2015 WL 11112559, at *6 (S.D. Iowa Jan. 28, 2015) ("Defendant concedes the Court may treat Plaintiff's Motion to Amend as a motion to reconsider.").

The Southern District of Iowa's Local Rules provide two pertinent mechanisms for a party to bring a motion for reconsideration of a *non-final* order. First, Drake could have moved for reconsideration under Local Rule 7(e). Local Rule 7(e) addresses the present situation where, "if a motion appears to be noncontroversial, or if circumstances otherwise warrant, the court may elect to rule on a motion without waiting for a resistance or response. Any party may, within 7 days after any such order is entered, file a motion for reconsideration of the order." L.R. 7(e). Local Rule 7(e) was the proper basis for Drake to bring its Motion for Relief.

Drake also could have moved under Local Rule 72A. Local Rule 72A provides "[a] party who objects to or seeks review or reconsideration of either a magistrate judge's order on a pretrial matter or a magistrate judge's report and recommendation must file specific, written objections to the order or report and recommendation within 14 days after service of the order or report and recommendation." Drake missed the deadlines under either rule without justification. Drake's motion should be denied as untimely under the local rules.

### B.    Drake's Motion for Relief from a Non-Final Order is Improper Under Rule 60(b).

If the Court does not deny Drake's Motion for Relief as untimely, the Court should deny Drake's Motion for Relief as improper under Federal Rule of Civil Procedure 60(b). On its face, Rule 60(b) is reserved for final judgments. Fed. R. Civ. Pro. 60(b) ("On motion and just terms, the court may relieve a party or its legal representative from a final judgment, order, or proceeding . . ."). As noted by this Court less than two months ago, Rule 60(b) only applies "if a final judgment

or order has been entered." Ex. A, *Nuhn Indus., LTD. v. Bazooka-Farmstar, LLC*, No. 3:22-cv-00015-SMR-HCA, at *2 (S.D. Iowa May 25, 2025). This Court elaborated "the United States Supreme Court has recently shed light on the meaning of 'final' in the context of Rule 60(b).  In *Waetzig* [*v. Halliburton Energy Servs., Inc.*], the court explained that the inclusion of the term 'final' in Rule 60(b) was intended to exclude interlocutory judgments from its scope. This is because a court may always revise its interlocutory rulings in an ongoing case." *Id.* at *2–3.

DMACC has been unable to locate any case in this district or in the Eight Circuit where a party has brought a motion to reconsider an order to stay under Rule 60(b)(6), and Drake fails to cite any.  Stays, by definition, are not final.  The district court litigation will resume following the Eighth Circuit's ruling on the fully-briefed cross-appeals.  As Drake seeks to improperly use Rule 60(b) for a non-final order, the Court should deny Drake's Motion for Relief under Rule 60(b).

### C.    Drake's Motion for Relief Does Not Satisfy the Exceptional Circumstances Required Under Federal Rule of Civil Procedure 60(b).

Should the Court address the merits, it should still deny Drake's motion.  Drake has not met its burden under Rule 60(b)(6) to show exceptional circumstances warranting relief—instead, Drake argued that burden doesn't apply.  But "[o]n a motion to reconsider under Rule 60(b)(6), the movant must establish exceptional circumstances to obtain the extraordinary relief the rule provides." *Quality Off. Furnishings, Inc. v. Allsteel, Inc.*, No. 3:17-CV-00041-JEG, 2018 WL 7077066, at *2 (S.D. Iowa Dec. 18, 2018) (quotations omitted); *see also Johnson*, 2015 WL 11112559, at *7 ("The Eighth Circuit, however, has declared 'relief under rule 60(b)(6) remains an extraordinary remedy for exceptional circumstances.'") (quoting *City of Duluth v. Fond du Lac Band of Lake Superior Chippewa*, 702 F.3d 1147, 1155 (8th Cir. 2013)); *Williams v. York*, 891 F.3d 701, 706 (8th Cir. 2018) ("Rule 60(b) 'provides for extraordinary relief which may be granted only upon an adequate showing of exceptional circumstances.'") (quoting *Jones v. Swanson*, 512

F.3d 1045, 1048 (8th Cir. 2008)).  Contrary to Drake's position, whether the litigant has had a full and fair opportunity to litigate the issues raised in its 60(b)(6) motion is not a necessary precondition for the exceptional circumstances requirement to apply.  Instead of raising exceptional circumstances that would warrant reconsideration, Drake seeks to rehash "prejudice" arguments it could have raised under LR 7(e) or 72A.  These arguments are inappropriate, *wrong*, and should be disregarded.

