# EXHIBIT A

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF IOWA
DAVENPORT DIVISION

| | | |
|---|---|---|
| NUHN INDUSTRIES, LTD., | ) | Case No. 3:22-cv-00015-SMR-HCA |
| | ) | |
| Plaintiff, | ) | |
| | ) | ORDER ON CROSS-MOTIONS TO |
| v. | ) | RECONSIDER |
| | ) | |
| BAZOOKA-FARMSTAR, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

On February 18, 2025, this Court issued its claim construction order, construing more than fifteen disputed claim terms in this patent infringement action. Since issuing its ruling, both Plaintiff Nuhn Industries, Ltd. ("Nuhn") and Defendant Bazooka-Farmstar, LLC ("Bazooka") have moved for reconsideration of specific constructions. Nuhn asserts that the Court erred in its construction of "ground engaging propulsion structure." Bazooka seeks reconsideration of the Court's construction of two terms—"fluid pump for pumping liquid manure" and "liquid manure pump configured to pump liquid manure"—citing the Patent Trial and Appeal Board's ("PTAB") recent Final Written Decision ("FWD") as support for its position.

I.   ANALYSIS

A.   *Legal Standard for Reconsideration*

Federal Rule of Civil Procedure 54(b) provides that any order "that adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties . . . may be revised at any time before the entry of a judgment adjudicating all the claims and the rights and liabilities of all the parties." Fed. R. Civ. P. 54(b). This rule reflects the well-established principle that a district court retains inherent power to revise its interlocutory orders prior to the entry of final judgment.

1

*Interstate Power Co. v. Kan. City Power & Light Co.*, 992 F.2d 804, 807 (8th Cir. 1993). Although the precise standard governing Rule 54(b) is not firmly settled, courts generally apply a less exacting review than that required of a motion under Rule 59(e) or Rule 60(b), which address reconsideration of final judgments. *Kirt v. Fashion Bug # 3252, Inc.*, 495 F. Supp. 2d 957, 964–65 (N.D. Iowa 2007).

Motions to reconsider are "generally disfavored" because they implicate competing judicial interests: the desire to achieve correct results and the need for finality in judicial decisions. *Muff v. Wells Fargo Bank, N.A.*, No. 21-4003, 2022 WL 413933, at *2 (N.D. Iowa Feb. 10, 2022). These motions serve a limited function: to correct manifest errors of law or fact, or to present newly discovered evidence. They are not vehicles for relitigating old matters or raising arguments that could have been raised earlier. *Jones v. Casey's Gen. Store*, 551 F. Supp. 2d 848, 854 (S.D. Iowa 2008) (citing *Allstate Ins. Co. v. Weber*, No. 1:05-CV-00039-WRW, 2007 WL 1427598, at *2 (E.D. Ark. May 11, 2007)). The United States Court of Appeals for the Eighth Circuit has held that denying a motion to reconsider on this basis is not an abuse of discretion. *SPV-LS, LLC v. Transamerica Life Ins. Co.*, 912 F.3d 1106, 1111–12 (8th Cir. 2019). Specifically in the context of claim construction, a motion for reconsideration is improper when one party "simply disagrees with the Court's claim construction order and seeks to reargue claim construction." *Superior Indus., Inc. v. Precision, Inc.*, No. 421-CV-00224-RGE-SBJ, 2024 WL 1699118, at *2 (S.D. Iowa Feb. 26, 2024) (quotation omitted).

Although the parties also cite to Rule 59(e) and 60(b) for the Court's authority to reconsider its prior ruling, these rules only apply if a final judgment or order has been entered. *St. Mary's Health Ctr. of Jefferson City v. Bowen*, 821 F.2d 493, 498 (8th Cir. 1987); *Garcia v. Parido*, No. 2:23-CV-00255-JPH-MKK, 2025 WL 934055, at *1 (S.D. Ind. Mar. 27, 2025); *Hamilton v. Illinois*

*Cent. R. Co.*, No. 07-0383-DRH, 2008 WL 78784, at *3 (S.D. Ill. Jan. 7, 2008). Moreover, the United States Supreme Court has recently shed light on the meaning of "final" in the context of Rule 60(b). *Waetzig v. Halliburton Energy Servs., Inc.*, 145 S. Ct. 690, 696 (2025). In *Waetzig*, the court explained that the inclusion of the term "final" in Rule 60(b) was intended to exclude interlocutory judgments from its scope. *Id.* at 697. This is because a court may always revise its interlocutory rulings in an ongoing case. *Id.* "After a case is finally terminated, however, a court no longer presides, and a party can no longer seek a 'rehearing' on an interlocutory judgment," at which point "a court's power under Rule 60(b) kicks in." *Id.*

