# **<u>EXHIBIT B</u>**

**Fredrikson**

Fredrikson & Byron, P.A.
Attorneys and Advisors

60 South Sixth Street, Suite 1500
Minneapolis, MN 55402-4400
Main: 612.492.7000
fredlaw.com

April 11, 2025

**VIA EMAIL ONLY**

John Gilbertson & Josh Conley
Zarley Conley
580 Market Street, Suite 101
West Des Moines, IA 50266
jgilbertson@zarleyconley.com
jconley@zarleyconley.com

Re: ***Drake University v. Des Moines Area Community College Foundation, et al.*
   "Discovery Issues" Response Letter**

John & Josh:

This letter is in response to your letter dated April 7, 2025, captioned "Discovery Issues." Along with this letter, DMACC is serving supplemental responses to Drake's First Request for Production of Documents and First Interrogatories. Below is a timeline of events to ensure the record is clear regarding Drake's document requests, DMACC's responses and objections thereto, Drake's inaction, and DMACC's reasonable document production in light of Drake's requests.

- December 5, 2024: Drake served its First Request for Production of Documents on DMACC.

- January 6, 2025: DMACC served written responses to Drake's Requests.

    o DMACC asserted valid objections in its written discovery responses and offered to meet and confer on certain requests.

    o Specifically, in DMACC's Response to Request No. 1, DMACC asserted that Drake's request for "All DMACC's communications concerning the Rebrand" was overbroad. DMACC stated it was not currently producing documents responsive to the request based on its objections, but DMACC was "willing to meet and confer to discuss a reasonable scope for Request No. 1 and production of relevant communications pursuant to a mutually agreeable ESI protocol." Drake **never** requested to meet and confer.



April 11, 2025
Page 2

- - DMACC and DMACCF produced documents and communications responsive to Request Nos. 2-6 on a rolling basis, including document productions on the following days:

    - January 6, 2025: DMACCF000001 – DMACCF001288 and DMACC000466 – DMACC000472

    - January 21, 2025: DMACC000473 – DMACC000652

    - January 30, 2025: DMACCF001289 – DMACCF002139 and DMACC000653 – DMACC000660

  - Drake did not send a deficiency letter to DMACC nor request to meet and confer regarding a reasonable scope for Drake's Request No. 1 for all communications concerning the rebrand.

- March 4, 2025: The parties participated in a status conference to discuss the possibility of settlement.

  - On that call, counsel for DMACC represented that it had provided complete written responses to Drake's discovery requests and that it had not yet received a deficiency letter from Drake asking for supplemental responses or to meet and confer.

  - DMACC believed then and still currently believes it has produced the information and documents needed to engage in a meaningful and productive settlement conference.

- March 10, 2025: Counsel for Drake emailed counsel for DMACC.

  - This email identified Drake's alleged deficiencies in DMACC's discovery responses for the first time.

  - This email still did not request a meet and confer to discuss the scope of Request No. 1.

  - Drake's email stated that it would provide a formal deficiency letter if DMACC requests one.

  - Drake asked that DMACC respond by March 17, 2025.

- March 10, 2025: Counsel for DMACC responded to Drake's email.

  - DMACC requested a formal deficiency letter.

**Fredrikson**

April 11, 2025
Page 3

- o   DMACC informed Drake that—despite DMACC's asserted and unchallenged objections—DMACC conducted a search of emails for communications and documents responsive to Drake's overbroad Request No. 1.

- o   DMACC also informed Drake this search resulted in over 20,000 emails.

- o   DMACC informed Drake the results of the search would be produced "unless Drake would like to meet and confer regarding a reasonable scope for the request."

- o   Again, Drake did not request a meet and confer to narrow the scope of Request No. 1.

- March 14, 2025: Counsel for Drake responded to DMACC's email.

  - o   Drake stated it would provide a formal deficiency letter for DMACC.

  - o   Drake tried to misconstrued what counsel for DMACC said to the Court in the March 4, 2025, conference with Judge Jackson. DMACC's intent was to state it had provided full written responses to Drake's discovery requests (including asserting valid objections) and DMACC was not in receipt of any deficiency letters from Drake.

  - o   Drake pushed forward with its overbroad requests stating, "We have requested information—the scope of which is not seriously disputed"— despite DMACC's objections to Request No. 1 served over two months prior and Drake's failure to either narrow the scope of Request No. 1 or schedule a meet and confer to discuss reasonable search parameters.

  - o   Drake still did not provide a deficiency letter.

- March 17, 2025: Counsel for DMACC responded via email, reiterating its position regarding the status of DMACC's discovery.

