**IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF IOWA
CENTRAL DIVISION**

| | |
|---|---|
| DRAKE UNIVERSITY,<br><br>       Plaintiff,<br><br>vs.<br><br>DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE,<br><br>       Defendants. | Case No. 4:24-CV-00227-SMR-SBJ |
| DES MOINES AREA COMMUNITY COLLEGE FOUNDATION and DES MOINES AREA COMMUNITY COLLEGE,<br><br>       Counterclaim Plaintiffs,<br><br>vs.<br><br>DRAKE UNIVERSITY,<br><br>       Counterclaim Defendant. | <u>**REDACTED**</u><br><br>**DEFENDANTS AND COUNTERCLAIM PLAINTIFFS' BRIEF IN RESISTANCE TO PLAINTIFF AND COUNTERCLAIM DEFENDANT'S MOTION FOR REVISION OF ORDER STAYING PROCEEDINGS PENDING APPELLATE DECISION PURSUANT TO FED. R. CIV. P. 54(b) OR, IN THE ALTERNATIVE, MOTION TO LIFT STAY** |

## TABLE OF CONTENTS

**Page(s)**

I.    INTRODUCTION ........................................................................................................... 1

II.    DRAKE'S MOTION FOR REVISION IS UNTIMELY AND IMPROPER. ............. 1

    A.    Drake's "Motion for Revision" is More Accurately a Motion for Reconsideration, Which is Untimely Under the Local Rules. .......................................................... 1

    B.    Drake's Motion for Revision is Improper Under Rule 54(b) ................................ 3

        1.    Drake's Motion for Revision is Improper Under Rule 54(b) Because No Claims were Adjudicated. .......................................................................... 3

        2.    Drake's Motion Fails to Identify *any* Error of Law, Let Alone One Supporting Reconsideration Under Rule 54(b). ........................................ 4

III.    DRAKE'S ALTERNATIVE REQUEST FOR RELIEF IS SATISFIED BY THE COURT'S ORDER GRANTING THE STAY PENDING AN APPELLATE DECISION ..................................................................................................................... 8

IV.    DRAKE'S MOTION FOR REVISION IS AN IMPROPER ATTEMPT TO GARNER PUBLIC SUPPORT VIA IRRELEVANT EMAILS. ................................ 11

    A.    Drake Knowingly Misrepresented DMACC's Basis for its Motion to Stay. ........ 12

    B.    The Documents Drake Submitted as Exhibits in its Motion for Relief and Cited in its Motion for Revision are Properly Filed Under Seal Pursuant to the Stipulated Protective Order in this Case. .............................................................................. 13

V.    STATUS OF DISCOVERY AND DOCUMENT PRODUCTION ............................. 15

VI.    CONCLUSION. ........................................................................................................... 16

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*,
    9 F.4th 768 (8th Cir. 2021) ................................................................12

*Douglas v. New York State Adirondack Park Agency*,
    No. 8:10-CV-0299, 2012 WL 5364344 (N.D.N.Y. Oct. 30, 2012) ..........................................3

*G2 Database Mktg., Inc. v. Stein*,
    No. 418CV00331JAJCFB, 2020 WL 6484788 (S.D. Iowa Oct. 15, 2020).............................1

*Hagerman v. Yukon Energy Corp.*,
    839 F.2d 407 (8th Cir. 1988) ................................................................4

*Johnson v. S.C. Johnson & Son, Inc.*,
    No. 414CV00203SMRCFB, 2015 WL 11112559 (S.D. Iowa Jan. 28, 2015).........................2

*Ohlensehlen v. Univ. of Iowa*,
    No. 320CV00080SMRSBJ, 2021 WL 6689532 (S.D. Iowa Apr. 14, 2021) ........................3, 4

*Principal Life Ins. Co. v. Caremark PCS Health, L.L.C.*,
    No. 4:14-CV-00077-JEG, 2014 WL 12601041 (S.D. Iowa Dec. 24, 2014)...........................7

*Woody v. Jasper Cnty. Animal Rescue*,
    436 F. Supp. 3d 1239 (S.D. Iowa 2020) ...........................................................4, 7

**Other Authorities**

Local Rule 7(e) ................................................................................2, 5, 7

