# EXHIBIT C



**Fredrikson & Byron, P.A.**
Attorneys and Advisors

111 East Grand Avenue, Suite 301
Des Moines, IA 50309-1884
Main: 515.242.8900
fredlaw.com

May 28, 2025

VIA EMAIL ONLY

John Gilbertson & Josh Conley
Zarley Conley
580 Market Street, Suite 101
West Des Moines, IA 50266
jgilbertson@zarleyconley.com
jconley@zarleyconley.com

Re:   ***Drake University v. Des Moines Area Community College Foundation, et al.***
      **Second Deficiency Letter and Response to Drake's De-Designation Request**

Counsel:

I write to follow up on the deficiencies identified in DMACC's first deficiency letter dated March 4, 2025, and Drake's failure to remedy those deficiencies after our meet and confer on April 9, 2025, and in Drake's subsequent production on April 18, 2025. This letter prioritizes the most pressing deficiencies and is not intended as a full accounting of Drake's discovery deficiencies. We ask that Drake supplement its responses and production by **June 4, 2025**. If Drake is unwilling to do so, please explain why in writing by June 4, 2025, so the parties can meet and confer the week of June 9, 2025, before DMACC moves to compel.

Drake has failed to substantively answer Interrogatories or fully produce responsive documents. While each failure is explained in detail below, DMACC summarizes the most pressing failures as follows:

- Drake has produced negligeable evidence of use for its claimed standalone block style "D" on goods sold or offered for sale and *that do not also feature a bulldog* from 2015 to the present.

- Drake has produced little to no evidence of marketing materials used to advertise Drake or its services that bear a standalone block style "D" *that do not also feature a bulldog* from 2015 to the present.

- Drake has failed to produce any sales data for any items sold or offered for sale to consumers bearing a standalone block style "D" from 2015 to the present.

- Drake has failed to produce any evidence of actual confusion caused by DMACC's use of its 2023 rebrand logo.



May 28, 2025
Page 2

- Drake has failed to produce any evidence of actual damages or reputational harm caused by DMACC's use of its 2023 rebrand logo.

- Drake's email production to date has been nearly nonexistent and indicates Drake has simply failed to conduct reasonable searches for relevant emails. Despite complaining about the volume of email production of just *one* of DMACC's custodians (Erica Spiller, whose email production numbers in the *thousands*), Drake has only produced approximately **40 emails in its entire production**. This is clearly deficient.

I further write to address Drake's Confidentiality De-Designations and Leave to Amend letter dated May 21, 2025. Please see our response in Part IV of this letter.

### I.   Deficient Answers to Interrogatories

Drake has refused to provide substantive responses to the following Interrogatories, including after the parties' meet and confer (which DMACC understood to resolve most, if not all, of Drake's objections). Please provide an immediate supplement. We address each of the Interrogatories in turn below.

#### A.   Interrogatory No. 1

Interrogatory No. 1 seeks identification of all goods and services sold or offered for sale under the "Vintage D" that is not in connection with Drake's bulldog mascot. During the parties' meet and confer, DMACC clarified that it seeks a list of all goods or services sold or offered for sale that bear a standalone block style "D" and does not also feature a bulldog (live or cartoon).

Drake did not provide a list of all goods or services sold or offered for sale in conjunction with a standalone block style "D" that does not also feature a bulldog (live or cartoon). Instead, Drake produced information regarding the "Vintage D." Again, please identify all goods and services You have sold or offered for sale which bear a standalone block style "D" without a bulldog from 2015 to present, including the time period(s) in which each of the identified goods and services were sold or offered for sale. If the answer is none, please supplement your Response to reflect the answer is "none."

To the extent Drake is still standing on its objections, they should be withdrawn.

- *Discrete Subparts*: Drake objected to this Interrogatory as containing discrete subparts. However, Drake indicated in its March 21 letter ("response letter") that "Drake responded to the request as it was understood." Thus, Drake's discrete subpart objection is not a basis for Drake to refuse to provide the information sought in any interrogatory propounded by DMACC.

- *Vagueness*: Drake also objected claiming the term "under" is vague. In the parties' meet and confer, counsel for DMACC clarified "under" means items that bear the "Vintage D." Because DMACC has clarified this term, and Drake indicated their understanding of



May 28, 2025
Page 3

- the term, Drake's vagueness objection is not a basis for Drake to refuse to provide the information sought.

- *Third Parties:* Drake's response letter indicates that based on their understanding of the request after receiving DMACC's first deficiency letter, "Third parties are not related to this inquiry." Because DMACC clarified the Interrogatory, and Drake indicated their understanding of the clarification, Drake's third-party objection is not a basis for Drake to refuse to provide the information sought.