### 1.    Drake had a "Full and Fair" Opportunity to Litigate the Stay and Chose Not To.

Drake argues it does not *need* to demonstrate exceptional circumstances because Drake did not file an opposition before the Court issued the Order granting the stay.  (*See* ECF 172 at 3).  However, if a party brings a 60(b)(6) motion and did not fully litigate its claim, the party must be "essentially faultless" in its failure to litigate. *Honary Enters., LLC v. Harry Davis, LLC*, No. C24-107-LTS-KEM, 2025 WL 1616368, at *3 (N.D. Iowa June 6, 2025) (citing *Pioneer Inv. Servs. Co. v. Brunswick Associates Ltd. Partnership*, 507 U.S. 380, 393 (1993) ("To justify relief under subsection (6), a party must show 'extraordinary circumstances' suggesting that the party is faultless in the delay.")). In *BLOM Bank SAL v. Honickman*, the United States Supreme Court emphasized the importance of a Rule 60(b)(6) movant's faultlessness, comparing one case in which the movant was essentially faultless to another in which the movant was not.[1]  145 S. Ct. 1612, 1620 (2025) ("Compared to the situation in *Klapprott*, the *Ackermann* petitioner's

---

[1] *Contrast Klapprott v. United States*, 335 U.S. 601, 613–14 (1949) (The petitioner was "in jail . . . , weakened from illness, without a lawyer in the denaturalization proceedings or funds to hire one," and "disturbed and fully occupied in efforts to protect himself against the gravest criminal charges" in separate proceedings) *with Ackermann v. United States*, 340 U.S. 193, 195–97 (1950) (The petitioner suffered an adverse denaturalization judgment and declined to appeal. Four years later, Petitioner sought to vacate the judgment under Rule 60(b)(6), alleging that it was erroneous, and that he had declined to appeal due to expense and the advice of a third party).

allegations highlighted 'the difference between no choice and choice; imprisonment and freedom of action; no trial and trial; no counsel and counsel; no chance for negligence and inexcusable negligence.'") (quoting *Ackermann,* 340 U.S., at 202).

Drake's failure to file an appropriate motion under the Local Rules in a timely manner shows Drake is not faultless in its failure to litigate.  *Atkinson v. Prudential Prop. Co.*—cited by Drake—held that "[r]elief is available under Rule 60(b)(6) only where 'exceptional circumstances prevented the moving party from seeking redress through the usual channels.'" 43 F.3d 367, 373 (8th Cir. 1994) (quoting *In re Zimmerman*, 869 F.2d 1126, 1128 (8th Cir.1989)). As noted previously, had Drake wanted to challenge the stay, it could have moved under *either* LR 7(e) or 72A.  Drake had a "full and fair" opportunity to litigate DMACC's motion to stay; instead, it waited 16 days and filed the present motion.  There were no exceptional circumstances preventing Drake from seeking a motion for reconsideration under either Local Rule 7(e) or 72A.  Drake was not faultless in its failure to litigate; Drake simply missed its opportunity to do so and fails to say why.

The Court should deny Drake's 60(b)(6) Motion for Relief because Drake cannot demonstrate exceptional circumstances as required for motions under Rule 60(b)(6).

## 2. Drake Has Not Identified Any "Exceptional Circumstances" Warranting Reconsideration.

Drake argues it could suffer "exceptional circumstances" because it cannot "act on [the allegedly compelling] evidence in furtherance of its case."  (ECF 172 at 9).  Drake has a preliminary injunction.  Drake's unwillingness to wait the year Drake estimates the appeal will take, *while it has a preliminary injunction granted in its favor*, is not a cognizable "exceptional circumstance."  Drake cites no cases demonstrating as much.

### 3. Drake's "Prejudice" that it Cannot Act on Recently Reviewed Documents Irrelevant, Flawed, and Not an Exceptional Circumstance.

While irrelevant here (as even Drake acknowledges they are not "exceptional circumstances" currently present), DMACC denies Drake will suffer any alleged "prejudice" because Drake cannot presently act on the evidence it filed as sealed attachments to its motion. First, newly acquired evidence is not a basis to bring a 60(b)(6) motion. This basis is provided for by 60(b)(2): "newly discovered evidence that, with reasonable diligence, could not have been discovered in time. . . ." Fed. R. Civ. Pro. 60(b)(2).