Claim construction does not end proceedings, rather it is a critical preliminary step in nearly every patent case because it frames the subsequent infringement and validity analyses. *See Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*, 496 F. Supp. 3d 563, 569 (D. Mass. 2020); *see also Extremity Med., LLC v. Fusion Orthopedics, LLC*, No. CV-22-00723-PHX-GMS, 2023 WL 4408270, at *4 (D. Ariz. July 7, 2023). As such, claim construction orders are interlocutory by their nature. *Lineweight LLC v. Firstspear, LLC*, No. 4:18-CV-00387-JAR, 2021 WL 2402008, at *1 (E.D. Mo. June 11, 2021). Their reconsideration properly falls under Rule 54(b), not the more stringent standards applicable to final judgments. *See Superior Indus., Inc. v. Precision, Inc.*, No. 4:21-CV-00224-RGE-SBJ, 2024 WL 1699118, at *2 (S.D. Iowa Feb. 26, 2024) (properly analyzing a motion for reconsideration of claim construction terms under the Rule 54(b) framework).

B.   *Nuhn's Motion*

Nuhn asserts that the Court's construction of "ground engaging propulsion structure" was clearly erroneous. In its claim construction order, the Court found that this term constitutes a means-plus-function limitation under 35 U.S.C. § 112(f), in which the function was "ground

engaging propulsion" and the associated structure was "powered wheels or tracks that are configured to raise and lower relative to the vehicle body." For the purpose of its motion, Nuhn does not challenge the means-plus-function determination, nor does it dispute the identified function of "ground engaging propulsion" or the structure of "powered wheels or tracks." Rather, Nuhn's only objection is that the Court erred by incorporating the requirement that the powered wheels or tracks be "configured to raise and lower relative to the vehicle body" as part of the necessary structure. Nuhn argues that the Court's construction was wrong for three reasons.

First, Nuhn asserts that because "raise and lower" describes a function rather than a structure, it was improper for the Court to incorporate this functional language when identifying the corresponding structure. It argues that the Court should have limited its construction to identifying only the structure that performs the claim function of "ground engaging propulsion." Section 112(f) explicitly states that when a function is specified "without the recital of structure, material or acts in support thereof," the "claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof." 35 U.S.C. § 112(f). According to Nuhn, the Court's construction impermissibly strayed beyond this mandate by requiring more than just "the structure" which is "described in the specification as corresponding to the claimed function and equivalents thereof." *Deere & Co. v. Kinze Mfg., Inc.*, No. 4:20-cv-00389-RGE-HCA, 2023 WL 9472015, at *9 (S.D. Iowa Mar. 24, 2023) (quoting *Williamson v. Citrix Online, LLC*, 792 F.3d 1339, 1347 (Fed. Cir. 2015).

The issue with Nuhn's argument lies in its artificial separation of structure from its configurational attributes. Although "raise and lower" may describe an action, the configuration of the structure to perform that action is itself an aspect of the structure, not merely function. This language not only states what the structure does; it describes how it is designed and arranged—a

-4-

structural characteristic. When Section 112(f) applies, a court must identify the structures described in the specification that correspond to the claimed function—"the ground engaging propulsion structure is configured to raise and lower relative to the vehicle body." Here, the specification does not disclose just any wheels or tracks for ground engaging propulsion, but specifically wheels or tracks configured in a particular way. This configuration—the ability to raise and lower relative to the vehicle body—is not an additional function added by the Court; rather, it is an integral structural characteristic of the disclosed embodiment that performs the claimed function. By Nuhn's own specification, the ground engaging propulsion structure must be designed to accomplish the specific objective of raising and lowering relative to the vehicle body. *Sioux Steel Co. v. Prairie Land Mill Wright Servs.*, Case No. 16-cv-2212, 2022 WL 4132441, at *8 (N.D. Ill. Sept. 12, 2022) (explaining that "configured to" means designed to accomplish a specified objective).

Second, Nuhn asserts that because the Court construed "configured to raise and lower" as part of the structure, it improperly imported limitations from the written description into the claim. It relies principally on *Wenger* to support this argument. For the reasons discussed below, *Wenger* is distinguishable and does not render the Court's construction erroneous.