  - o   DMACC explained that "Drake's failure to engage in discovery delayed DMACC's email production as DMACC was waiting for Drake to define a reasonable scope for requested communications, which Drake never did.  Nevertheless, to try to avoid the expense and hassle of a discovery dispute, DMACC conducted a reasonable search for responsive email communications and intends to produce those emails this week.  The volume is large due to the unreasonable breadth of Drake's requests for which Drake never attempted to meet and confer.  Thus, while DMACC does not believe those emails are needed for the settlement conference



April 11, 2025  
Page 4

> and will not impact the parties' ability to discuss a resolution of this dispute, Drake will soon have those documents in hand."

- o The entire email chain is attached here as Exhibit A, which includes DMACC's full response to Drake's mischaracterization of DMACC's statements in the March 4, 2025, status conference.

- o Drake did not respond to this email.

- March 21, 2025: DMACC produced its non-privileged, pre-litigation email communications in response to Drake's overbroad Request No. 1 for all communications concerning the rebrand. *See* DMACC000665 – DMACC058261.

    - o DMACC searched the inboxes of individuals identified in Drake's Interrogatory No. 1 plus Vice President of Student Affairs Erica Spiller. Drake used the following search terms:

        - Reboot
        - Rebrand*
        - Re-brand*
        - Corporate w/2 logo
        - "new D"
        - "new logo"
        - "logo policy"
        - Policy w/4 branding
        - Brand w/2 guide*
        - "Soft launch"
        - Drake* w/2 (logo* OR brand*)
        - Drake* w/3 Guide*
        - "New DMACC branding"
        - "new brand*" AND NOT "brand new"



April 11, 2025
Page 5

- o The search terms were run on emails dated January 1, 2022, to the time of the search.

- o The search terms were designed to find documents responsive to the unreasonably broad request for "[a]ll DMACC's communications concerning the Rebrand" and hit on over 26,000 documents, resulting in a document set of over 112,000 with the inclusion of complete email families with attachments.

- o DMACC conducted reasonable searches for irrelevant documents, such as newsletters, email blasts, and the like in order to remove such documents from DMACC's production resulting in a production set much smaller than the original search hits with families.

- April 3, 2025: DMACC produced its non-privileged, post-litigation email communications using the same search terms and processes as the pre-litigation production. *See* DMACC058262 – DMACC073622.

- For both email productions on March 21 and April 3, potentially privileged documents were removed and are still being reviewed by DMACC to confirm privilege and responsiveness. DMACC will produce any non-privileged, responsive documents in this set and log its pre-litigation, privileged communications.

- April 7, 2025: Drake sent DMACC its "Discovery Issues" letter, specifically complaining about the number of documents produced and the confidentiality designations assigned to those documents.

Aside from Drake's recent letter on April 7, Drake has not provided DMACC with a formal deficiency letter on any other issues as requested by DMACC in emails sent on March 10 and March 17, 2025. The meet and confer scheduled on April 9, 2025, was requested by DMACC to discuss Drake's discovery deficiencies. Drake has yet to request a meet and confer apart from the meet and confer requested and scheduled by DMACC to discuss Drake's deficiencies, which we understand Drake is intending to address within the next week or two.

I. **Alleged "Irrelevant Production"**

On March 10, 2025, DMACC clearly warned Drake about the volume of documents responsive to their request for "all communications concerning the rebrand." Drake did not heed this warning. On March 14, 2025, Drake refused to consider narrowing the scope of the request when it stated, "We have requested information—the scope of which is not seriously disputed"

April 11, 2025
Page 6



even though DMACC had expressed serious concerns about the scope of the requested information.

      DMACC searched the email boxes of individuals responsible for the creation and implementation of the rebrand plus Erica Spiller through the use of reasonable search terms. The use of reasonable search terms is standard practice in modern e-discovery. *See Beganovic v. Tyson Fresh Meats, Inc.*, No. 22-CV-2052-LTS-KEM, 2023 WL 9503379, at *1 (N.D. Iowa May 12, 2023) (holding in the absence of an ESI protocol, parties may use reasonable search terms when conducting a reasonable inquiry for responsive information). The search terms were carefully crafted to produce documents responsive to Drake's overbroad Request No. 1. "Courts generally agree that the producing party is best situated to evaluate the various options for reviewing and producing its own ESI . . . ." *Garner v. Amazon.com, Inc.*, No. 2:21-CV-00750-RSL, 2023 WL 3568055, at *2 (W.D. Wash. May 19, 2023) (citations omitted); *see also Deal Genius, LLC v. O2 Cool, LLC*, No. 21 C 2046, 2022 WL 874690, at *3 (N.D. IL March 24, 2022) ("The court cannot – and ought not – take over the selection of search terms and conjunctive terms that might assist in locating pertinent documents. That is counsels' job, not the court's."). This is not considered a "document dump" nor does it provide a basis for any extension of the settlement conference. *See Burke v. Lippert Components Inc.*, No. 21-CV-3020-CJW-KEM, 2022 WL 17978806, at *2 (N.D. Iowa Dec. 28, 2022), *aff'd*, 112 F.4th 574 (8th Cir. 2024) (holding a party serving more than 240,000 documents of ESI on the discovery deadline was not a basis for extending discovery and expert deadlines and considered that the other party was "as much to blame for the delay in receiving ESI" in this decision).