Local Rule 72A ...............................................................................2, 5, 7

Rule 6(b) .........................................................................................4

Rule 54(b) ...............................................................................1, 3, 4, 8

Rule 60(b) .......................................................................................1

Rule 65(c) ........................................................................................4

Rule 65(d) ........................................................................................4

## I.    INTRODUCTION

After voluntarily withdrawing a nearly identical motion over one month ago (and with no new prejudice or error identified), Drake again brings a meritless motion for reconsideration of the Court's order to stay the litigation pending the forthcoming decision of the Eighth Circuit (the "Order," ECF 169). DMACC advised Drake that its prior attempt was baseless under Rule 60(b) during the parties' first meet and confer. Drake filed its prior motion anyway, forcing DMACC to spend hours researching and briefing an opposition to the motion only for Drake to later withdraw it. Rather than accept the obvious—that Drake missed several opportunities to bring a timely motion for reconsideration and, regardless, Drake cannot show it is prejudiced by the stay—Drake recycled its motion, substituting Rule 60(b) with Rule 54(b). Drake still cannot meet the standard for Rule 54(b). The Court's order, finding that a stay "weighs in favor of 'secur[ing] the just, speedy, and inexpensive determination' by avoiding potentially unnecessary time, effort and expense by the parties, counsel, and the Court on matters to be addressed by the Eighth Circuit," (ECF 169 at 2 (citing Fed. R. Civ. P. 1)), was legally sound and contains no errors of law. For the reasons below and as previously set forth in DMACC's Resistance to Drake's 60(b) motion, DMACC respectfully requests that the Court deny Drake's Motion for Revision of Order Pursuant to Federal Rule of Civil Procedure 54(b) ("Motion for Revision").

## II.    DRAKE'S MOTION FOR REVISION IS UNTIMELY AND IMPROPER.

### A.    Drake's "Motion for Revision" is More Accurately a Motion for Reconsideration, Which is Untimely Under the Local Rules.

Drake's refiled "Motion for Revision" should still be treated as a motion for reconsideration. When a party brings a motion for reconsideration under a different title—as here—the court treats it as a motion for reconsideration. *See G2 Database Mktg., Inc. v. Stein*, No. 418CV00331JAJCFB, 2020 WL 6484788, at *2 (S.D. Iowa Oct. 15, 2020) ("Stein's Motion For

1

Clarification is, to a substantial degree, a motion for reconsideration and alteration, not just clarification, of the court's Order On MSJs, because Stein's Motion seeks additional and different results."); *Johnson v. S.C. Johnson & Son, Inc.*, No. 414CV00203SMRCFB, 2015 WL 11112559, at *6 (S.D. Iowa Jan. 28, 2015) ("Defendant concedes the Court may treat Plaintiff's Motion to Amend as a motion to reconsider.").

The Southern District of Iowa's Local Rules provide two pertinent mechanisms for a party to bring a motion for reconsideration of a non-final order. First, Drake could have moved for reconsideration under Local Rule 7(e). Local Rule 7(e) addresses the present situation where, "if a motion appears to be noncontroversial, or if circumstances otherwise warrant, the court may elect to rule on a motion without waiting for a resistance or response. Any party may, within 7 days after any such order is entered, file a motion for reconsideration of the order." L.R. 7(e). Local Rule 7(e) was the proper basis for Drake to bring its Motion for Revision—it did not. It waited 16 days after the Court's order to file its (first) motion for reconsideration, which Drake then withdrew. This iteration of its motion for reconsideration falls two months after the Court's Order, well outside of the deadline to move under L.R. 7(e)

Drake also could have moved under Local Rule 72A. Local Rule 72A provides "[a] party who objects to or seeks review or reconsideration of either a magistrate judge's order on a pretrial matter or a magistrate judge's report and recommendation must file specific, written objections to the order or report and recommendation within 14 days after service of the order or report and recommendation." Here again, Drake's motion(s)—filed 16 days and 2 months after the Order— would be untimely. Drake missed the deadlines under either rule without justification. DMACC raised Drake's untimeliness in DMACC's prior opposition. Nonetheless, Drake's recycled motion

fails to even mention these Local Rules in its refiled motion—let alone explain its noncompliance with them.  Drake's refiled motion should still be denied as untimely under the local rules.