- *Overly Broad and Unduly Burdensome:* Drake's response letter indicated DMACC's request of items sold in connection with the "Vintage D" is overbroad and unduly burdensome. In the parties' meet and confer, DMACC indicated it only seeks information about specific items sold bearing the "Vintage D." Interrogatory No. 1 is further limited to specific items bearing the "Vintage D" without also incorporating a bulldog (real or cartoon). DMACC further clarified its Interrogatory seeks the time period for which this discrete list of goods were sold or offered for sale.

Drake's objections to Interrogatory No. 1 have all been resolved. Drake must supplement its answer to Interrogatory No. 1.

### B.   Interrogatory No. 2

For all items identified in Interrogatory No. 1, Interrogatory No. 2 seeks all sales from 2015 to present, including: 1) the date of each sale; 2) the purchaser; and 3) the price paid for the good or service. To the extent that Drake contends the email Bates labeled DU05865 is responsive to Interrogatory No. 2, pursuant to Fed. R. 33(d), DMACC requests Drake identify by Bates number documents sufficient to identify the remaining information sought by Interrogatory No. 2, including how the numbers $82,856 (total sales of what?) and $9,931 (royalties for which marks?) were calculated, including but not limited to identifying each item in the Vintage Program sold or offered for sale per year, the cost of each item sold or offered for sale per year, and the quantity of each item sold per year and the amounts remaining in inventory. In Interrogatory Nos. 1-4, DMACC has requested identification of all items bearing a standalone, block style "D" (both with and without a bulldog), the date of the sale of each good, and the price of the good sold. DMACC is entitled to the information used to calculate the numbers $82,856 and $9,931, which would include what items were sold, the quantity of sales made per item offered for sale, and the cost of each item in Drake's Vintage Program.

To the extent Drake is still standing on its objections, they should be withdrawn.

- *Discrete Subparts:* As discussed regarding Interrogatory No. 1 (Section I.A), this objection is resolved.

- *Overly Broad and Unduly Burdensome:* Drake's response letter indicated DMACC's request of items sold in connection with the "Vintage D" is overbroad and unduly

May 28, 2025
Page 4



burdensome. Drake states that "every tuition payment by a student, not to mention every ticket purchased by an athletic event attendee is, in some way, attributed to the Vintage D." This is disingenuous and deliberately misunderstands DMACC's request. DMACC has limited Interrogatory No. 2 to goods or services identified in Interrogatory No. 1: goods or services sold or offered for sale which bear a standalone block style "D" and does not also feature a bulldog (alive or cartoon). To date, Drake has produced nothing that shows it promotes any services with the block style "Vintage D". If Drake is unable to answer these Interrogatories, please confirm that the current information provided is all Drake has.

Drake must supplement its answer to Interrogatory No. 2.

### C. **Interrogatory No. 3**

Interrogatory No. 3 seeks identification of all goods and services sold or offered for sale under the "Vintage D" in combination with Drake's bulldog mascot. During the parties' meet and confer, DMACC clarified that it seeks a list of all goods sold or offered for sale that bear a standalone block style "D" and also feature a bulldog (live or cartoon).

Drake did not provide a list of all goods sold or offered for sale in conjunction with a standalone block style "D" that also feature a bulldog (live or cartoon). Instead, Drake produced information regarding the "Vintage D." Again, please identify all goods and services You have sold or offered for sale which bear a standalone block style "D" with a bulldog from 2015 to present, including the time period(s) in which each of the identified goods were sold or offered for sale. If the answer is none, please supplement your Response to reflect the answer is "none."

To the extent Drake is still standing on its objections, they should be withdrawn.

- *Vagueness*: During the parties' meet and confer, DMACC clarified that it was seeking any goods or services sold or offered for sale bearing a standalone block-style "D" with any bulldog (alive or cartoon). Because DMACC has clarified this Interrogatory, and Drake indicated their understanding of the Interrogatory, Drake's vagueness objection is not a basis for Drake to refuse to provide the information sought.

- *Overly Broad and Unduly Burdensome*: Drake's response letter indicated DMACC's request of items sold under the "Vintage D" is overbroad and unduly burdensome. In the parties' meet and confer, DMACC indicated it only seeks information about specific goods or services sold or offered for sale bearing the "Vintage D." Interrogatory No. 3 is further limited to specific items bearing the "Vintage D" and featuring a bulldog (real or cartoon). DMACC further clarified this Interrogatory seeks the time period in which this discrete list of goods or service was sold or offered for sale.