"To prevail on a motion based on Rule 60(b)(2), the movant must show '(1) that the evidence was discovered after the court's order, (2) that the movant exercised diligence to obtain the evidence before entry of the order, (3) that the evidence is not merely cumulative or impeaching, (4) that the evidence is material, and (5) that the evidence would probably have produced a different result.'" *Quality Off. Furnishings*, 2018 WL 7077066, at *2 (quoting *Williams v. Hobbs*, 658 F.3d 842, 854 (8th Cir. 2011)). Drake did not bring a motion under 60(b)(2), nor can it argue that it can meet a single element of the test for a 60(b)(2) motion. Thus, "new" evidence should not be considered by the Court when Drake's Motion for Relief on the merits.

However, even if Drake could use this fact to support its Rule 60(b)(6) motion, Drake cannot legitimately argue these documents are material or would have produced a different result. This is because in all the documents produced by DMACC and reviewed by Drake, DMACC is comparing its rebrand logo to Drake's *registered* trademarks—"Ds" with a curved back. No documents show *any* evidence that DMACC *ever* thought Drake had a block-style "D" mark when DMACC was designing and implementing its rebrand logo. This Court has already recognized DMACC's rebrand did not create a likelihood of confusion with any federally *registered* Drake

trademark, including Drake's only registered standalone "D" trademark.  (ECF 87 at p. 9 ("[T]here

is no likelihood of confusion between DMACC's new logo and those registered marks.")).

███████████████████████████████████████████████████████

███████████████████████████████████████████████████████

███████████████████████████████████  (*See* ECF 175-2, 175-3).

███████████████████████████████████████████████████████

The Court has already held that there is no likelihood of confusion between Drake's curved "D"

and DMACC's rebrand logo—which is exactly what the documents produced in this litigation

reflect and the conclusion DMACC reached while designing its new logo.  Nowhere in *any* email

produced by DMACC did DMACC compare its rebrand logo to Drake's alleged "Vintage D," because DMACC was unaware Drake believed it had common law rights in a "Vintage D." Therefore, these emails do not demonstrate exceptional circumstances; rather, they highlight that Drake is unwilling to recognize what the Court has already found.  This evidence is merely a distraction from the true issue in this case: Drake's ability to establish *common law* trademark rights in a "Vintage D" and whether DMACC's new logo infringed those alleged *common law* rights.  Nothing in the emails Drake attached to its motion is relevant to the current dispute.

Drake's inability to act on these documents does not prejudice Drake nor does it provide the exceptional circumstances warranting the Court to lift the stay.

## III.    DRAKE'S ALTERNATIVE REQUEST FOR RELIEF IS SATISFIED BY THE COURT'S ORDER GRANTING THE STAY PENDING AN APPELLATE DECISION.

Drake's motion alternatively requests the Court clarify its order granting the stay, specifically addressing 1) how the pending appeals will clarify substantive issues in the district court litigation and 2) how the stay will not unfairly burden Drake.[2]  While this is not typically relief granted by a court, DMACC addresses Drake's alternative request for relief below.

### A.    <u>The Appellate Decision Will Simplify and Clarify the Pending Litigation in the District Court.</u>

While the parties agree that the issues on appeal are not dispositive in the district court litigation, DMACC maintains that the Eighth Circuit decision will both clarify and simplify the litigation in the district court.  DMACC never stated that the appeal is dispositive of Drake's trademark rights, nor did it "mislead[] the Court when it state[ed] that the appeal will simplify or eliminate the proceedings before this Court."  (ECF 172 at p. 3).  First, the Court independently

---

[2] Drake did not propose alternative relief in the parties' June 26, 2025 meet and confer. DMACC has thus not previously provided its position to Drake on Drake's alternative request for relief.

concluded that a stay was warranted because, "[f]rom the Court's perspective, the resolution of the matters appealed to the Eighth Circuit will have a significant impact on the claims and defenses at issue in this case." (ECF 169 at p. 2). The parties and the Court agree that the "authority for this Court to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." (*Id.*) The Court correctly determined that the matters central to the appeal will have a significant impact on the case and properly exercised its discretion to stay the litigation pending the outcome of the cross-appeals. This alone is enough to justify the Court's Order granting the stay.