At the outset, Nuhn argues that the Court may not import "limitations from the written description into the claims absent a finding that a claim term is subject to a 'clear and unmistakable disavowal' or was clearly defined in the patent by the inventor acting as his/her own lexicographer." [ECF No. 276-1 at 9]. However, when Section 112(f) applies—as it does here by Nuhn's own concession—the statute expressly directs courts to identify the corresponding structure described in the specification. Unlike ordinary claim construction, which generally resists importing limitations from the specification, means-plus-function construction necessarily

requires a court to look to the specification to define the claim's scope. Moreover, "[a] means-plus-function claim encompasses all structure in the specification corresponding to that element and equivalent structures." *Micro Chem., Inc. v. Great Plains Chem. Co., Inc.*, 194 F.3d 1250, 1258 (Fed. Cir. 1999). *Wenger* is distinguishable because in that case, the Federal Circuit found that the claimed function of circulating air neither connoted nor required the corresponding structure to be capable of "recirculating" air. 239 F.3d at 1233. Here, by contrast, Nuhn's specification explicitly states that the "ground engaging propulsion structure is configured to raise and lower relative to the vehicle body." This is not merely a preferred embodiment, like the recirculation feature was in *Wenger*, it is a requirement of the structure as disclosed. *Id.* at 1234–35.

This converges with Nuhn's next arguments: that no clear link exists between the ground engaging propulsion function and the structure's capability to raise and lower and that the Court applied an incorrect standard in making this determination. On the first point, the Court notes that there are no magic words required by Section 112(f) to establish the correspondence between structure and function. The statute requires only that the structure be clearly linked or associated with the claimed function by the intrinsic evidence. *Williamson*, 792 F.3d at 1352. The Court found that "configured to raise and lower relative to the vehicle body" constitutes mandatory structure precisely because the language used by Nuhn implied this structure is "necessary to perform the claimed function." [ECF No. 274 at 17]. The specification clearly associates this "configured" structure with the identified function, as evidenced by the Court's finding that it represents "a mandatory capability of the structure and as such is "'corresponding structure, material or acts described in the specification and equivalents thereof.'" *Id.* (quoting 35 U.S.C. § 112(f)).

Next, the Court will address Nuhn's argument that "configured to raise and lower relative to the vehicle body" is not structure necessary to perform the claimed function. [ECF No. 276-1 at 10]. Despite Nuhn's contentions, the language in the specification that the "ground engaging propulsion structure *is configured* to raise and lower relative to the vehicle body," is instructive. The phrase "is configured" does not suggest optionality; it imposes a mandatory requirement on the structure utilized for ground engaging propulsion. Unlike language that might indicate a preferred embodiment—such as stating that "raising and lowering *may* be provided by telescoping structure"—the specification requires this specific structural capability. *See Williamson*, 792 F.3d at 1346 (cleaned up) (explaining that courts should not limit a claim term to examples or embodiments provided in the specification if the specification does not limit the term to those examples). The specification further reinforces this understanding by repeatedly describing that the wheels comprising the ground engaging propulsion structure can be raised and lowered. [ECF No. 132-4 at 11–13]. These descriptions emphasize that the structure must be configured in precisely this manner.

Finally, when explaining how an operator would utilize the remote controls, the specification explicitly states that the wheels are raised after the vehicle is driven into the lagoon and subsequently lowered once the vehicle reaches the lagoon exit, allowing it to drive up the muddy bank and out of the lagoon. *Id*. at 14. The central purpose of the invention is to float in the lagoon and break up the surface crusts of material. To fulfill this essential function, the vehicle must be able to enter and exit the lagoon. The various descriptions in the specifications, read as an integrated whole, make clear that the raising and lowering capability of the wheels or tracks is imperative to the ground engaging propulsion of the vehicle. *See Phillips v. AWH Corp.*, 415 F.3d

1303, 1313 (Fed. Cir. 2005) (emphasizing that claim terms must be interpreted in the context of the entire patent).

Accordingly, the Court did not err when it determined that the structural configuration "to raise and lower relative to the vehicle body" is required to perform the claimed function. For all of these reasons, Nuhn has not identified any errors of law warranting correction. Its Motion for Reconsideration is DENIED. [ECF No. 276].

### C. Bazooka's Motion

Bazooka has also moved for reconsideration of two claim terms, citing new evidence not previously before the Court at the time of its initial construction ruling. Specifically, Bazooka argues that the FWD issued by the PTAB for patent '425, which construes "fluid pump for pumping liquid manure" differently than the Court did in its claim construction order, necessitates reconsideration of the Court's construction of both "fluid pump for pumping liquid manure" and "liquid manure pump configured to pump liquid manure." Nuhn resists Bazooka's proposed constructions on several grounds. First, it argues that the FWD does not constitute new evidence properly considered on reconsideration. Second, the PTAB's construction, even if considered, is erroneous and non-binding. And third, the FWD did not address or construe the "configured to" claim term that appears in one of the disputed phrases.