      Rule 34 of the Federal Rules of Civil Procedure does not require DMACC to identify by Bates number all documents that are responsive to each request in DMACC's written discovery responses. DMACC produced emails and their attachments in the form in which they are kept in the ordinary course of business, including meta data. This is far more than what Drake has done in discovery.

      DMACC carefully crafted search terms based on its understanding of the request for all communications "concerning the rebrand." DMACC employed e-discovery tools and reasonable searches to cull down the initial hits to the productions served on March 21 and April 3. To the extent your firm believes you will be "unable to properly advise [your] client leading up to and during the upcoming settlement conference," Drake's counsel was made aware in January that its request for all communications "concerning the rebrand" was overbroad. It was aware as early as March 10, 2025, that its overbroad request was going to result in a voluminous production. To the extent your firm believes it is unable to properly advise your client, that is a problem of your own making solely due to your firm's lack of diligence and failure to engage in meaningful discovery communications.

## II.   <u>Alleged Confidentiality Designation "Abuse"</u>

      All documents produced by Defendants before March 21 were reviewed document by document and were designated for confidentiality in accordance with the Protective Order. If



April 11, 2025
Page 7

there are documents in those productions that you believe are improperly designated, please identify them by bates number so we can consider your position.

     Given the large volume of emails and attachments that hit on the search terms narrowly tailored to find documents responsive to Drake's overbroad request for all communications concerning the rebrand, it was not reasonable or proportional to the needs of the case for DMACC to review and designate the more than 100,000 documents found in the email searches individually. *See* Fed. R. Civ. P. 26(b)(1). Thus, many of the remaining documents produced on March 21 and April 3 were batch coded "Confidential Attorneys' Eyes Only" to avoid the inadvertent disclosure of DMACC's highly confidential marketing strategies and other competitively sensitive information to Drake. It is reasonable for DMACC to batch designate in this scenario. *See Maint. Enters., LLC v. Orascom E&C USA, Inc.*, No. 316CV00014SMRCFB, 2017 WL 11703414, at *2 (S.D. Iowa Dec. 8, 2017) ("However, in light of the need to complete discovery soon OEC may blanket designate the documents contained in the new ESI search. . . . Given the size of the documents generated by the new set of ESI search terms and the potential expense on OEC in individually reviewing them, the Court finds that other circumstances would make an award of expenses unjust.")

     DMACC's March 21 and April 3 productions were a reasonable compromise to help both parties—Drake received all non-privileged communications concerning the rebrand, as requested, while DMACC continued to protect the highly confidential information contained within that production. If DMACC had simply stood by its objections to Request No. 1, Drake would not have received any of those communications unless and until the parties agreed on a narrower, reasonable scope for Request No. 1 or Drake succeeded on a motion to compel. Either way, considering that Drake never even attempted to meet and confer despite DMACC informing Drake in January that it was not producing documents in response to Request No. 1, Drake was unlikely to have any responsive email communications in advance of the settlement conference if DMACC had refused to produce documents based on its unchallenged objections. DMACC's actions were an attempt to prevent discovery disputes, not create them.

     Nevertheless, DMACC would like to avoid bothering the Court given its admonition regarding the litigiousness of this case—particularly with respect to Drake's conduct. While DMACC questions the need for Drake to review any documents in order to evaluate DMACC's proposed new logos for settlement, DMACC agrees that Drake may treat the documents in DMACC's March 21 and April 3 productions as "Confidential" under the Protective Order—**except for the documents listed in Exhibit B, which remain designated as "Confidential Attorneys' Eyes Only" under the Protective Order.**



April 11, 2025
Page 8

Sincerely,

Laura L. Myers
**Direct Dial:** 612.492.7295
**Email:** lmyers@fredlaw.com