**B.     Drake's Motion for Revision is Improper Under Rule 54(b)**

      1.     Drake's Motion for Revision is Improper Under Rule 54(b) Because No Claims were Adjudicated.

Should the Court address the merits, it should still deny Drake's motion. Rule 54(b), in relevant part, provides "any order or other decision, however designated, that ***adjudicates fewer than all the claims*** or the rights and liabilities of fewer than all the parties does not end the action as to any of the claims or parties and may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." (emphasis added).  An order to stay litigation is not an order which adjudicates a claim, right, or liability.  DMACC can find no authority where this court or the Eighth Circuit reconsidered an order to stay under Rule 54(b). However, the court has noted that preliminary injunction bonds (which, analogous to motions to stay, do not adjudicate claims) should not be reconsidered under Rule 54(b).  *See Ohlensehlen v. Univ. of Iowa*, No. 320CV00080SMRSBJ, 2021 WL 6689532, at n.2 (S.D. Iowa Apr. 14, 2021) (holding that neither 54(b) nor 60(b) applies to a motion to reconsider a preliminary injunction bond order stating, "The Court's preliminary injunction order neither adjudicated any of Plaintiffs' claims nor constituted a final judgment.").  In instances such as this—where the motion does not comport with any applicable Rule of Civil Procedure—the parties must rely on the local rules. *See Douglas v. New York State Adirondack Park Agency*, No. 8:10-CV-0299 GTS/RFT, 2012 WL 5364344, at *5 (N.D.N.Y. Oct. 30, 2012) ("Rather, in such cases, reconsideration is properly sought, in this District, under Local Rule 7.1(g)."). As discussed in Section II.A, Drake missed its opportunity to file its motion pursuant to the local rules.

Despite Drake's characterizations, *Ohlensehlen* is ***not*** contradictory to the Court's orders in the present case. DMACC's motion for clarification and motion to increase the bond were not under Rule 54(b). *See* ECF 97 (moving under Rule 6(b) for an extension of time and under Rule 65(d) for a motion to clarify); ECF 111 (moving under Rule 65(c) and/or the court's inherent authority to increase the preliminary injunction bond). Drake cannot change the bases of DMACC's prior motions, let alone do so to excuse Drake's own unjustified delay in bringing its untimely motion.

2.    Drake's Motion Fails to Identify *any* Error of Law, Let Alone One Supporting Reconsideration Under Rule 54(b).

Even if the Court decides Rule 54(b) is the proper mechanism to reconsider a stay motion, the Court did not err in entering the stay, and Drake could have raised its arguments during the pendency of the stay motion:

> It is generally held that a court may amend or reconsider any ruling under Rule 54(b) to correct any 'clearly' or 'manifestly' erroneous findings of facts or conclusions of law. A motion to reconsider under Rule 54(b), however, *may not serve as a vehicle to identify facts or raise legal arguments which could have been, but were not, raised or adduced during the pendency of the motion of which reconsideration was sought.*

*Woody v. Jasper Cnty. Animal Rescue*, 436 F. Supp. 3d 1239, 1240–41 (S.D. Iowa 2020) (quoting *Jones v. Casey's Gen. Stores*, 551 F. Supp. 2d 848, 854–55 (S.D. Iowa 2008) (citations omitted)) (emphasis added). *See also Hagerman v. Yukon Energy Corp.*, 839 F.2d 407, 414 (8th Cir. 1988) ("Motions for reconsideration serve a limited function: to correct manifest errors of law or fact or to present newly discovered evidence. Such motions cannot in any case be employed as a vehicle to introduce new evidence that could have been adduced during pendency of the summary judgment motion. . . . Nor should a motion for reconsideration serve as the occasion to tender new legal theories for the first time."). Here, Drake has identified no (real) error, admits there is no

new evidence, and its untimely arguments should have been raised during the pendency of the stay

motion (i.e., via LR 7(e) or 72A).

         (a)    <u>The Court's Stay Order Correctly Noted the Appeals Will Simplify the Case and Conserve Resources.</u>

The Court did not err.  Ordering a stay pending the outcome of cross-appeals appeals is

hardly a manifest error of law or fact.  Drake argues the Court erred because, in Drake's view, the

appeals will not impact this case. Disagreement over the impact of the appeal is not legal error;

nor is it accurate in this case, as the appeals will provide guidance on outstanding issues in the

District Court case.