May 28, 2025
Page 5



Drake must supplement its answer to Interrogatory No. 3.

    **D.**    <u>**Interrogatory No. 4**</u>

For all items identified in Interrogatory No. 3, Interrogatory No. 4 seeks all sales from 2015 to present, including: 1) the date of each sale; 2) the purchaser; and 3) the price paid for the good or service. To the extent that Drake contends the email Bates labeled DU05865 is responsive to Interrogatory No. 4, pursuant to Fed. R. 33(d), DMACC requests Drake identify by Bates number documents sufficient to identify how the numbers $82,856 and $9,931 were calculated, including but not limited to each item in the Vintage Program sold or offered for sale per year, the cost of each item sold or offered for sale per year, and the quantity of each item sold per year. If Drake cannot distinguish between goods and services sold or offered for sale with the bulldog and without, DMACC will assume all sales and royalties were for a Vintage mark that included a bulldog. If Drake does not believe this is correct, please provide the information necessary to distinguish between bulldog based and non-bulldog based Vintage marks.

To the extent Drake is still standing on its objections, they should be withdrawn.

- *Discrete Subparts*: As discussed regarding Interrogatory No. 1 (Section I.A), this objection is resolved.

- *Overly Broad and Unduly Burdensome*: Drake's response letter indicated DMACC's request of items sold under the "Vintage D" is overbroad and unduly burdensome. Drake states that "every tuition payment by a student, not to mention every ticket purchased by an athletic event attendee is, in some way, attributed to the Vintage D." Drake deliberately misunderstands the Interrogatory. DMACC has limited this Interrogatory to good or services identified in Interrogatory No. 3: a discrete list of goods or services sold or offered for sale bearing a standalone block style "D" and featuring a bulldog.

Drake must supplement its answer to Interrogatory No. 4.

    **E.**    <u>**Interrogatory No. 5**</u>

Interrogatory No. 5 asks Drake to identify all uses of the "Vintage D" that do not also feature a bulldog on marketing materials distributed or used by Drake from 2015 to present. Drake did not provide a list of all goods sold or offered for sale in conjunction with a standalone block style "D" that also feature a bulldog (live or cartoon). Instead, Drake produced information regarding the "Vintage D." Again, please identify all marketing materials distributed or used by Drake to identify or advertise its university services that bear a standalone block style "D" and that do not also feature a bulldog from 2015 to present, including the time period(s) in which each of the identified items or materials were distributed or used to advertise Drake or Drake's services.



May 28, 2025
Page 6

To the extent that Drake contends the excel file Bates labeled DU08706 is responsive to Interrogatory No. 5, pursuant to Fed. R. 33(d), DMACC requests Drake identify by Bates number documents sufficient to identify each item on sheet "Vintage D RFP 8", including but not limited to the 2010 International Viewbook; the Viewbooks used from 2011 through 2018; the Admitted Student Packets used from 2019-2024, the Bulldog Promise DART Bus, Construction Fence Wrap, and Griff Wrap. Interrogatory No. 5 specifically requests identification of all marketing materials used or distributed to advertise Drake or its services that bear a standalone, block-style "D" that do not also feature a bulldog. If any of the items listed in DU08706 bear a standalone block-style "D" that do not feature a bulldog, Drake must identify those items.

To the extent Drake is still standing on its objections, they should be withdrawn.

- *Discrete Subparts*: As discussed regarding Interrogatory No. 1 (Section I.A), this objection is resolved.

- *"Irrelevant and Misleading"*: While Drake and DMACC have opposing positions on this objection, Drake indicated in its response letter that "a response was nonetheless provided subject to that objection." Thus, Drake's irrelevant and misleading objection is not a basis for Drake to refuse to provide the information sought in Interrogatory No. 5.

- *Overly Broad and Unduly Burdensome:* Drake's response letter indicated DMACC's request of all items or materials distributed or used by Drake to identify itself or advertise its services in connection with the "Vintage D" is overbroad and unduly burdensome. In the parties' meet and confer, DMACC indicated it only seeks information about specific items or materials distributed and used to advertise or identify Drake and its services that bear the "Vintage D." Interrogatory No. 5 is further limited to specific items bearing the "Vintage D" which do not also feature a bulldog (real or cartoon). DMACC further clarified this Interrogatory seeks the time period in which this discrete list of items or materials were distributed or used to advertise Drake's services.