Second, DMACC did not mislead the Court when DMACC stated the Eight Circuit's decision "will simplify—or possibly eliminate—issues for trial." (ECF 167-1 at p. 2). This is because the appeals are targeted at the "scope and enforceability of Drake's alleged common law trademark rights." (*Id.*) The issues on appeal before the Eighth Circuit primarily address Drake's ability to establish its common law trademark rights in an amorphous "Vintage D." However, most of Drake's Motion for Relief is focused on Drake's recent review of what Drake calls DMACC's intent to confuse the public vis-à-vis Drake's registered trademarks. This type of evidence could arguably be related to proving the likelihood of confusion element of trademark infringement—something the Court has already said does not exist with respect to Drake's registered trademarks. Drake's focus on a likelihood of confusion is targeted at the wrong Drake trademarks and is unnecessary at this point in the litigation. The burden is on Drake to first establish it has common law trademark rights before the parties proceed to argue over a likelihood of confusion between the marks actually at issue.

The preliminary issue of whether Drake can even establish common law trademark rights is fully briefed before the Eighth Circuit.  A decision from the Eighth Circuit on this issue will benefit both the parties and the Court in the district court litigation.

**B.      The Appellate Decision Will be Instructive on Whether Drake's Current Evidence is Sufficient to Support the Preliminary Injunction.**

In its appellate decision, the Eighth Circuit will likely discuss whether the evidence Drake presented at the preliminary injunction hearing was sufficient to establish a likelihood of success on the merits and warrant the preliminary injunction.  Drake argues that "an appellate decision on the sufficiency of Drake's evidence early on in this litigation will have no impact on a trial or dispositive motions before this Court."  (ECF 172 at p. 4).[3]

DMACC disagrees.  The Eighth Circuit's decision will be instructive regarding the sufficiency of the evidence that is currently in the record and what additional evidence Drake may need to prove its alleged common law trademark rights.  Drake states that, since the preliminary injunction hearing, it has now "had the opportunity to review its own records that date back over a century and could not have been reviewed in full before seeking preliminary relief."  *Id.* However, Drake has produced little to no evidence of a standalone, block-style "D" used in commerce within the last 20 years since the preliminary injunction hearing.  Contrary to Drake's suggestion, the state of the evidence regarding Drake's current, continuous use of a standalone, block-style "D" stands essentially as it was at the time Drake sought an injunction.  Thus, the

---

[3] Drake's arguments about the Eighth Circuit's impact are incorrect.  Should DMACC win on appeal because Drake's evidence fails to establish common law trademark rights, Drake will need to provide new evidence that those rights exist during discovery.  Should Drake win on appeal, Drake is not entitled to the outright victory it claims.  Instead, the Eighth Circuit will simply say Drake appears likely to be able to show it has common law rights in a block-style "D."  Drake will still need to prove these rights by providing additional evidence.  The appeal will likely clarify the amount and type of evidence required to make that showing.

Eighth Circuit's assessment of that evidence will certainly impact dispositive motions and, if Drake can survive summary judgment, trial.

Drake's Motion for Relief calls attention to the document production in this case. While DMACC's purpose in moving for a stay was to avoid or delay litigating discovery issues, DMACC must now address the document production issues raised by Drake in its Motion for Relief.

### 1.    Document Production in This Case Has Been Largely One-Sided.

In its Motion for Relief, Drake states that "[s]ince DMACC was enjoined, the parties have exchanged thousands of documents." (*Id.*) A more accurate statement would be that DMACC has produced thousands of documents; Drake has produced hundreds.[4] Drake takes issue with the volume of documents produced by DMACC. (*Id.* at 6–7.) Drake fails to mention that DMACC repeatedly warned Drake that its overbroad requests for documents—and its refusal to meet and confer over those requests—would result in a large document production.

In a letter dated April 11, 2025, counsel for DMACC outlined in detail the timeline of the parties' document production. (*See* Ex. B.) The letter further outlined which email inboxes DMACC searched, the search terms DMACC used when searching the inboxes, and the strategies DMACC employed for reducing the amount of irrelevant or duplicative documents produced. The letter also addressed why many of the documents produced on March 21st and April 3rd were batch coded with confidentiality designations and provided authority for DMACC's batch-coding strategy—namely so that DMACC could produce the documents well before the May 14, 2025 settlement conference, giving Drake a reasonable opportunity to review them. Drake has no basis to raise issues related to document production in its Motion for Relief.

---

[4] DMACC has produced 20,703 documents. Drake has produced roughly 632 documents.