#### 1) Newly Discovered Evidence

First, the parties dispute whether the FWD constitutes new evidence warranting reconsideration of the contested claim terms. As previously established, the Court reviews this motion under the more flexible Rule 54(b) standard rather than the stringent requirements of Rule 59(e) or Rule 60(b), which apply to final judgments. *See Jones*, 551 F. Supp. 2d at 854.

Under the discretionary authority afforded by Rule 54(b), the Court may revise its interlocutory rulings when "appropriate or necessary," but this authority is not without boundaries. *Nelsen v. Principal Glob. Invs. Tr. Co.*, No. 4:18-cv-00115-SMR-SBJ, 2019 WL 7496779, at *2 (S.D. Iowa Sept. 23, 2019) (citation omitted). The Eighth Circuit has instructed that even this more flexible standard does not permit parties to use motions for reconsideration as vehicles "to identify facts or legal arguments that could have been, but were not, raised at the time the relevant motion was pending." *Julianello v. K-V Pharm. Co.*, 791 F.3d 915, 923 (8th Cir. 2015). This limitation applies with particular force where a party had access to purportedly new evidence when briefing the original motion. *Id.*

Nuhn argues that Bazooka's motion is procedurally improper on two grounds: first, that Bazooka previously advanced substantially similar arguments throughout this litigation; and second, that the PTAB's FWD—characterized as "newly discovered" evidence—was publicly available before the Court issued its claim construction order. These objections, although not without force, do not foreclose consideration of the FWD under the circumstances present here.

The Court finds the FWD itself constitutes potentially material evidence worthy of consideration in the claim construction analysis, notwithstanding any similarity to previous arguments. This conclusion stems from the special status accorded to intrinsic evidence in patent claim construction. Intrinsic evidence carries significant weight in determining the "legally operative meaning of disputed claim language," particularly when that evidence forms part of the prosecution history. *See Liquid Dynamics Corp. v. Vaughan Co.*, 355 F.3d 1361, 1367 (Fed. Cir. 2004) (citation omitted).[1] Although the PTAB's findings are not legally binding, they represent

---

[1] The parties also dispute whether a FWD from the PTAB constitutes extrinsic or intrinsic evidence for the purposes of claim construction. Courts have consistently recognized the value of PTAB decisions in claim construction analyses, regardless of precise categorization. *See Liquidia*

an expert administrative body's considered interpretation of the same claim language now before the Court—a perspective that may properly inform the Court's construction. *See United Therapeutics Corp. v. Liquidia Techs., Inc.*, Civil Action No. 20-755-RGA, 2021 WL 5371461, at *3 (D. Del. Nov. 18, 2021).

Second, the Court must address Nuhn's timing argument—namely, that Bazooka could have presented the PTAB's findings before the Court issued its claim construction ruling, as the FWD was published approximately two weeks prior. This argument, while factually accurate, fails to appreciate the procedural context. The claim construction issues were fully briefed in May 2024, nearly a year before the Court's February 18, 2025 order. The brief two-week window between the FWD's publication and the Court's order—following months of careful deliberation after the parties' final submissions—does not reflect a strategic withholding of evidence or argument by Bazooka. Given these circumstances, the modest delay in bringing this development to the Court's attention does not preclude its consideration under the flexible Rule 54(b) standard. *See Six Dimensions, Inc. v. Perficient, Inc.*, 969 F.3d 219, 227 (5th Cir. 2020) (recognizing under Rule 54(b), courts retain broad discretion to "reconsider and reverse [their] decision for any reason [they] deem[] sufficient, even in the absence of new evidence or an intervening change in or clarification of the substantive law.") (citation omitted).

---

*Techs., Inc.*, 2021 WL 5371461, at *3; *see also Becton, Dickinson & Co. v. Neumodx Molecular, Inc.*, C.A. No. 19-1126-LPS, 2021 WL 1854650, at *3. (D. Del. May 10, 2021). Given that the prosecution history "consists of the *complete record* of the proceedings before the PTO," final decisions would likely constitute intrinsic evidence. *Phillips*, 415 F.3d at 1317 (emphasis added). However, even if it were considered extrinsic evidence, the lower 54(b) standard and the Court's broad discretion permits the consideration of such new evidence if the Court deems it appropriate to do so.