*First*, the Court independently concluded that a stay was warranted because, "[f]rom the

Court's perspective, the resolution of the matters appealed to the Eighth Circuit will have a

significant impact on the claims and defenses at issue in this case."  (ECF 169 at 2).  The parties

and the Court agree that the "authority for this Court to stay proceedings is incidental to the power

inherent in every court to control the disposition of the causes on its docket with economy of time

and effort for itself, for counsel, and for litigants."  (*Id.*)  The Court correctly determined that the

matters central to the appeal will have a significant impact on the case and properly exercised its

discretion to stay the litigation pending the outcome of the cross-appeals.  This alone is enough to

justify the Court's Order granting the stay.

*Second,* while the parties agree that the issues on appeal are not dispositive in the District

Court litigation, the Eighth Circuit decision will both clarify and simplify the litigation in the

District Court.[1]  The preliminary issue of whether Drake can establish common law trademark

---

[1] DMACC never stated that the appeal is dispositive of Drake's trademark rights, nor did it "incorrectly represent[] to the Court that the appeal will simplify or eliminate the proceedings before this Court."  (ECF 182 at 5).  Instead, DMACC stated the Eight Circuit's decision "will simplify—or possibly eliminate—issues for trial."  (ECF 167-1 at 2).  This is because the appeals

rights is fully briefed before the Eighth Circuit. A decision from the Eighth Circuit on this issue will benefit both the parties and the Court in the district court litigation because the Eighth Circuit will address Drake's ability to establish its common law trademark rights in an amorphous "Vintage D."[2] The Eighth Circuit will likely discuss whether the evidence Drake presented at the preliminary injunction hearing was sufficient to establish a likelihood of success on the merits and warrant the preliminary injunction.

In response, Drake argues it has now "engaged in the review of its own records that date back over a century and could not have been reviewed in full before seeking preliminary relief." *Id.*[3] However, in the ***ten months*** since the preliminary injunction hearing, Drake has produced little to no evidence of a standalone, block-style "D" used in commerce within the last 20 years. Contrary to Drake's suggestion,[4] the state of the evidence regarding Drake's current, continuous use of a standalone, block-style "D" stands essentially as it was at the time Drake sought an injunction. Despite its lack of production, Drake still argues that "an appellate decision on the sufficiency of Drake's evidence early on in this litigation will have no impact on a trial or dispositive motions before this Court." (ECF 182 at 6).[5] Should DMACC win on appeal because

---

are targeted at the "scope and enforceability of Drake's alleged common law trademark rights." (*Id.*)

[2] Drake's Motion for Revision, on the other hand, is focused on Drake's recent review of what Drake calls DMACC's intent to confuse the public vis-à-vis Drake's registered trademarks. This type of evidence could arguably be related to proving the likelihood of confusion element of trademark infringement—something the Court has already said does not exist with respect to Drake's ***registered*** trademarks.

[3] As the Plaintiff, who chose the timing of the suit (and has unfettered access to its own records), it is unclear why this was not done before preliminary relief was sought.

[4] *See infra* Section V.

[5] Drake's arguments about the Eighth Circuit's impact are incorrect. Should Drake win on appeal, Drake is not entitled to the outright victory it claims. Instead, the Eighth Circuit will likely say Drake appears likely to be able to show it has common law rights in a block-style "D." Drake will

Drake's evidence fails to establish common law trademark rights, Drake will need to provide evidence that those rights exist during discovery. Thus, the Eighth Circuit's assessment of that evidence will certainly impact dispositive motions, and whether Drake can survive summary judgment or trial.