    Interrogatory No. 5 is different than Interrogatory No. 1 as Interrogatory No. 5 seeks marketing materials used by Drake. These items need not be sold or offered for sale. Interrogatory No. 1, on the other hand, seeks information related to goods or services available for sale.

Drake's objections to Interrogatory No. 5 have all been resolved. Drake must supplement its answer to Interrogatory No. 5.

May 28, 2025
Page 7



### F. Interrogatory Nos. 11, 12, and 13

Interrogatory Nos. 11, 12, and 13 seek the amount of money Drake has spent to advertise or promote the goods identified in Interrogatory Nos. 1, 3, and 5. As part of its supplement of Interrogatory Nos. 1, 3, and 5, Drake must supplement its answers to Interrogatory Nos. 11, 12, and 13, which seek information related to the items listed in Interrogatory Nos. 1, 3, and 5. If Drake's intention is to rely on Rule 33(d) and produce documents that will provide the answers to Interrogatory Nos. 11, 12, and 13, Drake must specify the records that must be reviewed, in sufficient detail to enable DMACC to locate and identify them as readily as Drake could (i.e., by Bates number) in its answers.

To the extent that Drake contends the excel file Bates labeled DU08706 is responsive to each of Interrogatory Nos. 11, 12, and 13, pursuant to Fed. R. 33(d), DMACC requests Drake identify by Bates number documents sufficient to identify how column C—the "marketing dollars actually spent— on the "Historic Budget RFP 48" sheet was calculated, including but not limited to each marketing item or material purchased by Drake that year, the cost of each marketing item or material purchased that year, and the quantity of each marketing item or material purchased that year. Drake must produce this information pursuant to Interrogatory Nos. 1, 3, and 5, which ask Drake to identify specific, responsive goods; when those goods were sold, offered for sale, or distributed; and where those goods were sold, offered for sale, or distributed. Interrogatory Nos. 11, 12, and 13 ask Drake to identify how much it spent to advertise each of the goods identified in Interrogatory Nos. 1, 3, and 5. Therefore, DU08706 is not fully responsive to Interrogatory Nos. 11, 12, and 13 without supplemental information.

### G. Interrogatory No. 14

Interrogatory No. 14 seeks identification of all standalone "Ds," other than the "Vintage D" and the stylized "D" in Drake's U.S. Registration No. 3,498,202, that Drake believes it has used as a trademark from 2015 to present. As DMACC identified—and Drake acknowledged in its response letter—Drake's response does not answer the question asked.

In its response letter, Drake stated "to the extent supplementation is required, Drake will do so in the near future." Yet, to date, Drake has not supplemented its answers to identify discrete examples of "Ds" it believes it has a trademark in other than the "Vintage D" and its federal trademark. Please supplement your response to Interrogatory No. 14 or confirm that Drake does not contend that it has used any other standalone "Ds" as a trademark since 2015.

### H. Interrogatory Nos. 16, 17, and 18

Interrogatory Nos. 16, 17, and 18 seek the identification of any instances of which Drake is aware when a student or potential student mistakenly enrolled at DMACC, contacted DMACC, or purchased goods from DMACC believing it to be Drake or Drake's goods. In its response letter, Drake stated it "will supplement its response in the near future." Drake has not


supplemented its responses. If Drake is not aware of any such instances, its answers should state as much.

### I. Interrogatory No. 19

Interrogatory No. 19 asks Drake to identify and quantify any actual damages Drake claims to have suffered due to DMACC's use of its rebrand logo. In its response letter, Drake states it "will supplement its response to the extent required by Rule." Drake has yet to supplement its response. Drake must identify and quantify the actual damages it claims to have incurred due to DMACC's use of its rebrand block-style "D."

### J. Interrogatory No. 20

Interrogatory No. 20 asks Drake to identify and describe any reputational damage Drake claims to have suffered due to DMACC's use of its rebrand logo. In its response letter, Drake states it "will supplement its response to the extent required by Rule." Drake has yet to supplement its response. Drake must identify and describe any alleged harm and injury to its reputation and goodwill caused by DMACC's use of its rebrand block-style "D."

## II. Deficient Answers to Requests for Production

Drake produced documents on April 18, 2025. After reviewing this production, DMACC identifies the following deficiencies.

### A. General Deficiencies

As of now, Drake has only produced approximately **40 emails** over its four sets of production. In comparison, DMACC has produced over 12,000 emails. Drake's production is clearly deficient. Drake must supplement its email production or identify how Drake searched its emails to identify response documents. If you believe Drake has conducted a reasonable and thorough search of its electronic files, please indicate how Drake conducted such a search, including the files / folders searched, custodians for such files / folders, and the search terms used.