Comparatively, Drake's production is simply lacking. Drake was made aware of its deficiencies on May 28, 2025. (*See* Ex. C.) On June 4, 2025, Drake asked for an extension to respond to the deficiencies, requesting a response date of June 18. However, the Court granted DMACC's Motion to Stay on June 11. Accordingly, Drake has not responded to DMACC's lengthy deficiency letter. (*See id.*) If the stay is lifted, a motion to compel will be likely be forthcoming. Therefore, it is better for both the parties and the Court for the litigation to be stayed to avoid imminent, discovery related motion practice.

**C.      Drake Will Not Be Unfairly Prejudiced by a Stay.**

Drake will not suffer any undue prejudice or be disadvantaged by a stay. DMACC reiterates its position in its Motion to Stay, namely that Drake is not suffering any ongoing harm because DMACC is complying with the Court's preliminary injunction order and Drake suffers no tactical disadvantage from a stay. (ECF 169 at p. 6). Drake makes several arguments for how it *could* be prejudiced by a stay. These include changes in DMACC's personnel, the possibility that documents may be lost through retention policies, and the risk Drake faces if the preliminary injunction is overturned. As noted above, none of these arguments demonstrate undue burden, undue prejudice, or provide any basis for the Court to lift the stay.

First, although both Rob Denson and Todd Jones plan to retire at the end of the calendar year, both individuals intend to be available throughout the duration of the litigation.[5] The Eighth Circuit decision is forthcoming—the appeal and cross appeal are fully briefed and only awaiting

---

[5] Drake noted concerns regarding Denson's upcoming retirement in the parties' meet and confer. DMACC suggested alternative remedies for this concern, including Drake deposing Denson during the stay. Drake did not pursue any alternative remedies for this issue, suggesting this is not a genuine concern for Drake.

12

the scheduling of oral argument and final decision.  There is no legitimate concern that either Denson or Jones will be unable to be deposed in this case.

Second, because the litigation has been ongoing for nearly a year, both parties should have litigation hold policies in place, including suspension of routine document destruction practices. DMACC has imposed such a hold.  Notably, Drake's concern over this—calling special attention to issues with email retention—only prejudices DMACC.  DMACC has produced approximately 20,000 emails in this litigation and believes its email production is complete.  Drake, on the other hand, has produced only 57 emails. If document retention is a genuine issue in this case, it is DMACC who should be concerned—not Drake.

Third, Drake identifies the risk it faces if the Eighth Circuit overturns the preliminary injunction, including that Drake may lose its bond or DMACC may resume use of its previously-enjoined logo.  However, this is a risk Drake faces regardless of whether the litigation is stayed. The Eighth Circuit will likely issue an opinion before the district court case reaches a final resolution.  Drake has already moved the Court to extend its expert deadline, which the Court acknowledged "will require the resetting of the current trial date."  (ECF 169 at p. 3).  The trial originally set at the outset of the case has been cancelled.  (*See* ECF 170).  Both parties have significant outstanding discovery as no depositions have been taken and both parties identified the need for more written discovery.  Therefore, it is very likely the Eighth Circuit will issue an order on the cross-appeals prior to the parties reaching a final resolution in the district court litigation, even if the stay is lifted immediately.

None of the arguments Drake raised in its Motion for Relief demonstrate undue prejudice or provide a basis for the Court to lift the stay.

## IV.    DRAKE'S MOTION FOR RELIEF IS AN ATTEMPT TO GARNER PUBLIC SUPPORT.

Given the extensive press coverage in this matter, DMACC believes Drake's motion for relief was brought, at least in part, as an improper attempt to bring public attention back to the litigation.  During the parties' meet and confer, Drake's counsel, John Gilbertson, noted that part of the reason for its Motion for Relief was to "embarrass" DMACC by putting its internal marketing strategy in the public eye.  (*See* Ex. D.)  This is an improper use of a court filing.  While public access to judicial proceedings is important, the public's interest in judicial transparency has "'bowed before the power of a court to insure that its records are not used to gratify private spite,' to 'promote public scandal,' to serve 'as reservoirs of libelous statements for press consumption,' or to serve 'as sources of business information that might harm a litigant's competitive standing.'" *In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 791 (8th Cir. 2021) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).  Drake's Motion for Relief is an improper attempt to garner public support in the ongoing litigation.