## 2) PTAB FWD

Bazooka argues that the Court should adopt its proposed construction of two terms based on the PTAB's construction in its FWD concerning the '425 patent. Specifically, it argues that both "fluid pump for pumping liquid manure" and "liquid manure pump configured to pump liquid manure" should be construed as "a pump with structure capable of pumping liquid with suspended solids".

Notably, the PTAB did not construe "liquid manure pump configured to pump liquid manure" in its FWD because that precise term was not at issue in the '425 patent proceedings. Even so, Bazooka maintains that the Court should, by logical extension of the PTAB's reasoning, apply the same construction to both disputed terms. This is unconvincing for several reasons.

First, although PTAB decisions merit careful consideration, claim construction remains exclusively within the province of the Court. *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 372, (1996). As such, PTAB findings can be potentially instructive, but the ultimate determination is the Court's to make. *See Becton, Dickinson & Co.*, 2021 WL 1854650, at *3 (considering and agreeing with the PTAB's construction while noting the lack of binding authority or preclusive effect).

The fundamental flaw in Bazooka's position regarding the "configured to" term is that the PTAB did not construe it in its decision. Moreover, the PTAB rejected Nuhn's argument that "capable of" should be interpreted to mean "specifically 'designed to.'" [ECF No. 279 at 24]. This determination cannot extend to a completely different claim term where the claim does not use the words "capable of" but rather, specifically employs the language "configured to." *See Phillips*, 415 F.3d at 1314 (noting "the claims themselves provide substantial guidance as to the meaning of particular claim terms.").

As the Court found in its claim construction order, "configured to" carries a specific meaning in patent law: "designed or configured to *accomplish the specified objective*, not simply that they can be made to serve that purpose." *Sioux Steel Co. v. Prairie Land Mill Wright Servs.*, Case No. 16-cv-2212, 2022 WL 4132441, at *8 (N.D. Ill. Sept. 12, 2022) (emphasis in original) (quoting *Aspex Eyewear, Inc. v. Marchon Eyewear, Inc.*, 672 F.3d 1335, 1349 (Fed. Cir. 2012)). Courts must "look to the words of the claims themselves . . . to define the scope of the patented invention." *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996). To adopt Bazooka's proposed construction would contravene the "bedrock principle" of patent law by improperly curtailing Nuhn's right to exclude as set forth in the claims of the patent. *Phillips*, 415 F.3d at 1312 (citations omitted). No reconstruction of "liquid manure pump configured to pump liquid manure" is warranted.

Finally, the PTAB expressly adopted "a pump with structure capable of pumping liquid with suspended solids" as its construction of "fluid pump for pumping liquid manure." To begin, the Court's original construction as "a fluid pump that pumps liquid manure" does not incorporate a method claim. The Court found, as the PTAB did, that this claim includes functional language that imposes a limitation to the claim, namely that the pump must be capable of pumping liquid manure. [ECF No. 279 at 17]. The PTAB's discussion in the *inter partes review* is instructive, noting that "a functional limitation covers all embodiments performing the recited function." *See Geneva Pharms., Inc. v. GlaxoSmithKline PLC*, 349 F.3d 1373, 1384 (Fed. Cir. 2003) (citing *Application of Swinehart*, 439 F.2d 210, 213 (C.C.P.A. 1971)).

Upon careful review, the PTAB's construction of this claim term is not materially inconsistent with the Court's interpretation in the claim construction order—"a fluid pump that pumps liquid manure" fundamentally describes "a pump with structure capable of pumping" liquid

manure. However, the PTAB's construction more precisely captures how a person of ordinary skill in the art would understand the term and would provide clearer guidance to the factfinder. *See Sulzer Textil A.G. v. Picanol N.V.*, 358 F.3d 1356, 1366 (Fed. Cir. 2004) (explaining that claim construction should provide the jury with the assistance it needs to "intelligently determine the questions presented"). The Court already construed "liquid manure" to mean "animal manure contained in a farm lagoon, which includes suspended solids." As such, it will not unnecessarily impart a different construction of that term within its construction of "fluid pump for pumping liquid manure." Accordingly, the Court modifies its construction of "fluid pump for pumping liquid manure" to mean "a pump with structure capable of pumping liquid manure."

## II. CONCLUSION

For the foregoing reasons, the Court affirms and modifies the constructions of the disputed claim terms as detailed above. Nuhn's motion is DENIED. [ECF No. 276]. Bazooka's motion is GRANTED in part and DENIED in part. [ECF No. 285].

IT IS SO ORDERED.

Dated this 21st day of May, 2025.

_____
STEPHANIE M. ROSE, CHIEF JUDGE
UNITED STATES DISTRICT COURT