   (b) <u>Drake's Motion Rehashes Arguments Drake Could Have Made Months Ago, and Chose Not to Raise.</u>

  Regarding Drake's complaint that it is harmed by the stay: that argument is both without merit and something Drake should have made during the pendency of the stay motion. Raising it now is procedurally improper. *See, e.g.*, *Jasper Cnty. Animal Rescue*, 436 F. Supp. 3d 1239 (denying Plaintiff's 54(b) motion holding "Plaintiffs do no more in this new motion than present arguments that they could have, but did not, previously advance in support of their first Motion to Remand. They have not identified any manifest error of law or fact, nor do they present newly discovered evidence."); *Principal Life Ins. Co. v. Caremark PCS Health, L.L.C.*, No. 4:14-CV-00077-JEG, 2014 WL 12601041, at *4 (S.D. Iowa Dec. 24, 2014) (denying Plaintiff's 54(b) motion for reconsideration, holding "[a] motion for reconsideration should not be used simply to attempt to present more persuasive legal arguments. Even if the Court were to consider them, Plaintiffs' newly presented arguments do not change the outcome." (citation omitted)). Drake *had* the opportunity to raise these arguments. As noted previously, had Drake wanted to challenge the stay, it could have moved under *either* LR 7(e) or 72A. Instead, Drake waited two months to file the present motion. Regardless, the preliminary injunction that Drake sought is in place. DMACC took down the block-style "D's" that Drake made the basis of its Complaint and Preliminary Injunction motion. Drake is not harmed; it simply wants to push forward with this litigation. Drake

___

still need to prove these rights by providing additional evidence. The appeal will likely clarify the amount and type of evidence required to make that showing.

missed its opportunity to raise these arguments previously and fails to say why it did not raise these arguments at the proper time. Drake's Motion for Revision under Rule 54(b) is improper and should be denied.

## III.    DRAKE'S ALTERNATIVE REQUEST FOR RELIEF IS SATISFIED BY THE COURT'S ORDER GRANTING THE STAY PENDING AN APPELLATE DECISION

Drake's motion alternatively requests the Court clarify its order granting the stay, specifically requesting the Court articulate 1) how the pending appeals will clarify substantive issues in the district court litigation and 2) how the stay will not unfairly burden Drake. DMACC has already demonstrated (as this Court has held) that the pending appeals will simplify the case. *See supra* Section II.B.a.  DMACC is not aware of any support for Drake's request that the Court amend its Order "to articulate . . . how a stay will not unfairly burden Drake under the circumstances." Regardless, Drake will not suffer any undue prejudice or be disadvantaged by a stay. (ECF 182 at 2).  It bears repeating: ***Drake won a preliminary injunction. The status quo is the relief Drake seeks in this litigation.***  Drake simply wants to use confidential materials from this case to push its case in the press—a wholly improper purpose.  Drake's unwillingness to wait the year Drake estimates the appeal will take,[6] while it has a preliminary injunction granted in its favor, is not a cognizable prejudice.  Drake cites no cases demonstrating as much.

Despite this, Drake argues it "should be entitled to act on [the allegedly compelling] evidence in furtherance of its case."  (ECF 182 at 10).  These documents do not support denying DMACC's motion to stay.  This Court has already recognized DMACC's rebrand did not create a likelihood of confusion with any federally *registered* Drake trademark, including Drake's only registered standalone "D" trademark.  (ECF 87 at 9 ("[T]here is no likelihood of confusion between

---

[6] Notably, Drake's counsel is not available for oral argument in the appeal until November.

DMACC's new logo and those registered marks.")).   In all these "compelling" documents,
DMACC is comparing its rebrand logo to Drake's *registered* trademarks—"Ds" with a curved
back—which are irrelevant to the remaining issues surrounding Drake's common law rights in a
block-style or "Vintage" "D."  (*See* ECF 175-2, 175-3).





Nowhere in *any* email produced by DMACC did DMACC compare its rebrand logo to
Drake's alleged "Vintage D." This is because DMACC was unaware Drake believed it had
common law rights in a "Vintage D."  These documents are merely a distraction from the true
issue in this case: Drake's ability to establish *common law* trademark rights in a "Vintage D" and

whether DMACC's new logo infringes those alleged *common law* rights.  Drake's inability to act on these unrelated documents does not prejudice Drake; nor does it provide a basis for the Court to correct a manifest error of fact or law warranting the Court to lift the stay.

Drake makes several other arguments for how it *could* be prejudiced by a stay.  These include changes in DMACC's personnel, the possibility that documents may be lost through retention policies, and the risk Drake faces if the preliminary injunction is overturned.  None of these arguments demonstrate undue burden, undue prejudice, or provide any basis for the Court to lift the stay.