Request Nos. 1, 5, 6, 7, 8, 9, 10, 11, 12, 20, 21, 22, 23, and 24 must be supplemented in accordance with Drake's supplemental interrogatory answers because each Request relies on the information Drake provides in Interrogatory Nos. 1, 3, or 5. Otherwise, confirm production is complete and no responsive documents are being withheld.

In response to Request Nos. 1, 2, 5, 6, 8, 9, 10, 12, 13, 14, 15, 17, 18, 19, 20, 21, 22, 23, 24, 28, 29, 30, 31, 32, 33, 34, 35, 36, 37, 38, 39, 46, 47, and 48, Drake states "[s]ubject to and notwithstanding said objections, Drake will produce responsive documents in its possession, custody, or control that Drake locates through a reasonable search for such documents." **Please**



May 28, 2025
Page 9

confirm Drake has completed its reasonable search produced all responsive documents, and Drake is not withholding any documents based on any objections for any of these Requests. If Drake is withholding any documents on the basis of any objection, it must identify which Requests have responsive documents being withheld, which objection applies to the withheld documents and explain the basis upon which the documents are being withheld. If responsive documents are being withheld on the basis of attorney-client privilege or attorney work product, such documents must be identified on a privilege log so DMACC can fully assess the assertion of privilege. Please confirm whether responsive documents are being withheld on the basis of privilege and, if so, produce a privilege log by June 6, 2025.

    **B.**    <u>**Request Nos. 4, 16, 25, 40-43**</u>

In response to Request Nos. 4, 16, 25, 40-43, Drake provided Bates or ECF numbers corresponding to responsive documents and did not indicate it had to complete any additional searches to locate more responsive documents. Please confirm Drake produced all responsive documents and is not withholding any documents based on any asserted objections for any of these Requests.

    **C.**    <u>**Request No. 26**</u>

Request No. 26 seeks all documents referring or relating to any standalone, block-style "Ds" used by any other college or university. While Drake and DMACC have opposing positions on Drake's relevance objection, Drake indicated in its response letter that "any required supplement will be made." Please confirm all responsive documents have been produced.

    **D.**    <u>**Request No. 27**</u>

Request No. 27 seeks all documents referring or relating to the merchandise worn by Drake's representatives at the preliminary injunction hearing on October 15, 2024, bearing the "Vintage D" including but not limited to the lapel pins and t-shirts. DMACC personally observed individuals wearing pins and t-shirts with a block-style "D" at a court hearing.

Drake's response letter states, "Counsel will confer with Drake to verify that no responsive documents exist." Please confirm it is Drake's position that there are no responsive documents to this Request. Given the presence of the pins at the hearing, this does not make sense. Please provide any and all email communications with vendors regarding the creation or distribution of the merchandise, invoices for the merchandise, and/or internal communication regarding wearing the merchandise to the hearing.

    **E.**    <u>**Request No. 44**</u>

Request No. 44 requests all documents referring or relating to any damages Drake claims it incurred due to DMACC's use of a block-style "D" from October 2023 to present. Drake has not



May 28, 2025
Page 10

produced any documents responsive to Request No. 44. DMACC will move to strike any expert reports which rely on any documents requested but not received in fact discovery.

### F. Request No. 45

Request No. 45 requests all documents referring or relating to any injury or harm to Drake's reputation or goodwill that Drake claims it suffered due to DMACC's use of a block-style "D" from October 2023 to present. Drake incorporated by reference its response to Request No. 44. Yet Drake did not produce any documents responsive to Request No. 44. Please supplement this response to clearly indicate whether Drake will produce documents related to reputational harm suffered, or to clearly state that no such documents exist.

## III. Deficient Answers to Requests for Admission

Drake has refused to provide acceptable answers to DMACC's Request for Admission. DMACC focuses on the most egregious answers below. Please provide an immediate supplement.  DMACC will seek its fees if it has to establish any of the identified Requests that Drake should already have admitted.[1]

### A. Request for Admission No. 1

DMACC asked Drake to admit there is not a likelihood of confusion between the "DMACC Rebrand Logo" and the "Academic D." Drake denied Request for Admission No. 1. In the preliminary injunction order, the court stated that "Drake has registered trademarks in its Academic D and Athletic D but not its Vintage D. Although Drake's registered marks are presumptive in use due to their registered status, there is no likelihood of confusion between DMACC's new logo and those registered marks. They simply are not similar enough to one another to cause confusion to the public." (ECF 87 at p. 9) (citations omitted). Before the Court's preliminary injunction order, a denial was improper because RFA No. 1 is being used to "eliminat[e] the necessity of proving [an] essentially undisputed issue[] of fact." This is an "essentially undisputed issue of fact" because the fonts of the "Ds" are clearly different and DMACC's rebrand logo has the word "DMACC" underneath the "D." Now, Drake's denial is