### A.    Drake Knowingly Misrepresented DMACC's Basis for its Motion to Stay.

Drake misrepresents DMACC's basis for bringing its motion to stay at this point in the litigation.  In its Motion for Relief, Drake states that DMACC only moved to stay the litigation because DMACC became aware of harmful documents two weeks prior to bringing its motion. (ECF 172 at p. 7 ("DMACC's counsel appeared to be unaware of these documents until May 21, 2025, when Drake's counsel wrote to DMACC's counsel seeking the removal of confidentiality restrictions. DMACC's motion to stay came just two weeks later.")).  Drake's speculation that DMACC was unaware of these documents until May 21st is unfounded.  DMACC was aware of these documents well before April 3 as it astutely reviewed all of its documents discussing Drake or its trademarks prior to producing the documents.

Rather, DMACC's motion to stay was prompted by the May 14 settlement conference—a fact of which Drake is well aware. In the parties' email exchange in ECF 167-5, DMACC advised Drake on May 16, 2025 that it would be in "all parties' interests to stay the case until the Eighth Circuit rules on the parties' cross-appeals . . . ." (ECF 167-5 at 3). This email exchange took place before Drake's letter dated May 21, 2025. Drake's assertion that DMACC's motion to stay the case was prompted by DMACC's "genuine realization of the differences in the parties' legal positions" is baseless and—frankly—a lie. (*See* ECF 172 at 6–7).

**B.** **The Documents Drake Submitted as Exhibits in its Motion for Relief are Properly Filed Under Seal Pursuant to the Stipulated Protective Order in this Case.**

In its motion, Drake alludes to "compelling documents" demonstrating "DMACC's intent to trade on Drake's goodwill" and "the brazenness with which DMACC carried out its intention to appropriate Drake's likeness." (*Id.* at 6, 8.) DMACC disagrees with such characterizations of these documents. Regardless, these documents were properly filed under seal pursuant to the stipulated protective order in this case. DMACC has provided Drake with authority for designating these documents as confidential. (*See* Ex. C at 13–15.) Most are internal emails or drafts of other documents pertaining to confidential branding and marketing strategies. DMACC does not publicly share that type of information and properly designated them as confidential under the protective order. Drake has not provided authority to support its position for why the documents should not be designated confidential. Due to DMACC's proper use of the protective order, Drake has taken liberties in describing the nature of the documents in its Motion for Relief, regardless of what is actually contained within the documents or how the documents will impact the litigation in the future. Regardless of Drake's description of the documents, DMACC maintains the documents are properly designated pursuant to the protective order and must be filed under seal.

## V.    CONCLUSION.

For these reasons, DMACC respectfully requests the Court deny Drake's Motion for Relief in its entirety as untimely and improper.  Additionally, DMACC respectfully requests the Court uphold its decision granting the stay of the litigation.

Respectfully submitted,

Date: July 11, 2025

*/s/ R. Scott Johnson*

R. Scott Johnson (#AT0004007)
Cara S. Donels (#AT0014198)
Erin M. Boggess (#AT0015950)
FREDRIKSON & BYRON, P.A.
111 East Grand Avenue, Suite 301
Des Moines, IA  50309-1977
Telephone:  (515) 242-8900
E-mail:  rsjohnson@fredlaw.com
            cdonels@fredlaw.com
            eboggess@fredlaw.com

Laura L. Myers (Minn. #0387116)
(admitted *Pro Hac Vice*)
Luke P. de Leon (Minn. #0401756)
(admitted *Pro Hac Vice*)
FREDRIKSON & BYRON, P.A.
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
Telephone:  (612) 492-7000
E-mail:  lmyers@fredlaw.com
            ldeleon@fredlaw.com

***Attorneys for Defendants and***
***Counterclaim Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on July 11, 2025, I electronically filed the *Defendants and Counterclaim Plaintiffs' Brief in Resistance to Plaintiff and Counterclaim Defendant's Motion for Relief from Order Pursuant to Fed. R. Civ. P. 60(b)* with the Clerk of Court using the CM/ECF system, who in turn sent notice to the following:

Joshua J. Conley, Esq.
  jconley@zarleyconley.com
John D. Gilbertson, Esq.
  jgilbertson@zarleyconley.com
ZARLEYCONLEY PLC
580 Market Street, Suite 101
West Des Moines, IA  50266

*Attorneys for Plaintiff and
Counterclaim Defendant*

*/s/ Erica Palmer*
Erica Palmer