First, although both Rob Denson and Todd Jones plan to retire at the end of the calendar year, both individuals intend to be available throughout the duration of the litigation.[7]  The Eighth Circuit decision is forthcoming—the appeal and cross appeal are fully briefed and only awaiting the scheduling of oral argument and final decision.  There is no legitimate concern that either Denson or Jones will be unable to be deposed in this case.

Second, because the litigation has been ongoing for nearly a year, both parties should have litigation hold policies in place, including suspension of routine document destruction practices.  DMACC has imposed such a hold.  Notably, Drake's concern over this—calling special attention to issues with email retention—only prejudices DMACC.  DMACC has produced approximately 20,000 emails in this litigation and believes its email production is complete.  Drake, on the other hand, has produced only 57 emails. If document retention is a genuine issue in this case, it is DMACC who should be concerned—not Drake.

---

[7] Drake noted concerns regarding Denson's upcoming retirement in the parties' meet and confer. DMACC suggested alternative remedies for this concern, including Drake deposing Denson during the stay. Drake did not pursue any alternative remedies for this issue, suggesting this is not a genuine concern for Drake.

Third, Drake identifies the risk it faces if the Eighth Circuit overturns the preliminary injunction, including that Drake may lose its bond or DMACC may resume use of its previously-enjoined logo.  However, Drake faces this risk regardless of whether the litigation is stayed.  The Eighth Circuit will likely issue an opinion before the District Court case reaches a final resolution. Drake has already moved the Court to extend its expert deadline,[8] which the Court acknowledged "will require the resetting of the current trial date."  (ECF 169 at 3).  The trial originally set at the outset of the case has been cancelled.  (*See* ECF 170).  Both parties have significant outstanding discovery as no depositions have been taken and both parties identified the need for more written discovery.  Therefore, it is very likely the Eighth Circuit will issue an order on the cross-appeals prior to the parties reaching a final resolution in the district court litigation, even if the stay is lifted immediately.

Drake may wish to proceed with the litigation.  But none of the arguments Drake raised (even if they were properly before the Court) demonstrate undue prejudice or provide a basis for the Court to lift the stay.

## IV.    DRAKE'S MOTION FOR REVISION IS AN IMPROPER ATTEMPT TO GARNER PUBLIC SUPPORT VIA IRRELEVANT EMAILS.

Given the extensive press coverage in this matter, DMACC believes both Drake's Motion for Relief and Motion for Revision was brought, at least in part, as an improper attempt to bring public attention back to the litigation.  This is confirmed by Drake's counsels' statements, Drake's continued misrepresentations of the motivation for DMACC's motion to stay, and Drake's effort to de-designate documents irrelevant to Drake's common law trademarks simply because Drake wishes to litigate this case through the media.  This is an improper use of a court filing.  While

---

[8] Drake's expert deadline has since passed. If the stay is lifted and the schedule resumes as previously entered, Drake will have no experts in this litigation.

public access to judicial proceedings is important, the public's interest in judicial transparency has

"'bowed before the power of a court to insure that its records are not used to gratify private spite,'

to 'promote public scandal,' to serve 'as reservoirs of libelous statements for press consumption,'

or to serve 'as sources of business information that might harm a litigant's competitive standing.'"

*In re Bair Hugger Forced Air Warming Devices Prods. Liab. Litig.*, 9 F.4th 768, 791 (8th Cir.

2021) (quoting *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978)).

During the parties' first meet and confer in June, Drake's counsel, John Gilbertson, noted

that part of the reason for its Motion for Relief was to "embarrass" DMACC by putting its internal

marketing strategy in the public eye. (*See* Ex. A; Decl. of R. Johnson at ¶¶ 3–5). During the

parties' second meet and confer in August, counsel for DMACC confirmed multiple times that

there had been no change in circumstances since the stay was granted in May. (Decl. of R. Johnson

at ¶¶ 7–8). There is no reason for Drake to bring this motion *again* other than as part of a stated

hope to (wrongfully) embarrass DMACC on irrelevant issues. The Court should alternatively deny

Drake's motion as an improper use of the court system.