---

[1] "Properly used, requests to admit serve the expedient purpose of eliminating the necessity of proving essentially undisputed issues of fact. They are intended to save time and expense by narrowing the issues to be tried." *Williams v. City of Burlington, Iowa*, No. 319CV00043SMRHCA, 2020 WL 11028007, at *2 (S.D. Iowa July 22, 2020) (quotation omitted). "If the court finds that an answer is not in compliance with Rule 36, the court may order either that the matter is admitted or that an amended answer be served." *Id.* (quotation omitted). If Drake's answers are not complete and accurate, Drake "may be subject to potential sanctions." *Id.* at *3.



without justification and contrary to the Court's order. Please supplement your Response to Request for Admission No. 1 immediately.

### B.  Request for Admission No. 2

Request for Admission No. 2 seeks an admission that there is not a likelihood of confusion between the "DMACC Rebrand Logo" and the "Athletic D." Drake denied Request for Admission No. 2. In the preliminary injunction order, the court stated that "Drake has registered trademarks in its Academic D and Athletic D but not its Vintage D. Although Drake's registered marks are presumptive in use due to their registered status, there is no likelihood of confusion between DMACC's new logo and those registered marks. They simply are not similar enough to one another to cause confusion to the public." (ECF 87 at p. 9) (citations omitted). Before the Court's preliminary injunction order, a denial was improper because RFA No. 2 is being used to "eliminat[e] the necessity of proving [an] essentially undisputed issue[] of fact." This is an "essentially undisputed issue of fact" because the fonts of the "Ds" are clearly different, the "Athletic D" features a bulldog, and DMACC's rebrand logo has the word "DMACC" underneath the "D." Now, Drake's denial is without justification and contrary to the Court's order. Please supplement your Response to Request for Admission No. 2 immediately.

### C.  Request for Admission No. 3

Request for Admission No. 3 seeks an admission there is not a likelihood of confusion between the "DMACC Rebrand Logo" and the "Marching Spike." Drake denied Request for Admission No. 3. In the preliminary injunction order the court stated that "Drake has registered the Marching Spike trademark shown in Figure 5 below. The Vintage D is depicted on Spike's sweatshirt." (*Id.* at p. 4). Before the Court's preliminary injunction order, a denial was improper because RFA No. 3 is being used to "eliminat[e] the necessity of proving [an] essentially undisputed issue[] of fact." This is an "essentially undisputed issue of fact" because the "Marching Spike" features a bulldog with a "D" on its chest and DMACC's rebrand logo has the word "DMACC" underneath the "D." Now, Drake's denial is without justification and contrary to the Court's order. Please supplement your Response to Request for Admission No. 3 immediately.

### D.  Request for Admission No. 4

Request for Admission No. 4 seeks an admission that Drake does not own a federal trademark registration in the "Vintage D." Drake denied Request for Admission No. 4 in part. In the preliminary injunction order the court stated that "Drake has registered trademarks in its Academic D and Athletic D **but not its Vintage D**." (ECF 87 at p. 9) (emphasis added). The court proceeds to rely on a common law trademark analysis to determine whether Drake has trademark rights in its "Vintage D." ("Therefore, the main issue in the case is whether Drake has a valid common law trademark for its Vintage D and whether DMACC's new logo infringes on that mark.") (*Id.* at p. 10). Before the Court's preliminary injunction order, a denial was



May 28, 2025
Page 12

improper because RFA No. 4 is being used to "eliminat[e] the necessity of proving [an] essentially undisputed issue[] of fact." This is an "essentially undisputed issue of fact" because Drake's federal trademark registrations are publically available. It is obvious Drake does not own a federal registration for a standalone blockstyle "D." In fact, Dartmouth owns that trademark. *See* ECF 52-13. Now, Drake's denial is without justification and contrary to the Court's order. Please supplement your Response to Request for Admission No. 4 immediately.