### A.   Drake Knowingly Misrepresented DMACC's Basis for its Motion to Stay.

Drake misrepresents DMACC's basis for bringing its motion to stay. Drake argues

DMACC "only moved to stay once it became aware of damaging evidence." (*See* ECF 182 at 9).

Drake's speculation that DMACC was unaware of these documents until May 21st is unfounded.

DMACC was aware of these documents well before April 3—when the documents were produced

to Drake—as it astutely reviewed all of its documents discussing Drake or its trademarks prior to

producing the documents to Drake.[9]

---

[9] While DMACC was unable to review *all* the documents it produced to Drake prior to its productions on March 21 and April 3, it was able to locate all documents containing the word "Drake" through a simple search for the word "Drake." These documents were individually

Worse, DMACC informed Drake it was wrong on the timeline and the facts in its prior resistance. (*See* ECF 179 at 14–15). Drake chose to double down on its misrepresentation in the present motion.

Again, DMACC's motion to stay was prompted by the May 14 settlement conference—a fact of which Drake is well aware. In the parties' email exchange in ECF 167-5, DMACC advised Drake on May 16, 2025 that it would be in "all parties' interests to stay the case until the Eighth Circuit rules on the parties' cross-appeals . . . ." (ECF 167-5 at 3). This email exchange took place *before* Drake's May 21, 2025 letter. Drake's continued assertion that DMACC's motion to stay the case was prompted by DMACC becoming "aware of damaging evidence" is baseless. (*See* ECF 182 at 8–9).[10] Drake knows this is baseless. Drake's purpose in bringing this motion appears to have less to do with any harm it allegedly suffered, and more to do with its expressed desire to "embarrass" DMACC in the public's eye with legally irrelevant emails. That's not the purpose of the Court system, and Drake's statements should be disregarded.

**B.** **The Documents Drake Submitted as Exhibits in its Motion for Relief and Cited in its Motion for Revision are Properly Filed Under Seal Pursuant to the Stipulated Protective Order in this Case.**

In its motion, Drake argues DMACC "abused its ability to restrict disclosure of documents under the protective order entered in this case, labeling approximately 96% of its 73,000 pages as

---

reviewed by DMACC's counsel prior to production. <u>Drake's continued allegations that DMACC was unaware of these documents are unfounded and wrong.</u>

[10] As evidence for DMACC's supposed improper motive for its Motion to Stay, Drake argues DMACC should have brought its motion to stay at some earlier point in the litigation. Rather than moving for a stay, DMACC engaged in good faith settlement negotiations with Drake. In a good faith effort to make the settlement conference successful, DMACC substantially completed its document production over a month in advance of the conference. It was during the May 14th settlement conference that the parties' fundamental disagreement over the applicable trademark law came to light. At this point, DMACC decided a stay would be prudent for both the parties and the Court.

confidential or attorney's eyes only, primarily on the basis that they consist of 'internal communications. Drake has requested that DMACC remove its confidentiality designations on several occasions, but DMACC refuses to do so to any meaningful degree." ECF 182 at 8 n. 5. This, too, is a mischaracterization of the facts aimed at making DMACC look bad.

Drake served a very broad discovery request. (Ex. B at 1 ("All DMACC's communications concerning the rebrand.")). Unsurprisingly, this broad request returned a lot of emails and attachments. DMACC repeatedly asked Drake to narrow those requests. (*See* Ex. B). Drake did not. (*Id.*). DMACC warned Drake that this would result in a large production, including with many irrelevant documents. (*Id.*). Drake did not respond. DMACC proceeded with its production under Drake's broad requests, and produced 19,776 documents, of which 12,029 are emails. DMACC mass-coded these documents under the protective order because it was unduly burdensome to review each document for the proper designation. And, when Drake raised de-designation with DMACC, DMACC reviewed Drake's request, and provided a detailed response with its basis for designations—and even de-designated documents. As for the documents still marked under the protective order, DMACC has provided Drake with authority for designating these documents as confidential. (*See* Ex. C at 13–15). Most are internal emails or drafts of other documents pertaining to confidential branding and marketing strategies. DMACC does not publicly share that type of information and properly designated them as confidential under the protective order. These documents are properly designated under the protective order.