### E. Request for Admission No. 23

DMACC asked Drake to admit that the "DMACC Rebrand Logo" is not similar enough to the "Academic D" to cause confusion to the public. Drake denied Request for Admission No. 23. In the preliminary injunction order the court stated that "[t]hey simply are not similar enough to one another to cause confusion to the public." (ECF 87 at p. 9). ). Before the Court's preliminary injunction order, a denial was improper because RFA No. 23 is being used to "eliminat[e] the necessity of proving [an] essentially undisputed issue[] of fact." This is an "essentially undisputed issue of fact" because the fonts of the "Ds" are clearly different and DMACC's rebrand logo has the word "DMACC" underneath the "D." Now, Drake's denial is without justification and contrary to the Court's order. Please supplement your Response to Request for Admission No. 23 immediately.

### F. Request for Admission No. 24

DMACC asked Drake to admit that the "DMACC Rebrand Logo" is not similar enough to the "Athletic D" to cause confusion to the public. Drake denied Request for Admission No. 24. In the preliminary injunction order the court stated that "[t]hey simply are not similar enough to one another to cause confusion to the public." (*Id.*) Before the Court's preliminary injunction order, a denial was improper because RFA No. 24 is being used to "eliminat[e] the necessity of proving [an] essentially undisputed issue[] of fact." This is an "essentially undisputed issue of fact" because the fonts of the "Ds" are clearly different, the "Athletic D" features a bulldog, and DMACC's rebrand logo has the word "DMACC" underneath the "D." Now, Drake's denial is without justification and contrary to the Court's order. Please supplement your Response to Request for Admission No. 24 immediately.

### G. Request for Admission No. 25

DMACC asked Drake to admit that the "DMACC Rebrand Logo" is not similar enough to the "Marching Spike" to cause confusion to the public. Drake denied Request for Admission No. 25. In the preliminary injunction order the court stated that "Although Drake's registered marks are presumptive in use due to their registered status, there is no likelihood of confusion between DMACC's new logo and those registered marks. They simply are not similar enough to one another to cause confusion to the public." (*Id.*) (citations omitted). While the court's order does not directly address the differences between the "Marching Spike" and DMACC's rebrand logo, the Court does not consider any of Drake's federal trademark registrations in its analysis of



May 28, 2025
Page 13

whether Drake has a valid trademark in the "Vintage D." Before the Court's preliminary injunction order, a denial was improper because RFA No. 25 is being used to "eliminat[e] the necessity of proving [an] essentially undisputed issue[] of fact." This is an "essentially undisputed issue of fact" because the "Marching Spike" features a bulldog with a "D" on its chest and DMACC's rebrand logo has the word "DMACC" underneath the "D." Now, Drake's denial is without justification and contrary to the Court's order. Please supplement your Response to Request for Admission No. 25 immediately.

    **H.**    **Request for Admission No. 26**

DMACC asked Drake to admit that the unique stylization of the "Academic D" is a distinguishing and distinct characteristic from the "DMACC Rebrand Logo." Drake denied Request for Admission No. 26. In the preliminary injunction order the court stated that "An examination of the marks as a whole reveals distinguishing and distinct characteristics which eviscerate a finding of likelihood of confusion, such as the unique stylization of the Academic D . . . ." (*Id.*) Before the Court's preliminary injunction order, a denial was improper because RFA No. 26 is being used to "eliminat[e] the necessity of proving [an] essentially undisputed issue[] of fact." This is an "essentially undisputed issue of fact" because the fonts of the "Ds" in the two logos are clearly different. Now, Drake's denial is without justification and contrary to the Court's order. Please supplement your Response to Request for Admission No. 26 immediately.

    **I.**    **Request for Admission No. 27**

DMACC asked Drake to admit that the bulldog emblem attached to the "Athletic D" is a distinguishing and distinct characteristic from the "DMACC Rebrand Logo." Drake denied Request for Admission No. 27. In the preliminary injunction order the court stated that "An examination of the marks as a whole reveals distinguishing and distinct characteristics which eviscerate a finding of likelihood of confusion, such as . . . the bulldog emblem attached to the Athletic D." (*Id.*) Before the Court's preliminary injunction order, a denial was improper because RFA No. 27 is being used to "eliminat[e] the necessity of proving [an] essentially undisputed issue[] of fact." This is an "essentially undisputed issue of fact" because there is a bulldog in Drake's logo and no bulldog in DMACC's logo. Now, Drake's denial is without justification and contrary to the Court's order. Please supplement your Response to Request for Admission No. 27 immediately.