Unable to take real issue with DMACC's proper use of the protective order, Drake has resorted to taking liberties in describing the nature of the documents in its Motion for Revision, regardless of what is actually contained within the documents or how the documents will impact the litigation in the future. Regardless of Drake's selective and improper description of the

14

documents, the actual content shows  the documents are properly designated pursuant to the protective order and must remain under seal.

## V.    STATUS OF DISCOVERY AND DOCUMENT PRODUCTION

Drake's Motion for Revision calls attention to the document production in this case.  While part of DMACC's purpose in moving for a stay was to avoid or minimize unnecessary litigation of discovery issues, DMACC must now address the document production issues raised by Drake in its Motion for Revision.

Drake states that "[s]ince DMACC was enjoined, the parties have exchanged thousands of documents."  (ECF 182 at 6).  A more accurate statement would be that *DMACC* has produced thousands of documents; Drake has produced hundreds.[11]  And, while Drake takes issue with the volume of documents produced by DMACC (*Id.* at 8–9), Drake fails to mention that DMACC *repeatedly* warned Drake that its overbroad requests for documents—and its refusal to meet and confer over those requests—would result in a needlessly large document production.

In a letter dated April 11, 2025, counsel for DMACC outlined in detail the timeline of the parties' document production.  (*See* Ex. B).  The letter further outlined which email inboxes DMACC searched, the search terms DMACC used when searching the inboxes, and the strategies DMACC employed for reducing the amount of irrelevant or duplicative documents produced.  The letter also addressed why many of the documents produced on March 21st and April 3rd were batch coded with confidentiality designations and provided authority for DMACC's batch-coding strategy—namely so that DMACC could produce the documents well before the May 14, 2025 settlement conference, giving Drake a reasonable opportunity to review them.  Drake has no basis to raise issues related to document production in its Motion for Revision.

---

[11] DMACC has produced 20,703 documents. Drake has produced roughly 632 documents.

Comparatively, Drake's production is simply lacking.  Drake was made aware of its deficiencies no later than May 28, 2025.  (*See* Ex. C).  On June 4, 2025, Drake asked for an extension to respond to the deficiencies, requesting a response date of June 18.  However, the Court granted DMACC's Motion to Stay on June 11.  Accordingly, Drake has not responded to DMACC's lengthy deficiency letter. (*See id.*)  If the stay is lifted, barring action by Drake, DMACC will have no choice but to file a motion to compel.  Therefore, it is better for both the parties and the Court for the litigation to be stayed to avoid imminent, discovery related motion practice.

## VI.    CONCLUSION.

For these reasons, DMACC respectfully requests the Court deny Drake's Motion for Revision in its entirety.  Additionally, DMACC respectfully requests the Court uphold its decision granting the stay of the litigation.

Respectfully submitted,

Date: August 25, 2025

_/s/ R. Scott Johnson_

R. Scott Johnson (#AT0004007)
Cara S. Donels (#AT0014198)
Erin M. Boggess (#AT0015950)
FREDRIKSON & BYRON, P.A.
111 East Grand Avenue, Suite 301
Des Moines, IA  50309-1977
Telephone:  (515) 242-8900
E-mail:  RSJohnson@fredlaw.com
           CDonels@fredlaw.com
           EBoggess@fredlaw.com

Laura L. Myers (Minn. #0387116)
(admitted _Pro Hac Vice_)
Luke P. de Leon (Minn. #0401756)
(admitted _Pro Hac Vice_)
FREDRIKSON & BYRON, P.A.
60 South 6th Street, Suite 1500
Minneapolis, MN  55402-4400
Telephone:  (612) 492-7000
E-mail:  LMyers@fredlaw.com
           LdeLeon@fredlaw.com

**_Attorneys for Defendants and Counterclaim Plaintiffs_**

17

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on August 25, 2025, I electronically filed the foregoing document

with the Clerk of Court using the CM/ECF system, who in turn sent notice to the following:

Joshua J. Conley, Esq.
  jconley@zarleyconley.com
John D. Gilbertson, Esq.
  jgilbertson@zarleyconley.com
ZARLEYCONLEY PLC
580 Market Street, Suite 101
West Des Moines, IA  50266

*Attorneys for Plaintiff and*
*Counterclaim Defendant*

*/s/ Erica Palmer*
Erica Palmer