**IV.**    **DMACC Properly Designated Its Internal Communications Under the Protective Order**

DMACC has properly designated its documents pursuant to the protective order and is evaluating Drake's de-designation requests. Fed. R. Civ. P. 26(c) provides that the Court "may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including . . . requiring that . . . confidential research,

May 28, 2025
Page 14



development, or commercial information not be revealed or be revealed only in a specified way." The Supreme Court has explained the purpose of Rule 26(c):

> It is clear from experience that pretrial discovery by depositions and interrogatories has a significant potential for abuse. This abuse is not limited to matters of delay and expense; discovery also may seriously implicate privacy interests of litigants and third parties. The Rules do not distinguish between public and private information. Nor do they apply only to parties to the litigation, as relevant information in the hands of third parties may be subject to discovery. There is an opportunity, therefore, for litigants to obtain—incidentally or purposefully—information that not only is irrelevant but if publicly released could be damaging to reputation and privacy. The government clearly has a substantial interest in preventing this sort of abuse of its processes.

*Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 34–35 (1984).

As a threshold matter, the information must be confidential (i.e., not publicly disclosed); then, it must meet one of Rule 26(c)'s justifications for protection. Here, Drake has not argued (nor could it) that any of these emails are already publicly disclosed. Each of the emails are internal documents. DMACC anticipates sending a document-by-document identification of either (1) its rational for its designation or (2) the documents' new designation later this week.

Drake's desire to use these documents in some (unnecessary, undisclosed) amendment to its complaint does not weigh into the analysis regarding whether they should be designated under the protective order. A party cannot avoid Rule 26(c) simply by seeking to attach a record to a pleading. "There is a significant difference between pleadings filed with the Clerk and business records produced in the course of discovery. In fact, the court noted that pleadings in civil cases are 'presumptively public' except for 'discovery motions and accompanying exhibits.' [] Even with regard to pleadings, the court recognized a party's right to have confidential and sensitive information redacted." *Eggerling v. Advanced Bionics, LLC*, 2013 WL 835974 (N.D. Iowa. Mar. 6, 2013) (internal citations omitted). Drake's citations are unavailing. *Flynt v. Lombardi*, 885 F.3d 508 (8th Cir. 2018) *denied* the inmates' request to unseal records. *In re Violation of Rule 28(D)*, 635 F.3d 1352 (Fed. Cir. 2011) involved "[t]he marking as confidential of legal argument concerning the propriety of a decision by the court." And *Culinary Foods, Inc. v. Raychem Corp.*, 151 F.R.D. 297 (N.D. Ill. 1993), in addition to being outdated and contrary to binding authority, involved the public right to know about hazardous products. Simply put: just because a document allegedly speaks to an element of a claim does not strip that document of its appropriate confidentiality designation.

We trust this will resolve all issues. However, if Drake believes these documents should *not* be designated under the protective order, Drake of course would have no problem de-designating DU08832, DU08842, DU08845, DU08851, DU08875, DU08879, DU08881, DU08887, DU08889, DU08890, DU08893, DU08895, DU08896, DU08897. Ordinarily, DMACC would

May 28, 2025
Page 15



not push documents such as these to be de-designated from Confidential, but if Drake insists on the ability to allow public access to DMACC's confidential internal emails, DMACC will insist on the same regarding Drake's emails. Please let us know Drake's position.

### A. Drake's forthcoming "motion to amend"

As Drake should know, it is not uncommon to obtain evidence (or confirm the absence of it) in discovery. For example, DMACC still has not received sales numbers reflecting Drake's sales under a stand-alone, block-style D. What is uncommon is amending pleadings simply to add further details to existing claims. If that were how federal litigation went, the courts would be overwhelmed with motions to amend. That is simply not how this works.

At this stage, after the deadline to amend the pleadings has passed, Drake must demonstrate good cause for any proposed amendment. *See* Fed. R. Civ. P. 16(d). Notably, Drake's citation to Fed. R. Civ. P. 15(a)-(b) is irrelevant; the deadline for amendments as a matter of course has long passed, and this case is not at trial. The only reason identified to "support" Drake's request for amendment is to add to its preexisting claims under 35 U.S.C. § 1117. To be clear: **is Drake contending it has not pled intent or exceptionality under 35 US.C. § 1117?**

The deadline to amend the pleadings was December 9, 2024. More than six months have passed since the deadline to amend. At this point, Drake has not provided any valid reason supporting leave to amend. It has not even identified what it would amend, what claim it would add or subtract, or what the alleged good cause is (not that Drake could establish good cause in the face of its lack of diligence). It is clear Drake's only purpose in the amendment is to try to publicly embarrass DMACC employees. That is not a valid basis to amend.

I look forward to Drake's response on these discovery issues.

Sincerely,

R. Scott Johnson
**Direct Dial:** 515.242.8930
**Email:** rsjohnson@fredlaw.com